## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **GORDON ROY PARKER**, a.k.a. Ray Gordon, d/b/a **Snodgrass Publishing Group,** 4247 Locust Street, #806 Philadelphia, PA 19104 | : : : : | |
| Plaintiff, | : | **CASE NO.:** |
| v. | : : | 06 - 229 |
| **Learn The Skills Corp.**, c/o Business Filings, Inc., 108 West 13th Street, Wilmington, DE 19801; **Formhandle@Fastseduction.com,** c/o Business Filings, Inc., 108 West 13th Street, Wilmington, DE 19801; **TokyoPUA@fastseduction.com,** c/o Business Filings, Inc., 108 West 13th Street, Wilmington, DE 19801; **Straightforward, Inc.,** 822 Eagle Point Rd. Van Alstyne, TX 75495; and **Paul Ross,** a/k/a "Ross Jeffries," 310 Tahiti Way, Marina Del Ray, CA, 90292-6789 | : : : : : : : : : : : : | Hon. _____ presiding |
| Defendants. | : | |

## COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, SHERMAN ANTITRUST ACT, CLAYTON ACT, DEFAMATION, TORTIOUS INTERFERENCE, RACKETEERING (RICO), AND CIVIL CONSPIRACY

**Plaintiff** Gordon Roy Parker, in the above-styled action, states his claims and prayers for relief, and in support thereof, sets forth and avers the following:

## THE PARTIES

1.    Plaintiff **Gordon Roy Parker**, a.k.a. Ray Gordon, is an adult male resident of the Commonwealth of Pennsylvania, domiciled and residing at 4247 Locust Street, #806, Philadelphia, PA 19104.  Plaintiff is the sole owner of Snodgrass Publishing Group, a Pennsylvania sole proprietorship and internet publisher, whose website is located at www.cybersheet.com, and whose seduction advice websites are located at http://www.cybersheet.com/library.html and http://www.cybersheet.com/easy.html.

1

2.     Defendant **Learn The Skills Corp.** ("LTSC") is a Delaware corporation who can be served through its registered agent, Business Filings, Inc., at the address listed for it in the caption.

3.     Defendant **Formhandle@fastseduction.com**  ("Formhandle") is the sole owner, or one of the owners, of Defendant LTSC, and can be served through LTSC's registered agent, at the address listed in the caption.  Defendant LTSC operates a "seduction portal" website at http://www.fastseduction.com ("the LTSC website")and earns its revenue through affiliate commissions on sales of products which sponsor its site.  The LSTC website also contains articles on seduction, a message board system it calls "mASF," or "moderated alt.seduction.fast," and a message board called PAIR, the "Pickup Artists' International Registry."

4.     Defendant **Toykopua@fastseduction.com** ("TokyoPUA") is an officer or director of Defendant LTSC, and can be served through LTSC's registered agent, at the address listed in the caption.

5.     Defendant **Straightforward, Inc.** ("Straightforward") is a corporation located in Texas, who can be served at the address listed for it in the caption.  Straightforward is the corporate distributor of the "Speed Seduction" line of products, a series of information products designed to teach men how to seduce women, and can be served at the address listed for it in the caption.

6.     Defendant **Paul Ross** is the creator of the "Speed Seduction" line of products, a series of information products designed to teach men how to seduce women, and can be served at the address listed for him in the caption.  Defendant Ross exercises "substantive control" over the website that sells Speed Seduction products, http://www.seduction.com.  The seduction.com domain is owned by Defendant Straightforward.

## NATURE OF CASE/STATEMENT OF JURISDICTION AND VENUE

7.     This case is a "refiled" version of <u>Parker v. Learn The Skills Corp. et al.</u>, E.D.Pa. #05-cv-2752. In that case, Defendants LTSC and Ross were dismissed on March 23, 2006 for lack

2

of jurisdiction. In this case, Plaintiff is seeking relief for claims of Lanham Act violations, defamation, tortuous interference, and civil conspiracy.

8.      Jurisdiction in Delaware over Defendant LTSC is conferred because LTSC is a registered Delaware Corporation, and is further conferred under §3104(c)(2) because LTSC sells products as an "affiliate" in partnership with its sponsors (where it receives sales commissions) who sell products to residents of Delaware, and because it solicits contributions globally, including users in Delaware, on a persistent and ongoing basis. Jurisdiction is further conferred under §3104(c)(4) because Defendant LTSC has tortiously injured Plaintiff outside of Delaware, while it conducts and solicits business (as a commissioned affiliate) to residents of Delaware, on a persistent and ongoing basis, thus deriving substantial revenue from the use and consumption of its affiliated products and services (which include Speed Seduction) within the state.

9.      Jurisdiction in Delaware over Defendant Straightforward is conferred by §3104(c)(2) of the Delaware Code because, during all relevant times, Straightforward sells the Speed Seduction product line (and solicits sales of same) to residents of Delaware, on an ongoing and persistent basis, thus contracting to supply goods and services in the state. Jurisdiction over Straightforward is further conferred by §3104(c)(4) because Straightforward has tortiously injured Plaintiff outside of Delaware, while it conducts and solicits business on a persistent and ongoing basis with residents of Delaware, thus deriving substantial revenue from the use and consumption of its product line within the state.

10.     Jurisdiction in Delaware over Defendant Ross is conferred by §3104(c)(2) of the Delaware Code, because, during all relevant times, Defendant Ross has been a party to all sales contracts made by Defendant Straightforward of the "Advanced Home Study Course," in that he is contractually obligated, by purchase, to provide a one-hour telephone consultation with customers who purchase the course, including customers who reside in Delaware. Jurisdiction is further

3

conferred by §3104(c)(4) because Defendant Ross has tortiously injured Plaintiff outside of Delaware, but he derives substantial revenue from the sale and use of the Speed Seduction product line to residents of Delaware, for use and consumption in the state.

11.   Jurisdiction over Defendants Formhandle and TokyoPUA in Delaware is conferred because they are directors or officers of a Delaware corporation, and is further conferred under §3104(c)(4), because each Defendant derives substantial revenue from the use of products and services that are sold to residents of Delaware, for use and consumption in the state.

12.   Federal jurisdiction is conferred by 28 USC §1331 and §1338(a) because of the existence of federal questions; the Lanham Act (15 USC §1125 *et seq.*); 15 USC §22, which confers jurisdiction over any district in which a corporation transacts business; jurisdiction over the defamation/civil conspiracy claims is conferred by virtue of diverse jurisdiction and the amount in controversy being greater than $75,000.00. Jurisdiction over the RICO claim is specifically conferred by 18 USC §1965(b), which provides for nationwide service of process.

## BACKGROUND

13.   The Defendants in this case all earn their livings through the sale of internet-based information products designed to teach men how to seduce women.  The transactions which relate to this action occur primarily through three websites: a) Plaintiff's, for his products sold through his website; b) Defendants Ross and Straightforward, through the "Speed Seduction" products sold through http://www.seduction.com; and c) Defendants LTSC, Formhandle and TokyoPUA, through sales commissions generated when sales of affiliated products, including Speed Seduction, are made through the LTSC website at http://www.fastseduction.com.

## The Seduction Cartel

14.   The bestselling book *The Game*, by Neil Strauss (HarperCollins, 2005) has shed light on what Strauss refers to as the "seduction community," a group of tightly-knit websites which

4

offer advice to men seeking to become "pickup artists" or "PUAs." These websites are clearly direct competitors with each other, offering very similar products to a literally identical target market: the "average frustrated chump," ("AFC"), the typical "nice guy" male who did not get good results with women, and who feels betrayed. He decides to do whatever he thinks will work with women, and turns to these "seduction gurus" for advice, either after reading *The Game* or seeing Neil Strauss on television, or after searching the internet with terms such as "how to get laid" or "how to get women" and so forth. The only problem is that what Neil Strauss called a "community," the courts usually refer to as a *cartel.*

15. These AFC males constitute the most fertile market for the seduction gurus, as they are "virgin" consumers who are desperate for results, ready to buy, and willing to spend up to $5,000.00 per day for individualized coaching from real-life men such as the one the movie *Hitch* was based on. These men are known as "whales" and provide the greatest revenue, but they sit atop a pyramid that includes less expensive products, such as $2,450.00 group "bootcamps" or "worskshops" that involved going out "into the field" (nightlife) for lessons and critiquing of their practice with women. Moving down the pyramid, you have $1,000.00 seminars such as those run by Defendant Ross, $300.00 DVD courses, and e-books which usually retail for around $40.00.

16. By comparison to the other gurus, Plaintiff's work is a bargain: his first four seduction e-books (*Outfoxing The Foxes, 29 Reasons Not To Be A Nice Guy, Perfect Seduction,* and *Why Hotties Choose Losers)* are all available absolutely free on Plaintiff's website. His current book, *Seduction Made Easy,* costs $19.95 for purchase, but includes lifetime free updates to the book for that price, and the book can be had for free if a customer purchases any of two dozen competing products from Plaintiff's site (Plaintiff receives a sales commission averaging 50 percent on affiliated products, sufficient to offer his own work in tandem for free).

5

17.    The contrast in Plaintiff's business model with that of the "seduction cartel"
members cannot be overstated. His business model is futuristic in that it relies on a much larger
internet audience – one that is still being built – to justify its existence. At $19.95 per reader,
Plaintiff could retire with 50,000 paying customers. The "pure internet" audience is currently
insufficient to yield that type of customer base without incurring substantial marketing costs.
Defendant LTSC, for example, had approximately 8,000 users during the beginning of the time in
controversy, and due to mainstream publicity, it now claims 20,000 users on its message boards.

18.    The difference between Plaintiff's "buy the author" model and the seduction cartel is
that Plaintiff has chosen to take the "long road" to internet success, relying primarily on the growth
of the medium, while the Cartel, led by Defendants Ross/Straightforward and
LTSC/Formhandle/TokyoPUA, relies instead on anticompetitive behavior (excluding 95 percent of
the advertiser pool), hard-selling its high-priced products to a limited audience, defaming its
competition while agreeing to a "hands off" policy for itself,  and enlisting the aid of rank-and-file
"seduction community" members to do their dirtywork, either for direct compensation (money, free
product), or, sadly, for the simple feeling of belonging with the "cool guys," since many of these
men were outcasts for their entire lives before finding the cartel.

## History of The Seduction Cartel

19.    The seduction cartel has its roots in Defendants Ross and Straightforward managing
to secure their own USENET group, called *alt.seduction.fast* ("ASF").

20.    USENET is unlike any other internet message board system, because it is a
decentralized compilation of ISP-based "news servers" that store messages for each USENET group.
USENET groups are viewed by millions of internet users (according to various sources), while ASF
has a substantial readership, and dozens of regular posters as well as a steady flow of transients. The
ratio of "lurkers" who do not post messages to those who do is thought to be substantial, and that

6

ASF's actual readership is in the thousands if not tens of thousands. This audience is expanding, due primarily to a) Google's archiving of the group and b) presenting it on its web-based news server ("Google Groups").

21. Google is so dominant in the internet search market that it has become a verb (to "Google" someone is to use Google to research them), and according to a recent CNET article, now holds 42.3 percent of the domestic search market. [1] Google users who search for seduction advice will have the option of viewing search results not just from the web, but also from USENET, including ASF. Many of Google's USENET readers do not even know what USENET is, thanks to the "Google Groups" interface. USENET readers, by contrast, are well aware of Google and its USENET archive, and rely upon it regularly. Existing subscribers to other USENET groups will use Google Groups to augment their research into seduction information (and products).

22. The ASF USENET group was created in 1994, primarily as a means of resolving a conflict between Defendants Ross/Straightforward and regulars in two other USENET groups, alt.romance and soc.singles. Those groups have a long history on USENET and, like most of the alt.* groups on USENET, have strict policies against SPAM. Defendant Ross at the time was very computer savvy (it is not easy to get a USENET group created and fully distributed), and rather than "SPAM" the group with direct promotions, he would have his students "discuss" his work to the point that alt.romance and soc.singles were beginning to resemble infomercials. Once ASF was created, Ross moved to that group, and since the internet audience was generally small, he was allowed to treat the group pretty much as his own, with little or no protest from others.

23. In 1996, the internet changed drastically, when AOL replaced its $2.95-an-hour access fee with a $19.95/month unlimited subscription rate, and when AOL began, around that time, providing access to USENET. Suddenly, the general internet population flooded onto USENET,

---

[1] Source: http://news.com.com/Googles+market+gap+widens/2100-1030_3-6054990.html

including ASF. By mid-1998, ASF had become more than just a "Speed Seduction" group, and the seeds of what would become the "seduction community" were born.

24. In late 1998, Plaintiff released his first book, *Outfoxing The Foxes,* which sold for $29.95. Plaintiff had begun his own research into seduction in 1991, when he designed a mathematical formula for calculating "sexual market value" and compatibility called CUPID.[2] In 1997, he had released a database software based on CUPID, but in 1998, published the CUPID formula as the first four chapters of *Foxes*, devoting the remainder of the book to explaining how to use CUPID as part of an overall "Foxhunting" strategy. Plaintiff's "Foxhunting" method and the *Foxes* book were in direct competition with Defendants Ross/Straightforward's Speed-Seduction products, which cost substantially more than Plaintiff's.

25. Almost immediately after publication, *Foxes* began making steady sales, an average of five to ten books per week. The inexpensive price was siphoning ASF market share from Defendants Ross/Straightforward, because readers of *Foxes* who were able to solve their love life problems had no further need for expensive products like Speed Seduction. Defendant Ross did not take kindly to this new competition, and almost immediately began acting out against Plaintiff, while enlisting several of his estimated 40,000 fans to follow suit.

