IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GORDON RAY PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-229 SLR |
| | ) | |
| LEARN THE SKILLS CORP., *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**OPENING BRIEF OF DEFENDANTS
LEARN THE SKILLS CORP., PAUL J. ROSS
AND STRAIGHTFORWARD, INC. IN SUPPORT OF THEIR
MOTION (1) TO STAY THIS ACTION PENDING RESOLUTION OF
RELATED LITIGATION IN THE U.S. DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA AND THE U.S. COURT OF
APPEALS FOR THE THIRD CIRCUIT, (2) TO DISMISS FOR
FAILURE TO STATE A CLAIM AND LACK OF PERSONAL JURISDICTION,
AND (3) TO DEFER BRIEFING ON THE MOTION TO DISMISS**

David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155
(302) 884-6766
Attorney for defendants Learn the Skills
Corp., Paul J. Ross and Straightforward, Inc.

Dated: April 28, 2006

## **TABLE OF CONTENTS**

NATURE AND STAGE OF THE PROCEEDINGS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.      THIS ACTION SHOULD BE STAYED PENDING RESOLUTION OF RELATED
        LITIGATION IN THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT
        OF PENNSYLVANIA AND THE U.S. COURT OF APPEALS FOR THE THIRD
        CIRCUIT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Cheyney State College Faculty v. Hufstedler,* 703 F.2d 732 (3d Cir.1983).. . . . . . . . . . . 4

*Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573 (N.D. Ca. 1999). . . . . . . . . . . . . . 5

*Conoco, Inc. v. Skinner*, C.A. No. 91-122-JLL, 1991 WL 317019, Latchum, J. (D. Del. Nov. 12, 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Doe v. 2themart.com*, 140 F.Supp.2d 1088 (W.D. Wash. 2001). . . . . . . . . . . . . . . . . . . . 5

*Doe v. Cahill*, 884 A.2d 451 (Del. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Granader v. Public Bank*, 417 F.2d 75 (6th Cir. 1969), *cert. denied*, 397 U.S. 1065 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Landis v. North American Company*, 299 U.S. 248 (1936).. . . . . . . . . . . . . . . . . . . . . . . 4

*Parker v. Doe*, C.A. No. 02-CV-7215, 2003 WL 21294962, Kelly, J. (E.D. Pa. Jan. 21, 2003), *recons. denied*, 2003 WL 21294971, Kelly, J. (Feb. 10, 2003), *and action dismissed*, C.A. No. 02-CV-7215, Kelly, J. (E.D. Pa. Feb. 25, 2003) (ORDER). . . . . . . . . . . . . . . . . 2

*Parker v. Google, Inc.*, C.A. No. 04-CV-3918, 2006 WL 680916, Surrick, J. (E.D. Pa. March 10, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Parker v. Learn the Skills Corp., et al.,* C.A. No. 05-2752, 2006 WL 759693, Bartle, J. (E.D. Pa. March 23, 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Parker v. Learn the Skills Corp.*, C.A. No. 03-6936, 2004 WL 2384993, Kelly, J. (E.D. Pa. Oct. 25, 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Parker v. University of Pennsylvania*, 128 Fed. Appx. 994 (3rd Cir. 2005). . . . . . . . . . . 2

## <u>Other authorities</u>

Federal Rule of Civil Procedure 8(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Federal Rule of Civil Procedure 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## NATURE AND STAGE OF THE PROCEEDINGS

On April 7, 2006, plaintiff Gordon Ray Parker ("Parker") filed the present action against defendants Learn the Skills Corp. ("LTSC"), Paul J. Ross ("Ross"), Straightforward, Inc. ("Straightforward"), and two additional parties identified only by their e-mail addresses, Formhandle@Fastseduction.com and TokyoPUA@fastseduction.com. The Complaint alleges violations of federal antitrust and RICO laws and the Lanham Act, as well as state law claims for defamation, tortious interference and conspiracy. (D.I. 1).

On April 28, 2006, LTSC, Ross and Straightforward filed a motion (i) to stay this action pending resolution of related litigation in the U.S. District Court for the Eastern District of Pennsylvania and the U.S. Court of Appeals for the Third Circuit, (ii) to dismiss this action for failure to state a claim and (as to Ross) for lack of personal jurisdiction, and (iii) to defer briefing on the motion to dismiss pending resolution of relating litigation in the U.S. District Court for the Eastern District of Pennsylvania and the U.S. Court of Appeals for the Third Circuit.

This is the opening brief of LTSC, Ross and Straightforward in support of their motion.

1

## STATEMENT OF FACTS

Plaintiff Parker is a resident of Philadelphia, Pennsylvania. (D.I. 1 ¶1).  He has been described by one court as a "serial litigant."  *Parker v. Learn the Skills Corp., et al.,* C.A. No. 05-2752, 2006 WL 759693, WL Op. at *4, Bartle, J. (E.D. Pa. March 23, 2006) ("*Parker II*") (Ex. B).[1]

The present litigation began in Pennsylvania on December 30, 2003, where Parker filed suit against LTSC, Thomas E. Geiger and one hundred anonymous defendants, asserting many of the same claims raised in the present action, and more.  That case was dismissed pursuant to Federal Rule of Civil Procedure 8(a)(2), on the ground that Parker's Complaint was "so confusing and sprawling" that it was not fair to require a response to it.  *Parker v. Learn the Skills Corp.*, C.A. No. 03-6936, 2004 WL 2384993, Kelly, J. (E.D. Pa. Oct. 25, 2004) ("*Parker I*") (Ex. A).

Parker revised his Complaint and commenced a new action in the Eastern District of Pennsylvania on June 9, 2005, Civil Action No. 05-cv-02752-HB, suing LTSC, Ross, Mr. Geiger, the Trustees of the University of Pennsylvania and Matthew S. Wolf, Esq.  On March

---

[1]

    In addition to suing LTSC, Ross and Straightforward, Parker has also filed *pro se* actions against Google, Inc., *Parker v. Google, Inc.*, C.A. No. 04-CV-3918, 2006 WL 680916, Surrick, J. (E.D. Pa. March 10, 2006) (Ex. C) (dismissing copyright infringement claim), the University of Pennsylvania, *Parker v. University of Pennsylvania*, 128 Fed. Appx. 994 (3rd Cir. 2005) (affirming entry of summary judgment against Parker on Title VII and ADA claims), and assorted John Does, *Parker v. Doe*, C.A. No. 02-CV-7215, 2003 WL 21294962, Kelly, J. (E.D. Pa. Jan. 21, 2003), *recons. denied*, 2003 WL 21294971, Kelly, J. (E.D. Pa. Feb. 10, 2003), *and action dismissed*, C.A. No. 02-CV-7215, Kelly, J. (Feb. 25, 2003) (ORDER) (Ex. D).  Additionally, a review of Philadelphia court records reveals two actions filed by Parker in state court.  (Ex. E). "Federal courts may take judicial notice of proceedings in other courts of record." *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969) (citing cases), *cert. denied*, 397 U.S. 1065 (1970).

23, 2006, that action was dismissed as to LTSC, Ross and Geiger for lack of personal jurisdiction and, as to the Trustees of the University of Pennsylvania and Mr. Wolf, for failure to state a claim upon which relief could be granted.  *Parker II.*

On April 3, 2006, Parker filed a motion for reconsideration of the dismissal ruling. (Ex. F).  On April 7, 2006, before any ruling on the motion for reconsideration, Parker filed a Notice of Appeal to the U.S. Court of Appeals for the Third Circuit. (Ex. H).[2]  That same day, Parker filed the present action in this Court.

In his motion for reconsideration, Parker states that the reason he elected to file the Delaware action at this time, notwithstanding the pending motion for reconsideration and the appeal to the Third Circuit, was to save some money, as the filing fee was about to increase. (Ex. F at 9).

---

[2]

On April 21, 2006, the Third Circuit entered an Order staying the appeal pending resolution of the motion for reconsideration in the District Court.  (Ex. H).

3

<u>ARGUMENT</u>

I.    **THIS ACTION SHOULD BE STAYED PENDING RESOLUTION OF RELATED LITIGATION IN THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA AND THE U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT.**

The power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Cheyney State College Faculty v. Hufstedler,* 703 F.2d 732, 738 (3d Cir.1983) (quoting *Landis v. North American Company*, 299 U.S. 248, 254-55 (1936)). "When determining whether a stay is appropriate, the Court should balance the competing interests, consider the possible damage, hardship, and inequities and conserve judicial resources." *Conoco, Inc. v. Skinner*, C.A. No. 91-122-JLL, 1991 WL 317019, WL Op. at *1, Latchum, J. (D. Del. Nov. 12, 1991) (Ex. I).

A stay under these circumstances avoids unnecessary expense and harassment, and avoids wasting judicial resources. In the event that either (i) the District Court for the Eastern District of Pennsylvania grants the motion for reconsideration, or (ii) the Third Circuit reverses the District Court's dismissal of the case, the litigation in Pennsylvania will be revived. In the absence of a stay, the defendants in this case will be forced to litigate the same (or nearly identical) claims in two different fora.[3] This would result in unnecessary

_____

[3]

Defendants firmly believe that Parker's Complaint is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. If the Pennsylvania case is reinstated, LTSC and Ross fully intend to litigate that point in Pennsylvania For that reason, although defendants raised their Rule 12(b) motions at this time to avoid waiver for failure to assert them in a motion or their first responsive pleading, defendants request that, as part of a stay, the Court defer briefing of the motions to dismiss for failure to state a claim

(continued...)

duplicative expense for the defendants (including paying for Pennsylvania and Delaware counsel), and potential inconsistent rulings from the two courts.

Parker will not suffer any prejudice, injury or hardship from a stay, particularly since it was his choice to proceed with a motion for reconsideration and an appeal in Pennsylvania, and his decision to file in Delaware was based on saving money, not on any time urgency. The Complaint does not seek preliminary injunctive relief or expedition, nor does it justify such relief or expedition.

Finally, a stay will avoid a waste of judicial resources. If ultimately proceedings are revived in Pennsylvania, LTSC and Ross intend to press their motion to dismiss for failure to state a claim in that forum. As such, it would be wasteful for this Court to address the exact same issues here.

---

[3](...continued)
and for lack of personal jurisdiction, to avoid potentially unnecessary expense to defendants.

For similar reasons, defendants ask that the Court stay Parker's Motion to Conduct Expedited Discovery. To the extent that Parker is seeking to discover the identity of LTSC's directors and officers, there is no urgency, and he can obtain that information in due course in regular discovery, either in the Pennsylvania action (if that action is revived and survives a motion to dismiss) or in this action (if the Pennsylvania action is not revived and this action survives briefing and ruling on a motion to dismiss). If the case proceeds to that point, then Parker can amend his Complaint to implead such directors and officers (subject to any challenge that such amendment is futile as it fails to state a claim as to those directors/officers).

Moreover, to the extent that Parker is seeking to hold such parties liable as a result of their anonymous Internet postings (*e.g.,* D.I. 1 ¶55), this implicates the higher burden a plaintiff must meet to utilize judicial processes to compel disclosure of the identity of an anonymous speaker. *See, e.g., Doe v. Cahill*, 884 A.2d 451 (Del. 2005) (defamation); *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573 (N.D. Ca. 1999) (trademark infringement); *Doe v. 2themart.com*, 140 F.Supp.2d 1088 (W.D. Wash. 2001). It would be a waste of litigant and judicial resources to litigate these issues before resolution of the Pennsylvania litigation, and so Parker's motion should also be stayed.

## CONCLUSION

WHEREFORE, for the foregoing reasons, defendants Learn the Skills Corp., Paul J. Ross and Straightforward, Inc. respectfully request that the Court stay this action, including deferring briefing on the motions to dismiss, pending resolution of parallel proceedings in the U.S. District Court for the Eastern District of Pennsylvania and the U.S. Court of Appeals for the Third Circuit.

Dated: April 28, 2006

Respectfully submitted,

/s/ David L. Finger
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155
(302) 884-6766
Attorney for defendants Learn the Skills Corp., Paul Ross and Straightforward, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I, David L. Finger, hereby certify that on this 28th day of April, 2006, I caused two

copies of the foregoing document to be served via first class mail, postage prepaid, on the

below-listed party:

> Gordon Roy Parker, *pro se*
> 4247 Locust Street, #806
> Philadelphia, PA 19104

> /s/ David L. Finger
> David L. Finger (DE Bar ID #2556)
> Finger & Slanina, LLC
> One Commerce Center
> 1201 Orange Street, Suite 725
> Wilmington, DE 19801-1155
> (302) 884-6766



Not Reported in F.Supp.2d                                                                                  Page 1

Not Reported in F.Supp.2d, 2004 WL 2384993 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

C

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
Gordon Roy PARKER, Plaintiff,
v.
LEARN THE SKILLS CORP., et al., Defendants.
**No. 03-6936.**

Oct. 25, 2004.

Gordon Roy Parker, Philadelphia, PA, pro se.

*MEMORANDUM AND ORDER*
KELLY, J.
**\*1** Presently before the Court is Plaintiff Gordon
Roy Parker's ("Plaintiff") Amended Complaint
(Doc. No. 2), Defendant Thomas Geiger's ("
Defendant") motion captioned, "Motion to Dismiss
for Lack of Jurisdiction, Failure to State a Claim
upon which Relief can be Granted, Improper Venue
or, in the Alternative, For a More Definite Statement
" ("Motion") (Doc. No. 6) and Defendant's
Amended Motion to Dismiss ("Amended Motion")
(Doc. No. 25), and Plaintiff's respective Responses
in opposition thereto (Doc. Nos. 21 & 30). For the
reasons set out below, Plaintiff's Amended
Complaint (Doc. No. 2) is DISMISSED WITHOUT
PREJUDICE.

> FN1. If Plaintiff is able to cure the
> deficiencies set forth in this Memorandum
> through an amended pleading on or before
> November 26, 2004, then the Court will
> reopen Plaintiff's case *sua sponte. See
> Grayson v. Mayview State Hosp.,* 293 F.3d
> 103, 108 (3d Cir.2002).

*I. INTRODUCTION*

On December 30, 2004, *pro se* Plaintiff Gordon
Roy Parker filed this action against *pro se*

Defendant Geiger, Defendant Learn The Skills
Corporation, and one-hundred anonymous
defendants. Plaintiff's Amended Complaint seeks
relief under theories of Libel, Trade Libel, Invasion
of Privacy, Copyright Infringement, Unfair
Competition, Unjust Enrichment, Tortious
Interference and Civil Conspiracy, and for Federal
Lanham Act and RICO Violations. In response, *pro
se* Defendant Geiger moves for a more definite
statement of Plaintiff's claims pursuant to Federal
Rule of Civil Procedure 12(e). Defendant Geiger
argues that the substance of Plaintiff's claims is
unascertainable from the eighty page Amended
Complaint. After reviewing *pro se* Defendant
Geiger's argument, we also construe his motion as
seeking dismissal for Plaintiff's failure to comply
with the "short and plain statement" requirements of
Federal Rule of Civil Procedure 8(a)(2).

> FN2. Rule 12(e) provides:
> If a pleading to which a responsive
> pleading is permitted is so vague or
> ambiguous that a party cannot reasonably
> be required to frame a responsive pleading,
> the party may move for a more definite
> statement before interposing a responsive
> pleading. The motion shall point out the
> defects complained of and the details
> desired.
> Fed.R.Civ.P. 12(e).

> FN3. Rule 8(a) provides, in pertinent part,
> "[a] pleading which sets forth a claim for
> relief ... shall contain ... (2) a short and
> plain statement of the claim showing that
> the pleader is entitled to relief." *See*
> Fed.R.Civ.P. 8(a)(2).

*II. STANDARD OF REVIEW*

Federal Rules of Civil Procedure 12(e) and 8(a)(2)
guard against vague and ambiguous complaints that
impede either the defendants' receipt of adequate

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 2384993 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

notice of the claims asserted against them or their ability to form a responsive pleading. *See Schaedler v. Reading Eagle Publications, Inc.,* 370 F.2d 795, 798 (3d Cir.1967). *Pro se* Defendant Geiger's Motion argues that the Amended Complaint does not state Plaintiff's claims with clarity sufficient to allow him to frame a responsive pleading. We find *pro se* Defendant Geiger's inability to respond is due in large part to the lack of a "short and plain statement" of the claims upon which relief should be granted and, therefore, we discuss *pro se* Defendant Geiger's arguments under Rule 8(a)(2).

Rule 8(a) calls for a "short and plain statement" of both the jurisdictional grounds and the claims supporting the plaintiff's request for relief. Fed.R.Civ.P. 8(a). The purpose of the "short and plain statement" requirement is "to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Violations of the short and plain statement rule have included complaints that were too long, repetitious, or confused. *See In re Westinghouse Secs. Litigation,* 90 F.3d 696, 703 (3d Cir.1996) (finding that a complaint more than 600 paragraphs and 240 pages was too long); *see also U.S. ex rel Dattola v. National Treasury Employees Union,* 86 F.R.D. 496 (W.D.Pa.1980) (holding that a *pro se* complaint charging over one-hundred defendants with several claims was too confused). In short, as Judge Easterbrook summarized, "Rule 8(a) requires parties to make their pleadings straight forward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." *United States, ex rel. Garst v. Lockheed-Martin Corp.,* 328 F.3d 374, 378 (7th Cir.2003).

### III. DISCUSSION

**\*2** Plaintiff's Amended Complaint is long and disorderly. The length of Plaintiff's Amended Complaint ballooned to eighty single and double spaced pages with 320 paragraphs. As part of his Amended Complaint, Plaintiff wrote an overview of the alleged wrongful conduct that consists of

fifty-three pages and 208 paragraphs with cross references to another eighty-seven pages of single-spaced exhibits. A lenient reading of Plaintiff's Amended Complaint does not reveal a short and plain statement. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (stating the proposition that *pro se* complaints must be reviewed with leniency).