26. Examples of this "acting out" have been detailed in previous lawsuits, the most recent of which being Parker v. LTSC (II), where the court in that case deemed the complaint too "voluminous." In the interest of brevity, Plaintiff will provide brief "highlights" of what he had to endure from 1998-2001 on ASF, from both Defendant Ross and his followers acting upon his wishes:

---

[2] The CUPID system assigns a score for an individual's "looks," "brains," "status" and "personality" based on how much each gender values those traits in the other gender. For example, "looks" is worth 80 percent of a woman's score, but only 55 percent of a man's, based on societal norms. The other half of CUPID is a "partner rating" system which replaces the societal norms with that partner's specific preferences: e.g., a golddigger would value a man's money at 80 percent rather than the norm of 20 percent, etc.

a.      Repeated defamation, including claims that Plaintiff was a plagiarist, a "fraud," had invaded the privacy of his customers (to deflect criticism against Defendant Ross, who had actually done this), and the posting of a pages-long "rap sheet" alleging Plaintiff had a long criminal record from someone calling himself "PhillyCop8."

b.      Near-perpetual attacks on his family (with whom Plaintiff has lived off and on for many years), including referring to his mother as a prostitute, who drank during her pregnancy.

c.      A claim from "Mystery" (the seduction guru highlighted in *The Game* and for whom LTSC is now an affiliate) that Plaintiff's books had been "scanned and put up on the web," thus inducing or promoting piracy of Plaintiff's works.

d.      Repeated threats against Plaintiff, often involving the threatened use of alleged "government connections" by Defendant Ross (who claims to have influence over a "Mr. B" from the Justice Department), and a business associate of his, Michael Lee Emery ("Bishop"), who also claimed to have "connections deep within the government" and explicitly threatened Plaintiff with their use. Mr. Emery was later convicted of breaking and entering the home of his ex-girlfriend, Renee Ross. Ms. Ross received a subpoena from AOL in Parker v. Wintermute (E.D.Pa. #02-cv-7215), admitted that Mr. Emery was using her AOL account, and settled all claims against Plaintiff in that action for $500.00 and an affidavit supporting her claim of not being involved.

e.      Direct threats against Plaintiff's life by "loose cannon" operatives working under the direction of Defendant Ross, or alternatively, who were acting upon his wishes.

## The Current Seduction Cartel: October 2001-Present ("ASF FAQ" and "mASF info")

27.     In 1999, AltaVista, who published a USENET archive, removed it from the web, making it impossible to search past postings on USENET. This archive was purchased by Google and returned to the web in 2000. While it was down, however, Defendant Formhandle took it upon himself in 1999 to archive ASF postings and make that archive available to readers of ASF. He also

9

formed LTSC around that time. A version of the "ASF FAQ" from that era referred to LTSC as a "noncommercial website," and save for a few links to Amazon.com, it was.

28.    When Google returned the USENET archive to the web, as Google Groups, LTSC's main attraction to users was diminished, and the LTSC website began including articles on seduction, and the PAIR system for enabling like-minded males from ASF to meet offline and pick up women in tandem. LTSC also began hosting a copy of *The Layguide,* a compilation of ASF postings by Anton Klink, that was later turned into a book by the same name, by HarperCollins. LTSC remained primarily a site with content, an ASF archive, and PAIR until late 2001.

29.    The Seduction Cartel as we know it, however, began its operations on October 28, 2001, when, in collusion and conspiracy with Defendants Ross/Straightforward Defendants Formhandle/LTSC/TokyoPUA began promoting a "moderated" (and commercial) message board system based on ASF's topic and hierarchy. They called this message board system "moderated ASF" ("mASF"). Unlike other web-based message boards, mASF was available not just as a web-based message board, but through a web-based NNTP server designed to make the groups appear like a regular USENET group. Unlike regular USENET groups, however, users of mASF must first register with LTSC in order to gain access, rather than having it provided through their own ISP's news server. Also unlike the regular USENET, LTSC users must give LTSC a nonexclusive right to publish their posts in perpetuity.

30.    From the moment the mASF message boards were initially marketed on October 28, 2001, Defendants Ross and Formhandle (inclusive of the other defendants) conspired and colluded to market mASF as a "ray free alternative" to ASF. A strategy was designed whereby anytime Plaintiff posted a message to ASF, he would be attacked, defamed, threatened, and otherwise harassed. Not only did Defendants Ross and Formhandle have full knowledge of what was happening to Plaintiff, they openly encouraged it and would themselves mock Plaintiff anytime he

10

complained. Often they would engage in defamation or threats themselves, but for the most part,

they left that to their "fans," in order to deflect liability and spread Plaintiff thin while making it

impractical if not impossible to prosecute.

31.    While reviewing the USENET archives for October 28, 2001, Plaintiff uncovered a

message praising both his work and the relatively low cost. On ASF, a user named "Razor Roberts"

posted the following message concerning Plaintiff's work, while noting the exorbitant prices of the

Speed Seduction products:

> Hey, I've gone though several e-books on the subject and have been impressed little. ***The
> only ebook I found so far to be useful was "Ray's 29 Reasons*** for Beeing the Jerk Women
> Want." I know Ray gets a lot of flack on this board, but the first 8 or so chapters of that
> ebook are really useful, though. I wonder at times if being such a blatant misogynist hurts
> his game. ***I can't really afford to go to one of Ross's seminars,*** or get his homestudy
> course, for that matter.

32.    Accompanying the creation of the mASF message boards was the publication of a

new "ASF FAQ" document that effectively "carved up" ASF among several commercial interests,

including the defendants in this action. The purpose of mASF was to provide a base of operations

for the Seduction Cartel, and through publication of an apparently neutral "FAQ" document, to serve

as the propaganda arm for Speed Seduction, by promoting it in this "FAQ," which stated, in relevant

part (with emphasis added):

> *** **READ THE MATERIALS BEFORE POSTING (SEE BELOW)** ***
>
> Do this group (and yourself) a favor and read the FAQ before asking newbie
> questions. Do the group an even bigger favor and lurk here for at least a few days
> before making your first post. We all know this group is the greatest gift to man, but
> we don't need to hear it 3 times a day and we don't want to hear things like "Hey, I
> want to try this out... what do you guys think?" Just go out and DO IT (after reading
> up on the materials) then report back here as to the results. If you want to post a
> question, check the FAQ first to make sure it isn't already answered there.
>
> After you're done reading the FAQ, here are some other resources:
>
> ***Main group-related sites:***
> http://www.fastseduction.com/ (Formhandle's site)

11

http://www.pickupguide.com/ (Maniac's site)[3]
http://www.speed-seduction.com/ (Ross' site)

Ross' newsletters:
http://www.speed-seduction.com/news.htm

Most commonly recommended books/movies on ASF:
http://www.fastseduction.com/books.shtml

Master kill-filter (aka killfile or kill-file) list for ASF:
http://www.fastseduction.com/filters.shtml

Access to moderated ASF groups:
http://www.fastseduction.com/discussion/

***And don't forget: USE THE KILL-FILTER LIST!!!!***

33.    The "killfilter list" referenced in paragraph 32 above contained detailed instructions

on how to filter out Plaintiff's postings to ASF, with the imputation that he should be ostracized and

ignored, and a strong encouragement not to do business with Plaintiff, under the false pretext of the

"ASF FAQ." A normal USENET group "FAQ" is supposed to set protocol for that USENET group.

Here, the Seduction Cartel has chosen to use this noncommercial device (most FAQs actually

prohibit commercial promotion altogether or require it to be labeled as such) to assert a formal

authority in the group, since USENET group FAQs are often used by ISPs as the basis for

terminating or suspending accounts for TOS (Terms of Service) or AUP (Acceptable Use Policy)

violations.

34.    Since or shortly after the inception of mASF, Defendant LTSC became an "affiliate"

of Speed Seduction products, and links to the Speed Seduction website were tracked with a referral

code. This was a pecuniary exchange involving Defendant Ross/Straightforward giving LTSC

"permission" to market its website through the ASF group on USENET, giving LTSC the pecuniary

benefit of being able to claim, through its "ASF FAQ," that it had the authority to declare mASF a

"replacement for ASF," as it would be referred to in later versions of the "ASF FAQ."

---

[3] http://www.pickupguide.com is part of the LTSC website structure and published by LTSC.

35.  In addition to the "ASF FAQ" document that is posted on a weekly basis to ASF,

Defendant Formhandle also causes an automatic message to be posted entitled "mASF (aka

"Moderated ASF") Forum Info & Access." This post was not an alleged FAQ, but carries a similar

tone.  Like the FAQ, the purpose of the posting is an attempt to legitimize Defendant Formhandle's

SPAM of his website to the ASF group.

36.  The "moderated ASF info" posting began appearing around the same time as the

"ASF FAQ" document.  Plaintiff found an archived message on Google from December 20, 2001

(previous posts were alluded to but not archived).  That post[4] was roughly similar to the one which is

currently posted by Defendant Formhandle, and states, in relevant part (emphasis added):

> [this message is posted to alt.seduction.fast on a *daily* basis]
>
> Welcome to alt.seduction.fast (ASF). ASF is a public USENet newsgroup and, as such, is essentially an unmoderated discussion forum within a communication anarchy.  In many ways, this is good.  However, this leads to a problem with what the USENet community refers to as "trolls", "flame wars", *"newsloons",* "off-topic" posts, "cross" posts, "spam", and a mess of other annoying disturbances which disrupt the topic of discussion. There is a moderated *evolution to this group*, which is available through:
>
> http://www.fastseduction.com/discussion/
>
> *You can subscribe to that news server just like any other news server.*
>
> *Your username/password is required to access the newsgroup interface*
>
> The groups available on that server are:
>
>   alt.seduction.fast.general *(replacement for ASF)*
>   alt.seduction.fast.tactics-techniques
>   alt.seduction.fast.fieldreports
>   alt.seduction.fast.advanced (primarily for PUAs)
>
> --
> jay <formhan...@fastseduction.com>
>
> Fast Seduction 101 - http://www.fastseduction.com/
> Class is now in session...

---

[4] Message ID: <fh.1008878400_3c2fd4631c9a5e60483828f@discussion.fastseduction.com>

13

37. The "FAQ" and "moderated forum" postings are the staple of the seduction cartel's operations, and set the stage for virtually all the actionable conduct cited in this Complaint. Defendants Formhandle/LTSC and Ross created a mutually beneficial partnership designed to give themselves an exclusive "right to SPAM" the "mASF" boards to USENET's ASF (the real ASF). Going a step further, Defendants Ross and LTSC also made sure to declare to ASF, on a regular basis, themselves and through third parties, that Plaintiff had "destroyed" the ASF group, and that the mASF message boards were the "solution" to what they referred to as ASF's "problem child." To the extent that Plaintiff caused any "problems" for an illegal cartel, he considers that a compliment.

38. While Defendants Ross and Formhandle were building the structure of the seduction cartel, they were simultaneously enlisting the aid of Defendant Ross's "fans" and a coalition of other internet users who disliked Plaintiff in an attempt to create a "Black PR" campaign against Plaintiff.[5] This campaign involved the use of several operatives – some anonymous, some pseudonymous, and some who use their real names – whose (often sole) purpose for posting to ASF was to further the Black PR. The operatives, who continue to "operate" to this day, number in the dozens if not over a hundred since 2001, each with a specific role, and collectively with the purpose of dividing the "dirtywork" among so many individuals that it appears that no single operative is crossing the line, and to give the appearance of general agreement among "the group." The operatives also enable the principals of the seduction cartel to take the high road, as they travel upon the low road built by the principals.

### Specific Antitrust Behavior By Defendants LTSC/Ross

39. Defendant LTSC is not bashful about its role in the "seduction community." The www.fastseduction.com website has ***trademarked*** itself as "the center of the seduction universe."

---

[5] "Black PR" is a term popularized by the Church of Scientology, and refers to an all-out attempt to destroy an individual's reputation.

During most of the relevant times in this action, indeed it was, thanks in large part to the conduct on USENET set forth herein. Internet business analysts speak of the rule called *first in wins*, where whoever carves out a market niche before their competitors reaps most of the revenue from that industry. This has been true for many internet companies, and LTSC is no exception. Unlike those other internet companies, however, LTSC got its "head start" through its commandeering of ASF in collusion with Defendants Ross/Straightforward, who used LTSC as a means of maintaining control over the ASF audience, as that was no longer possible in 2001, due to the influx of a much wider audience than the original Speed Seduction followers who populated the group when USENET was a mere backwater of the internet in 1994.

40. Defendant LTSC did not take many sponsors at first. At the direction of Defendant Ross, and in return for Defendant Ross's permission to promote mASF on USENET (as long as the Speed Seduction website was listed in the "FAQ" as a "main, group-related site), LTSC's first "sponsor" other than the Amazon book links was Speed Seduction, to whom all referrals from LTSC were tracked. "Tracking" hyperlinks are advertising-specific in that they measure exactly how many leads a referral source produces, and the ultimate value of those leads by the revenue they generate. Defendant LTSC's links contained tracking information that identified it as a Speed Seduction Affiliate.

41. In 2002, the seduction cartel began expanding as LTSC began accepting more advertisers. Unlike most publications that adhere to antitrust laws, LTSC does not have a rate card, and only accepts advertising from select sources. As its site grew, LTSC gained more power and influence than Ross and Straightforward due to its appearance of neutrality, but the Speed Seduction website being listed on the USENET group, and likely a reduced or nonexistent compensation for the affiliate links on the LTSC website were sufficient compensation for the partnership with LTSC,

15

who either claimed or was given the freedom to expand the cartel, while the cartel still benefited

Defendants Straightforward/Ross substantially.