While a complaint's excessive length alone is not determinative for a Rule 8(a) dismissal, its excessive length compounded by a lack of clarity should deem it unacceptable. *See In re Westinghouse Secs. Litigation,* 90 F.3d at 703. Plaintiff's Amended Complaint is marred by its near-incomprehensible structure and content. For example, it appears as if the first sixty pages of Plaintiff's Amended Complaint are superfluous because they consist of alleged facts with no contextual structure. It is not until page sixty-one that Plaintiff begins describing the twenty-three counts he alleges against the 102 defendants. Instead of plainly stating his claims against the defendants, Plaintiff overwhelms the defendants with acronyms and confusing cross-references to the alleged facts and anonymous defendants. Therefore, throughout Plaintiff's entire Amended Complaint, there is a complete omission of a "short and plain statement" necessary to give the defendants proper notice of the claims against them.

> FN4. By the time Plaintiff begins to assert claims against the defendants, 232 paragraphs have elapsed from which the defendants are to cross-reference in order to decipher the factual support of the claims against them. In essence, Plaintiff has created the "bucket of mud" that Rule 8(a) guards against. *See United States, ex rel. Garst,* 328 F.3d at 378; *see also Mendez v. Draham,* 182 F.Supp.2d 430, 433 (D.C.N.J.2002) (finding that "[o]nly through superhuman patience, effort, and insight could any attorney review the allegations of the Complaint and make paragraph-by-paragraph responses.... [T]he Defendants' attorneys do not have the luxury of clicking the 'paste' button on

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 3

Not Reported in F.Supp.2d, 2004 WL 2384993 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

their computer; if they fail to notice that one or two words have been varied, with meaningful import ... they face the risk of malpractice").

Although *pro se* complaints are held to a less stringent standard than those drafted by legal counsel, the concern of *pro se* Defendant Geiger that he has been bombarded with an exceedingly long and confusing complaint cannot be ignored. *See Alston v. Parker,* 363 F.3d 229, 234 (3d Cir.2004) (explaining that "[c]ourts are to construe complaints so 'as to do substantial justice' ... keeping in mind that *pro se* complaints in particular should be construed liberally" (citations omitted)); *But cf. Gay v. Shannon,* 2002 U.S. Dist. LEXIS 23621, at *2 (E.D.Pa. Dec. 6, 2002) (finding that the *pro se* complaint failed this "substantial justice" balance and failed Rules 12(e) and 8(a)(2)). The leniency given to a *pro se* complaint must always be tempered by a defendant's, especially one appearing *pro se,* need for fair notice of the claims against them. *See Skolnick v. Clinton,* 1996 U.S. Dist. LEXIS 19333, at *3-4 (N.D.Ill.Dec. 23, 1996). If a *pro se* complaint is so confusing or unintelligible that a party could not understand or reply to it, the court should dismiss the case for failure to comply with Rule 8(a). *King v. Fayette County,* 92 F.R.D. 457, 458 (W.D.Pa.1981); *see also Windsor v. Colorado Dep't of Corrections,* 9 Fed. Appx. 967 (10th Cir.2001) (explaining *pro se* complaints, after all, are required to follow the Federal Rules of Procedure, including Rule 8).

**\*3** Holding Plaintiff's Amended Complaint to the less stringent *pro se* standard does not save him from dismissal under Rule 8(a)'s "short and plain statement" requirement. We are satisfied that Plaintiff's Amended Complaint is so confusing and sprawling that *pro se* Defendant Geiger should not be required to reply to it as written. We therefore dismiss Plaintiff's Amended Complaint for failure to comply with the "short and plain statement" requirements of Federal Rule of Civil Procedure 8(a).

FN5. As we dismiss the Amended Complaint on this basis, we do not need to

reach *pro se* Defendant Geiger's remaining arguments.

*ORDER*

AND NOW, this day of October 2004, in consideration of Plaintiff Gordon Roy Parker's (" Plaintiff") Amended Complaint (Doc. No. 2), Defendant Geiger's ("Defendant") motion captioned, "Motion to Dismiss for Lack of Jurisdiction, Failure to State a Claim upon which Relief can be Granted, Improper Venue or, in the Alternative, For a More Definite Statement" (" Motion") (Doc. No. 6) and Defendant's Amended Motion to Dismiss ("Amended Motion") (Doc. No. 25), and Plaintiff's respective Responses in opposition thereto (Doc. Nos. 21 & 30), it is hereby ORDERED that:
1. Plaintiff's Amended Complaint (Doc. No. 2) is DISMISSED WITHOUT PREJUDICE;
2. If Plaintiff is able to cure the deficiencies set forth in the accompanying Memorandum through an amended pleading on or before November 26, 2004, then the Court will reopen this matter *sua sponte;*
3. Plaintiff's seven styled Motions (Doc. Nos. 19, 20, 22, 24, 41, 42 & 43) are DISMISSED AS MOOT;
4. Defendant Geiger's two styled Motions (Doc. Nos. 6 & 25) are DISMISSED AS MOOT;
5. Defendant Learn the Skills Corporation's two styled Motions (Doc. Nos. 29 & 46) are DISMISSED AS MOOT.

E.D.Pa.,2004.
Parker v. Learn the Skills Corp.
Not Reported in F.Supp.2d, 2004 WL 2384993 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2004 WL 2716845 (Trial Motion, Memorandum and Affidavit) Defendant Learn the Skills Corp.'s Memorandum of Law in Support of Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(B)(6) (Apr. 26, 2004)
• 2:03cv06936 (Docket) (Dec. 30, 2003)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 4

Not Reported in F.Supp.2d, 2004 WL 2384993 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**


END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Slip Copy                                                                                                   Page 1

Slip Copy, 2006 WL 759693 (E.D.Pa.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
Gordon Roy PARKER, a/k/a Ray Gordon, d/b/a
Snodgrass Publishing Group
v.
LEARN THE SKILLS CORP., et al.
**No. Civ.A. 05-2752.**

March 23, 2006.

Gordon Roy Parker, Philadelphia, PA, pro se.
Matthew S. Wolf, Haddonfield, NJ, for Learn the
Skills Corp.
Thom E. Geiger, Columbus, MS, pro se.
Mary Kay Brown, Buchanan Ingersoll,
Philadelphia, PA, for Paul Ross also Known as
Ross Jeffries.
Dennis G. Young, Jr., Montgomery McCracken
Walker & Rhoads, Phila, PA, for Trustees of
University of Pennsylvania.
Matthew S. Wolf, Haddonfield, NJ, pro se.

*MEMORANDUM*
BARTLE, J.
**\*1** Pro se plaintiff Gordon Roy Parker ("Parker"),
who is no stranger to this court, brings this action
against defendants Trustees of the University of
Pennsylvania ("Penn"), Learn the Skills
Corporation ("LTSC"), Formhandle
@Fastseduction.com ("Formhandle"), Paul J. Ross,
Matthew S. Wolf, and Thomas E. Geiger. Plaintiff's
amended complaint alleges violations of the
Racketeer Influenced and Corrupt Organizations
Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.,* the
Sarbanes-Oxley Act, 18 U.S.C. § 1513(e), the
Clayton Act, 15 U.S.C. § 12, the Lanham Act, 15
U.S.C. § 1125(a), and common law counts of civil
conspiracy, tortious interference, abuse of process,
fraudulent misrepresentation, and invasion of
privacy.

FN1. The amended complaint alleges that
Formhandle is one of the owners of LTSC.
Formhandle and LTSC are treated
interchangeably in the amended complaint,
so this Memorandum will refer only to
LTSC in the interest of clarity.

Before the court are the separate motions of
defendants Ross, LTSC and Geiger made pursuant
to Rule 12(b)(2) of the Federal Rules of Civil
Procedures to dismiss for lack of personal
jurisdiction and of defendants Penn and Wolf
pursuant to Rule 12(b)(6) for the failure to state a
claim on which relief may be granted. In addition,
plaintiff has filed a motion to conduct jurisdictional
discovery against Ross, LTSC and Geiger.

I.

For present purposes we assume plaintiff's
allegations to be true. *Markowitz v. Northeast Land
Co.,* 906 F.2d 100, 103 (3d Cir.1990). We note that
the amended complaint at issue before the court is
far from a model of clarity and in parts confusing, if
not incomprehensible. Moreover, it spans more than
75 pages and including over 100 footnotes. Though
not directly raised by defendants, the amended
complaint hardly complies with the "short and plain
statement" requirement under Rule 8(a) of the
Federal Rules of Civil Procedure.

Plaintiff alleges that defendants LTSC and Ross
were the principals in an association-in-fact,
Internet-based RICO enterprise. Defendants Geiger,
Penn and Wolf are alleged operatives in this
enterprise. In addition, the amended complaint
alleges misconduct by at least eight other
individuals not named as defendants.

In brief summary, plaintiff alleges defendants ran
this operation, referred to as "the Seduction Mafia,"
with the purpose of controlling the flow of revenue
from commerce relating to the "alt.seduction.fast" ("

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                        Page 2

**Slip Copy, 2006 WL 759693 (E.D.Pa.)**
**(Cite as: Slip Copy)**

ASF") USENET group. ASF is allegedly a "moderated" USENET group as opposed to an "unmoderated" group. The amended complaint does not define either of these terms. Plaintiff avers that USENET groups are non-commercial in nature.

> FN2. While not explained in plaintiff's amended complaint, a USENET group is apparently an Internet-based, topical online discussion forum that loosely resembles an electronic bulletin board.

The topic of discussion on ASF is alleged to be different types of "seduction" or "pick-up" methods for men to use in attracting women. Plaintiff and defendants Ross and LTSC are allegedly competitors in the profitable business of offering seduction self-help advice to these would-be Casanovas seeking help on the ASF USENET group. The gravamen of plaintiff's amended complaint appears to be that the Seduction Mafia has used the ASF discussion forum to promote the products of defendants Ross and LTSC to the financial gain of the Seduction Mafia, all while prohibiting plaintiff from posting messages about his own seduction theories and products on ASF. Plaintiff further alleges that defendants engaged in disparaging comments about plaintiff on the Internet serving to further cause him injury and deprive him of business. Plaintiff claims compensatory damages in excess of $2 billion, in addition to punitive damages and other injunctive relief.

**\*2** Plaintiff previously filed a suit similar to the instant action against defendants LTSC, Geiger, and Formhandle in *Parker v. Learn the Skills Corp.,* Civ. A. No. 03-6936 (hereinafter, "*Parker I*"). In that action, the late Judge James McGirr Kelly granted pro se defendant Geiger's motion to dismiss plaintiff's first amended complaint without prejudice due to its failure to comply with the "short and plain statement" requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure. *See Parker I,* Civ. A. No. 03-6936, 2004 WL 2384993 (E.D.Pa. Oct.25, 2004). The court later dismissed plaintiff's second amended complaint, again without prejudice, for failing to correct this same pleading

deficiency. *See* Order of Dismissal, No. 03-6936 (E.D.Pa. Dec. 3, 2004).

II.

We turn first to the separate motions of defendants Ross, LTSC and Geiger to dismiss for lack of personal jurisdiction made pursuant to Rule 12(b)(2). The amended complaint seeks recovery against these three defendants under the RICO Act, 18 U.S.C. § 1961 *et seq.,* the Clayton Act, 15 U.S.C. § 12, the Lanham Act, 15 U.S.C. § 1125(a), as well as common law counts of civil conspiracy, tortious interference and invasion of privacy. Plaintiff asserts that jurisdiction is proper and has opposed each defendant's motion to dismiss. In the alternative, he has filed a motion to conduct jurisdictional discovery against all three defendants. Ross, LTSC and Geiger all oppose such discovery. It is agreed by the parties that neither Ross nor Geiger resides in Pennsylvania, and no information has been provided or alleged regarding the status of LTSC.

> FN3. Pro se defendant Geiger alternatively moves to strike the amended complaint, or to dismiss for failure to state a claim upon which relief can be granted or improper venue, or for a change of venue.

First we must determine whether this court's assertion of personal jurisdiction over Ross, LTSC and Geiger is proper. Rule 4(e) of the Federal Rules of Civil Procedure allows a district court to "assert personal jurisdiction over a non-resident to the extent allowed by the law of the forum state." *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 63 (3d Cir.1984). Pennsylvania has enacted an expansive "long-arm" statute. *See* 42 Pa. Cons.Stat. Ann. § 5322. In addition to enumerating examples of specific acts subjecting persons to the jurisdiction of Pennsylvania courts, the statute provides that a court may exercise personal jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States." *Id.* § 5322(b); *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1221 (3d Cir.1992)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 3

**Slip Copy, 2006 WL 759693 (E.D.Pa.)**
**(Cite as: Slip Copy)**

. Thus, we may validly exercise jurisdiction over a non-resident defendant under Pennsylvania's long-arm statute if doing so is consistent with the Due Process Clause of the Fourteenth Amendment to the Constitution. *See id.* at 1221.

Therefore, we must determine whether the defendants' contacts with Pennsylvania are sufficient to support either general or specific jurisdiction. *Id.; Pennzoil Products Co. v. Colelli & Assoc., Inc.,* 149 F.3d 197, 200 (3d Cir.1998). A court may exercise either general or specific personal jurisdiction over a defendant. *Remick v. Manfredy,* 238 F.3d 248, 255 (3d Cir.2001). General jurisdiction applies when the cause of action does not arise out of and is not related to the defendant's contacts with the forum and requires that the defendants' contacts to the forum be " continuous and substantial." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir.1987) (citations omitted).

**\*3** To make a finding of specific jurisdiction, however, our Court of Appeals has explained that we "appl[y] two standards, the first mandatory and the second discretionary." *Pennzoil,* 149 F.3d at 201 . First, we must determine whether the defendant has sufficient minimum contacts with the forum " necessary for the defendant to have reasonably anticipate[d] being haled into court there" to litigate a "cause of action arising out of [the] defendant's forum-related activities." *Id.; Remick,* 238 F.3d at 255; *see also World-Wide Volkswagen Corp. v. World Wide Volkswagen,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The minimum contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Mesalic v. Fiberfloat Corp.,* 897 F.2d 696 (3d Cir.1990). If this court determines that the defendant has adequate contacts with the forum to satisfy the Constitution, we "may inquire whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Pennzoil,* 149 F.3d at 201.

Plaintiff concedes that general jurisdiction is

inapplicable and that the appropriate inquiry here is whether defendants have "minimum contacts" with Pennsylvania sufficient for this court to exercise specific jurisdiction. Plaintiff asserts that jurisdiction over Ross, a resident of California, is proper because Ross has engaged in conduct " expressly targeted at Pennsylvania residents," including the marketing of his seduction materials, the publication of a mailing list, and certain undescribed telephone marketing. *See* Am. Compl. ¶ 12. Ross has submitted an affidavit denying any contacts with Pennsylvania. Plaintiff alleges jurisdiction over defendant LTSC by virtue of LTSC's "soliciting and receiving donations on its website from internet users all over the world, including in the Commonwealth of Pennsylvania." *Id.* ¶ 13. Finally, plaintiff simply alleges that jurisdiction over Geiger, a resident of Mississippi, is proper because his conduct "was expressly targeted at Pennsylvania residents or occurred in Pennsylvania." *Id.* ¶ 11.

Our Court of Appeals has made clear that where a defendant has raised a jurisdictional defense, the plaintiff bears the burden of establishing that either general or specific jurisdiction can be exercised. *Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros. Inc.,* 983 F.2d 551, 554 (3d Cir.1993); *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 66-67 n. 9 (3d Cir.1984). General averments in an unverified complaint or response without the support of "sworn affidavits or other competent evidence" are insufficient to establish jurisdictional facts. *Time Share Vacation Club,* 735 F.2d at 67 n. 9 .

Plaintiff has attached no affidavit and presented the court with no competent evidence on which we could reasonably rely in order to base a finding of personal jurisdiction. We are left with only the conclusory and extremely vague allegations of minimum contacts contained in the amended complaint and reasserted in plaintiff's memoranda of law. The amended complaint alludes only to the jurisdiction-conferring conduct of defendants Ross, LTSC and Geiger in highly generalized terms. In any event, in our circuit "at no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 4

Slip Copy, 2006 WL 759693 (E.D.Pa.)
**(Cite as: Slip Copy)**

dismiss for lack of in personam jurisdiction." *Time Share Vacation Club,* 735 F.2d at 67 n. 9. To the extent plaintiff attempts to rely exclusively on the allegations contained in his amended complaint, he falls short of his burden of establishing that jurisdiction can be exercised.

**\*4** Alternatively, plaintiff moves to conduct jurisdictional discovery. The Court of Appeals has held that district courts "are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.' " *Toys 'R' Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 456 (3d Cir.2003) (citation omitted). Applying that standard, other courts in this district have denied jurisdictional discovery where the party that bears the burden of establishing jurisdiction failed to establish a "threshold prima facie showing" of personal jurisdiction. *See, e.g., Southern Seafood Co. v. Holt Cargo Systems, Inc.,* Civ. A. No. 96-5217, 1997 WL 539763 at \*8 (E.D.Pa. Aug.11, 1997); *Mass. Sch. of Law at Andover, Inc. v. Am. Bar. Ass'n,* 846 F.Supp. 374, 378 (E.D.Pa.1994); *Karibjanian v. Thomas Jefferson Univ. Hosp.,* Civ. A. No. 89-1891, 1990 WL 6131 at \*1 (E.D. Pa. Jan 25, 1990). A plaintiff meets this threshold showing by offering "factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state.' " *Toys 'R' Us,* 318 F.3d at 456 (citing *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992)). In addition, the general presumption in favor of discovery is reduced when the defendants in question are individuals as opposed to corporations. *See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 107 F.3d 1026, 1042 (3d Cir.1997).