42.    Since its inception, LTSC has maintained a policy whereby any mention of

Plaintiff's name or his products on its message boards is verboten, and grounds for banning any user

who violates the rule. Plaintiff, his company, and his products are also listed repeatedly in the "ASF

killfilter list" that is referenced in the "ASF FAQ" posting.

43.    Since 2002, LTSC has added several advertisers who produce seduction products

that include e-books, CD/DVD courses, workshops, seminars, and one-on-one "bootcamps." The

first addition known to Plaintiff was the *Double Your Dating* e-book sold by Eben Pagan, who also

offers seminars and DVD products. After that (around 2003) came several other products, including

an e-book called *High Status Male,* and another called *David Shade's Manual.* These books are

targeted at the same audience as Plaintiff's, and purport to teach the same skills (seduction).

44.    In 2004, the "seduction community" began getting mainstream media coverage, most

notably in the form of a *New York Times* article by Neil Strauss which was a precursor to the game,

and which popularized the individualized instruction provided by Erik von Markovic, a/k/a

"Mystery" (upon whom the movie *Hitch* was partially based). This created a substantial new market

for expensive workshops and seminars, as well as an increase in the market for e-books and DVDS.

LTSC began accepting more affiliate programs at this point, including the "Real Social Dynamics"

workshops (Mystery's original company), Mystery's workshops and seminars (the "Mystery

Method"), and later his $58.00 e-book and $300.00 DVD set entitled *The Venusian Arts*. Other new

sponsors include *Dynamic Sex Life* (by "Gunwitch"), *Seduction Science* (an e-book), *Real World

Seduction* ("Juggler's e-book"), *The Approach* (a workshop run by "Woodhaven and Dimitri," two

Massachusetts-based friends of Defendant Formhandle). Once *The Game* was published, LTSC

began marketing that book as well, through its Amazon links.

45. The affiliate revenue is substantial: Mystery pays his affiliates $275.00 for each workshop/bootcamp referral, while e-books such as *Dynamic Sex Life* net LTSC approximately 50 percent of that book's purchase price.($50.00). The typical affiliate revenue for e-books is 50 percent, and for seminars and workshops, 10-20 percent, while DVD products are variable but pay at least as much as the workshops. Its large audience, rare among similar internet sites of this time period, enabled LTSC to become a virtual cash machine.

46. Defendant LTSC admits on its own site that "advertisements are accepted/rejected at our discretion."[6] Regarding its affiliate programs, it states: "Fast Seduction 101 engages in affiliate programs with vendors of qualified products." [7]

47. As even rudimentary discovery would confirm, Defendants LTSC/Formhandle have become kingmakers among the seduction gurus, and have routinely abused that power by leveraging its exclusionary and anticompetitive advertising policies. Several of its sponsors began with the "gurus" gaining a following through the LTSC message boards. Sponsors of LTSC were not and are not permitted to speak highly of Plaintiff, and are routinely encouraged not to mention him at all, on LTSC's message boards, or anywhere else on the internet. Anyone who breaks rank on this policy would risk being blackballed and cut off from communication with LTSC's purported membership of 20,000 users.

48. LTSC, as the "center of the seduction universe," is abusing its market position in order to artificially inflate the prices of its sponsors' products and to restrain the trade of advertisers who have "qualified products" but who are banned from advertising on the site, even if they paid the normal rates. This is done for the benefit of LTSC and all of its sponsors, including Defendants Ross and Straightforward. Plaintiff is one such advertiser whose trade has been restrained, but he is

[6] Source: http://www.fastseduction.com/advertise.shtml
[7] Source: http://www.fastseduction.com/adproducts.shtml#ad2

17

by no means the only one. Absent discovery, the full breadth of this abuse of power cannot be known.

## The Seduction Mafia (RICO Enterprise)

49.   Parker v. LTSC (II) alleged an association-in-fact RICO enterprise called the "Seduction Mafia," whose purpose was, through a pattern of racketeering activity, to act as enforcers for the seduction cartel. That case named defendants Ross, LTSC and Formhandle, as well as three other defendants, including Thom E. Geiger, owner of the domain http://www.ray-gordon.com, at which a "hate website" targeted at Plaintiff called *The OFFICIAL Ray Gordon FAQ: A Document About Gordon Roy Parker* ("the RayFAQ") was published. Defendant Geiger was ruled not to be subject to the Pennsylvania jurisdiction, and has not been named here due to his allegedly noncommercial involvement.

50.   The RayFAQ site contained numerous malicious lies concerning Plaintiff, including but not limited to claims that a) "law enforcement is well aware of [Plaintiff] and thinks he is mentally unstable," b) that Plaintiff was an imminent danger to himself and others and in need of involuntary commitment, and c) that he has plagiarized the work of others.   Additionally, the site encouraged users to contact anyone and everyone in Philadelphia concerning Plaintiff, including all levels of law enforcement, state and local prosecutors, mental health agencies, the University of Pennsylvania (whom Plaintiff sued for employment discrimination), and a dozen or more media outlets, with full contact information listed. The site also encouraged third parties to link to the RayFAQ site, and one third party in particular would link to the RayFAQ while also linking to the "mASF" message boards on LTSC's website.

51.   The Seduction Mafia in general, and the RayFAQ site in particular, were published in retaliation for Plaintiff being in competition with the defendants in this case, and also in retaliation for Plaintiff having made numerous reports to law enforcement in the past, including in response to

18

threats made against him by Geiger dating back to 1998 in the USENET group alt.sports.gymnastics. Mr. Geiger has had an "axe to grind" against Plaintiff ever since Plaintiff exposed child abuse in gymnastics, and was recruited specifically to use his domain to publish the RayFAQ, while claiming anonymous, third-party authorship of the site. Discovery, however, revealed that Mr. Geiger was the only billing and administrative contact for the domain, and he never supplied the name of any alleged third-party publisher.

52.    The conduct of the Seduction Mafia was undertaken in furtherance of the seduction cartel alleged here, at the express and implied direction of Defendants Ross and Formhandle, for the pecuniary benefit of all defendants, including but not limited to following the general instructions in the "ASF FAQ" (published by LTSC/Formhandle/TokyoPUA), and the many specific instructions from Defendant Ross to ostracize and act out against Plaintiff. In both cases, Defendants Ross and Formhandle, acting on behalf of the other defendants through their respective corporations, have declared ASF as their personal "marketing turf" and enlisted the support of their followers (operatives) to commit predicate acts against Plaintiff, often anonymously.

53.    In several specific cases, the preponderance of evidence that can be obtained without the benefit of full discovery leads Plaintiff to aver, upon that information and belief, that Defendants Ross and Formhandle, acting for themselves and their corporations, conspired and colluded among themselves to enlist numerous third parties to carry out their wishes, while in other cases, they aided and abetted the commission of predicate RICO acts. Plaintiff further avers that full discovery would uncover a "money trail" (or other pecuniary reward trail) which reflects a true *quid pro quo* between the defendants and the "operatives" who were directed to appear to be acting as disconnected individuals, but who in reality were deriving profits from the seduction cartel.

54.    **Relevant acts by Defendants Ross/Straightforward.** Relevant acts by Defendant Ross (acting for himself and Defendant Straightforward) include the following:

19

a.    As far back as December 12, 2002, Defendant Ross, who was named as a John

Doe defendant in <u>Parker v. Wintermute</u>, was aiding and abetting the Seduction Mafia by publicly

threatening Plaintiff in response to a subpoena to AOL for his identity, as well as promoting his

website in the same posting.  The posting states, in relevant part:

> I received notice from AOL that Mr. Parker is seeking my information from
> them(I received a copy of a very sloppy subpoena duces tecum).....Should I
> indeed be named and served in a suit I will immediately cross-claim against Mr.
> Parker-although he likely has few monetary assets, *we will seek as compensation*
> *all of his copyrights, computer equipment, etc.* As well, since I have seen some
> of the alleged "offending posts" contain my allegations that Mr. Parker is
> .....mentally imbalanced, we will seek a court-ordered psychiatric examination of
> Mr. Parker, to prove the truth of these assertions.....I would strongly suggest that
> Mr. Parker pick a less resourceful and powerful target.
>
> Get Laid NOW!
> Ask me how!
> Free Get Laid/Persuasion Newsletter
> www.seduction.com

b.    Posting a message to ASF and giving clear legal advice and instruction to

readers of ASF, despite his not being an attorney.  Specifically, he stated the following:

> "*If you are sued by Ray,* IMMEDIATELY after filing your answer, begin
> propounding discovery, first and foremost requesting any and all documents
> supporting his assertions that his business has been damaged.  Enjoy the show as
> he squirms and avoids and gets hit with sanctions and fines by the court.  Move
> for a psychiatric examination IMMEDIATELY.  Watch him squirm."
> (03/24/2004).[8] (Emphasis Added).

c.    A day later, Defendant Ross posted the following, to ASF (Emphasis Added):

> "Ray...where do you get the time during the day to make these zillions of
> posts? TAKE YOUR MEDS!...*Sue RAY NOW! Ask me how!* PUT AN END TO
> HARASSMENT AND ABUSE OF PROCESS!" (03/25/2004).[9]

d.    On July 27, 2005, Defendant Ross responded to an anonymous posting by

"Editorial Staff," the alleged publisher of the RayFAQ.  The "Staff" had published a forged e-mail

---

[8] **Message ID:** <20040324102448.07304.00000017@mb-m18.aol.com>. This message was posted to ASF, from
Defendant Ross's "ErosLA77@aol.com" account.  This account was revealed by AOL to belong to Defendant Ross in
discovery in <u>Parker v. Wintermute</u>.  The title of the message, which was not posted in response to anything, was
"Defeating Ray's Lawsuit."

[9] **Message ID:** < 0040325111427.03590.00000079@mb-m01.aol.com>  The "sue ray now" signature was used in many
posts by Defendant Ross and is a play on his marketing for Speed Seduction: "get laid now; ask me how."

which alleged that Plaintiff had harassed a nonexistent woman named "Jeri Ryan," and threatened

Plaintiff with "paying him a visit." Defendant Ross quoted this mail in its entirety and stated the

following in addition:

> I swear to Jeri; if Mr. Parker DOES sue me, he will be reading this piece of sick,
> twisted, hateful *email that he sent*, into the record when I take his deposition.
> *Ray, you are sick, twisted, evil bastard* and I am going to clean your clock in
> court." (07/27/2005).[10] (emphasis added).

    e.   On August 17, 2005, Defendant Ross commented on Parker v. LTSC (II):

> Now, let's assume, for a country second, Raytard actually manages to get
> defendants served, cost free, by some magic. *How is he going to conduct
> depositions without paying for a court reporter?* (Emphasis Added).[11]

    f.   On March 28, 2006, Defendant Ross posted a message to ASF where he

attempts to intimidate Plaintiff into not refiling this case in Delaware, despite him being the one who

moved for dismissal based on lack of jurisdiction. He made the following statements in response to

a posting by another ASF user who claimed that Plaintiff could not refile due to being time-barred:

> I would think that knowingly refiling a case that is time-barred would certainly
> subject the moving party to serious sanctions, perhaps even deliberate attempt to
> defraud the court could result in criminal investigation and penalties as well.[12]

    55.  **Relevant acts by Defendants Formhandle/ToykoPUA/LTSC.** For the most part,

Defendant Formhandle has relied on others, including Defendant Ross and the other operatives, to

"do his dirtywork" for him. He has, however, committed several relevant acts of his own, which

were made on behalf of LTSC and in conspiracy and collusion with Defendant ToykoPUA:

    a.   Defendant Formhandle is the creator of the "mASF" message boards, and the

individual who has been promoting the boards on behalf of Defendant LTSC, including but not

limited to the "ASF FAQ" and "moderated forum info" postings. This began on October 28, 2001,

and continues to the present. This promotion includes referring to the "mASF" boards as a

---

[10] **Message ID:** <BF0C7208.15265%notmyemail@address.com>.  A copy of the posting is included in Exhibit A,
which is Plaintiff's abuse report to Comcast made the day of the posting.
[11] **Message ID:** <BF355526.165C8%notmyemail@address.com>.
[12] **Message ID:** <C04ED255.1F14C%notmyemail@address.com>

"replacement for ASF" in the context of a "group FAQ" that most internet users consider formal

policy for a USENET group.

      b.    Once the LTSC message board were running, Defendant Formhandle

repeatedly referred to Plaintiff in derogatory terms while using his site's exclusion of Plaintiff as its

primary marketing tool. He referred to Plaintiff as "his bitch"[13] and as a "newsloon" or "problem

child" that was disrupting the USENET group, this despite most of the "off topic noise" in the group

being created by Defendant Ross and his followers.

      c.    On April 23, 2002, someone posted a message to the LTSC message boards

asking about Plaintiff's *Outfoxing The Foxes* book. Defendant Formhandle responded with the

following:

> *"The guy that wrote that shit was and remains an endless troll to the public*
> *ASF newsgroup. His demented bipolar disorder garbage posts, threats of*
> *lawsuits, misogyny, and general degenerative psychotic paranoia stank up the*
> *newsgroup so badly for so long that it lead to the formation of the mASF forum*
> *on this server.* He's still posting his shit to public ASF because, well, he is
> completely banned from posting on this forum. Which is one of the primarily
> reasons the discussions are flourishing here while the original public ASF turns
> into a cesspool of off-topic useless feces. Oh, and his books are shit.[14]

      d.    On April 27, 2004, Defendant Formhandle enlisted the aid of the ASF

readership, including various Seduction Mafia operatives, to "dig up dirt" on Plaintiff.