Looking at plaintiff's amended complaint, we cannot say the jurisdictional allegations suggest " with reasonable particularity" the possible existence of the requisite minimum contacts. Plaintiff alleges jurisdiction over defendant Geiger based on the bare allegation that Geiger has "contacts" with Pennsylvania. *See* Am. Compl. ¶ 11. Against Ross and LTSC, plaintiff alleges generalized conduct that was "expressly targeted at Pennsylvania residents" or revenue that was earned from "internet users all over the world, including" Pennsylvania. *See id.* ¶

¶ 12-13. These strike us as highly analogous to the "mere unsupported allegation that the defendant ' transacts business' in an area" or the allegation that defendants "must have" engaged in jurisdiction-conferring conduct. *Mass. Sch. of Law,* 107 F.3d at 1042, *aff'g* 846 F.Supp. at 378. In *Massachusetts School of Law,* the Court of Appeals affirmed the dismissal of 21 individuals on the basis of a lack of personal jurisdiction as well as the concurrent denial of jurisdictional discovery. 107 F.3d at 1042. The denial of discovery was appropriate due to the failure to "allege with particularity" any credible threshold minimum contacts. 846 F.Supp. at 378. Here, plaintiff has submitted no affidavit or otherwise competent evidence to lead us to believe his allegation of personal jurisdiction over defendants Ross, LTSC and Geiger is anything more than "clearly frivolous. " Further, we are persuaded that it would be inappropriate to allow this serial litigant plaintiff " to conduct a fishing expedition to construct a basis for jurisdiction" and in the process to put Ross, LTSC and Geiger to any further expense. *Ames v. Whitman's Chocolates,* Civ. A. No. 91-3271, 1991 WL 281798, at \*3 (E.D.Pa. Dec.30, 1991). Accordingly, we will deny the motion to conduct jurisdictional discovery and grant the separate motions of defendants Ross, LTSC and Geiger to dismiss for lack of personal jurisdiction.

### III.

**\*5** We turn next to the motions to dismiss pursuant to Rule 12(b)(6) by defendants Penn and Wolf. In considering a motion to dismiss for failure to state a claim, we accept as true all well-pleaded facts in the amended complaint and draw any reasonable inferences in plaintiff's favor. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir.1994). We should grant the motion only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" contained in the amended complaint. *Id.*

Plaintiff asserts three counts against Wolf all arising from his role as counsel for LTSC in *Parker I:*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 759693 (E.D.Pa.)
**(Cite as: Slip Copy)**

participation in the RICO enterprise, civil conspiracy, and an abuse of process claim. According to plaintiff, Wolf allegedly participated in the RICO enterprise by providing unauthorized legal services to the Seduction Mafia. These legal services consisted of Wolf's having moved to dismiss plaintiff's first amended complaint in *Parker I* in its entirety before Judge Kelly, rather than just against Wolf's client LTSC. Plaintiff alleges that defendant Wolf conspired along with defendants Formhandle and LTSC in that action to " abuse process against plaintiff by agreeing to use Defendant Wolf's representation of LTSC as a vehicle for improperly and illegally moving this court to dismiss claims against the other defendants" in *Parker I. See* Am. Compl. ¶ 187. Wolf moves pursuant to Rule 12(b)(6) to dismiss all three counts against him on several grounds, including immunity for his actions.

Plaintiff's causes of action for civil conspiracy and abuse of process are governed by Pennsylvania law. Attorneys-at-law in the Commonwealth may assert judicial privilege or, as it is often called, "judicial immunity," as an affirmative defense to alleged torts that occur in connection with a judicial proceeding. *Panitz v. Behrend,* 429 Pa.Super. 273, 632 A.2d 562, 564 (Pa.Super.Ct.1993). This immunity covers all "communications which are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought." *Post v. Mendel,* 510 Pa. 213, 507 A.2d 351, 353 (1986). "[I]f the challenged conduct occurs outside the scope of representation, no reason for immunity exists." *Heffernan v. Hunter,* 189 F.3d 405, 413 (3d Cir.1999).

Plaintiff's core contention against Wolf is that he was acting outside the scope of his representation of LTSC in *Parker I* when he moved to dismiss plaintiff's first amended complaint in its entirety before Judge Kelly. We disagree. The motion was clearly filed "in the regular course of judicial proceedings." *Post,* 507 A.2d at 353. Further, we are persuaded that it was "pertinent and material to the redress or relief sought" when Wolf advocated that the entire amended complaint filed by plaintiff was meritless in *Parker I. Id.* Plaintiff cites no case where any court has found such basic attorney

advocacy "outside the scope of representation." In any event, we see no cognizable harm to plaintiff resulting from such advocacy since Judge Kelly simply dismissed the amended complaint pursuant to Rule 8(a) of the Federal Rules of Civil Procedure and denied as moot the motion in question filed by Wolf. We conclude attorney Wolf is entitled to " judicial immunity" for filing the motion to dismiss in *Parker I.* Thus, we will grant the motion of Wolf to dismiss the conspiracy and abuse of process counts.

**\*6** We find that plaintiff's RICO claims against Wolf, alleging separate violations of 18 U.S.C. §§ 1962(a), (b), (c) and (d), must likewise fail. Plaintiff alleges that Wolf participated in the RICO enterprise by providing "illegal legal services" to the Seduction Mafia. *See* Am. Compl. ¶¶ 151-56. Again, these alleged "services" consisted solely of Wolf's arguing on behalf of LTSC that plaintiff's amended complaint in *Parker I* should be dismissed in its entirety. Again, Judge Kelly dismissed the motion filed by Wolf as moot when he granted Geiger's motion to dismiss pursuant to Rule 8(a) in *Parker I. See Parker I,* Civ. A. No. 03-6936, 2004 WL 2384993 at ¶ 5 (E.D.Pa. Oct.25, 2004). The United States Supreme Court has explained that a RICO "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 (1985). The allegedly "illegal legal services" consisting solely of a motion filed by Wolf and dismissed as moot by Judge Kelly does not constitute a cognizable injury to plaintiff's " business or property" arising from Wolf's conduct. In addition, the amended complaint fails to allege the required "pattern of racketeering activity" in that there is only one alleged act of possible misconduct by Wolf. *Id.* at 495. For these reasons, the RICO claims against defendant Wolf must also be dismissed.

Finally, we turn to Penn's motion to dismiss the counts brought against it. The amended complaint asserts three counts against Penn: a RICO violation under 18 U.S.C. § 1962(c) and (d), as well as state law claims for civil conspiracy and fraudulent misrepresentation. These claims arise from one

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                              Page 6

**Slip Copy, 2006 WL 759693 (E.D.Pa.)**
**(Cite as: Slip Copy)**

primary relevant allegation: that a Penn employee, Detective James B. Blackmore, committed perjury in testifying before Judge Kelly on February 12, 2003 that he did not know the identity of a particular Seduction Mafia operative known as " Wintermute." Neither Detective Blackmore nor Wintermute is named as a defendant in the amended complaint.

Penn moves to dismiss the counts brought against it on several alternative grounds. First, Penn contends that the conspiracy and fraud counts must be dismissed as time-barred by the applicable statute of limitations. Pennsylvania has a two-year statute of limitations for claims for fraud. *See Drelles v. Manufacturers Life Ins. Co.,* 881 A.2d 822, 831 (Pa.Super.Ct.2005); 42 Pa. Cons.Stat. Ann. § 5524(7). In addition, a cause of action for civil conspiracy adopts the statute of limitations of the overt act committed in furtherance of the conspiracy. *See Chappelle v. Chase,* 487 F.Supp. 843, 846 (E.D.Pa.1980). Here, the overt act in question is fraud, so the statute of limitations for the conspiracy count is also two years. *See* Am. Compl. ¶ 187. Because the complaint in this action was not initially filed until June 9, 2005, more than two years after Detective Blackmore testified on February 12, 2003, Penn contends both the conspiracy and fraud counts are time-barred. To the extent that the amended complaint seeks recovery for allegedly fraudulent misrepresentations made more than two years prior to the filing of his complaint, we agree. *See id.* ¶¶ 98, 99, 111, 187, 239. Any allegations based on conduct prior to two years before the complaint was filed are untimely and cannot serve as a basis for recovery for either fraud or conspiracy.

**\*7** Penn further contends that, to the extent the amended complaint alleges fraudulent conduct that is not time-barred, the fraud count must be dismissed for failing to satisfy the pleading requirements for fraudulent representation pursuant to Rule 9(b) of the Federal Rules of Civil Procedure . To satisfy the "particularity" requirement for pleading an "averment of fraud," the plaintiff must plead with particularity the "circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they

are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir.1984). While the plaintiff need not plead the "date, place or time" of the fraud, he must at least use "precision and some measure of substantiation" in his allegations of fraud. *Id.*

Here, the amended complaint states only that " During the times in controversy, Defendant [Penn] has made several deliberately misleading representations to Plaintiff, whereby it feigned ignorance regarding Wintermute's identity, for the express purposes of obstructing justice, protecting a student and future potential contributing alumni, and obtaining goodwill by sending a message to incoming students that they 'have their back.' ' Am. Compl. ¶ 239. Plaintiff fails to disclose the substance of these misrepresentations and offers nothing more to substantiate the allegation that Penn was acting for the express purpose of " obstructing justice." Furthermore, plaintiff fails to plead with the necessary specificity any detrimental reliance on the representations made by Penn. Such vague and conclusory allegations of fraudulent conduct cannot satisfy the requirements of Rule 9(b) . The fraudulent misrepresentation count therefore must be dismissed.

Second, we find that plaintiff has failed properly to plead a conspiracy charge. In Pennsylvania, "to state a cause of action for civil conspiracy, the following elements are required: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.,* 337 F.3d 297, 313 (3d Cir.2003). This "combination" requires that "two or more persons combine or enter an agreement" to commit the unlawful act. *Burnside v. Abbott Labs. .,* 351 Pa.Super. 264, 505 A.2d 973, 980 (Pa.Super.Ct.1985). There is no allegation in the amended complaint that Penn or its employee Detective Blackmore entered into any agreement with this so-called "Wintermute" to undertake the allegedly fraudulent misrepresentations. Instead,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                      Page 7

**Slip Copy, 2006 WL 759693 (E.D.Pa.)**
**(Cite as: Slip Copy)**

plaintiff claims only that Penn and Blackmore knew of Wintermute's identity and did not disclose it to him. Even assuming this is true, without more it is insufficient to maintain a claim of conspiracy against Penn absent an agreement to withhold the information. In Pennsylvania, an "agents of a single entity cannot conspire among themselves" or with their employer. *Rutherfoord v. Presbyterian-Univ. Hosp.,* 417 Pa.Super. 316, 612 A.2d 500, 508-09 (Pa.Super.Ct.1992); *see also Ne. Jet Ctr., Ltd. v. Lehigh-Northampton Airport Auth.,* 767 F.Supp. 672, 684-85 (E.D.Pa.1991). The conspiracy count against Penn must be dismissed.

**\*8** Finally, Penn contends that the amended complaint fails properly to plead a cognizable predicate act in support of plaintiff's RICO claim. The Supreme Court has held that a complaint must allege a defendant participated through "a pattern of racketeering activity," i.e., through the commission of at least two racketeering acts. *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 (1985). The amended complaint alleges that Penn committed predicate acts by refusing to identify Wintermute and disclaiming knowledge of his identity at three separate times. *See* Am. Compl. ¶ 165. The amended complaint contains no allegation that this conduct "amount[s] to or pose[s] a threat of continued criminal activity." *See H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Moreover, even assuming that the so-called predicate acts occurred, none of them is covered by the definition of "racketeering activity" in 18 U.S.C. § 1961(1). In addition, plaintiff has not alleged he has suffered an injury to his business or property sufficient to confer standing against Penn. The RICO claims against Penn must therefore be dismissed as well.

### ORDER

AND NOW, this 23rd day of March, 2006, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of defendant Paul J. Ross to dismiss for lack of personal jurisdiction is GRANTED;

(2) the motion of defendant Learn the Skills Corporation to dismiss for lack of personal jurisdiction is GRANTED;

(3) the motion of defendant Thomas E. Geiger to dismiss for lack of personal jurisdiction is GRANTED;

(4) the motion of defendant Matthew S. Wolf to dismiss for failure to state a claim upon which relief may be granted is GRANTED;

(5) the motion defendant Trustees of the University of Pennsylvania to dismiss for failure to state a claim upon which relief may be granted is GRANTED; and

(6) the motion of plaintiff Gordon Roy Parker to conduct jurisdictional discovery against defendants Ross, Learn the Skills Corporation and Geiger is DENIED.

E.D.Pa.,2006.
Parker v. Learn the Skills Corp.
Slip Copy, 2006 WL 759693 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 3723696 (Trial Motion, Memorandum and Affidavit) Order (Nov. 14, 2005)
• 2005 WL 3135453 (Trial Motion, Memorandum and Affidavit) Defendant Learn the Skills Corp.'s Memorandum of Law in Support of Its Cross-Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(B)(6) and in Opposition to Plaintiff's Motion for Default (Oct. 17, 2005)
• 2005 WL 3135449 (Trial Motion, Memorandum and Affidavit) Order (Oct. 11, 2005)
• 2005 WL 2687107 (Trial Motion, Memorandum and Affidavit) Penn's Motoin to Dismiss (Aug. 29, 2005)
• 2:05cv02752 (Docket) (Jun. 09, 2005)
• 2005 WL 3723701 (Trial Motion, Memorandum and Affidavit) Defendant Learn the Skills Corp.'s Memorandum of Law in Support of its Motion to Dismiss (2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



--- F.Supp.2d ----                                                                    Page 1

--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212
**(Cite as: --- F.Supp.2d ----)**

Briefs and Other Related Documents

United States District Court,E.D. Pennsylvania.
Gordon Roy PARKER
v.
GOOGLE, INC.
**No. Civ.A. 04-CV-3918.**

March 10, 2006.

**Background:** E-book writer sued Internet search engine operator for, inter alia, direct and contributory copyright infringement. Operator moved to dismiss.

**Holdings:** The District Court, Surrick, J., held that:

5(1) operator's archiving of, caching of, or providing access to writer's usenet postings of copyrighted material was not infringing;

11(2) operator was immune from tort liability arising from its archiving of, caching of, or providing access to allegedly defamatory, unauthorized, or threatening usenet postings; and

13(3) operator's listing of website that was critical of plaintiff did not subject operator to liability for false designation of origin.

Motion granted.

**[1] Federal Civil Procedure 170A** ⌖**657.5(1)**

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(A) Pleadings in General
            170Ak654 Construction
                170Ak657.5 Pro Se or Lay Pleadings
                    170Ak657.5(1) k. In General. Most

Cited Cases
Court reviews pro se complaints more leniently than those crafted by lawyers.

**[2] Copyrights and Intellectual Property 99** ⌖**51**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)1 What Constitutes Infringement
                99k51 k. Nature and Elements of Injury. Most Cited Cases
To prove copyright infringement, plaintiff must show: (1) ownership of valid copyright and (2) copying of protectable expression by defendant.

**[3] Copyrights and Intellectual Property 99** ⌖**53(1)**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)1 What Constitutes Infringement
                99k53 Acts Constituting Infringement
                    99k53(1) k. In General. Most Cited Cases
Copyright infringement occurs when defendant violates one of copyright holder's exclusive rights. 17 U.S.C.A. § 106.

**[4] Copyrights and Intellectual Property 99** ⌖**52**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)1 What Constitutes Infringement
                99k52 k. Intent or Purpose. Most Cited Cases
Copyright infringement plaintiff must show volitional conduct on part of defendant in order to support finding of direct infringement.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                              Page 2

--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212
**(Cite as: --- F.Supp.2d ----)**

**[5] Copyrights and Intellectual Property 99**☞
**67.3**

99 Copyrights and Intellectual Property
   99I Copyrights
      99I(J) Infringement
         99I(J)1 What Constitutes Infringement
           99k67.3 k. Other Works. Most Cited
Cases
Internet search engine operator's automatic
archiving of usenet posting, and production of
excerpt from and hyperlink to posting in response to
search requests, did not constitute direct
infringement of writer's copyright in posted
material; operator's conduct did not have volitional
character required for finding of infringement.

**[6] Copyrights and Intellectual Property 99**☞
**67.3**

99 Copyrights and Intellectual Property
   99I Copyrights
      99I(J) Infringement
         99I(J)1 What Constitutes Infringement
           99k67.3 k. Other Works. Most Cited
Cases
Internet search engine operator's automatic caching
of web pages as means of indexing websites did not
constitute direct infringement of writer's copyright
in usenet-posted material; operator's conduct came
within statutory safe harbor. 17 U.S.C.A. § 512(b).

**[7] Copyrights and Intellectual Property 99**☞
**77**

99 Copyrights and Intellectual Property
   99I Copyrights
      99I(J) Infringement
         99I(J)2 Remedies
           99k72 Actions for Infringement
              99k77 k. Persons Liable. Most
Cited Cases
One who, with knowledge of copyright infringing
activity, induces, causes, or materially contributes
to infringing conduct of another may be liable as
contributory infringer.

**[8] Copyrights and Intellectual Property 99**☞
**77**

99 Copyrights and Intellectual Property
   99I Copyrights
      99I(J) Infringement
         99I(J)2 Remedies
           99k72 Actions for Infringement
              99k77 k. Persons Liable. Most
Cited Cases
Internet search engine operator's archiving of usenet
postings, and its provision of them in response to
search requests, did not constitute contributory
infringement of writer's copyright in posted
material, absent claim that operator was on notice of
any third party's direct infringement.