> "I'm a bit swamped right now but would appreciate someone or a few people
> to take the time to dig up specific pasts posts of Gordon Roy Parker (aka Ray
> Gordon) where he publicly admits to having bipolar/bi-polar disorder (suffers
> from manic depression). Yes, it's related to the case."[15]

      e.    On April 30, 2004, Defendant Formhandle posted to ASF, a comparison of

Defendant Ross's products, and Plaintiff's products, while neglecting to mention his business

affiliation with Defendant Ross:

---

[13] **Message ID:** <3BF268E9.2A8C3A3C@aol.com>. November 24, 2001.
[14] **Message ID:** <17765.2657@discussion.fastseduction.com>.
[15] **Message ID:** <408F00B9.7A65F012@fastseduction.com>.

> "Ray, Ross' products rival yours the way chocolate mousse in a crystal serving bowl rivals a shit stain on the heel of a shoe. And THAT is my OPINION." (04/30/2004)

    f.    On February 20, 2006, Defendant Formhandle posted, to the LTSC message boards, a message in which he stated a desire to implement "common pricing" in the seduction industry:

> I will gladly accept definitions of validating what is to be expected & "industry standard" and host such on FS. This would include *common pricing for any product or service,* based on not just perceived value but actual value, and numerous points to define that value. This would allow ANYONE with an interest in ANY PU-related product to have a reference point for relating value in offerings in this industry.[16]

    g.    On May 27, 2004, Defendant Formhandle threatened Plaintiff with bogus criminal prosecution even for quoting messages from the LTSC message boards, despite courts already having ruled that accessing a publicly available board is not trespass, and despite having an attorney at the time who could have advised him of this:

> "If he does quote or provide some sort of reference, and it's a forum for which he's been told he's been told he's not allowed any form of access, and confirmed receipt of such a statement, *he will be admitting to electronic trespass over state lines.*" (05/27/2004).[17]

    h.    On June 2, 2004, Defendant Formhandle encouraged readers of ASF to interfere with Plaintiff's affiliate advertising agreements, by posting the following statements:

> "[Plaintiff's] affiliates probably have some form of affiliate agreement. Or, at the very least, they would probably be interested to know the type of person/business promoting their products...*if any of them were to get numerous e-mails from people in regards to an affiliate, they may decide having that person as an affiliate might not be such a good idea.*"[18]

    i.    On August 25, 2004, Defendant Formhandle made the following statements to ASF after Plaintiff questioned the "altruistic" nature of LTSC and the other seduction "gurus," inquiring about their income, since income is relevant to how easily a man can attract women:

---

[16] **Source:** http://fastseduction.com/masf/114/297531/
[17] **Message ID:** <XbOdnSqsFKVHySvdRVn-hg@giganews.com>.
[18] **Message ID:** <3eidne54aesxQyDdRVn-uA@giganews.com>.

"LTSC's income is disclosed regularly -- to its accountant and to the IRS. *Would you like the contact info of the IRS?..I can also inform them of your WTC comments, as well as the time you quoted a story here about a gun/violence-related incident in a PA court.* I'm not sure how they will connect all that information but I'm certain they will find it interesting."[19] (Emphasis Added).

j.      On November 19, 2004, Defendant Formhandle posted to ASF, the statement concerning Plaintiff, "You are not a [business] competitor.  You are, however, an annoying fuckwit and a poo-poo head."[20]

k.      On or around April 3, 2006, it was alleged on "Thundercat's Seduction Blog" that there exists a "private mASF" board for the "top community guys," including several members of the seduction cartel. [21]

56.   **Other relevant acts by unnamed co-conspirators.**  The Seduction Mafia operatives are numerous, as are their predicate/relevant acts.  Following is an extremely small sample of the overall conduct, kept small in the interest of concision pursuant to Rule 8(a):

a.      **Thom E. Geiger** was dismissed as a defendant from Parker v. LTSC (II).  His relevant acts included registration of the ray-gordon.com domain, publishing or causing to be published, the RayFAQ website, with each time he had the site put up on another server after it was taken down constituting a separate relevant act.

b.      **"Player88"** is a man believed to be James King, a member of Defendant Ross's "SS List" and a customer of Straightforward, who was acting in conspiracy with Defendant Ross. Player88 made a series of death threats against Plaintiff that were posted to USENET in October 2004.  The messages stopped when Player88 realized that his ISP was going to reveal his identity if he continued.  Following is a brief sample of his relevant statements:

---

[19] **Message ID:** <XZOdneXiBOoqkLDcRVn-qQ@giganews.com>.

[20] **Message ID:** <0p-dnSXlPIgR0gPcRVn-iw@giganews.com>.

[21] http://www.thundercatseductionlair.com is the location of the blog.  Defendant Formhandle posted a public denial that this board exists, but previously, Plaintiff had once downloaded newsgroups from the LTSC website that included a listing for a message board named "alt.seduction.fast.private" and which had thousands of messages.  Plaintiff also recently checked out the link http://www.fastseduction.com/private,and found a login prompt, further evidencing the existence of the private message board.

1. Asking (concerning Plaintiff): "I wonder if a person soaked in premium gasoline burns hotter and longer than a person soaked in regular." (10/03/2004).[22]

2. *I know exactly where you live. Knocked on your door tonight, even.* You didn't answer. I was dressed in a Grim Reaper outfit. (10/31/2004).[23]

3. 29 days before I become your "neighbor." And there's not a single solitary thing you can do about it. EXCEPT ... demonstrate convincingly that you renounce your views and beliefs regarding women deserving to be raped, beaten, abused, and murdered. If you choose not to do this, well, then ... as I said, I have rules regarding men who believe that women deserve to be raped and murdered....You've told others to wait until my internet access was yanked ...well, I'm still here. And I will godammed be here until the day I die or until *you* stop posting. (11/02/2004).[24]

4. I'll be moving into the Fairfax December 1. I believe that's 30 days away. That gives you 30 days to demonstrate convincingly that you have disavowed those statements before you have to deal with me personally. (11/02/2004).[25]

c. **"Editorial Staff"** is an anonymous poster to ASF whose identity cannot be

traced, and who claims to be the author of the RayFAQ. During the relevant times in this lawsuit,

this poster linked to the RayFAQ website hundreds of times.[26] Following are a few relevant postings

from this user:

1. If you think you are, open that faggoty little mouth of yours again, trying to threaten us, and we will see who runs and hides. *We'll even call the cops for you,*

---

[22] **Message ID:** <1096832391.O8fY1p/j2Mk8IzXpt5upmw@teranews >. The remainder of the message gives a horror-film like description of what Mr. King intended to do to Plaintiff, to torture and kill him.  reads as follows: "Probably hotter, but not longer. But first, I'd remove the person's teeth one at a time, but leave the nerve endings intact. Then I'd pour boiling coffee (decaf so the person wouldn't shake) over the gummy nerve endings, then I'd pour ice water over the sensitive nerves, causing intense contrasting pain (with enough relief to make the following pain feel that much worse.) Then I'd pull out the nerve endings one by one using microscopic tweezers. No anesthesia, of course. But I would paralyze the vocal cords so no screaming could take place. Just suffering ...I'd perform liposuction on the overweight person's body and then force them to eat French fries cooked in their own fat. Anything thrown up would be refed until it was digested. Then I'd give the person two paper cuts ... one on each eyeball. I'd administer an overdose of sleeping pills and modafinil so they'd want to fall asleep but couldn't. They'd feel their heartbeat slow down. Then I'd speed it up with Bronkaid (legally available ephedrine). Then I'd use hypnosis to intensify the pain in the same way that Darth Vader would torture Princess Leia in the NPR version of Star Wars. Then I'd soak their bodies in 37% salicylic acid until the skin begins to flake off like a leper. Then I'd read some Vogon poetry and blast them with the Shoe Intensifier Ray. Resistance is useless! Resistance is useless! Then I'd bathe them in 93 octane gasoline and then take a smoke break, but forgeting my lighter, I'd have to use flint and steel to make sparks to create a fire. *poof* The flaked skin will burn faster and hotter than unflaked skin."

[23] **Message ID:** <311020042338329395%name@host.ws>.

[24] **Message ID:** <021120040900101465%name@host.ws>.

[25] **Message ID:** <021120040059145128%name@host.ws>

[26] A Google search in June 2005 for "ray-gordon.com" and "Editorial Staff" for the group alt.seduction.fast returned *282 results*, indicating at least that many postings and separate links to the RayFAQ.

*and make sure that the ambulance is there to patch up your injuries."*
(08/01/2003).[27] (Emphasis Added).

2.  *if he's stupid enough to ever try to get us into court, we will then move for him to be Baker Acted and committed to a psychiatric institution for his own (and our) protection.* (10/30/03).[28] (Emphasis Added).

3.  Just wait. You're about to find out the cost of fooling with the wrong people. And the sweet part of it is, you won't even be able to see it coming. It will descend on you when you least expect it, from the most unlikely direction...Are you looking over your shoulder yet? Well, it won't do you any good. Hahahahahahahahahahahaha..." (08/11/03).[29]

4.  We received an interesting email a few days ago, from someone who was connected to Dr. Ryan, and with that person's permission, we post it here, so that everyone will know just what Mr. Parker is attempting to do here....<snip of forged e-mail> We wonder what could be done about this? We do know that an attorney representing the person in question has contacted law enforcement in Philadelphia, in an attempt to forestall this kind of behavior in the future. We wonder if it won't take more than that. *Perhaps someone actually paying a visit to Philadelphia to explain the consequences for actions like this, in person.* (07/26/2005).[30]

5.  We do not see that "suffering" is an option that Gordon Roy Parker is remotely capable of dealing with. The facts have shown in the past that he NEVER takes responsibility for his own actions, his own words, or anything else that he, himself, is responsible for creating. He will allow this ignominious defeat to fester in his diseased mind, and soon enough, will snap. At that point we will all see on CNN, or AP, or some other news source that there has been a mass killing in Philadelphia, because Gordon Roy Parker will want to take out as many people as is possible, in order to exact revenge. This action will give him a Godlike feeling of power, in that he will finally be able to pick and choose who will suffer at his hands, for all the wrongs HE has had to endure. (03/26/06).[31]

   d.  **"Thrasher Remailer"** is another anonymous user who posts a "SPAM"

message in response to as many of Plaintiff's ASF messages as possible. This operative's purpose is

to disrupt any ASF threads where Plaintiff posts messages, and promote LTSC as the solution to the

---

[27] **Message ID:** <fe06681414ceafad47a9138f2745219e@dizum.com>.

[28] **Message ID:** <ZP008M4A37924.4036226852@anonymous>. The TRO was denied not because of the merits, and not because this court recognized the site's right to exist, but rather because the TRO motion was filed ex-parte, and this court said that injunctive relief could be sought at a later time. Plaintiff later filed a DMCA notice against Geiger and had the site successfully removed. No orders of this court were disobeyed, no laws were broken, and no crimes were committed.

[29] **Message ID:** <c9d998ff062bf5f7b42ba4745c538120@dizum.com>.

[30] **Message ID:** <INF1GX5238560.4338078704@reece.net.au>. This message was quoted in its entirety by Defendant Ross, who added that he would have Plaintiff "read the e-mail he sent into the record."

[31] **Message ID:** <EXLRKS2V38803.0499652778@reece.net.au>. This message was also quoted by Defendant Ross in its entirety.

disruption. This was done in conspiracy with and with the full encouragement of Defendants Ross

and Formhandle. Following are this user's relevant postings:

1)   *New visitors to alt.seduction.fast are welcomed and directed to the main website
    http://www.fastseduction.com Most seduction discussion has been relocated to
    the forums on this website, which are also known as mASF.* These forums can be
    accessed through your news reader just like this newsgroup, or through a web
    interface. *The forums were created as an alternative to the large amount of
    spamming, misinformation, and offensive behavior by a high-volume poster
    known to unfotunately suffer disabling mental illness,* in the regular
    alt.seduction.fast newsgroup. As the forums require registration (which can be done
    through an anonymous email account), disruptive individuals are completely
    prevented from posting. This results in a much more useful and productive forum.
    Drop by and see for yourself.   For information on a particularly disruptive poster
    in the alt.seduction.fast newsgroup and his history of mental illness and harassing
    others, visit http://www.ray-gordon.com. (08/12/03, 11/21/2003 and 06/02/2005).[32]
    (emphasis added).

2)   Welcome CF! Please be aware that the vast majority of asf activity has moved to
    the forums on *our official website at http://www.fastseduction.com*  If you sign up
    for an anonymous account then you can access the forums right through your
    newsreader, just like here. Otherwise you'll have to use the web interface. You'll
    find many other resources on the site also.  (09/22/03).[33] (emphasis added).

e.    **"Vijay."** This internet user, a "fan" of Speed Seduction (and follower of

Defendant Ross, in conspiracy with Defendant Ross, threatened, on or around April 26, 2005, to kill

Plaintiff by shooting him, and repeatedly threatened around that time to ambush Plaintiff in his

home.

f.    **Osgaldor Storm,** a/k/a Don_Juan@nlp-nhs.org, who posted a series of

messages to ASF from April 1-25, 2005 whereby he counted down Plaintiff's "remaining days,"

referred to Plaintiff as a "terrorist," and made several repeated threats to murder Plaintiff.  These

threats were made in collusion and conspiracy with Defendant Ross.

g.    **Derek Trunk,** a/k/a "Odious," and **Alex Kaufmann,** a/k/a

"AKaufmann@nyc.rr.com, who have both posted hundreds of messages during the relevant times in

---

[32] **Message ID:** <c9d998ff062bf5f7b42ba4745c538120@dizum.com> and <NL477QS737946.9433796296@Gilgamesh-frog.org>, and <II9QKKQP38505.6344791667@anonymous.poster>, respectively.  A Google search performed on June 3, 2005 for the term "unfotunately" for the ASF newsgroup returned 562 nearly identical results, with all postings made anonymously.