**[9] Copyrights and Intellectual Property 99**☞
**77**

99 Copyrights and Intellectual Property
   99I Copyrights
      99I(J) Infringement
         99I(J)2 Remedies
           99k72 Actions for Infringement
              99k77 k. Persons Liable. Most
Cited Cases
Defendant is vicariously liable for copyright
infringement if he enjoys direct financial benefit
from another's infringing activity and has right and
ability to supervise infringing activity.

**[10] Copyrights and Intellectual Property 99**☞
**77**

99 Copyrights and Intellectual Property
   99I Copyrights
      99I(J) Infringement
         99I(J)2 Remedies
           99k72 Actions for Infringement
              99k77 k. Persons Liable. Most
Cited Cases
Internet search engine operator's archiving of usenet
postings, and its provision of them in response to
search requests, did not give rise to vicarious
liability for infringement of writer's copyright in
posted material, absent allegation of any specific
conduct by third party which operator may have had
right and ability to supervise, or that operator had
any obvious and direct financial interest in
exploitation of copyrighted materials.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                    Page 3

--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212
**(Cite as: --- F.Supp.2d ----)**

**[11] Libel and Slander 237 ☞28**

237 Libel and Slander
  237I Words and Acts Actionable, and Liability Therefor
    237k26 Repetition
      237k28 k. By Others in General. Most Cited Cases

**Telecommunications 372 ☞1344**

372 Telecommunications
  372VIII Computer Communications
    372k1339 Civil Liabilities; Illegal or Improper Purposes
      372k1344 k. Persons and Entities Liable; Immunity. Most Cited Cases

**Torts 379 ☞355**

379 Torts
  379IV Privacy and Publicity
    379IV(B) Privacy
      379IV(B)3 Publications or Communications in General
        379k355 k. Defenses in General. Most Cited Cases

Internet search engine operator was immune, under Communications Decency Act, from any defamation, invasion of privacy, or negligence liability arising from its archiving of, caching of, or providing access to allegedly defamatory, unauthorized, or threatening usenet postings; operator could not be held liable as publisher or speaker of third-party content. Communications Act of 1934, § 230(c, e), 47 U.S.C.A. § 230(c, e).

Internet search engine operator was immune, under Communications Decency Act, from any defamation, invasion of privacy, or negligence liability arising from its archiving of, caching of, or providing access to allegedly defamatory, unauthorized, or threatening usenet postings; operator could not be held liable as publisher or speaker of third-party content. Communications Act of 1934, § 230(c, e), 47 U.S.C.A. § 230(c, e).

Internet search engine operator was immune, under Communications Decency Act, from any

defamation, invasion of privacy, or negligence liability arising from its archiving of, caching of, or providing access to allegedly defamatory, unauthorized, or threatening usenet postings; operator could not be held liable as publisher or speaker of third-party content. Communications Act of 1934, § 230(c, e), 47 U.S.C.A. § 230(c, e).

**[12] Trademarks 382T ☞1084**

382T Trademarks
  382TIII Similarity Between Marks; Likelihood of Confusion
    382Tk1083 Nature of Confusion
      382Tk1084 k. In General. Most Cited Cases

**Trademarks 382T ☞1421**

382T Trademarks
  382TVIII Violations of Rights
    382TVIII(A) In General
      382Tk1418 Practices or Conduct Prohibited in General; Elements
        382Tk1421 k. Infringement. Most Cited Cases

Essential element in trademark infringement claim under Lanham Act is that alleged infringement creates likelihood of confusion on part of consumers as to source of goods. Lanham Trade-mark Act, § 43(a), 15 U.S.C.A. § 1125(a).

**[13] Trademarks 382T ☞1116**

382T Trademarks
  382TIII Similarity Between Marks; Likelihood of Confusion
    382Tk1116 k. Internet Cases. Most Cited Cases

**Trademarks 382T ☞1565**

382T Trademarks
  382TIX Actions and Proceedings
    382TIX(A) In General
      382Tk1564 Persons Liable
        382Tk1565 k. In General. Most Cited Cases

Internet search engine operator's listing of website

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                    Page 4

--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212
**(Cite as: --- F.Supp.2d ----)**

that was critical of plaintiff did not subject operator to liability for false designation of origin; even if website used plaintiff's trademark, there was no likelihood of confusion on issue of whether plaintiff was website's creator and, in any event, operator had no role in creation of website's content.

**[14] Trademarks 382T ⇐1565**

382T Trademarks
   382TIX Actions and Proceedings
     382TIX(A) In General
      382Tk1564 Persons Liable
       382Tk1565 k. In General. Most Cited Cases
With respect to liability for trademark violations, participation in activities merely related to infringing acts is not enough; personal liability extends only to those persons who actively participate as moving force in decision to engage in infringing acts or otherwise cause infringement as a whole to occur.

**[15] Trade Regulation 382 ⇐870(2)**

382 Trade Regulation
   382II Statutory Unfair Trade Practices
     382II(B) Other Statutes, Liabilities and Remedies Under
      382II(B)1 Unfair Trade Practices in General
       382k870 Unlawful Advertising or Labelling
        382k870(2) k. Misrepresentation of Origin. Most Cited Cases

**Trademarks 382T ⇐1520**

382T Trademarks
   382TVIII Violations of Rights
     382TVIII(D) Defenses, Excuses, and Justifications
      382Tk1520 k. In General. Most Cited Cases
Internet search engine operator's immunity, under Communications Decency Act, from any tort liability arising from its archiving of, caching of, or providing access to third-party content did not extend to Lanham Act claims for false designation

of origin; Act carved out exception from immunity for intellectual property law claims. Lanham Trade-mark Act, § 43(a), 15 U.S.C.A. § 1125(a); Communications Act of 1934, § 230(c)(2), 47 U.S.C.A. § 230(c)(2).

Internet search engine operator's immunity, under Communications Decency Act, from any tort liability arising from its archiving of, caching of, or providing access to third-party content did not extend to Lanham Act claims for false designation of origin; Act carved out exception from immunity for intellectual property law claims. Lanham Trade-mark Act, § 43(a), 15 U.S.C.A. § 1125(a); Communications Act of 1934, § 230(c)(2), 47 U.S.C.A. § 230(c)(2).

**[16] Process 313 ⇐168**

313 Process
   313IV Abuse of Process
     313k168 k. Nature and Elements of Cause of Action. Most Cited Cases
In Pennsylvania, "abuse of process" involves perversion of legal process to accomplish some unlawful purpose for which it was not designed.

**[17] Process 313 ⇐171**

313 Process
   313IV Abuse of Process
     313k171 k. Actions. Most Cited Cases
Copyright infringement defendant's allegation that plaintiff had "history of vexatious litigation" did not constitute abuse of process, under Pennsylvania law; allegation was not perversion of legal process to accomplish some unlawful purpose.

**Trademarks 382T ⇐1800**

382T Trademarks
   382TXI Trademarks and Trade Names Adjudicated
     382Tk1800 k. Alphabetical Listing. Most Cited Cases
RayFAQ.

Gordon Roy Parker, Philadelphia, PA, Pro se.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                    Page 5

--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212
**(Cite as: --- F.Supp.2d ----)**

Bart E. Volkmer, David H. Kramer, Leo P. Cunningham, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, John E. Riley, Vaira & Riley PC, Philadelphia, PA, for Google, Inc.

### *MEMORANDUM & ORDER*

SURRICK, District Judge.

**\*1** Presently before the Court is Defendant, Google, Inc.'s Motion To Dismiss Plaintiff's First Amended Complaint (Doc. No. 13). For the following reasons, Defendant's Motion will be granted.

### I. BACKGROUND

Defendant Google, Inc. ("Google") is a Delaware corporation with its headquarters in California. Google maintains a website that provides search technology, allowing users to search for, among other things, websites, products, and images. Google provides this service by "crawling" the web and then organizing the content in a searchable Web index. When a user types in a query, Google's proprietary technology produces a list of hyperlinks organized by their relevance and reliability. In the course of providing this service, Google makes a copy of each website and stores it in a "cache," a temporary storage tool. When it produces a list of results for a particular query, Google often includes links to these caches, noting that they are archival copies of the original web pages. Google also maintains the USENET, "a global system of online bulletin boards" (Doc. No. 13 at 2) and allows users to post and search archived messages on the system.

Pro se Plaintiff Gordon Roy Parker alleges that he is a writer and that he publishes his works on the internet under the name "Snodgrass Publishing Group." He maintains a website at www.cybersheet.com. Plaintiff further alleges that he has written and owns the registered copyright for, among other works, his e-book, "29 Reasons Not To Be A Nice Guy." Plaintiff is a participant in the USENET and, at one point, posted "Reason # 6" from his "29 Reasons" book to the USENET.

Parker filed his original Complaint on August 18, 2004. (Doc. No. 1.) He subsequently filed an Amended Complaint on October 22, 2004. (Doc.

No. 11.) In the Amended Complaint, Parker asserts eleven separate claims against Google and 50,000 " John Doe" Defendants who, he asserts, "represent Google's partners through its 'Adsense' and ' Adwords' programs" (Doc. No. 11 ¶ 3). The eleven claims are: (1) direct copyright infringement, (2) contributory copyright infringement, (3) vicarious copyright infringement, (4) defamation, (5) invasion of privacy, (6) negligence, (7) Lanham Act violations, (8) and (9) racketeering, (10) abuse of process, and (11) civil conspiracy.

In the instant Motion, Google contends that Parker's Amended Complaint should be dismissed for failure to comply with the "short and plain statement" requirement or, alternatively, for failure to state a claim.

### II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim. The purpose of a Rule 12(b)(6) motion to dismiss is not to resolve disputed facts or decide the merits of the case. *Tracinda Corp. v. DaimlerChrysler AG,* 197 F.Supp.2d 42, 53 (D.Del.2002). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Johnsrud v. Carter,* 620 F.2d 29, 33 (3d Cir.1980) (citing *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Swin Res. Sys., Inc. v. Lycoming County,* 883 F.2d 245, 247 (3d Cir.1989) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

**\*2** In evaluating a motion to dismiss, all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the nonmoving party. *Rocks v. City of Phila.,* 868 F.2d 644, 645 (3d Cir.1989) (citing *Wisniewski v. Johns-Manville Corp.,* 759 F.2d 271, 273 (3d Cir.1985)). The court may dismiss a complaint, " only if it is certain that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swin Res. Sys., Inc.,* 883 F.2d at 247.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                    Page 6

--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212
**(Cite as: --- F.Supp.2d ----)**

In deciding a motion to dismiss, federal courts are bound by the pleading requirements of Federal Rule of Civil Procedure 8(a). Fed.R.Civ.P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). All that is necessary, therefore, is a succinct summary sufficient to give the defendants fair notice of the nature of the claims asserted against them. *Leatherman v. Tarrant County,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (noting that the Federal Rules of Civil Procedure impose a particularity requirement in only two specific instances, fraud or mistake).

### III. LEGAL ANALYSIS

[1] We note preliminarily that Plaintiff's Complaint is voluminous, consisting of seventy-two pages with 291 separate paragraphs of factual averments and legal allegations. In fact, Plaintiff devotes the first forty-five pages and 129 paragraphs, before any legal claims are stated, to an overview of the alleged wrongful conduct. Plaintiff's inclusion of " 50,000 John Does" as defendants further confuses this already unwieldy Complaint. As a result, this rambling pleading is far from a "short and plain statement" as required by Rule 8(a). However, because we review pro se complaints more leniently than those crafted by lawyers, we will consider each claim separately, reviewing it under the requirements of Rule 8(a) and Rule 12(b)(6) respectively. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

### A. Direct Copyright Infringement (Count I)

Plaintiff claims that Google has committed direct copyright infringement in a number of ways. First, Parker alleges that he has a valid registered copyright for his e-book, "29 Reasons Not To Be A Nice Guy" including "Reason # 6," which he posted on the USENET. While it is not entirely clear, Parker appears to assert that Google's automatic archiving of this USENET posting constituted a direct infringement of his copyright. Parker also claims that when Google produces a list of hyperlinks in response to a user's search query and

excerpts his website in that list, Google is again directly infringing his copyrighted work. He alleges that this conduct constitutes a violation of the Copyright Act, 17 U.S.C. § 106 *et seq.,* and the Digital Millennium Copyright Act, 17 U.S.C. § 512.

[2][3][4] To prove copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright and (2) copying of protectable expression by the defendant. Infringement occurs when a defendant violates one of the exclusive rights of the copyright holder." *Netcom,* 907 F.Supp. at 1366-67 (internal citations omitted). In addition, "a plaintiff must also show volitional conduct on the part of the defendant in order to support a finding of direct copyright infringement." *Field v. Google, Inc.,* 412 F.Supp.2d 1106, 1114-15 (D.Nev.2006) (citing *Netcom,* 907 F.Supp. at 1369-70).

**\*3** [5] While Plaintiff has alleged a valid copyright, at least with respect to his "Reason # 6" USENET posting, the case law is clear that the activities of Google do not constitute direct infringement. The United States Court of Appeals for the Fourth Circuit has concluded that while the Copyright Act does not require that the person intentionally infringe a copyright, "it nonetheless requires *conduct* by a person who causes in some meaningful way an infringement." *CoStar Group, Inc. v. LoopNet, Inc.,* 373 F.3d 544, 549 (4th Cir.2004). Courts have drawn an analogy between an internet service provider ("ISP"), which maintains "a system that automatically transmits users' material but is itself indifferent to the material's content," and the owner of a copy machine who makes its use available to the public. *Id.* at 551. The Court in *Netcom* explicitly analogized the actions of an ISP that caches and archives data and the owner of a copy machine:
[T]he mere fact that [the ISP's] system incidentally makes temporary copies of plaintiffs' works does not mean [the ISP] has caused the copying. The court believes that [the ISP's] act of designing or implementing a system that automatically and uniformly creates temporary copies of all data sent through it is not unlike that of the owner of a copying machine who lets the public make copies with it.... Although copyright is a strict liability statute, there should still be some element of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                    Page 7

--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212
**(Cite as: --- F.Supp.2d ----)**

volition or causation which is lacking where a defendant's system is merely used to create a copy by a third party.

*Netcom,* 907 F.Supp. at 1368-70. When an ISP automatically and temporarily stores data without human intervention so that the system can operate and transmit data to its users, the necessary element of volition is missing. The automatic activity of Google's search engine is analogous. It is clear that Google's automatic archiving of USENET postings and excerpting of websites in its results to users' search queries do not include the necessary volitional element to constitute direct copyright infringement.

[6] In addition, while it is not entirely clear from Plaintiff's rambling Complaint, should Parker be claiming direct copyright infringement based on Google's automatic caching of web pages as a means of indexing websites and producing results to search queries, this activity does not constitute direct infringement either. Based upon Title II of the Digital Millennium Copyright Act, the Online Copyright Infringement Liability Limitation Act, 17 U.S.C. § 512(b), the District Court for the District of Nevada recently held that Google is entitled to the Act's safe harbor provisions for its system caching activities. *Field,* at 1122-25 (granting Google's motion for summary judgment that it qualifies for § 512(b) safe harbor for system caching). We conclude that Plaintiff has not stated a claim upon which relief can be granted based solely on Google's automatic system caching. We are satisfied that neither the automatic archiving of USENET messages and automatic caching of websites, nor the excerpting of passages from Plaintiff's website, constitutes direct infringement. Accordingly, we will dismiss this claim.

**B. Contributory Copyright Infringement (Count II)**

**\*4** Parker next claims that Google is liable under a theory of contributory copyright infringement because it allows users to "view[ ] infringed content, constituting an unauthorized distribution and resulting in an unauthorized copy" (Doc No. 11

¶ 146) and because it publishes "compilations of Plaintiff's USENET postings through its 'author search' feature of its USENET archive." (*Id.* ¶ 148.) Plaintiff again makes conclusory legal statements without sufficiently explaining the factual basis for his claims. Plaintiff's initial allegation is wholly unclear. It simply states that "a tremendous amount of copyright infringement takes place on and by virtue of Google's website everyday " and that "each and every one of those infringements is facilitated, encouraged, and made possible by Google." (*Id.* ¶ 146.) This broad statement is not very helpful. Next, Parker seems to claim that by archiving USENET postings-including those with copyrighted work-and providing a feature that allows users to search for all postings by a specific author, Google contributes to copyright infringement when the search returns postings containing copyrighted material.

[7] " 'One who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another may be liable as a contributory [copyright] infringer.' " *Ellison v. Robertson,* 357 F.3d at 1076 (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,* 443 F.2d 1159, 1162 (2d Cir.1971)). The Court of Appeals for the Ninth Circuit has interpreted the knowledge requirement to include "both those with actual knowledge and those who have reason to know of direct infringement." *Id.* In essence, in order to claim that Google is a contributory infringer, Plaintiff must allege first, that he had registered copyrights that were infringed by a third party and second, that Google authorized or assisted that third party. That "authorization or assistance must bear some direct relationship to the infringing acts, and the person rendering such assistance or giving such authorization must be acting in concert with the infringer." 3-12 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.04[A][2][a] (2005).

[8] The paragraphs in Plaintiff's Complaint that address contributory copyright infringement do not clearly allege third party infringement and contribution by Google. However, based on the lengthy factual averments that precede Plaintiff's legal claims, we understand Parker's Complaint to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                    Page 8

--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212
**(Cite as: --- F.Supp.2d ----)**

allege the following: Parker makes a post to the USENET which is then copied by a third party in its own post. Google archives these postings and provides them in search results when other USENET users search under "author search" for Plaintiff's name. However, this allegation fails to sufficiently allege contributory infringement for two reasons. First, Parker fails to allege infringement of a specific copyrighted work. In fact, in this section, Parker makes no mention of any specific work and refers only to "infringed content" and "USENET postings," neither of which is a registered work as required by the Copyright Act. *See* 17 U.S.C. § 411 ("no action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title"). Second, Parker fails to allege that Google had requisite knowledge of a third party's infringing activity, a failure that is fatal to this claim. *Cf. Ellison,* 357 F.3d at 1077 (finding that plaintiff emailed AOL about his copyright infringement claim and that AOL, despite its changed e-mail address, should have been on notice of the infringing activity). Thus, we conclude that Plaintiff fails to state a claim for contributory copyright infringement.