[33] **Message ID:** <N6WGD5TL37886.5640277778@Gilgamesh-frog.org>.

this action promoting the LTSC website, supporting its mission to exclude Plaintiff, and disparaging Plaintiff's work whenever possible while attacking Plaintiff's mental state is deficient. Both of these users routinely provide links to the LTSC website when users have questions on ASF, and advise new ASF readers that Plaintiff has somehow "ruined" ASF. These messages were posted in collusion and conspiracy with Defendants Ross and Formhandle.

       h.    **Vincent Runza, Jr.** Mr. Runza, a convicted heroin trafficker,[34] and also a moderator in the "mASF chatroom," an #IRC channel that is directly linked to from the LTSC website, and from which LTSC has also instructed to bar Plaintiff and any mention of him or his products. Some of his relevant statements include the following:

    1)   Gee, I sure hope Ray doesn't think about KILLING HIMSELF BEFORE ***SOMEBODY DOES IT FOR HIM!*** Y'know, like my late friend Jack suggested? And I mean that in an unqualified, totally sincere way. (12/04/02) (Emphasis Original and added).

    2)   ***What I would really like to do is send a few bikers to your house to beat the living shit out of you,*** but I'm not going to do that. Instead, I'm gonna let you twist what I just said around to being a REAL threat. Hopefully, you'll jump in head first and make a wild claim of terroristic threats to law enforcement. That's when I'll spring my trap! (01/08/04)[35] (Emphasis added).

       i.    **Aardvark,** a/k/a Aardvark9084@insightbb.com, a self-admitted Speed Seducer and follower of Defendant Ross's, has been among the most active operatives in recent times. Following is a sampling of some of his more vitriolic statements (emphasis added), which were made at the direction of and in conspiracy with Defendants Ross and Formhandle/LTSC:

    1)   "***he has criminally tresspassed (a federal offense) into websites and forums....*** ray gordon or gordon roy parker or whatever he wants to call himself belongs in jail for his crimes. i told him that ***as a member of the media*** i would hold him accountable for his actions and call him on the carpet whenever he makes a statement." (07/24/04).[36] (Emphasis Added).

    2)   "i just want him to know that he's facing prison time, time away from usenet and instead his gross shell of a body in the clutches of equally evil men who won't

---

[34] USA v. Plummer et al., D.NJ, #00-M-7082 is the record of his conviction.

[35] The full posting is attached hereto as Exhibit H-3 and incorporated by reference as if fully stated verbatim herein.

[36] **Message ID:** <8nwMc.23088$8_6.6086@attbi_s04>.

put up with his games. men who look to stretch the anus of a punk like him."
(07/25/04).[37]

3) *[T]his was forwarded to all the email addresses provided in the original plea for help [the RayFAQ].* courts, sheriffs office, dist atty, etc. they all got it. my grandpa always said that if you sling enough shit, some of it's bound to stick somewhere. lets just see where some of this sticks, shall we? [Following is the alleged "letter" he sent]:

Gordon Roy Parker/4247 Locust Street, #806/Philadelphia, PA 19104/ (215) 386-7366

The above individual (AKA Ray Gordon) has publicly admitted to the crimes of "hijacking" a website and replacing the information with false information in an effort to have the site shut down. He has also been engaging in threatening Internet Service Providers into giving up information on their clients by falsely claiming, over the phone, to be a bar certified lawyer in an attempt to coerce said providers into bowing to his will. *Mr. Parker has also been caught reposting information to a usenet newsgroup(s) obtained from a website and message forum that Parker was forbidden from accessing due to his behavior. Even after being warned to cease and desist from such behavior, Parker kept "hacking into the site,* using alternative aliases to hide his identity.[38]

He has engaged in outright barratry and threats of lawsuits to silence his critics who only wish for Parker to refrain from illicit or discourteous behavior. He has libeled users of the usenet group with terms such as "hypno-rapist" and "mind rapist". Parker has wished death upon the children of his detractors. This individual is a danger to the public at large and a man admittedly enjoying what he perceives to be an "immunity" from punishment for his acts bragging about being such engaged in criminal activities on a regular basis. *It is my sincere hope that you would be able to assist with the apprehension and seclusion from decent society of Mr. Gordon Roy Parker, be it in a jail or perhaps a mental institution should it be deemed fitting if Parker is declared incompetent.*

4) "you ripped off [Plaintiff's first book] from ross jeffries." (08/27/04)[39]

5) "ray is a fugitive from justice who forgets that that will be very likely brought up at any of his future court jesterings." (03/08/05).[40]

6) "i wonder what kind of dirt the pennsylvania bar association has on ray or could have." (03/11/05).[41]

7) "isn't it illegal to falsely portray oneself as a lawyer?." (03/27/05).[42]

---

[37] **Message ID:** <ZqUMc.27641$eM2.1960@attbi_s51>
[38] This is a furtherance of LTSC's threat to prosecute Plaintiff for merely viewing its website.
[39] **Message ID:** <_4LXc.320029$a24.128714@attbi_s03>
[40] **Message ID:** <TtjXd.45782$r55.7075@attbi_s52>.
[41] **Message ID:** <p9iYd.118012$tI3.40457@attbi_s02>.
[42] **Message ID:** <D%F1e.9292$NW5.4368@attbi_s02>.

8)    "you need to be put away. a mental institution or jail *without the benefits of an internet connection* for you, will do just fine." (04/12/05).[43]

9)    "you are not fit to comment on anyone who is employed because you are 100% unemployable." (04/18/05).[44]

10)   hey fathead...over here, dummy. guess what really angers \*real\* mafia types? jerks like you, gumby. you know, the kind of schmucks that casually throw around terms like "mafia" and "rico" and say that they are going to use the heavy hand of government to push people around. you best thank your lucky stars that none of them read this newsgroup (not yet at least) since your home address is on all of usenet to read, you bent head buffoon. (06/13/2005).[45]

57.    There are many more operatives than those listed. The operatives act as

"gatekeepers" for ASF, posting actionable messages in response to Plaintiff's postings, defaming

Plaintiff repeatedly to "newbies" (new readers of ASF who are often ready to purchase, "unclaimed"

as a referral, and therefore very lucrative), declaring the ASF group to be ruined by Plaintiff,

creating the very noise they claim has "destroyed" the USENET group.

## Lanham Act/False Designation of Origin

58.    While Defendants LTSC/Formhandle were excluding, disparaging, and encouraging

others to act out against Plaintiff, on their very own website, they saw fit to include, without

authorization, at http://www.pickupguide.com/layguide/fox.htm), they saw fit to include, a USENET

posting from Plaintiff on the "returning fox" technique. The relevant text from that page as it existed

on April 25, 2005 is as follows (emphasis added):

> *Update*. The Returning Fox theory explained by the originator himself. **Ray Parker**, ASF: "A Returning Fox is one who has shown no previous interest in you or rejected you, but who has "returned" and approached you after you have forgotten her. This puts you in a temporary position of power. With a Returning Fox, you should ask for whatever it is you want from her at the piont of return. If she does not come across, she likely never will, and you can send her packing once again, repeating the process as many times as you have to each time she returns. For example, if she turned you down for a date, you stopped talking to her, and she now contacts you "just to say hi" just ask her out on the spot. Optionally, you can add a reference to how puzzled you are she'd contact you and how you don't really need to talk. If she doesn't bail out there, just ask

---

[43] **Message ID:** <kTO6e.8365$Bb3.5498@attbi_s22>.
[44] **Message ID:** <ehQ8e.26776$xL4.16892@attbi_s72>.
[45] **Message ID:** <Wyare.54809$nG6.12847@attbi_s22>.

for what you want. An aggressive version of this strategy has the man asking for sex or requiring it for her to get back into his life. The theory is she must want something out of you to seek you out after rejecting you, and unless she agrees to your terms, she can just go packing again. The method works very well in many situations. It also has short-term applications for Foxes who ignore you at clubs or parties and then "return" later."

59.    Aside from using Plaintiff's writing without authorization, Defendants LTSC/Formhandle attributed *Ray Parker* rather than *Ray Gordon*, in a manner designed to knowingly mislead anyone seeking the source of the infringed material. Plaintiff had this page removed from the LTSC website via a DMCA notice when he learned of its existence.

60.    In addition to the "returning fox" writing above, Defendant LTSC also misdesignated the origin of the term "pivot" as it relates to "ASF theory."[46] Plaintiff coined this term in 1999 to describe what has become a very potent seduction weapon for men, so potent that websites now offer pivots-for-hire for up to $75.00 an hour. By neglecting this mention, Plaintiff was never given proper credit for designing a technique which is more commonly used by even LTSC readers than almost any other.

## "The Game" by Neil Strauss

61.    The impact of the conduct alleged in this Complaint has been tremendous, in large part due to the "breakthrough" work for the "seduction community," the bestselling book *The Game*, by Neil Strauss. As is often the case with internet websites, publicity in the mainstream media can catapult them to fame and wealth, and this is no exception.

62.    Neil Strauss joined the LTSC message boards in 2001 after being "redirected" there by the seduction cartel. *The Game* contains references to USENET and to alt.seduction.fast, and many of its readers have found the USENET group

63.    Since its September 2005 release, *The Game: Penetrating The Secret Society Of Pickup Artists*, by Neil Strauss, has resided on many bestseller lists, including #1 on Amazon.com at

---

[46] A "pivot" is a woman who goes out with a man "as friends" simply to build his reputation, with or without her knowledge that she is doing so.

least once, and #9 on the *New York Times* bestseller list for three consecutive weeks.[47] *The Game* is one of those seminal books which becomes fodder for the "water cooler" and which is discussed and debated intensely among its audience. It documents and demonstrates just how much money and market is at stake here. This is not some minor internet niche, but a movement begun on the internet which has "penetrated" American society on its deepest levels.

64. In the "Acknowledgements" section of *The Game* (p. 450), Neil Strauss writes: "[t]hanks to Formhandle, who has thanklessly and tirelessly kept this community running. *His Fast Seduction website remains the clearinghouse for all matters pickup-related."* (Emphasis Added).[48]

65. On page 445 of *The Game,* Neil Strauss includes in his glossary of pickup terms a description of the term *pivot,* a term coined by Plaintiff in his 1999 book *29 Reasons Not To Be A Nice Guy.* The term refers to the use, by a male, of an attractive female with whom he goes out with platonically, to build his reputation. Despite his having credited the source of other terms in his glossary, Mr. Strauss neglected to attribute this term to Plaintiff, following the lead of LTSC and the seduction cartel, trading for insider access to the "community" by adhering to the principle of not naming Plaintiff, to whom they refer as

### COUNT I: LANHAM ACT VIOLATIONS AGAINST ALL DEFENDANTS

66. Plaintiff incorporates and sets forth verbatim by reference, the entire contents of paragraphs 1-65.

67. The "ASF FAQ" and "moderated forum info" postings are published in collusion and conspiracy by Defendants Ross and Formhandle, on behalf of Defendants LTSC and Straightforward, and with the knowledge and approval of Defendant TokyoPUA.

---

[47] As of October 24, 2005, "The Game" was at #24 on Amazon, which reflects sales in the previous 24 hours.
[48] Concerning the "thankless" part, Plaintiff avers that the substantial revenue generated by advertising and affiliate sponsorship (including the outfit with which Mr. Strauss worked), is considered to be "thanks" by most individuals.

68.    The statement in the "moderated forum info" posting that lists the LTSC message board alt.seduction.fast.general as a "replacement for ASF" (see paragraph 34) is false and misleading in that it implies that a commercial website's message board has supplanted the USENET group. It is also false and misleading to claim that this is a legitimate purpose for posting a "FAQ" to a USENET group.

69.    The joint statement published by Defendant Formhandle, for all defendants, in the ASF FAQ, that only LTSC's and Straightforward's websites (FastSeduction and Speed Seduction) were "main, group-related sites" (see paragraph 40) is false and misleading. USENET is a decentralized message board system with no owner. Its policies are generally anti-commercial, and most advertising is considered SPAM. Further, no one commercial website enjoys any special privileges in any USENET group. To the extent advertising is allowed, that it is determined by ISP policy, although group FAQs are often relied upon to set that policy.

70.    The use of the term "moderated ASF" to describe the LTSC message board (see paragraph 32) is false and misleading because it gives the impression that "mASF" is a moderated USENET group rather than a moderated newsgroup that exists outside of USENET and on a private, commercial web server. Indeed, USENET has moderated groups with descriptive titles. If there were a "moderated ASF" on USENET, it would be called *alt.seduction.fast.moderated*, and would be available on USENET through regular ISPs rather than a single, commercial website which requires registration.

71.    As a direct and proximate result of the false and intentionally misleading descriptive statements above, which were made in the furtherance of Defendants' commercial interests, Plaintiff has suffered and, unless enjoined by this court, he will continue to suffer permanent and irreparable competitive harm, in an amount to be proven at trial, to his seduction-information business. Specifically, the harm inflicted is that of "ready to buy" consumers in all parties' target audience are

33

being misled into migrating from USENET to the LTSC website, where LTSC then cashes in on any referrals it generates, as well as to Defendants Ross/Straightforward's website, listed as a "main, group related site" and appearing to be formally endorsed by "ASF." This costs Plaintiff sales, advertising revenue, goodwill, audience, media exposure, and investment potential.