#### C. Vicarious Copyright Infringement (Count III)

**\*5** Plaintiff next claims that Google is liable for vicarious copyright infringement, alleging that Google has "the right and ability to supervise and/or control the infringing conduct of itself and its users" and that Google "derived substantial financial benefit ... in the form of advertising revenue and goodwill." (Doc. No. 11 ¶¶ 156-157.) Parker makes no specific allegations regarding what the infringing conduct is, nor does he refer to any specific registered works.

[9] "A defendant is vicariously liable for copyright infringement if he enjoys a direct financial benefit from another's infringing activity and 'has the right and ability to supervise' the infringing activity." *Ellison,* 357 F.3d at 1076 (quoting *A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1022 (9th Cir.2001)). There are two elements to a successful

claim of vicarious copyright infringement: (1) "the right and ability to supervise the infringing conduct" and (2) " 'an obvious and direct financial interest in the exploitation of copyrighted materials.' " Nimmer, *supra,* § 12.04[A][1] (quoting *Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 307 (2d Cir.1963)). Obviously, without a specific allegation of infringing conduct, these two elements cannot be demonstrated.

[10] Here, Plaintiff's claim of vicarious copyright infringement must fail. Plaintiff has again failed to allege any infringing conduct. He points to no specific registered works that were infringed nor does he allege specific conduct by a third party which Google may have had the right and ability to supervise. Next, Plaintiff fails to allege an "obvious and direct financial interest in the exploitation of copyrighted materials." Parker alleges merely that Google's advertising revenue is directly related to the number of Google users and that the number of users "is dependent directly on Google's facilitation of and participation in the alleged infringement." (Doc. No. 11 ¶ 157.) This vague and conclusory statement does not allege any actual relationship between infringing activity and the number of users and thus does not allege obvious and direct financial interest sufficient to maintain this claim of vicarious infringement. *See Ellison,* 357 F.3d at 1079 (vicarious copyright infringement claim fails where "record lacks evidence that AOL attracted or retained subscriptions because of the infringement or lost subscriptions because of AOL's eventual obstruction of the infringement"); *see also* Nimmer, *supra,* § 12B.01[A][1] ("[L]arge, commercial ISPs derive insufficient revenue from isolated infringing bits, in the context of the billions of bits that cross their servers to characterize them as financially benefiting from the conduct of which complaint is made."). Accordingly, we will dismiss Plaintiff's claim for vicarious copyright infringement.

#### D. Torts of Defamation (Count IV), Invasion of Privacy (Count V), and Negligence (Count VI)

**\*6** [11] In Counts IV, V, and VI, Plaintiff alleges that Google is liable for the torts of defamation, invasion of privacy, and negligence. Each of these

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                          Page 9

--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212
**(Cite as: --- F.Supp.2d ----)**

claims is based on separate conduct. However, because we conclude that Google cannot be liable for any of these torts under the Communications Decency Act ("CDA"), 47 U.S.C. § 230 *et seq.*, we will deal with them together. Parker alleges that Google is liable for defamation because it archived defamatory messages posted by USENET users and because of defamatory statements located on a website Parker calls the "RayFAQ website," which was in Google's cache. Parker alleges that Google is liable for invasion of privacy because the act of Google users putting in a search query of his name leads Google to produce a list of websites in which his name appears, thus creating what he calls "an unauthorized biography of Plaintiff that is an invasion of his right to privacy." (Doc. No. 11 ¶ 178.) Finally, Parker alleges that Google is liable for negligence for continuing to archive the "RayFAQ website" after being put on notice that it contained defamatory and threatening messages.

Without examining the specific elements of each of these claims, we note that each claim revolves around the tortious acts of a third party for which Parker holds Google accountable by virtue of its archived USENET system, its website search tool, and its caching system. We agree with Defendant that Google is immune from such state tort claims under § 230 of the CDA. Section 230 provides that: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). In addition, the statute provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id.* § 230(e)(3). The intent of this provision is to " 'preclude [ ] courts from entertaining claims that would place a computer service provider in a publisher's role.' " *Green v. Am. Online (AOL),* 318 F.3d 465, 471 (3d Cir.2003) (quoting *Zeran v. Am. Online, Inc.,* 129 F.3d 327, 330 (4th Cir.1997)). Through § 230, " Congress granted most Internet services immunity from liability for publishing false or defamatory material so long as the information was provided by another party. As a result, Internet publishers are treated differently from corresponding publishers in print, television and radio." *Carafano v.*

*Metrosplash.com, Inc.,* 339 F.3d 1119, 1122 (9th Cir.2003).

In this case, there is no doubt that Google qualifies as an "interactive computer service" and not an " information content provider." Thus, it is eligible for immunity under § 230. In each instance raised by Plaintiff's tort claims, Google either archived, cached, or simply provided access to content that was created by a third party. The defamatory statements in USENET postings and on the " RayFAQ website" were created by users of USENET and other internet users, as was the information on websites that appears as a result of a search query of Plaintiff's name. It is clear that § 230 was intended to provide immunity for service providers like Google on exactly the claims Plaintiff raises here. *See Green,* 318 F.3d at 471 (finding § 230 immunity proscribes liability on claims of defamation and general negligence); *Carafano,* 339 F.3d at 1125 (§ 230 affords immunity from suit on claims of invasion of privacy, misappropriation of the right of publicity, defamation, and negligence); *Ben Ezra, Weinstein, & Co. v. Am. Online, Inc.,* 206 F.3d 980, 986 (10th Cir.2000) (§ 230 immunity bars claims for defamation and negligence); *Zeran v. America Online, Inc.,* 129 F.3d 327 (4th Cir.1997) ( § 230 bars claim for negligence alleging that service provider unreasonably delayed in removing defamatory messages posted by third parties). Accordingly, we conclude that under § 230 of the CDA, Google cannot be held liable for the claims of defamation, invasion of privacy, and negligence alleged here.

### E. Lanham Act Violations (Count VII)

**\*7** Plaintiff alleges violations of the Lanham Act by virtue of "Google's republication of the RayFAQ (i.e., "OFFICIAL Ray Gordon FAQ"), claiming that this constitutes false designation of origin and unfair competition." (Doc. No. 11 ¶ 199.) Parker seems to allege that the RayFAQ website, which contained defamatory comments about him constituted a Lanham Act violation in that consumers looking for Parker's website and products would find the RayFAQ website in their search results and think it was a website produced

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                    Page 10

--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212
**(Cite as: --- F.Supp.2d ----)**

by Parker. Google contends that Parker does not have standing to bring a Lanham Act claim.

[12] The Lanham Act creates a cause of action for trademark infringement. Plaintiff raises a claim of false designation of origin. We assume that he is raising this claim pursuant to 15 U.S.C. § 1125(a)(1)(A) of the Lanham Act which provides in relevant part:
(1) Any person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A). "The essential element in sustaining a claim under the Lanham Act is that the alleged infringement creates a likelihood of confusion on the part of consumers as to the source of the goods." *Whitney Info. Network, Inc. v. Xcentric Ventures, LLC,* No. 2:04-CV-47FTM33, 2005 WL 1677256, at *4 (M.D.Fla. July 14, 2005) (quoting *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 684 F.2d 821, 831 (11th Cir.1982)); *see also Fisons Horticulture, Inc. v. Vigoro Indus., Inc.,* 30 F.3d 466, 473 (3d Cir.1994) ("likelihood of confusion is also the test for actions brought under ... § 1125(a)(1)(A) for unfair competition to prevent false representations as to source or origin of goods or services"). In this case, Plaintiff alleges that by calling itself the "Official Ray Gordon FAQ," the website's creators cause confusion on the part of consumers who are actually looking for Parker's website on seduction advice. Plaintiff further asserts that Google, by "republication" of this site, also violates the Act.

[13] Plaintiff cannot sustain a claim against Google under the Lanham Act for at least two reasons. First, while the creator of the RayFAQ website may

indeed be using Plaintiff's trademark by commenting on Parker's writing, there is no likelihood of confusion regarding whether Parker is the creator of that website. Although Plaintiff sells access to his e-books and other seduction products on his website, he does not allege that the RayFAQ website sells any products or services. Plaintiff describes the wesbsite as merely containing negative comments about him and his writing. It does not purport to sell anything and is not in competition with Plaintiff's website for customers. A consumer looking for Parker's website on seduction and who is interested in purchasing seduction materials would not be confused by the RayFAQ website, which does not sell anything and instead focuses only on negative descriptions of Plaintiff. Moreover, it is difficult to accept the possibility that someone would believe that Parker himself created a website that refers to him so negatively. We see no likelihood of confusion. *See Whitney Info. Network,* 2005 WL 1677256, at *4 (finding no likelihood of confusion where defendant's "ripoffreport.com" website was a consumer watchdog site and used plaintiff's marks by posting consumer responses about plaintiff on the website).

**\*8** [14][15] In addition, Parker only alleges that Google republished the RayFAQ website. He does not contend that Google in any way participated in the creation of the website's content or use of his mark. This too is an insufficient basis upon which to maintain a claim for trademark infringement. In *Omega, S.A. v. Giftland, Co.,* No. 03-CIV-5808, 2005 WL 1925791 (D.N.J. Aug. 11, 2005), the court emphasized that, with respect to trademark violations, "participation in activities merely related to the infringing acts is not enough.... [P]ersonal liability extends only to those persons who actively participate as a moving force in the decision to engage in the infringing acts or otherwise cause the infringement as a whole to occur." *Omega,* 2005 WL 1925791, at *3 (citing *Chanel, Inc. v. Italian Activewear of Fl., Inc.,* 931 F.2d 1472, 1478 n. 8 (11th Cir.1991)). The *Omega* court also observed that the Third Circuit has stated that although "a person who knowingly and significantly participates in another's act of trademark infringement is himself guilty of infringement," there does not appear to be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                    Page 11

--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212
**(Cite as: --- F.Supp.2d ----)**

any aider and abetter liability under the Lanham Act. *Id.* (quoting *Elec. Lab. Supply Co., Inc. v. Cullen,* 977 F.2d 798, 806-07 (3d Cir.1992)). It is clear that Google's "republication of the RayFAQ" cannot possibly make it a "moving force" in the infringement. Plaintiff provides no additional detail about the meaning of "republication" in this context and has certainly not alleged active participation on the part of Google. For these reasons, Plaintiff's claims under the Lanham Act will be dismissed.

### F. Racketeering (Counts VIII, IX) and Civil Conspiracy (XI)

While we have endeavored to make sense of Plaintiff's racketeering and civil conspiracy claims, these sections of the Complaint are completely incomprehensible. Parker spends eleven pages and sixty-six paragraphs discussing the "RICO enterprise " but fails to, in any way, make clear his allegations. He then adds an additional five paragraphs for civil conspiracy in which he simply refers back to his unintelligible RICO claims. In these passages, Parker refers to pleadings that he filed in *Parker v. Learn the Skills Corp.* The Complaint in that case was itself dismissed for failure to comply with Fed.R.Civ.P. 8(a)(2)'s "short and plain statement" requirement. (Doc. No. 53, E.D.Pa., 03-CV-6936.) Parker references his Complaint in that case and the allegations stated therein but makes no attempt to clarify its relationship to the instant litigation.

In addressing Plaintiff's prior lawsuit against Learn the Skills Corp., Judge Kelly noted that Fed.R.Civ.P. 8(a)

calls for a "short and plain statement" of both the jurisdictional grounds and the claims supporting the plaintiff's request for relief. The purpose of the " short and plain statement" requirement is "to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Violations of the short and plain statement rule have included complaints that were too long, repetitious, or confused.

**\*9** *Parker v. Learn the Skills Corp.,* No. 03-6936, 2004 WL 2384993, at \*1 (E.D.Pa. Oct. 25, 2004) (citing *Conley v. Gibson,* 355 U.S. 41, 45-46, 78

S.Ct. 99, 2 L.Ed.2d 80 (1957); *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *In re Westinghouse Secs. Litig.,* 90 F.3d 696, 703 (3d Cir.1996)). In the instant Complaint, we are unable to decipher how Plaintiff contends Google has violated the racketeering and civil conspiracy laws. Plaintiff fails in Counts VIII, IX, and XI to present any cogent or plain statement and thus fails to meet Rule 8(a)'s requirement in this Complaint as well. As a result, we will dismiss these claims without prejudice.

### G. Abuse of Process

[16][17] Finally, Plaintiff alleges abuse of process based on Google's statement in a prior pleading that Plaintiff has "a history of vexatious litigation." In Pennsylvania, abuse of process involves a perversion of the legal process to accomplish some unlawful purpose for which it was not designed. *Al Hamilton Contracting Co. v. Cowder,* 434 Pa.Super. 491, 644 A.2d 188, 191 (1994). "The classic example" of abuse of process "is the initiation of a civil proceeding to coerce the payment of a claim completely unrelated to the cause of action sued upon." *Triester v. 191 Tenants Ass'n,* 272 Pa.Super. 271, 415 A.2d 698, 702 (1979) . Google's statement regarding Plaintiff's litigation history in no way constitutes a perversion of the legal process to accomplish some unlawful purpose. We will therefore dismiss this claim as well.

### IV. CONCLUSION

Despite our lenient review of Plaintiff's Complaint, it is clear that with regard to his claims of copyright infringement, contributory copyright infringement, vicarious copyright infringement, defamation, invasion of privacy, negligence, Lanham Act violations, and abuse of process, Plaintiff has failed to state a claim on which relief can be granted. With regard to Plaintiff's racketeering and civil conspiracy claims, the Complaint fails to meet Rule 8(a)'s short and plain statement requirement and will be dismissed.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                                    Page 12

--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212
**(Cite as: --- F.Supp.2d ----)**

An appropriate Order follows.

### *ORDER*

AND NOW, this 10th day of March, 2006, upon consideration of Defendant Google, Inc.'s Motion To Dismiss Plaintiff's First Amended Complaint (Doc. No. 13), it is ORDERED that Defendant's Motion is GRANTED:
1. Plaintiff's Claims in Counts I, II, III, IV, V, VI, VII, and X are DISMISSED with prejudice.
2. Plaintiff's Claims in Counts VIII, IX, and XI are DISMISSED without prejudice.

IT IS SO ORDERED.

> FN1. The United States District Court for the Northern District of California has described the USENET as follows:
> a worldwide community of electronic [bulletin boards] that is closely associated with the Internet and with the Internet community. The messages in Usenet are organized into thousands of topical groups, or "Newsgroups".... As a Usenet user, you read and contribute ("post") to your local Usenet site. Each Usenet site distributes its users' postings to other Usenet sites based on various implicit and explicit configuration settings, and in turn receives postings from other sites. Usenet traffic typically consists of as much as 30 to 50 Mbytes of messages per day. Usenet is read and contributed to on a daily basis by a total population of millions of people....
> *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.* 907 F.Supp. 1361, 1366 n. 4 (N.D.Cal.1995).

> FN2. Plaintiff filed a related lawsuit in the Eastern District of Pennsylvania against the Learn the Skills Corporation, *Parker v. Learn the Skills, Corp.,* No. 03-CV-6936, which was dismissed by the Honorable James McGirr Kelly for failure to comply with Fed.R.Civ.P. 8(a)(2)'s "short and

plain statement" requirement. (Doc. No. 53, E.D.Pa., 03-CV-6936.)

> FN3. While neither Parker nor Google rely on specific provisions of the Digital Millennium Copyright Act ("DMCA") in arguing this point, we note that Congress did, in 1998, create specific safe harbor provisions for internet service providers in Title II of the DMCA, known as the Online Copyright Infringement Liability Limitation Act ("OCILLA"). However,
> [r]ather than embarking on a wholesale clarification of the various doctrines of copyright liability, Congress opted to leave current law in its evolving state and, instead, to create a series of safe harbors, for certain common activities of service providers. Under OCILLA's four safe harbors, service providers may limit their liability for claims of copyright infringement. These safe harbors provide protection from liability for: (1) transitory digital network communications; (2) system caching; (3) information residing on systems or networks at the direction of users; and (4) information location tools. Far short of adopting enhanced or wholly new standards to evaluate claims of copyright infringement against online service providers, Congress provided that OCILLA's limitations of liability apply if the provider is found to be liable under existing principles of law.
> *Ellison v. Robertson,* 357 F.3d 1072, 1076-77 (9th Cir.2004) (internal citations omitted). Because we find that Google is not liable for direct infringement based on existing principles of law, and because neither party has relied upon it, we will not examine Google's liability for archiving USENET postings and excerpting web sites under the safe harbor provisions of the DMCA.

> FN4. Section 512(b) provides in part:
> (b) System caching.-
> (1) Limitation on liability.-A service provider shall not be liable for monetary

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                  Page 13

--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212
**(Cite as: --- F.Supp.2d ----)**

relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the intermediate and temporary storage of material on a system or network controlled or operated by or for the service provider in a case in which-
(A) the material is made available online by a person other than the service provider;
(B) the material is transmitted from the person described in subparagraph (A) through the system or network to a person other than the person described in subparagraph (A) at the direction of that other person; and
(C) the storage is carried out through an automatic technical process for the purpose of making the material available to users of the system or network who, after the material is transmitted as described in subparagraph (B), request access to the material from the person described in subparagraph (A), if the conditions set forth in paragraph (2) are met.

FN5. While Plaintiff attaches to his Complaint, as Exhibit C-1, a letter from February 27, 2004, in which he purports to notify Google of DMCA violations, the letter merely states that the USENET archives contain links to a website that " contains several postings of mine for which I have not authorized reproduction" and does not make any mention of specific registered works.