72.    Pecuniary harm to Plaintiff as a direct result of Defendants' intentional, wanton and willful conduct as set forth in this count includes lost audience, lost affiliate commissions, lost value to investors, loss of past, present, and future sales, and loss of business and personal reputation, in an amount to be specified at trial.

73.    For the conduct set forth in this count, Plaintiff is entitled to relief under the Lanham Act, 15 USC §1125 *et seq.,* from all Defendants.  This relief includes a) compensatory damages; b) due to the wanton and willful nature of the conduct, punitive damages; c) injunctive relief sufficient to terminate the enterprise; d) costs of suit, including any reasonable attorney fees should Plaintiff secure counsel; and e) such other relief as this Court deems just and proper.

## COUNT II:  LANHAM ACT VIOLATIONS
## AGAINST DEFENDANTS LTSC/FORMHANDLE/TOKYOPUA

74.    Plaintiff incorporates and sets forth verbatim by reference, the entire contents of paragraphs 1-73.

75.    Defendant Formhandle, acting on behalf of Defendants LTSC and TokyoPUA, made false and misleading descriptive statements and engaged in a false designation of origin concerning Plaintiff's "returning fox" article when they reposted it on the LTSC website, as set forth in paragraph 58, including but not limited to their failure to attribute the article to Plaintiff, instead attributing it to "Ray Parker" and not providing a link to Plaintiff's website or otherwise properly identifying Plaintiff.

76.    Defendant Formhandle, acting on behalf of Defendants LTSC and TokyoPUA, made false and misleading descriptive statements and engaged in a false designation of origin concerning

34

Plaintiff's "pivot" technique as set forth in paragraph 60, by deliberately omitting all references to Plaintiff as the creator of this technique, instead attributing it to a false and improper source.

77.   Other false and misleading statements concerning Plaintiff by Defendant Formhandle, for Defendants LTSC/TokyoPUA, include:

　　　　a.   The statement that "Ross' products rival [Plaintiff's] the way chocolate mousse in a crystal serving bowl rivals a shit stain on the heel of a shoe." (paragraph 55(e)).

　　　　b.   The statement that Plaintiff "is not a business competitor." (paragraph 55(j)).

78.   As a direct and proximate result of the false and misleading descriptive statements above, which were made in the furtherance of Defendants' commercial interests, Plaintiff has suffered and, unless enjoined by this court, he will continue to suffer permanent and irreparable competitive harm to his seduction-information business, including but not limited to lost sales, lost advertising revenue, lost audience, and lost investment value, in an amount to be proven at trial.

79.   Pecuniary harm to Plaintiff as a direct result of Defendants' intentional, wanton and willful conduct as set forth in this count includes lost audience, lost affiliate commissions, lost value to investors, loss of past, present, and future sales, and loss of business and personal reputation, in an amount to be specified at trial.

80.   For the conduct set forth in this count, Plaintiff is entitled to relief under the Lanham Act, 15 USC §1125 *et seq.,* from all Defendants.  This relief includes a) compensatory damages; b) due to the wanton and willful nature of the conduct, punitive damages; c) injunctive relief sufficient to terminate the enterprise; d) costs of suit, including any reasonable attorney fees should Plaintiff secure counsel; and e) such other relief as this Court deems just and proper.

### COUNTS III-IV: DEFAMATION AND LANHAM ACT VIOLATIONS AGAINST DEFENDANTS ROSS/STRAIGHTFORWARD

81.   Plaintiff incorporates and sets forth verbatim by reference, the entire contents of paragraphs 1-80.

35

82.   The statement (see paragraph 54(d) and Exhibit A) that Plaintiff had sent "that hateful e-mail" (which was also threatening) to the nonexistent "Jeri Ryan" is wholly false.

83.   At the time of publication, Defendant Ross could not possibly have verified the truth of the anonymous poster who made the claim which he repeated, and therefore either knew or should have known that it was false, while displaying reckless disregard for the truth.

84.   Defendant Ross's statements were a) not privileged; b) concerning Plaintiff; c) in a manner that was very clear to third parties (Plaintiff's birth name was used in the post); and d) third parties saw the posting and related it to Plaintiff.

85.   The full extent of Defendant Ross's actionable statements concerning Plaintiff is not known at this time, as Plaintiff avers, based on information and belief (including third-party statements) that Defendant Ross makes similarly untrue statements concerning Plaintiff in private internet communications. All statements, including those set forth herein, constitute a separate injurious falsehood.

86.   Defendant Ross's statements were taken in the furtherance of his business interest in selling "Speed Seduction" products, which compete in the same market as Plaintiff's, and caused Plaintiff a competitive business harm through lost sales, potential sales, investment potential, and goodwill.

87.   As a direct and proximate result of Defendant Ross's conduct as set forth in this count, Plaintiff has suffered irreparable and ongoing injury, in an amount to be proven at trial, both with his target business audience, and with anyone who might "Google" Plaintiff by typing his name into that search engine, including potential employers or lovers. He has lost sales and advertising revenue, and Defendant Ross has enriched himself unjustly at Plaintiff's expense.

88.   For Defendant Ross's willful, malicious, and intentional conduct as set forth in this count, Plaintiff is entitled to relief under the Lanham Act, 15 USC §1125 *et seq.*

36

89.  For any acts in this count, or any relief sought that is not covered by the Lanham Act, Plaintiff is also entitled to relief under the Delaware common law tort of defamation.

90.  Plaintiff is entitle to compensatory damages (trebled if under the Lanham Act), and punitive damages, costs of suit (including reasonable attorney fees if under the Lanham Act), injunctive relief barring any future defamation of Plaintiff by Defendant Ross, and such other relief as this Court may deem just and proper.

## COUNT IV: TORTIOUS INTERFERENCE AGAINST ALL DEFENDANTS

91.  Plaintiff incorporates and sets forth verbatim by reference, the entire contents of paragraphs 1-90.

92.  The "ASF FAQ" document set forth in paragraph 32 is "co-published" by Defendants Ross and Formhandle, on behalf of their corporate interests and that of their partners (i.e., Straightforward, LTSC and TokyoPUA).

93.  The "ASF FAQ" self-asserts "FAQ authority" over a public USENET group, and abuses that "authority" by corrupting the FAQ and making its purpose instead to direct "newbies" to the LTSC and Speed Seduction websites and message boards, as well as to an "ASF Killfilter List" on the LTSC website.

94.  The "ASF Killfilter List" urges consumers to "killfile" Plaintiff's postings while providing explicit instructions on how to get their newsreaders to do this. The "FAQ" which links to this list refers to Plaintiff as a "newsloon" who is responsible for "disrupting ASF" and making LTSC's message board somehow "necessary."

95.  In addition to the killfilter list, LTSC openly states as its policy that Plaintiff is not allowed to post on its site, nor is anyone on the LTSC message boards allowed to mention Plaintiff or his products. Those few who have inadvertently done so have been quickly reprimanded and warned not to do so again.

37

96. In paragraph 59(h), Plaintiff set forth statements by Defendant Formhandle whereby he encouraged his audience to "complain" to Plaintiff's affiliate sponsors and urge them not to do business with Plaintiff.

97. Defendant Formhandle's actions as set forth in this count have been taken in agreement, collusion and conspiracy with all other Defendants.

98. The purpose of the conduct set forth in this count was to intentionally interfere with Plaintiff's customer base, specifically his readership, for which Defendants compete for the attention of. Defendants were well aware of this expected customer base, as it forms the basis for Defendants' marketing to the ASF audience, from which it literally built its business "from scratch."

99. As a direct and proximate result of this intentional interference, Plaintiff has suffered and will continue to suffer damages which include, but are not limited to, lost sales and advertising revenue, lost goodwill, audience size, lost media coverage, and lost investment value.

100. For the conduct set forth in this count, Plaintiff is entitled to relief under Delaware law for tortuous interference with an advantageous business relationship.

101. Plaintiff is entitled to compensatory and punitive damages, costs of suit, injunctive relief sufficient to terminate the actionable conduct, and such other and further relief as this Court may deem just and proper.

## COUNT V:  ANTITRUST VIOLATIONS AGAINST ALL DEFENDANTS

102. Plaintiff incorporates and sets forth verbatim by reference, the entire contents of paragraphs 1-101.

103. The name says it all: *seduction community.* When a "community" involves several leading players in an industry, the law has another term for it: *cartel.*

38

104. The seduction cartel was formed at a time when the internet seduction industry was taking shape, a time when fair competition was essential to ensure that any growth experienced by any "seduction guru" in his business would be earned by merit rather than collusion and conspiracy.

105. Defendants have not only not denied, but have publicly embraced the exclusion of Plaintiff from their "group." Plaintiff is also not the only "seduction guru" who has been excluded by this cartel. Indeed, just recently, the "community" built itself a page on Wikipedia (created February 28, 2006), in which it made the following statements relevant to this count, including a false claim that ASF (which also has its own page) had been "overrun by SPAM" (LTSC and Defendant Ross are its main spammers), and further confirmation of the cartel's exclusive behavior:

    a.    "***When alt.seduction.fast became overwhelmed with internet spam***, a moderated commercial alternative called Fast Seduction was created, which is now one of the biggest commercial enterprises in the scene. The seduction community has historically been a combination of commercial organizations and the more underground, independent, and often free, information sources."[49]

    b.    "How do we decide notable vs. non-notable here?  We don't particularly want ***Ray Gordon*** adding himself a page."[50]

    c.    "'alt.seduction.fast'", known in the Seduction Community as 'ASF', is a newsgroup that was started by Ross Jeffries in the 1980s to discuss his 'Speed Seduction' series of products. As the community grew, so too did the traffic to the newsgroup, and the level of spam and trolling.  A new, moderated discussion forum was created, referred to as 'mASF' (moderated ASF), and is currently frequented and posted on by all 'big names' in the community, including Jefferies himself.[51]

106. The "discussions" which take place on the LTSC public message board tend to revolve solely around LTSC's sponsors and affiliated products, while on the private LTSC board, the seduction cartel members commiserate and conspire among themselves, out of the view of the general public at large, who has not even been made aware previously of this group's existence.

107. During the relevant times in this action, Defendant LTSC maintained a policy of allowing its sponsors and affiliates to promote their websites in their "signature" to their message

---

[49] Source: http://en.wikipedia.org/wiki/Seduction_Community
[50] Source: http://en.wikipedia.org/wiki/Talk:Seduction_Community#Long_lists_of_gurus
[51] Source: http://en.wikipedia.org/wiki/Alt.seduction.fast

postings, while not allowing the same privilege to nonsponsors. This was done for a very explicit, anticompetitive purpose, namely to keep the message boards focused on topics more likely to lead to the purchase of LTSC-endorsed products.

108. LTSC selects its sponsors based solely on its desire to include them in the seduction cartel, and on the sponsor's compliance with the cartel's rules and policies, including the exclusion of Plaintiff and his business.

109. As set forth in paragraph 59(f), LTSC has gone as far as to solicit feedback upon which it intended to construct a "common pricing" model for workshops and other seduction information products.

110. LTSC selects its advertisers for the purpose of maximizing revenue for those advertisers by restricting the number of competing products which can advertise on the site. This is done in order to keep prices artificially high, competition artificially low, and to specifically exclude Plaintiff by restraining him in his trade.

111. The "ASF FAQ" is published in part to compensate Defendants Ross/Straightforward for their "permission" to market through the FAQ on ASF. This "permission" allowed LTSC to build its audience, as Defendant Ross and his followers were largely responsible for the "noise" on ASF that LTSC was then offered as a solution to. Defendant Ross is also given permission to include a link to his website in all of his messages posted to the LTSC message board, and links to his website are tracked by an affiliate link.

112. In paragraph 59(h), Plaintiff set forth statements by Defendant Formhandle whereby he encouraged his audience to "complain" to Plaintiff's affiliate sponsors and urge them not to do business with Plaintiff, with the intent of harming Plaintiff's ability to compete and dilute the value of LTSC's own partnership with these same affiliates.

113. Plaintiff has suffered massive, permanent and ongoing injury to his business which is directly attributable to the anticompetitive conduct set forth in this count. Were he able to advertise on LTSC and be free of the anticompetitive behavior (which includes defamation designed to reduce his market share), Plaintiff would realize approximately the same revenue as LTSC sponsors and affiliates with similar products.

114. As a direct and proximate result of Defendants' anticompetitive conduct as set forth in this count, Plaintiff has suffered damages, in an amount to be proven at trial, including lost sales, lost potential sales, lost audience, lost media coverage (including but not limited to *The Game,* which included Plaintiff's "pivot" concept in its glossary without attribution, while attributing any terms attributable to LTSC users), lost investment value, and lost goodwill.

115. The conduct set forth in this count affects interstate commerce negatively because it is designed to manipulate a market of sexually frustrated men who are highly vulnerable to social pressure, especially when applied by a group such as the seduction cartel. Word-of-mouth is often their initial referral source, and the seduction cartel has worked, through ASF and then the LTSC message boards, to present the cartel as the ideal source for free seduction information and products, while simultaneously denying access to that source and collectively badmouthing those who are not cartel members. Consequently, many of these sexually frustrated men wind up spending more money than they should on a product or service selected from a highly restricted menu, with a stifling impact on competition.

116. Plaintiff avers that the conduct set forth in this count, for each act, constitutes a separate violation of the Sherman Antitrust Act, 15 USC §1, for a conspiracy among business competitors listed as Defendants to induce the restraint of Plaintiff's trade, restraint of competition through leveraging LTSC's audience to fix prices and restrict competition among LTSC's sponsors

41

through a group boycott (exclusion) and a vertical restraint on trade (banning as an advertiser in order to fix prices higher in the market and reduce competition with other sponsors).