FN6. We note that "Courts have treated § 230 immunity as 'quite robust, adopting a relatively expansive definition of ' interactive computer service' and a relatively restrictive definition of information content provider.' " *Associated Bank-Corp. v. Earthlink, Inc.,* No. 05-C-0233-S, 2005 WL 2240952, at *3 (W.D.Wis. Sept. 13, 2005) (quoting *Carafano,* 339 F.3d at 1123).

FN7. Plaintiff includes with his Complaint,

as Exhibit E-1, a copy of part of the website, which describes Parker as "a dangerous harasser who abuses usenet newsgroups." (Doc. No. 11 at Ex. E-1, p. 1.)

FN8. Google argues that it is immune from Lanham Act claims because of its § 230 immunity under the CDA. We agree with those courts that have rejected this argument based on § 230(c)(2)'s exception for intellectual property laws. *See Gucci Am., Inc. v. Hall & Assoc.,* 135 F.Supp.2d 409, 413-15 (S.D.N.Y.2001) (Section 230 does not immunize ISPs from trademark infringement claims as they fall into § 230(c)(2)'s exception for laws pertaining to intellectual property); *see also Perfect 10, Inc. v. CCBill, LLC,* 340 F.Supp.2d 1077, 1108 (C.D.Cal.2004) (same); *Ford Motor Co. v. GreatDomains.com, Inc.,* No. 00-CV-71544, 2001 WL 1176319, at *1 (E.D. Mich. Sept. 25, 2001) (same).

E.D.Pa.,2006.

Parker v. Google, Inc.

--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212

Briefs and Other Related Documents (Back to top)

• 2:04cv03918 (Docket) (Aug. 18, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                    Page 1

Not Reported in F.Supp.2d, 2003 WL 21294962 (E.D.Pa.)

**(Cite as: 2003 WL 21294962 (E.D.Pa.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
**Gordon** Roy **PARKER**, a/k/a Ray Gordon Plaintiff,
v.
JOHN DOE # 1, a/k/a "Wintermute," and John
Does # 2-100, Defendants.
**No. Civ.A. 02-CV-7215.**

Jan. 21, 2003.

*MEMORANDUM AND ORDER*

KELLY, J.

**\*1** Presently before the Court is a Motion for Leave to File a Second Amended Complaint and for Extension of Time to Effect Service, filed by Plaintiff Gordon Roy Parker, a/k/a "Ray Gordon" ("Plaintiff"). Plaintiff petitions this Court for leave to file a successive amended complaint in order to eliminate certain defendants and to withdraw certain claims alleged in his amended complaint. Plaintiff also requests additional time to effect service of process on Defendants John Doe # 1 a/k/a "Wintermute" and John Does # 2-100 (collectively, the "Defendants") due to the alleged delay attributed to, *inter alia,* the financial difficulty of serving multiple internet service providers ("ISP"), the ISPs' anticipated objections to `Plaintiff's subpoenas, the Court's prior ruling on Plaintiff's motion to proceed in forma pauperis and the Court's ruling on instant motion. For the following reasons, Parker's Motion is DENIED IN PART and GRANTED IN PART.

*I. DISCUSSION*

A. Motion for Leave to File a Second Amended Complaint

Pursuant to Federal Rule of Civil Procedure 15, "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleading only by leave of the court or by written consent if justice so requires." Fed.R.Civ.P. 15(a). Generally, leave to amend should be freely granted absent a concern of (1) undue delay; (2) bad faith or dilatory motive; (3) continued failure to cure deficiencies by prior amendments; (4) undue prejudice to the opposition; or (5) futility of amendment. *Forman v. Davis,* 371 U .S. 178, 182 (1962). In order to assess whether an amendment would raise these concerns, the normal procedure for requesting permission to file an amendment to a complaint in federal court is to file the proposed amendment with the motion. *See Guam v. American President Lines,* 28 F.3d 142, 150 (D.C.Cir.1994) (citing 3 James Wm. Moore et al., Moore's Federal Practice § 15.12 (2d ed.1994)); *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1192 (7th Cir.1990); *Otto v. Variable Annuity Life Insurance Co.,* 814 F.2d 1127, 1139 (7th Cir.1986).

By neglecting to provide his proposed amendments, this Court cannot assess the legal sufficiency of his request for permission to file another amended complaint. Oblique references to "paring down" the number of defendants and issues presented in his Complaint and vague allegations of "new actionable behavior" are not sufficient, in the absence of the proposed amendment, to determine whether amendment is proper. Moreover, although Plaintiff assures us that a successive amended complaint will include the identities of defendants he has secured from compliant ISPs, he fails to disclose this seemingly vital information. In the absence of the actual proposed amendment, Plaintiff's motion is DENIED WITHOUT PREJUDICE.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                Page 2

Not Reported in F.Supp.2d, 2003 WL 21294962 (E.D.Pa.)

**(Cite as: 2003 WL 21294962 (E.D.Pa.))**

B. Motion for Additional Time To Effectuate Service

**\*2** Plaintiff next petitions this Court for additional time to serve the several unnamed defendants based on information he expects to be supplied by the ISPs. Pursuant to Federal Rule of Civil Procedure 4(m):

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m). Rule 4(m) mandates that a court must grant an extension of time provided good cause is shown. *See Boley v.. Kaymark,* 123 F.3d 756, 758 (3d Cir.1997); *Petrucelli v. Bohringer & Ratzinger,* 46 F.3d 1298, 1305 (3d Cir.1995). The plaintiff bears the burden of demonstrating good cause. *See Gallas v. Supreme Court of Pennsylvania,* Civ. A. No. 96-6450, 1998 U.S. Dist. LEXIS 14082, at \*14 (E.D.Pa. Aug. 24, 1998). In determining whether good cause, which is not defined in Rule 4, exists, courts focus on: (1) the reasonableness of the plaintiff's efforts to serve; (2) prejudice that may befall a defendant as a consequence of untimely service; and (3) whether plaintiff moved for an enlargement of time to serve. *MCI Telecommunications Corp. v. Teleconcepts,* 71 F.3d 1086, 1097 (3d Cir.1995); *Gallas,* 1998 U.S. Dist. LEXIS 14082, at \*15-16. The primary focus, however, is on the plaintiff's reasons for not complying with the time limit for service and whether the plaintiff acted in good faith in attempting service. *Kaymark,* 123 F.3d at 758; *MCI,* 71 F.3d at 1097.

As a preliminary matter, we agree with Plaintiff insomuch as the 120-day accrual time for service is tolled when a complaint and a motion to proceed in forma pauperis are filed. *See Scary v. Philadelphia Gas Works,* 202 F.R.D. 148, 151 (E.D.Pa.2001). To account for the time in which this Court decided

Plaintiff's in forma pauperis motion. Plaintiff is entitled to an additional eight days to effectuate service. However, we will not extend Plaintiff any additional time he seeks. Although not expressly stated as such, Plaintiff contends that this Court should consider his limited financial means, the delays that result from filing suit against unnamed and as yet unidentified defendants and time expended by this Court in ruling on the various motions as evidence of good cause to warrant additional time for service of process. In the absence of any specific factual scenario supporting Plaintiff's request for additional time and in light of the fact that Plaintiff offers little more than undocumented speculation of possible delays, it is clear that Plaintiff fails to satisfy his burden of showing good cause. Additionally, the financial difficulty of initiating a suit that names up to 100 unidentified defendants does not suffice as good cause, as these financial burdens should be anticipated when pursuing litigation of the magnitude contemplated by Plaintiff. *See Gallas,* 1998 U.S. Dist. LEXIS 14082, at \*17 (universal constraints do not amount to good cause under Rule 4(m)). Moreover, we similarly reject Plaintiff's request for an extension of time that accounts for the time spent by this Court in disposing of the instant motion as this has neither impacted or hindered Plaintiff's ability to identify or serve the Defendants.

**\*3** Plaintiff also requests that this Court afford him an additional two weeks per each subpoenaed ISP to file a motion to quash Plaintiff's subpoena. Having been presented with little evidence of any efforts to effect service, [FN1] Plaintiff contends that he has successfully served subpoenas on several ISPs and is currently preparing subpoenas for ISPs located in Texas, Florida and Washington. [FN2] Plaintiff does not provide any evidence demonstrating if or when he served the various ISPs, or that any ISP filed objections to the subpoenas that could cause delays in serving the Defendants. *See Nelson v. Jones & Brown, Inc.,* Civ. A. No. 01-481, 2002 U.S. Dist. LEXIS 22603, at \*10 (W.D.Pa. May 16, 2002) (determining good cause is not demonstrated without sufficient proof of delay). At this juncture, Plaintiff has not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 21294962 (E.D.Pa.)

**(Cite as: 2003 WL 21294962 (E.D.Pa.))**

expressed a reason amounting to good cause to justify extending time for service since no ISP has yet created a delay. We also reject Plaintiff's suggestion that instead of counting the time to effectuate service at the time he filed his complaint, this Court should start counting the 120 days to serve from the time he identifies each Defendant. Plaintiff operates under a misreading of the express language of Rule 4(m), which states that the accrual period for service commences upon the filing of the complaint. We see no reason to depart from the clear language of the Rule.

> FN1. Plaintiff submits evidence showing he has served only the University of Pennsylvania and Detective James B. Blackmore of the University of Pennsylvania Department of Public Safety in order to obtain the identities of Defendants Doe # 1 and # 2.

> FN2. We strongly advise Plaintiff to consult Federal Rule of Procedure 45 when attempting to serve subpoenas to non-party ISPs located in areas beyond this Court's jurisdictional reach. Rule 45 provides:
> [A] subpoena may be served at any place within the district of the court by which it is issued, or at any place without the district that is within 100 miles of the place of the deposition, hearing, trial, production, or inspection specified in the subpoena or at any place within the state where a state statute or rule of court permits service of a subpoena issued by a state court of general jurisdiction sitting in the place of the deposition, hearing, trial, production, or inspection specified in the subpoena.
> Fed.R.Civ.P. 45(b)(2).

However, our inquiry does not end with the determination that good cause is not present. In the absence of a showing of good cause, a court may, in its discretion, nevertheless extend time for service or dismiss the case without prejudice. *MCI,* 71 F.3d at 1098; *Petrucelli,* 46 F.3d at 1298. Although not exhaustive, the Advisory Committee note to Rule

4(m) lists considerations in determining whether a court should exercise its discretion to extend time for service in the absence of a finding of good cause. *See* Fed.R.Civ.P. 4(m) advisory committee's note. The Committee advises that "[r]elief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service." *Id.* Courts also consider whether the defendant will suffer any prejudice as a result of extending the time for service or whether the plaintiff's claims are "objectively reasonable or frivolous." *Boley,* 123 F.3d at 759-60; *Gallas,* 1998 U.S. Dist. LEXIS 14082, at *19 n. 4. Plaintiff does not raise any of these considerations nor can this Court, without knowing more, determine whether Defendants have resisted service or otherwise hindered Plaintiff's efforts to obtain their identities. Moreover, Plaintiff only speculates about possible future delays caused by subpoenaing the ISPs. Although he anticipates that other ISPs will likely object to releasing the identities of its subscribers, Plaintiff admits that none have done so. Thus, Plaintiff fails to support his allegation that service has been wrongly delayed and cannot provide this Court with a reason that he cannot effectuate service within 120 days. In the absence of evidence demonstrating that any Defendant or ISP has frustrated Plaintiff's ability to effectuate service and in light of the fact that Plaintiff fails to raise any other factor that would persuade this Court to grant additional time other than the eight days, we opt not to exercise our discretion to extend the period in which Plaintiff must effectuate service and, accordingly, we DENY IN PART and GRANT IN PART Plaintiff's motion for additional time.

*ORDER*

**\*4** AND NOW, this day of January 2003, in consideration of the Motion for Leave to File a Second Amended Complaint and for Extension of Time to Effect Service filed by Plaintiff Gordon Roy Parker, a/k/a "Ray Gordon" ("Plaintiff") (Doc. No. 10), it is ORDERED that:
  1. Plaintiff's Motion for Leave to File Second Amended Complaint is DENIED WITHOUT PREJUDICE.
  2. Plaintiff's Motion for Extension of Time to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4

Not Reported in F.Supp.2d, 2003 WL 21294962 (E.D.Pa.)

**(Cite as: 2003 WL 21294962 (E.D.Pa.))**

  Effect Service is DENIED IN PART and GRANTED IN PART to the extent that Plaintiff shall have an additional 8 days to effect service.

Not Reported in F.Supp.2d, 2003 WL 21294962 (E.D.Pa.)

   **Motions, Pleadings and Filings (Back to top)**

• 2:02cv07215 (Docket) (Sep. 10, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1

Not Reported in F.Supp.2d, 2003 WL 21294971 (E.D.Pa.)

**(Cite as: 2003 WL 21294971 (E.D.Pa.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
**Gordon** Roy **PARKER**, a/k/a Ray Gordon,
Plaintiff,
v.
JOHN DOE # 1, a/k/a "Wintermute," and John
Does # 2-100, Defendants.
**No. Civ.A. 02-CV-7215.**

Feb. 10, 2003.

*MEMORANDUM AND ORDER*

KELLY, J.

**\*1** Presently before the Court is a Motion to Reconsider filed by pro se Plaintiff Gordon Roy Parker, a/k/a "Ray Gordon" ("Plaintiff"). On December 26, 2002, Plaintiff petitioned this Court for leave to file a second amended complaint and for an extension of time to effect service of process upon numerous unidentified defendants. On January 22, 2003, Plaintiff's motion was denied in part and granted in part. Specifically, Plaintiff's request to file a second amended complaint was denied without prejudice since he neglected to attach a proposed amended complaint to his motion. In response to his request for additional time for service of process, this Court granted Plaintiff an additional eight days beyond the standard 120 days to serve defendants to account for the time this Court took to rule on his motion to proceed in forma pauperis. Plaintiff's demand for any additional time was denied since he did not provide good cause for his inability to effectuate service. On January 22, 2003, we allowed Plaintiff additional

time, until February 7, 2003, to effectuate service of process. Although the relief Plaintiff requests in the instant motion is difficult to understand, we conclude that Plaintiff fails to present relevant new facts or introduce evidence demonstrating manifest errors of law necessary to warrant reconsideration.

Federal courts have a strong interest in the finality of judgments, and thus, motions for reconsideration should be granted sparingly. *See Continental Casualty Co. v. Diversified Industries, Inc.,* 884 F.Supp. 937, 943 (E.D.Pa.1995). Accordingly, a district court may grant a motion for reconsideration only if the petitioner produces: (1) new evidence not previously available; (2) an intervening change in controlling law; or (3) clear errors of law or manifest injustice. *See Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985); *Congregation Kol Ami v. Abington Township,* Civ. A. No. 01-1919, 2001 U.S. Dist. LEXIS 10224, at \*3 (E.D.Pa. July 20, 2001); *Drake v. Steamfitters Local Union No. 420,* Civ. A. No. 97-CV-585, 1998 U.S. Dist. LEXIS 13791, at \*7-8 (E.D.Pa. Sept. 3, 1998); *New Chemic, Inc. v. Fine Grinding Corp.,* 948 F.Supp. 17, 18-19 (E.D.Pa.1996). Plaintiff's motion for reconsideration fails to provide any new evidence that prevents him from effecting service by February 7, 2003. Nor does Plaintiff point to any error of law or miscarriage of justice to warrant reconsideration. Rather, Plaintiff's motion appears to complain of the cost of issuing subpoenas and effectuating service of process, matters that have already been addressed by this Court. Plaintiff also expresses disagreement with this Court's legal analysis and dissatisfaction with the time we took to rule on Plaintiff's motion to file a second amended complaint and request for an extension of time. None of these complaints, however, satisfy the legal requirements to warrant reconsideration.

Moreover, Plaintiff again fails to provide this Court with a proposed amended complaint. Instead, he suggests that we parse through his instant motion to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 21294971 (E.D.Pa.)

**(Cite as: 2003 WL 21294971 (E.D.Pa.))**

fashion a proposed amendment by removing time-barred actions and dismissing any defendants who could not be served within the time allotted. We decline to follow Plaintiff's recommendation. Since this Court did not dismiss with prejudice Plaintiff's motion to file a second amended complaint, we strongly advise him to file a proposed second amended complaint that includes the several defendants he has identified as well as any additional claims he sets forth in the instant motion, so that this Court may properly assess his request.

**\*2** For the reasons set forth above, Plaintiff's Motion for Reconsideration is DENIED.

Not Reported in F.Supp.2d, 2003 WL 21294971 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

• 2:02cv07215 (Docket) (Sep. 10, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GORDON ROY PARKER,                :        CIVIL ACTION
a/k/a RAY GORDON,                 :
  Plaintiff,            :
                                  :
  v.                    :
                                  :
JOHN DOE #1, a/k/a                :
"WINTERMUTE," and                 :
JOHN DOES #2-100,                 :
  Defendants.           :        No. 02-CV-7215

### ORDER

**AND NOW**, this 25th day of February 2003, upon consideration
of Plaintiff Gordon Roy Parker's, a/k/a Ray Gordon ("Plaintiff")
continued and inexcusable failure to serve any defendants,
including those defendants identified by Plaintiff, in the above-
mentioned case, despite this Court's several admonitions to do so
and extensions of time to effectuate service, we conclude that
Plaintiff has failed to comply with this Court's January 22, 2003
letter ordering him to file proof of service of process by
February 12, 2003. Since Plaintiff does not present an adequate
reason for his inability to serve these defendants within the
additional time this Court extended him, it is **ORDERED** that
pursuant to Federal Rule of Civil Procedure 4(m), Plaintiff's
case is **DISMISSED WITHOUT PREJUDICE.**

It is further **ORDERED** that all outstanding motions,
including Plaintiff's Second Motion for Leave to File a Second
Amended Complaint and For Extension of Time to Effect Service

(Doc. No. 18) and Motion to Enforce Subpoenas Duces Tecum on

Nonparty University of Pennsylvania (Doc. No. 8), must be **DENIED**

**AS MOOT**.

                                        BY THE COURT:


                                        _____

                                        JAMES McGIRR KELLY, J.