117. Plaintiff avers several violations of the Clayton Act, including

a.    Price-fixing and price-discrimination under 15 USC §13 (for a selective advertiser acceptance policy whose purpose is to reduce competition); and

b.    Sale or use contingent on nonuse of competitor's goods, by virtue of LTSC denying access to its site to anyone who mentions Plaintiff or his work, even in reviewing or comparing them, for a clearly anticompetitive purpose, in violation of 15 USC §14.

118. For the antitrust violations set forth in this Count, Plaintiff is entitled to relief under 15 USC §15 et seq. (the Clayton Act, for violations of the Sherman Antitrust Act and other acts)..

119. Plaintiff is entitled to compensatory damages for all injuries to his business, trebled, including (but not limited to) lost sales revenue, lost advertising revenue, lost investment value and goodwill, and loss of audience, in an amount to be proven at trial. He is further entitled to punitive damages, costs of suit (including attorney fees if he retains counsel), injunctive relief sufficient to terminate the actionable conduct, and such other and further relief as this Court may deem proper.

### COUNT VI: RACKETEERING (RICO) AGAINST ALL DEFENDANTS

120. Plaintiff incorporates and sets forth verbatim by reference, the entire contents of paragraphs 1-119.

121. Plaintiff alleges, for this count, an association-in-fact RICO enterprise called the "Seduction Mafia."

122. The RICO enterprise includes, but is in no way limited to, of all five defendants and each of the nine unnamed co-conspirators/operatives listed in paragraph 60.

123. Defendants Ross and Formhandle constructed the Seduction Mafia and have mutually directed its affairs since its inception, while acting as agents for Defendants LTSC and Defendant Straightforward, with the full knowledge and approval of Defendant TokyoPUA.

124. In addition to their own predicate acts listed in the next paragraph, Defendants Ross and Formhandle aided and abetted the predicate acts by other operatives listed below by specifically requesting, encouraging, or directly conspiring with these individuals to commit the predicate acts.

125. The Seduction Mafia began its current pattern of racketeering activity when the LTSC message boards began being marketed to ASF on or around October 28, 2001.[52]

126. The predicate acts in furtherance of the RICO enterprise include, but are not limited to, the following:

      a.    **Defendant Formhandle's** statements 1) in paragraph 59(g) threatening Plaintiff with criminal prosecution for electronic trespass for merely viewing his website; 2) in 59(h) threatening Plaintiff with the fear of losing his affiliate partnerships to an organized campaign directed by Formhandle to encourage third parties to induce severance of Plaintiff's sponsorship revenue; and 3) threatening to "notify the IRS" of Plaintiff's newsgroup postings in response to his filing suit. Plaintiff avers that these constitute separate violations of the Hobbs Act, for the use of fear and coercion (both of which were felt by Plaintiff) in an attempt to get Plaintiff to stop publishing to ASF, so that the Seduction Mafia could increase its revenue at Plaintiff's expense..

      b.    **Defendant Ross's** statements 1) in paragraph 58(a) where he threatens to "take [Plaintiff's] computer equipment" and other resources if Plaintiff serves him with a lawsuit; 2) in paragraph 58(b), where he advises anyone Plaintiff sues to move the court for a psychiatric evaluation, and paragraph 58(c), where he urges others to "sue ray now"; 3) in paragraph 58(d),

---

[52] Suit over this conduct was brought in the Eastern District of Pennsylvania in <u>Parker v. LTSC (II)</u>, E.D.Pa. #04-cv-2752, and was dismissed for lack of jurisdiction on March 23, 2006. Any statute of limitations is therefore tolled, as the action was brought in the wrong forum.

43

where he attempted to incite violence against Plaintiff by falsely accusing him of threatening the nonexistent "Jeri Ryan" by e-mail; and 4) in paragraph 58(f) where he attempts to strike the fear of filing this lawsuit into Plaintiff by "threatening" criminal sanctions if he files. Plaintiff avers separate violations of the Hobbs Act, for Defendant Ross was using fear and coercion (both of which were felt by Plaintiff),

      c.    **Defendant LTSC and Straightforward's** participation in the Seduction Mafia was carried out by Defendants Ross and Formhandle, who were acting as their agents.

      d.    **Defendant TokyoPUA** aided and abetted the Seduction Mafia by giving his approval for the predicate acts set forth herein, and conspiring with the other defendants to commit the predicate acts.

      e.    **Predicate acts by unnamed co-conspirators** include:

      1.    The publication of the RayFAQ on the ray-gordon.com domain, which was owned by Thom E. Geiger, who has never named any other individual as author or publisher of the site. Plaintiff avers that the contents of the RayFAQ are designed to interfere with his employment in retaliation for Plaintiff having reported previous threats against his life made by Mr. Geiger to law enforcement, in violation of the Sarbanes-Oxley Act, 18 USC §1513.[53]

      2.    The threats by "Player88" were made at the specific direction of Defendant Ross, as Mr. King is a long-time member of the "SS list." Plaintiff alleges separate violations of the Hobbs Act for each act set forth in that paragraph.

      3.    The threats by "Editorial Staff" (or Geiger, if that is him) set forth in paragraph 60(c), were made in violation of the Hobbs Act, to further the Seduction Mafia through extortion, and the Sarbanes-Oxley Act, as the purpose was to retaliate against Plaintiff in his livelihood in retaliation for his having reported federal crimes to law enforcement (the threats by

---

[53] 18 USC §1513, the provision against employment retaliation in response to reporting "any" federal crime, is a predicate RICO act, even if the Sarbanes-Oxley Act as a whole is not.

Geiger in 1998, and the child abuse in gymnastics that Plaintiff had reported to law enforcement, which sparked the initial threats).

        4.     The hundreds of postings by "Thrasher Remailer" (see paragraph 60(d)) which impute mental illness upon Plaintiff and promote LTSC as a "solution" constitute separate violations of the Hobbs Act, for the use of fear and coercion (both felt by Plaintiff) to get Plaintiff to stop writing to ASF, so as to obtain property in the form of increased market share for LTSC. It should be noted that LTSC nor any other Defendant here ever complained to the anonymous remailers over the postings, further evidencing their involvement in their creation and continued publication.

        5.     The threats by "Vijay" and "Osgaldor Storm" (paragraphs 60(e-f) were made in furtherance of Defendant Ross's directive to his NLP/SS followers to harass Plaintiff, for the purpose of obtaining property in the form of audience share by the use of fear and coercion (both of which were felt by Plaintiff) to get him stop writing to ASF.

        6.     The conduct of "Odious" and "Alex Kaufmann" repeatedly disparaging Plaintiff, linking to the RayFAQ (as Kaufmann did twice in 2002), and using their harassment of Plaintiff to direct traffic to the LTSC website, as set forth in paragraphs 60(g-h), constitute separate violations of the Hobbs Act for each posting, through the use of fear and coercion (both of which were felt by Plaintiff) to get him to stop writing to ASF and to secure market share for LTSC.

        7.     The harassment and threats by Vincent Runza, Jr. (see paragraph 60(h)) were made at the direction and for the benefit of Defendant LTSC and Mr. Runza (who has been contemplating his own e-book and building his own audience in the chatroom), constitute separate violations of the Hobbs Act for each posting, through the use of fear and coercion (both of which were felt by Plaintiff) to get him to stop writing to ASF and to secure market share for LTSC, at the direction of Defendants Formhandle and TokyoPUA, acting as agents for Defendant LTSC.

8.    The threats by "Aardvark" via his letter to courts, employers, and law enforcement in Philadelphia urging that Plaintiff be "involuntarily committed," and his repeated threats to Plaintiff relating to bogus claims of electronic trespass (see paragraph 60(i)). Plaintiff alleges separate violations of the Hobbs Act for each act set forth in that paragraph, taken at the direction of Defendant Ross.

127. For investing the racketeering proceeds from the Seduction Mafia into commerce and further racketeering activity, all defendants have violated 18 USC §1962(a).

128. For directing the affairs of the Seduction Mafia and assuming control over the enterprise's activities, all defendants have violated 18 USC §1962(b).

129. For committing or causing the commission of two predicate acts, and engaging in a pattern of racketeering activity for the Seduction Mafia, for the benefit of the seduction cartel, all defendants have violated 18 USC §1962(c), with each predicate act constituting a separate violation.

130. For aiding and abetting the predicate acts committed by others, and for the violations of 18 USC §1962(a-c) above, all defendants have violated 18 USC §1962(d).

131. For each violation of 18 USC §1962(d), Plaintiff is entitled to relief under 18 USC §1964(c), or "Civil RICO."

132. As a direct and proximate result of the racketeering conduct set forth in this count, Plaintiff has suffered permanent and irreparable injuries to his business and property, including lost sales, lost advertising revenue, lost investment value, lost audience, and lost goodwill.

133. The conduct of the Seduction Mafia has been continuing for a period of longer than twelve months, and will continue indefinitely into the future if not enjoined by this Court.

134. Plaintiff is entitled for compensatory damages, trebled, for all injuries to his business and property, including but not limited to lost sales, lost audience, lost investment value, and lost goodwill, in an amount to be proven at trial.

135. Plaintiff is further entitled to punitive damages, costs of suit (including attorney fees if he retains counsel), injunctive relief sufficient to terminate the actionable conduct, and such other and further relief as this Court deems just and proper.

## COUNT VII:  CIVIL CONSPIRACY AGAINST ALL DEFENDANTS

136. Plaintiff incorporates and sets forth verbatim by reference, the entire contents of paragraphs 1-135.

137. For each count in this complaint against more than one Defendant, two or more Defendants conspired to violate Delaware law against Plaintiff, including the counts for defamation, tortuous interference, the Lanham Act violations (or unfair competition and Defamation, if the Lanham Act is not predicate), the antitrust laws (state law antitrust violations if the federal law is not applicable to this count), and the racketeering violations.

138. For each separate act taken in conspiracy set forth in this Complaint and actionable under Delaware (or federal) law, Plaintiff is entitled to relief under the Delaware tort of civil conspiracy.

139. As a direct and proximate result of Defendant's willful and intentional conduct (designed to injure Plaintiff), Plaintiff has suffered, and will continue to suffer unless enjoined by this court, damages to his business and person including lost sales, lost advertising revenue, lost investment value and goodwill, lost employment, loss of reputation, pain and suffering, to an extent which will not be fully understood until well into the future, but which is already substantial, persistent, ongoing, and accruing literally every day.

140. Plaintiff is entitled to compensatory damages for the injuries set forth above, punitive damages, costs of suit, injunctive relief sufficient to terminate the actionable conduct, and such other and further relief as this court deems just and proper.

## PRAYER FOR RELIEF

WHEREAS, for the claims set forth herein, Plaintiff seeks the following relief:

1.    Unspecified compensatory damages in an amount to be proven at trial, but which is not less than FIFTY MILLION DOLLARS ($50 million), trebled for the violations of the Lanham Act, RICO, and antitrust laws.

2.    The maximum punitive damages allowed by law, where applicable.

3.    An accounting of all profits realized from Defendants' sale, publication, and marketing of seduction-related materials.

4.    Costs of suit, including reasonable attorney fees (in the event Plaintiff retains counsel), where applicable.

5.    Injunctive relief sufficient to terminate all actionable conduct.

6.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands the right to a trial by jury in this case.

This the 7th day of April, 2006.

Gordon Roy Parker
Plaintiff, Pro Se
4247 Locust Street, #806
Philadelphia, PA  19104
(215) 386-7366
GordonRoyParker@aol.com

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **GORDON ROY PARKER**, a.k.a. **Ray Gordon**, d/b/a **Snodgrass Publishing Group**, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | **CASE NO.:** |
| **Learn The Skills Corp.**, et al. | : | |
| | : | **Hon.** ___ 0 6 - 2 2 9 |
| Defendants. | : | **presiding** |
| | : | |

## **VERIFICATION**

I, Gordon Roy Parker, an adult male domiciled and residing at the address listed for me in the caption, hereby duly and solemnly swear, under all relevant perjury statutes (including 28 USC §1746), that all averments of fact in the foregoing **Complaint** are true and correct to the best of my knowledge.

This the 7th day of April, 2006.

Gordon Roy Parker
Plaintiff, Pro Se
4247 Locust Street, #806
Philadelphia, PA 19104
(215) 386-7366
GordonRoyParker@aol.com

**Exhibit A**
**Abuse Report of July 27, 2005 re: "Jeri Ryan" forged e-mail**

Subj: USENET Abuse: Demand for Preservation of Evidence
Date: 7/27/2005 1:32:02 AM Eastern Standard Time
From:LeModernCaveman
To: abuse@comcast.net
CC: ray@cybersheet.com

Dear Comcast Abuse:

Please retain all evidence relating to this internet posting and its author indefinitely, pursuant to Federal Rule 37.  I currently have a lawsuit pending against the author of the message (Parker v. LTSC, E.D.Pa. #05-cv-2752).  I may also be filing a private criminal complaint regarding this post.

The alleged e-mail from me is fraudulent and was never sent by me.  It is an attempt to defame me and incite others to harass me.  Please be advised that I fear for my safety as a direct consequence of this lie.

Your assistance is appreciated.