2

Case 1:06-cv-00223-SLR   Document 7-8   Filed 04/23/2006   Page 1 of 1

# Person/Company Name Search Results

▶ Home          ▶ New Search

**Phonetic Search:** off   **Last Name:** Parker   **First Name:** Gordon

| ID | Name/Company | Address | Party Type | Filing Date |
|----|--------------|---------|------------|-------------|
| @4072652 | PARKER, GORDON ROY | 4247 LOCUST ST #806 PHILADELPHIA PA 19104 **Case ID:** *000201828  PARKER VS RODWELL* | PLF | 18-FEB-2000 |
| @4573984 | PARKER, GORDON ROY | 4247 LOCUST ST APT 806 PHILADELPHIA PA 19104 **Case ID:** *020901068  PARKER VS ERIC TILLES ESQ ETAL* | PLF | 10-SEP-2002 |

Page: All Displayed

**Records Found:** 2,  **Displayed:** 1 **to** 2



 

User Accepts/Agrees to Disclaimer.Not for official use.

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GORDON ROY PARKER**, a.k.a. **Ray Gordon**, d/b/a **Snodgrass Publishing Group**,<br><br>Plaintiff,<br><br>v.<br><br>**Learn The Skills Corp.**, et al.<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

CASE NO.: 05-cv-2752

Hon. Harvey Bartle, III

<u>**CERTIFICATE OF SERVICE**</u>

I, Gordon Roy Parker, hereby certify that I have served the foregoing **Motion For**

**Reconsideration** on the following Defendants, by the following means:

**Trustees of the Univ. of PA**
Dennis G. Young (Counsel)
Montgomery, McCracken,
Walker & Rhoads
123 South Broad Street, 28th Fl.
Philadelphia PA 19109
**Regular Mail**

Thom E. Geiger (Pro Se)
817 North McCrary Road
Columbus, MS 39702-4320
**Regular Mail**

Mary Kay Brown
Buchanan Ingersoll, PC
1835 Market Street, 14th Floor
Philadelphia, PA 19103
Attorney For Paul Ross
**Regular Mail**

Formhandle@fastseduction.com (Pro Se)
Learn The Skills Corp.
955 Massachusetts Ave, #350
Cambridge, MA 02139
**Regular Mail**

Matthew S. Wolf, Esq.
241 Kings Highway East
Haddonfield, NJ 08033
Attorney For LTSC &
Defendant
**Regular Mail**

This the 3rd day of April, 2006.

*Gordon Parker*

Gordon Roy Parker, Plaintiff, Pro Se
4247 Locust Street, #806
Philadelphia, PA 19104
(215) 386-7366
GordonRoyParker@aol.com

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GORDON ROY PARKER**, a.k.a. **Ray Gordon**, d/b/a **Snodgrass Publishing Group**, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | **CASE NO.:** 05-cv-2752 |
| **Learn The Skills Corp.**, et al. | : | |
| | : | |
| Defendants. | : | **Hon. Harvey Bartle, III** |
| | : | |
| | : | |

## ORDER

AND NOW, this _____ day of _____, 2006, in consideration of Plaintiff's Motion For Reconsideration and all responses thereto, the motion is **granted**, as follows:

      1.    The civil judgment in this case is now vacated.

      2.    The dismissal with prejudice of all claims against all Defendants is now vacated.

      3.    Plaintiff shall file and serve a Second Amended Complaint on all parties by _____, 2006.

      SO ORDERED.

_____
J.

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GORDON ROY PARKER**, a.k.a. **Ray Gordon**, d/b/a **Snodgrass Publishing Group**,<br><br>                                    Plaintiff,<br><br>v.<br><br>**Learn The Skills Corp.**, et al.<br><br>                                    Defendants. | :<br>:<br>:<br>:<br>:<br>:  **CASE NO.:** 05-cv-2752<br>:<br>:<br>:  **Hon. Harvey Bartle** |

## PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER DISMISSING CASE, TO SET ASIDE JUDGMENT PURSUANT TO RULE 59, AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

**Plaintiff** Gordon Roy Parker, in the above-styled action, moves this court for reconsideration of its order of March 23, 2006, dismissing this case.

As civil judgment is entered in this case (so as to expedite the appeal), Plaintiff incorporates setting aside the judgment as part of this motion, in the (unlikely) event that this Court will reverse itself mere days after dismissing this case.

This is a unique situation in that the filing and fee for an appeal is set to rise to $455.00 as of this Sunday. Given a choice, Plaintiff will proceed directly to appeal, as well as refiling this case in Delaware by the end of the week (the filing fee for district court actions rises to $350.00 on Sunday), but moves for reconsideration in a timely manner nonetheless, although the appeal and the refiling take priority should there be any conflict. Obviously, should this Court grant this motion, it should also set aside the judgment.

The grounds for the reconsideration include the following:

1.    Clear error of law; and

2.    Misconstruction of facts, leading to

3.     Manifest injustice.

WHEREFORE, Plaintiff prays for an order reversing the dismissal of this case,

vacating the civil judgment, and giving Plaintiff thirty (30) days leave to file a Second Amended

Complaint within well-defined parameters for length and concision.

A Memorandum in Support is attached and incorporated by reference as if fully set

forth verbatim.

This the 3rd day of April, 2006.

Gordon Roy Parker
Plaintiff, Pro Se
4247 Locust Street, #806
Philadelphia, PA  19104
(215) 386-7366
SnodgrassPublish@aol.com

2

### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GORDON ROY PARKER**, a.k.a. **Ray Gordon**, d/b/a **Snodgrass Publishing Group**, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | **CASE NO.:** 05-cv-2752 |
| **Learn The Skills Corp.**, et al. | : | |
| | : | |
| Defendants. | : | **Hon. Harvey Bartle** |

## MEMORANDUM SUPPORTING PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff in the above-styled action submits this Memorandum in support of the instant motion:

### BACKGROUND

On October 23, 2006, this court dismissed this case for lack of jurisdiction over Defendants Ross, LTSC, Formhandle, and Geiger, and dismissed the case for failure to state a claim against Defendants Trustees of the University of Pennsylvania ("Penn"), and Wolf.

The dismissal related to lack of jurisdiction over the four nonresident defendants, without affording Plaintiff the benefit of jurisdictional discovery, is based on this Court's presumption that Plaintiff has not made a ***prima facie*** showing that discovery would yield proof of jurisdiction. Given the specifics in this case, and given what Plaintiff has included in the pleadings, this is a clear abuse of discretion, as Plaintiff has provided extensive support for his claims of jurisdiction.

The dismissal against Penn was based on Plaintiff's failure to plead "detrimental reliance" and because the court found the claim to be time-barred. The dismissal against Defendant Wolf was based on "judicial immunity."

## LEGAL STANDARD

**A.    Legal Standard For A Motion To Dismiss.**

A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." (Shipp, 234 F.3d 907, 911 (5th Cir. 2000); *cert. denied* _U.S._, 121 S. Ct. 2193, 149 L.Ed.2d 1024 (2001)(quoting Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, 677 F.2d 1045, 1050 (5th Cir. 1982)). This strict standard of review under Rule 12(b)(6) has been summarized as follows: "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." (5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, §1357 (2nd ed. 1990)).

**B.    Legal Standard For A Motion For Reconsideration.**

A district court may grant a motion for reconsideration only if the Petitioner produces: (1) new evidence not previously available; (2) an intervening change in controlling law; or (3) clear errors of law or manifest injustice. See Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985); Congregation Kol Ami v. Abington Township, Civ. A. No. 01-1919, 2001 U.S. Dist. LEXIS 10224, at *3 (E.D. Pa. July 20, 2001); Drake v. Steamfitters Local Union No. 420, Civ. A. No. 97-cv-585, 1998 U.S. Dist. LEXIS 13791, a *7-8 (E.D. Pa.. Sept. 3, 1998); New Chemic, Inc. v. Fine Grinding Corp., 948 F. Supp. 17, 18-19 (E.D. Pa. 1996).

**C.    Legal Standard For Pro Se Pleadings And Leave To Amend.**

*Pro se* pleadings are subject to liberal construction. (see, e.g., Order, ¶ III, p.4). Leave to amend a complaint "should be given when justice so requires." (F.R.C.P. 15(a)). Although from the Ninth Circuit, the decision in Bautista v. LA County (00-6573, 00-6574, Dist. Ct. No. 97-56074, 9th Cir. 2000) speaks almost directly to the circumstances here:

2

The deficiencies of the plaintiffs' second amended complaint were readily curable with some guidance from the court. ***The court's sudden-death response was an abuse of discretion.***

## III.  ARGUMENT

### A.  Defendant Wolf Was Acting Outside The Scope Of Judicial Immunity, And Plaintiff Was Harmed By His Empowerment Of The Seduction Mafia

This Court need not overturn any precedent to carve out an exception in this case. Its application of the law (citing mostly <u>Post v. Mendel</u>, 507 A.2d 351, 353 (1986), and <u>Hefferman v. Hunter</u>, 189 F.3d 405, 413 (3rd Cir. 1999)), this Court concluded that Defendant Wolf's motion to dismiss the entire complaint with regard to all defendants, ***including those he did not represent***, is covered by <u>Hefferman's</u> holding that "[I]f the challenged conduct occurs outside the scope of representation, no reason for immunity exists."  This Court has chosen to ignore <u>Hefferman</u>," since Defendant Wolf's conduct was clearly outside this scope.

Defendant Wolf may have moved on behalf of his unrepresented parties "in the course of judicial proceedings," but that was done on behalf of Defendant LTSC and not the other parties.  Moreover, he did not merely "argue" against the complaint for these parties, but moved to dismiss the claims against them as well, thus exceeding the scope of representation for and advocacy of his own client, LTSC.  Given that a RICO conspiracy was alleged, given that Mr. Wolf was attempting to disclaim any connection between LTSC and these defendants, and given that he could not possibly have performed due diligence related to these defendants, two of whom had filed their own motions with the court, it is a clear error of law to extend judicial immunity to conduct which clearly does not deserve it.

Judicial immunity itself is not absolute, as lawyers can still be sanctioned, sued under the Dragonetti Act, prosecuted as RICO defendants in criminal cases, and sued for abuse of process and/or malpractice as well.  The precedents relating to judicial immunity have little or

3

nothing to do with the previously unheard-of instance of an attorney moving a court on behalf of parties s/he has not been retained by and literally does not represent.  Surely our courts only intended this immunity to extend to actual representation of actual clients, and certainly not for actions taken outside of representation for the benefit of RICO co-defendants.

Concerning this Court's finding that since Defendant Wolf's motion to dismiss was denied as moot and therefore did not harm Plaintiff (Order, ¶ III, p. 13), Plaintiff argues that this is a misconstruction of the facts and law akin to acquitting a defendant for shooting at someone because "he missed."  The harm to Plaintiff was caused by the motion itself, independent of any outcome, since it sent a clear endorsement to the Seduction Mafia operatives to act out against Plaintiff, and empowered them to continue furthering the RICO enterprise.  Rather than disclaim involvement with the co-conspirators, Defendant LTSC embraced them to the point of using paid-for legal services to assist them in their lawsuit, and to do so outside the scope of any formal attorney-client relationship. This itself was an unauthorized practice of the law by Defendant Wolf, aided and abetted (and in fact directed) by Defendant LTSC.

**B.** **The Fraud Claim Against Penn Is Not Time-Barred, And Detrimental Reliance Can Be Inferred By The Facts Pled.  Additionally, Detective Blackmore Is Not An Employee Of Penn, So Conspiracy Is Possible.**

1.    **The claim is not time-barred.**

In paragraph 101 of the Amended Complaint, Plaintiff stated the following:

> "Most recently, on or around April 14, 2004, in response to a discovery request in the discrimination lawsuit, Defendant Penn again repeated its claim that it could not have identified Wintermute."

This representation falls well within the two-year time limit for fraud actions, and even now would not be time-barred.  The Court erred by misconstruing the facts.

2.    **Detective Blackmore is not an employee of Penn.**  As it relates to the RICO and civil conspiracy claims, this Court determined that Detective James B. Blackmore,

4

who was accused of lying under oath, was an employee of Penn. (Order, ¶ III, p. 14)  This is incorrect, as Detective Blackmore is a Philadelphia Police Officer who works on the Penn campus, rather than an employee of Penn itself.  Consequently, it is possible for Penn to have conspired with Detective Blackmore.

      3.   **Detrimental Reliance Is Automatic.**  The "detrimental reliance" required to plead a claim for fraud in this case, unless this Court is now advocating contempt of its findings, was automatic: Plaintiff had no choice but to abide by the final orders of this Court and accept Defendant's representations, which it continued to make as late as April 14, 2004.  Plaintiff "relied" on these representations in that he was unable to secure evidence which would have allowed him to serve and/or name Wintermute in any previous lawsuit.  Since the alleged facts support this reliance, dismissal of the fraud, RICO, and civil conspiracy claims on these grounds was improper.

      C.   **Plaintiff Should Have Been Allowed To Conduct Jurisdictional Discovery.**

      The heart of this case against the four nonresident defendants was "ripped out" by this Court's finding of a lack of jurisdiction, and the refusal of this court to allow Plaintiff jurisdictional discovery.

      1.   **The Amended Complaint Was Verified And Therefore Evidentiary.**

      In its Order (p. 7), this Court stated that "general averments in an ***unverified complaint*** or response without the support of 'sworn affidavits or other competent evidence' are insufficient to establish jurisdictional facts." Time Share Vacation Club v. Atlantic Resorts, Ltd. Since Plaintiff's Amended Complaint was verified, Time Share should not apply, as the Amended Complaint would carry the same evidentiary weight of being sworn as would be the case with an affidavit or exhibit.

2.    **Defendant Ross Enters Into Contracts With Residents Of Pennsylvania.**

In his Amended Complaint, Plaintiff set forth, with specificity, the facts and averments supporting his claims on jurisdiction. In paragraph 12, he outlined Defendant Ross's "post-purchase consultations" with customers of his products (sold by the "third party entity"). In paragraph 53, Plaintiff was even more specific, stating that:

> Defendant Ross is the sole creator of his Speed Seduction product line. His orders are processed through Straightforward Marketing, Inc., in Texas. Straightforward acts as a reseller of Defendant Ross's product line, but assumes a passive role in directly pitching potential customers and supporting existing customers, relative to the role played by Defendant Ross. Defendant Ross conducts the seminars and workshops, does most of the direct selling via direct communication with potential customers, publishes his "SS List" for existing customers himself, and *offers a personal telephone consultation to all who purchase his courses.*

The "SS List" newsletters also represent the type of ongoing "computer file distribution" required to establish minimum contacts with Pennsylvania.

In addition to outlining these contacts in the Amended Complaint, Plaintiff further outlined them in his Motion To Conduct Jurisdictional Discovery.

Surely it is not "frivolous" to explore, through jurisdictional discovery, whether or not even one of Defendant Ross's many clients is in the Commonwealth. Rather than the "fishing expedition" this court referred to when it called Plaintiff a "serial litigant" (citing unrelated cases), relatively simple discovery, such as asking Defendant Ross about the facts relative to these averments, would have sufficed. It is extremely likely, if not certain, that such discovery would have yielded sufficient evidence to confer jurisdiction.

3.    **Defendant LTSC Derives Revenue From Pennsylvania Residents And Enters Into Contracts With Them.**

In paragraphs 39, 60, and 62 of the Amended Complaint, Plaintiff set forth that Defendant LTSC sold products for its sponsors as an "affiliate." An internet "affiliate" is a

6

commissioned salesperson who sells third-party products through its website. A salesman who sells products on commission to residents of Pennsylvania is subjected to jurisdiction in Pennsylvania. Defendant LTSC clearly falls into this category. Additionally, as also averred in the Amended Complaint, Defendant LTSC solicits donations

Simple jurisdictional discovery would almost certainly have yielded evidence that Defendant LTSC a) received at least one contribution during the relevant period of this lawsuit; and b) has sold products to residents of Pennsylvania, and received commissions for doing so.

**4.  Defendant Geiger's Contacts With Pennsylvania Are Unclear. Nevertheless, the publication of the RayFAQ was "expressly targeted at Pennsylvania residents."**

As Defendant Geiger is an individual, his affiliations with individuals in Pennsylvania would remain hidden from Plaintiff, absent discovery. While Defendant Geiger disclaimed certain contacts with the state, his affidavit could easily contain omissions which would avoid a perjury charge, but where jurisdictional discovery would have uncovered minimum contacts.

As the publisher of the RayFAQ, or alternatively, the individual who caused its publication on his domain, Defendant Geiger was responsible for the publication of a website which strongly encouraged individuals to "warn" the media, law enforcement, mental health agencies, and the University of Pennsylvania about Plaintiff, and to contact them. If that is not "express targeting," then the doctrine is meaningless.

**D.  RICO Has Nationwide Service Of Process**

Even if this Court had found no other grounds for jurisdiction, 18 USC §1965(b) provides for nationwide service of process for RICO actions. This alone is sufficient to confer

jurisdiction within the Court's discretion, and should have been invoked here for judicial

efficiency, and because of the nature of the conduct being designed to cause maximum damage

to Plaintiff not only online, which is globally neutral, but in the very real offline world, in which

Plaintiff's movements of the type Defendants are attempting to obstruct and interfere with, all

occur within the Commonwealth.

**E.    The Court Abused Its Discretion In Dismissing The Case With Prejudice
Because The Deficiencies In The Complaint Were Curable By Amendment.**

*Pro se* pleadings are subject to liberal construction. (see, e.g., Order, ¶ III, p.4).