Sincerely,
/S GORDON ROY PARKER
Gordon Roy Parker
a/k/a "Ray Gordon"

Path: twister.nyc.rr.com!cyclone.rdc-
nyc.rr.com!news.maxwell.syr.edu!newscon02.news.prodigy.com!newscon06.news.prodigy.com!prodigy.net!border
1.nntp.dca.giganews.com!nntp.giganews.com!local01.nntp.dca.giganews.com!nntp.comcast.com!news.comcast.com
.POSTED!not-for-mail
NNTP-Posting-Date: Wed, 27 Jul 2005 01:04:43 -0500
User-Agent: Microsoft-Entourage/10.1.6.040913.0
Date: Tue, 26 Jul 2005 23:04:40 -0700
Subject: Re: "Jack Ryan" never existed
From: Ross <notmyemail@address.com>
Newsgroups: alt.seduction.fast
Message-ID: <BF0C7208.15265%notmyemail@address.com>
References: <osyFe.3500$Ow4.1455136@twister.nyc.rr.com> <INF1GX5238560.4338078704@reece.net.au>
Mime-version: 1.0
Content-type: text/plain; charset="US-ASCII"
Content-transfer-encoding: 7bit
Lines: 102
NNTP-Posting-Host: 24.126.247.39
X-Trace: sv3-
QqWENF9YIJplFLcSp+5+b6maQm6rEiPuZxHEDPL63t8SnGy+Zxzx0YCiXcQ6sV8+LHFL6pyXmyhn9N0!1c00
u515yyp2uGexleBROdhxcvXSM9WKYNcV5rXQtZcTNlK78kIC4svJ/ADKIaiygI4GPwqzL6Rs!m4k11hE=
X-Complaints-To: abuse@comcast.net
X-DMCA-Complaints-To: dmca@comcast.net
X-Abuse-and-DMCA-Info: Please be sure to forward a copy of ALL headers
X-Abuse-and-DMCA-Info: Otherwise we will be unable to process your complaint properly
X-Postfilter: 1.3.31
Xref: cyclone.rdc-nyc.rr.com alt.seduction.fast:206072

in article INF1GX5238560.4338078704@reece.net.au, EditorialStaff at
Use-Author-Address-Header@[127.1] wrote on 7/26/05 7:24 PM:

I swear to Jeri; if Mr. Parker DOES sue me, he will be reading this piece of
sick, twisted, hateful email that he sent, into the record when I take his
deposition.

Ray, you are sick, twisted, evil bastard and I am going to clean your clock
in court.

RJ

> Gordon Roy Parker wrote:
>>
>> He was just a convenient diversion created by someone
>> who didn't want to take credits for the threats that
>> were made under that name.
>
> We received an interesting email a few days ago, from someone
> who was connected to Dr. Ryan, and with that person's permission,
> we post it here, so that everyone will know just what Mr. Parker
> is attempting to do here.
>
> -------------------------------------------------------------------
> X-Apparently-To:   jerisnow@****.com
> X-Date:    Tue, 21 June 2005 01:32:39 -0500
> X-Originating-IP:   [24.193.236.213]
> Return-Path:   <ray@cybersheet.com>
> Authentication-Results:   mta221.mail.dcn****.com
>    from=twister.nyc.rr.com 1119348282 24.193.236.213
>    (Tue, 21 Jun 2005 06:04:42 EDT)
> Received:   from 24.193.236.213 by mta221.mail.dcn.****.com with
>    SMTP; Tue, 26 Jul 2005 18:32:39 -0700
> Received:   from ([24.193.236.213]) by
>    omta03sl.mx.bigpond.com with SMTP id
>    <20050727013237.WFYU21373.omta03sl.mx.bigpond.com@workshop>;
>    Wed, 27 Jul 2005 01:32:37 +0000
> To:   jerisnow@****.com
> From:   "Ray Gordon" <ray@cybersheet.com>
> Date:   21 Jun 2005 01:33:10 -0000
> Message-ID:   <DGOJ7MAE38560.3980324074@twister.nyc.rr.com>
> Subject: You had better watch out BITCH.....
> --
>
> I'm tired of all the men who are attacking me in your name
> and with your approval, and I am going to fix your CUNT ass soon.
> You had better watch out, because I am going to come and find you,
> and show you what I think of you and your dead husband.
>
> Georgia is only a plane ride away.......
>
> You think you can get away with harassing me, threatening me and
> hiding behind that dead asshole husband of yours, but you
> can't. Your husband was a rapist, and you are nothing but a SLUT for
> having married a player like him. Your actions show your poor
> judgment picking men, and they reveal you to be a PATHETIC little
> SLUT the world would definitely be better off without.
>
> If I ever hear another word about "Jack Ryan" ever again, I am

2

> going to shut up that mouth of yours, and the pussy mouth of everyone
> who you have gotten to attack me. He's DEAD, rotting in a grave,
> and the worms are eating up all you love. That make you feel good
> CUNT? I hope so.
>
> Women like you NEVER find good men. All SLUTS like you can get are
> players and rapists. There's a reason for that.
>
> I am hereby officially warning you that any more attacks on me will
> cause great harm to come down on you. You have been warned. Cease and
> Desist IMMEDIATELY....
>
> Ray Gordon
>
> -------------------------------------------------------------------
>
> We wonder what could be done about this? We do know that an attorney
> representing the person in question has contacted law enforcement in
> Philadelphia, in an attempt to forestall this kind of behavior in the
> future. We wonder if it won't take more than that. Perhaps someone
> actually paying a visit to Philadelphia to explain the consequences
> for actions like this, in person...
>
> We are watching this situation, very carefully.
>
> --
> The Editorial Staff
> -----
> A quote from Gordon Roy Parker, AKA "Ray Gordon":
> "(For a dissenting opinion on my character, please visit
> the following website: http://members.tripod.com/~rayfaq.html)*
> This site contains many lies about me, but as a defender of
> free speech I fully support its right to exist."
> -Message-ID: <6ertau$76b$1@nnrp1.dejanews.com>
>
> *The original RayFAQ was removed from the internet as a
> result of dozens of complaints from Gordon Roy Parker.
>
> Freedom of Speech is WORTHLESS without Social Responsibility.
>
>
>

3

ℱ

℔JS 44 (Rev. 11/04)

**CIVIL COVER SHEET**

06-229

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a)   PLAINTIFFS**
Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA 19104   Philadelphia, PA

**DEFENDANTS** Learn The Skills Corp.   Formhandle
c/o BFT, IAC                                    Tokyo PUA
108 W. 13th Street
Wilmington DE 19801 Straight Forward, Inc.   NEWCASTLE
Paul Ross

**(b)**   County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)**   Attorney's (Firm Name, Address, and Telephone Number)   N/A

Attorneys (If Known)   N/A

**II. BASIS OF JURISDICTION**   (Place an "X" in One Box Only)

◻ 1   U.S. Government
Plaintiff

☒ 3   Federal Question
(U.S. Government Not a Party)

◻ 2   U.S. Government
Defendant

◻ 4   Diversity
(Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**(Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                        and One Box for Defendant

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ◻ 1 | ◻ 1 | Incorporated or Principal Place of Business In This State | ◻ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ◻ 2 | Incorporated and Principal Place of Business In Another State | ◻ 5 | ◻ 5 |
| Citizen or Subject of a Foreign Country | ◻ 3 | ◻ 3 | Foreign Nation | ◻ 6 | ◻ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ◻ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ◻ 610 Agriculture | ◻ 422 Appeal 28 USC 158 | ◻ 400 State Reapportionment |
| ◻ 120 Marine | ◻ 310 Airplane | ◻ 362 Personal Injury - | ◻ 620 Other Food & Drug | ◻ 423 Withdrawal | ◻ 410 Antitrust |
| ◻ 130 Miller Act | ◻ 315 Airplane Product | Med. Malpractice | ◻ 625 Drug Related Seizure | 28 USC 157 | ◻ 430 Banks and Banking |
| ◻ 140 Negotiable Instrument | Liability | ◻ 365 Personal Injury - | of Property 21 USC 881 | | ◻ 450 Commerce |
| ◻ 150 Recovery of Overpayment | ◻ 320 Assault, Libel & | Product Liability | ◻ 630 Liquor Laws | **PROPERTY RIGHTS** | ◻ 460 Deportation |
| & Enforcement of Judgment | Slander | ◻ 368 Asbestos Personal | ◻ 640 R.R. & Truck | ◻ 820 Copyrights | ☒ 470 Racketeer Influenced and |
| ◻ 151 Medicare Act | ◻ 330 Federal Employers' | Injury Product | ◻ 650 Airline Regs. | ◻ 830 Patent | Corrupt Organizations |
| ◻ 152 Recovery of Defaulted | Liability | Liability | ◻ 660 Occupational | ◻ 840 Trademark | ◻ 480 Consumer Credit |
| Student Loans | ◻ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ◻ 490 Cable/Sat TV |
| (Excl. Veterans) | ◻ 345 Marine Product | ◻ 370 Other Fraud | ◻ 690 Other | | ◻ 810 Selective Service |
| ◻ 153 Recovery of Overpayment | Liability | ◻ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ◻ 850 Securities/Commodities/ |
| of Veteran's Benefits | ◻ 350 Motor Vehicle | ◻ 380 Other Personal | ◻ 710 Fair Labor Standards | ◻ 861 HIA (1395ff) | Exchange |
| ◻ 160 Stockholders' Suits | ◻ 355 Motor Vehicle | Property Damage | Act | ◻ 862 Black Lung (923) | ◻ 875 Customer Challenge |
| ◻ 190 Other Contract | Product Liability | ◻ 385 Property Damage | ◻ 720 Labor/Mgmt. Relations | ◻ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ◻ 195 Contract Product Liability | ◻ 360 Other Personal | Product Liability | ◻ 730 Labor/Mgmt.Reporting | ◻ 864 SSID Title XVI | ◻ 890 Other Statutory Actions |
| ◻ 196 Franchise | Injury | | & Disclosure Act | ◻ 865 RSI (405(g)) | ◻ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ◻ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ◻ 892 Economic Stabilization Act |
| ◻ 210 Land Condemnation | ◻ 441 Voting | ◻ 510 Motions to Vacate | ◻ 790 Other Labor Litigation | ◻ 870 Taxes (U.S. Plaintiff | ◻ 893 Environmental Matters |
| ◻ 220 Foreclosure | ◻ 442 Employment | Sentence | ◻ 791 Empl. Ret. Inc. | or Defendant) | ◻ 894 Energy Allocation Act |
| ◻ 230 Rent Lease & Ejectment | ◻ 443 Housing/ | **Habeas Corpus:** | Security Act | ◻ 871 IRS—Third Party | ◻ 895 Freedom of Information |
| ◻ 240 Torts to Land | Accommodations | ◻ 530 General | | 26 USC 7609 | Act |
| ◻ 245 Tort Product Liability | ◻ 444 Welfare | ◻ 535 Death Penalty | | | ◻ 900Appeal of Fee Determination |
| ◻ 290 All Other Real Property | ◻ 445 Amer. w/Disabilities - | ◻ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ◻ 550 Civil Rights | | | to Justice |
| | ◻ 446 Amer. w/Disabilities - | ◻ 555 Prison Condition | | | ◻ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ◻ 440 Other Civil Rights | | | | |

**V. ORIGIN**   (Place an "X" in One Box Only)

☒ 1 Original
Proceeding

◻ 2 Removed from
State Court

◻ 3 Remanded from
Appellate Court

◻ 4 Reinstated or
Reopened

◻ 5 Transferred from
another district
(specify)

◻ 6 Multidistrict
Litigation

◻ 7 Appeal to District
Judge from
Magistrate
Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 USC 1 (Antitrust) 18 USC 1964c (RICO)
Brief description of cause: RICO, Lanham Act, Antitrust

**VII. REQUESTED IN**
**COMPLAINT:**
◻ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $** $50,000,000
50 Million

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ◻ No

**VIII. RELATED CASE(S)**
**IF ANY**
(See instructions):   JUDGE   Harvey J. Bartle

DOCKET NUMBER   E.D. Pa. 05-cv-2752

DATE
04/07/2006

SIGNATURE OF ATTORNEY OF RECORD
Gordon Roy Parker, Pro Se

FOR OFFICE USE ONLY

RECEIPT #           AMOUNT           APPLYING IFP           JUDGE           MAG. JUDGE

$250.00/LBC PT  #143016   4/7/06 - MAC/HTC   Recpt   Rule 4 ISS/RECPT   SST

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. ___0 6 - 2 2 9___

# ACKNOWLEDGMENT
# OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*



I HEREBY ACKNOWLEDGE RECEIPT OF ___6___ COPIES OF AO FORM 85.

___4/7/06___
(Date forms issued)

_____
(Signature of Party or their Representative)

___Gordon Roy Parker___
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action

OFFICE OF THE CLERK
**UNITED STATES DISTRICT COURT**
DISTRICT OF DELAWARE

Peter T. Dalleo
CLERK

LOCKBOX 18
844 KING STREET
U.S. COURTHOUSE
WILMINGTON, DELAWARE 19801
(302) 573-6170

RE:   C.A.#   06-229

CASE CAPTION: Parker                    v. Learn the Skills Corp., et.al.

## ACKNOWLEDGMENT OF RECEIPT FOR F.R.Civ.P. 4

I hereby acknowledge receipt of a copy of Rule 4 (Summons) of the Federal Rules of Civil Procedure, and understand that it is my responsibility to make service of process on defendants in accordance with this rule.

Date Received    4/7/06          Signed: _____
by Plaintiff:                              Pro Se Plaintiff

Date Received_____           Signed:_____
by Clerk's office:                          Deputy Clerk

Note: If you received Federal Rule 4 by mail, please sign this receipt and return it to:

Clerk
U.S. District Court
844 N. King Street          If applicable, Rule 4 mailed to plaintiff:
Lockbox 18
Wilmington, DE 19801

Date mailed _____

By Deputy Clerk _____

cc: Docketing Clerk

wp\forms\rule4receipt 2-04