Leave to amend a complaint "should be given when justice so requires." (F.R.C.P. 15(a)).

Although from the Ninth Circuit, the decision in Bautista v. LA County (00-6573, 00-6574, Dist.

Ct. No. 97-56074, 9th Cir. 2000) speaks almost directly to the circumstances here:

> The deficiencies of the plaintiffs' second amended complaint were readily
> curable with some guidance from the court. *The court's sudden-death
> response was an abuse of discretion.*

Third Circuit precedent for this set of facts is sparse. The question, therefore, is

whether or not this Court is in sync with Bautista. If so, then Plaintiff should not only be granted

leave to file the attached Second Amended Complaint, and given guidance with regard to the

deficiencies.

Plaintiff has not submitted a proposed second Amended Complaint with this

filing for three reasons. First, he is about to "refile" this case in Delaware, where jurisdiction

over Defendant LTSC is certain (as they are a Delaware corporation), where he will name the

"third party entity" (Straightforward, Inc.) who distributes Defendant Ross's products, and where

§3104(c)(2) and §3104(c)(4) are more liberally worded than the Pennsylvania statutes in that

they provide for jurisdiction when an individual merely derives revenue from products sold

within the state.

8

Second, as per <u>Bautista</u>, this Court should not leave Plaintiff "flying blind" regarding the length of the Complaint (the higher courts have fixed page limits while this Court can use arbitrary assessments after the fact). Third, and most important, since dismissal for each defendant was based on matters of law, if those findings are not reversed, then Amendment becomes moot. It is in no way Plaintiff's intent to rest on his Amended Complaint, and the record should reflect this, even though Plaintiff considers that to be sufficient to survive a motion to dismiss as well.

For the purpose of appeal, and for this Motion, Plaintiff will submit a copy of the Delaware complaint once it is filed, as an example of how he would condense the Complaint and make it more concise. Since Plaintiff's other litigation was called into question, this Court should take judicial notice of Plaintiff's proposed Second Amended Complaint in <u>Parker v. Google</u>, E.D.Pa. #04-cv-3918, which was cut to barely more than thirty pages and which is far more concise than the original pleading. Since Delaware does not have jurisdiction over Defendants Penn and Wolf, however, they will not be named there but appealed here. Any adaptation of that Complaint should include a restatement of the claims set forth in this action against those two defendants. As the filing fee will rise to $350.00 on Sunday, April 9, 2006, and given that Plaintiff's resources are limited, he fully expects to have that Complaint filed by Friday, April 7, 2006. Finally, given that motions for reconsideration are rarely granted by the Courts, Plaintiff is operating on the presumption that the instant motion will not be granted, despite his many arguments as to why it should. To not do this would greatly increase Plaintiff's expenditures on appeal and with refiling. Plaintiff also intends to file his Notice of Appeal in this case by Friday, April 7, 2006, although he may be restricted by resources depending on how <u>Parker v. Google</u> proceeds.

9

## IV.  CONCLUSION

For the reasons set forth herein, the instant motion should be **granted.**  An appropriate form of order is attached.

This the 3rd day of April, 2006.

_Gordon Roy Parker_
Gordon Roy Parker, Plaintiff, Pro Se
4247 Locust Street, #806
Philadelphia, PA  19104
(215) 386-7366
GordonRoyParker@aol.com

10

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GORDON ROY PARKER, a.k.a. Ray Gordon, d/b/a Snodgrass Publishing Group,** | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | **CASE NO.: 05-cv-2752** |
| **Learn The Skills Corp., et al.** | : | |
| | : | |
| Defendants. | : | **Hon. Harvey Bartle, III** |
| | : | |

### CERTIFICATE OF SERVICE

I, Gordon Roy Parker, hereby certify that I have served the foregoing **Supplement To**

**Plaintiff's Motion For Reconsideration** on the following Defendants, by the following means:

**Trustees of the Univ. of PA**
Dennis G. Young (Counsel)
Montgomery, McCracken,
Walker & Rhoads
123 South Broad Street, 28th Fl.
Philadelphia PA 19109
**Regular Mail**

Thom E. Geiger (Pro Se)
817 North McCrary Road
Columbus, MS 39702-4320
**Regular Mail**

Mary Kay Brown
Buchanan Ingersoll, PC
1835 Market Street, 14th Floor
Philadelphia, PA 19103
Attorney For Paul Ross
**Regular Mail**

Formhandle@fastseduction.com (Pro Se)
Learn The Skills Corp.
955 Massachusetts Ave, #350
Cambridge, MA 02139
**Regular Mail**

Matthew S. Wolf, Esq.
241 Kings Highway East
Haddonfield, NJ 08033
Attorney For LTSC &
Defendant
**Regular Mail**

This the 10th day of April, 2006.

Gordon Roy Parker, Plaintiff, Pro Se
4247 Locust Street, #806
Philadelphia, PA 19104
(215) 386-7366
GordonRoyParker@aol.com

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GORDON ROY PARKER**, a.k.a. Ray Gordon, d/b/a **Snodgrass Publishing Group**, | : | |
| | : | |
| Plaintiff, | : | , |
| v. | : | |
| | : | **CASE NO.:** 05-cv-2752 |
| **Learn The Skills Corp.**, et al. | : | |
| | : | |
| Defendants. | : | **Hon. Harvey Bartle** |

### SUPPLEMENT TO PLAINTIFF'S MOTION FOR RECONSIDERATION

**Plaintiff** Gordon Roy Parker, in the above-styled action, moved this court for reconsideration of its order dismissing this case.

Plaintiff moved in that pleading to amend the Complaint, and stated that he would add the recently filed <u>Parker v. LTSC (III)</u> Complaint, which is now case #06-vc-229 in the District of Delaware. A full copy of that Complaint is attached hereto as Exhibit A and incorporated by reference as if fully set forth verbatim herein.

The Delaware complaint is forty-eight (48) pages in length, with approximately a dozen pages devoted to the RICO claims. This is one-third shorter than the 72-page complaint this court deemed "too long," but as Plaintiff has already argued, the district courts do not set page limits on Complaints. Plaintiff intends to argue on appeal that this guideline is vague and overbroad, and that dismissing a case without greater specificity regarding lengthy constitutes a denial of his right to civil due process. Should the Court in this case set aside judgment against the four defendants named in the Delaware action as well as this action, then Plaintiff will "adapt" that complaint for this Court. Delaware's pleading rules are such that more specificity

regarding the defamation claims had to be included. The complaint could be further pared down should the court impose a stricter page limitation.

Service of the Delaware action (and a related motion for expedited discovery of LTSC) is being made simultaneously with service of this pleading, as it relates to this case. In the mail, Plaintiff is including a copy of the summons and Delaware complaint, along with a waiver of service for each Defendant, and attaching the exhibit as normal for the two nondefendants in that case who are in this case..

This the 10th day of April, 2006.

Gordon Roy Parker
Plaintiff, Pro Se
4247 Locust Street, #806
Philadelphia, PA  19104
(215) 386-7366
SnodgrassPublish@aol.com

 

# General Docket
## US Court of Appeals for the Third Circuit

```
Court of Appeals Docket #: 06-2246                        Filed: 4/
Nsuit: 3470  Civil (RICO)
Parker v. Learn Skills Corp, et al
Appeal from: Eastern District of Pennsylvania

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Lower court information:

    District: 0313-2 : 05-cv-02752
    Trial Judge: Harvey Bartle, III, District Judge
    Date Filed: 6/9/05
    Date order/judgment: 3/30/06
    Date NOA filed: 4/7/06
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Fee status: paid

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Prior cases:
    None
Current cases:
    None


Docket as of April 25, 2006 6:39 pm                    Page 1
```

---

```
06-2246  Parker v. Learn Skills Corp, et al

GORDON ROY PARKER          Gordon Roy Parker
/dba                       215-386-7366
Snodgrass Publ Grp         #806
     Appellant             [NTC pro]
                           4247 Locust Street
                           Philadelphia, PA 19104


     v.
```

LEARN SKILLS CORP                    David L. Finger
        Appellee                     FAX 302-984-1294
                                     302-884-6766
                                     [COR NTC ret]
                                     Finger & Slanina
                                     1201 Orange Street
                                     One Commerce Center, Suite 725
                                     Wilmington, DE 19801


FORMHANDLE@FASTSEDUCTION.COM


THOM E. GEIGER                       Thom E. Geiger
        Appellee                     [NTC pro]
                                     817 North McCrary Road
                                     Columbus, MS 39702


PAUL ROSS                            David L. Finger
        Appellee                     (See above)
                                     [COR NTC ret]


TRUSTEES UNIV PA                     John M. Myers
        Appellee                     FAX 215-772-7620
                                     215-772-2535
                                     [COR NTC ret]
                                     Montgomery, McCracken, Walker &
                                     Rhoads
                                     123 South Broad Street
                                     Philadelphia, PA 19109


MATTHEW S. WOLF


Docket as of April 25, 2006 6:39 pm              Page 2


---


06-2246  Parker v. Learn Skills Corp, et al

GORDON ROY PARKER, d/b/a Snodgrass Publ Grp

              Appellant


    v.

LEARN SKILLS CORP;

Appellee

FORMHANDLE@FASTSEDUCTION.COM;


THOM E. GEIGER; PAUL ROSS; TRUSTEES UNIV PA;

Appellees

MATTHEW S. WOLF


Docket as of April 25, 2006 6:39 pm                    Page 3

---

06-2246  Parker v. Learn Skills Corp, et al

4/13/06          CIVIL CASE DOCKETED.  Notice filed by Gordon Roy Park
                 (dmm)

4/13/06          RECORD, received. (dmm)

4/17/06          TRANSCRIPT PURCHASE ORDER (PART I), no proceedings in
                 District Court. (dmm)

4/20/06          APPEARANCE from Attorney John M. Myers on behalf of
                 Appellee Trustees Univ PA, filed. (dmm)

4/20/06          DISCLOSURE STATEMENT on behalf of Appellee Trustees U
                 PA, filed. (dmm)

4/21/06          CLERK ORDER - RULE 4(a)(4)  Stay case pending disposi
                 of post decision motion[s].  Status Report due 5/22/0

4/21/06          Certified copy of order to Lower Court. (dmm)

4/21/06          Thom E. Geiger advises that he intends to participate
                 this appeal, filed. (dmm)

4/25/06          APPEARANCE from Attorney David L. Finger on behalf of
                 Appellees Learn Skills Corp and Paul Ross, filed. (dm

4/25/06          DISCLOSURE STATEMENT on behalf of Appellee Learn Skil
                 Corp, filed. (dmm)


Docket as of April 25, 2006 6:39 pm                    Page 4

Westlaw.

Not Reported in F.Supp.                                                                         Page 1

Not Reported in F.Supp., 1991 WL 317019 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
CONOCO, INC., et al., Plaintiffs,
v.
Samuel K. SKINNER, as Secretary of
Transportation et al., Defendants.
**Civ. A. No. 91-122-JLL.**

Nov. 12, 1991.

Richard Allen Paul of E.I. du Pont de Nemours and
Company, Wilmington, and Mark P. Schlefer,
T.S.L. Perlman, Leonard Egan, and William C.
Buckhold of Fort & Schlefer, Washington, D.C., of
counsel, for plaintiff.
William C. Carpenter, Jr., United States Attorney
and Kent A. Jordan, Assistant United States
Attorney, Wilmington, Stuart M. Gerson, Assistant
Attorney General, Washington, D.C., Sandra M.
Schraibman, Assistant Director, and Susan
Friedman Cohen, Civil Division Trial Attorney, for
the United States Department of Justice, Rosalind
Avnet Lazarus for the Department of
Transportation, Robert J. Patton, Jr., Deputy Chief
Counsel and Sandra L. Jenkins, Assistant Chief
Counsel, for the Maritime Administration, John
Astley for the United States Coast Guard, and
William Sandler for the United States Customs
Service, Washington, D.C., for defendants.

MEMORANDUM OPINION

LATCHUM, Senior District Judge.
**\*1** Plaintiffs, E.I. du Pont de Nemours and
Company ("Du Pont") and its wholly owned
subsidiary Conoco, Inc. ("Conoco"), seek judicial
review in this Court of federal agency action
concerning documentation, ownership, and
chartering of vessels in coastwise trade under the
Administrative Procedure Act ("APA"). 5 U.S.C. §
701 *et seq.* (Docket Item ["D.I."] 1, 13.)

Defendants, the United States Departments of
Transportation and Treasury, the United States
Coast Guard, the United States Customs Service,
the Maritime Commission, and the United States of
America, contend that these issues fall within the
exclusive jurisdiction of the court of appeals under
the Hobbs Act. 28 U.S.C. § 2342. Accordingly,
the defendants moved this Court to dismiss the
action for lack of jurisdiction. (D.I. 6, 7.)

The plaintiffs then moved for summary judgment on
the merits. (D.I. 11, 12.) In response, defendants'
moved to stay consideration of the motion for
summary judgment in order to resolve the
preliminary issue of whether this Court has subject
matter jurisdiction. (D.I. 18.) In this Court's
discretion, after balancing the competing interests at
issue, consideration of the plaintiffs' motion for
summary judgment must be suspended until the
jurisdictional issue in defendants' motion to dismiss
is resolved.

*Discussion*

The power to stay proceedings, so as to promote
fair and efficient adjudication, is incidental to the
Court's inherent power to control the disposition of
the cases on its docket. *Gold v. Johns-Manville
Sales Corp.,* 723 F.2d 1068 (3d Cir.1983) (citing
*Landis v. North American Co.,* 299 U.S. 248, 254
(1936)). When determining whether a **stay** is
appropriate, the Court should balance the
competing interests, consider the possible damage,
hardship, and inequities and conserve **judicial
resources**. *Lenox Hotel Co. v. Charter Builders,
Inc.,* 717 F.Supp. 1558, 1564 (N.D.Ga.1989). For
the reasons set forth below, granting a stay is
appropriate under the facts and circumstances of
this case.

First, this Court cannot consider the merits of the
case until it first is assured of its jurisdiction. *Allied
Poultry Processors Co. v. Polin,* 134 F.Supp 278,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                          Page 2

Not Reported in F.Supp., 1991 WL 317019 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

279 (D.Del.1955) (jurisdiction must be secured before proceeding with the other substantive contentions). Here, this Court seriously questions its jurisdiction and it cannot proceed until it is assured that jurisdiction is appropriate. Although the Third Circuit may welcome the views of this Court on the merits even if this Court ultimately lacks jurisdiction, the United States Constitution forbids this Court from fulfilling such an advisory role. The judicial power in Article III is not unconditioned authority to determine the constitutionality of legislative or executive acts. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471, 473-75 (1982).

Second, this Court believes that discussion on the merits raises issues separate and distinct from any discussion of jurisdiction. In this Court's discretion, these two complex matters cannot be efficiently considered in a single proceeding. Not only will examination of discrete issues risk confusion, a determination of the merits is contingent upon subject matter jurisdiction and it would be wasteful to deal with contentions possibly rendered moot on jurisdictional grounds. Also, an initial probe into the jurisdictional issue will allow the parties to sharpen the inquiry on the merits and concentrate their efforts in a subsequent hearing, regardless of the forum. This Court believes that a stay will eliminate the possibility of duplicate hearings addressing plaintiffs' substantive contentions and conserve the time, effort and resources of all involved.

**\*2** The plaintiffs' state their intention to appeal any order to dismiss on jurisdictional grounds, apparently to convince this Court that a stay is inappropriate. The plaintiffs' intentions do not persuade this Court to simultaneously resolve both the jurisdictional and substantive issues. To the contrary, it makes the necessity of a deliberate, isolated look at the jurisdictional issue more important. Moreover, the plaintiffs' argument that their victory on appeal would force "this Court to address the case a second time with the probability of a second appeal on the merits" is not well taken. (D.I. 19.) It appears to this Court that plaintiffs' anticipate not only an unwarranted dismissal on

jurisdictional grounds but an erroneous decision by this Court on the merits. This argument is not only speculative and demeaning to the Court but subsequent appeals on this Court's legal decisions have little bearing on its discretionary control of the cases on its docket.

Third, this Court can find no harm or prejudice accruing to either party. The plaintiffs' apparently oppose a stay only on the grounds of judicial economy, contending that it "makes good sense" to determine both the jurisdictional and substantive issues in a single proceeding. (D.I. 19.) Neither the plaintiffs nor the defendants outline any damage, hardship, or inequities arising from the granting of a stay. Quite the opposite appears to be true, the parties will obtain a timely ruling on the merits regardless of the ultimate determination of the jurisdictional issue. The action is currently pending before the Third Circuit and it appears that the Third Circuit could resolve the matter should this Court lack jurisdiction. To the extent that plaintiffs raise claims ancillary to those matters over which the court of appeals has exclusive review under the Hobbs Act, such a claim is subject to review exclusively by the court of appeals. *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743 (1985) (preliminary or ancillary issues to the core issue in a proceeding should be reviewed in the same forum as the final order resolving the core issue); *Telecommunications Research and Action Center v. FCC,* 750 F.2d 70, 75 (D.C.Cir.1984) (where statute grants exclusive jurisdiction, any suit possibly affecting future jurisdiction is subject to the same exclusive review by use of the All Writs Act).

*Conclusion*

This Court holds that postponement of consideration of the plaintiffs' motion for summary judgment is appropriate to promote fair and efficient adjudication. Therefore, defendants' motion to stay will be granted. An order will be entered in accordance with this Memorandum Opinion.

D.Del.,1991.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 3

Not Reported in F.Supp., 1991 WL 317019 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**


Conoco, Inc. v. Skinner
Not Reported in F.Supp., 1991 WL 317019 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:91cv00122 (Docket) (Mar. 11, 1991)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.