

--- F.Supp.2d ----                                                                                           Page 1

--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212
**(Cite as: --- F.Supp.2d ----)**

Briefs and Other Related Documents

United States District Court,E.D. Pennsylvania.
Gordon Roy PARKER
v.
GOOGLE, INC.
**No. Civ.A. 04-CV-3918.**

March 10, 2006.

**Background:** E-book writer sued Internet search engine operator for, inter alia, direct and contributory copyright infringement. Operator moved to dismiss.

**Holdings:** The District Court, Surrick, J., held that:

5(1) operator's archiving of, caching of, or providing access to writer's usenet postings of copyrighted material was not infringing;

11(2) operator was immune from tort liability arising from its archiving of, caching of, or providing access to allegedly defamatory, unauthorized, or threatening usenet postings; and

13(3) operator's listing of website that was critical of plaintiff did not subject operator to liability for false designation of origin.

Motion granted.

**[1] Federal Civil Procedure 170A ☞657.5(1)**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(A) Pleadings in General
         170Ak654 Construction
           170Ak657.5 Pro Se or Lay Pleadings
              170Ak657.5(1) k. In General. Most Cited Cases
Court reviews pro se complaints more leniently than those crafted by lawyers.

**[2] Copyrights and Intellectual Property 99☞51**

99 Copyrights and Intellectual Property
   99I Copyrights
      99I(J) Infringement
         99I(J)1 What Constitutes Infringement
           99k51 k. Nature and Elements of Injury. Most Cited Cases
To prove copyright infringement, plaintiff must show: (1) ownership of valid copyright and (2) copying of protectable expression by defendant.

**[3] Copyrights and Intellectual Property 99☞53(1)**

99 Copyrights and Intellectual Property
   99I Copyrights
      99I(J) Infringement
         99I(J)1 What Constitutes Infringement
           99k53 Acts Constituting Infringement
              99k53(1) k. In General. Most Cited Cases
Copyright infringement occurs when defendant violates one of copyright holder's exclusive rights. 17 U.S.C.A. § 106.

**[4] Copyrights and Intellectual Property 99☞52**

99 Copyrights and Intellectual Property
   99I Copyrights
      99I(J) Infringement
         99I(J)1 What Constitutes Infringement
           99k52 k. Intent or Purpose. Most Cited Cases
Copyright infringement plaintiff must show volitional conduct on part of defendant in order to support finding of direct infringement.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----   Page 2

--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212
**(Cite as: --- F.Supp.2d ----)**

**[5] Copyrights and Intellectual Property 99⚷67.3**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)1 What Constitutes Infringement
                99k67.3 k. Other Works. Most Cited Cases

Internet search engine operator's automatic archiving of usenet posting, and production of excerpt from and hyperlink to posting in response to search requests, did not constitute direct infringement of writer's copyright in posted material; operator's conduct did not have volitional character required for finding of infringement.

**[6] Copyrights and Intellectual Property 99⚷67.3**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)1 What Constitutes Infringement
                99k67.3 k. Other Works. Most Cited Cases

Internet search engine operator's automatic caching of web pages as means of indexing websites did not constitute direct infringement of writer's copyright in usenet-posted material; operator's conduct came within statutory safe harbor. 17 U.S.C.A. § 512(b).

**[7] Copyrights and Intellectual Property 99⚷77**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)2 Remedies
                99k72 Actions for Infringement
                    99k77 k. Persons Liable. Most Cited Cases

One who, with knowledge of copyright infringing activity, induces, causes, or materially contributes to infringing conduct of another may be liable as contributory infringer.

**[8] Copyrights and Intellectual Property 99⚷77**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)2 Remedies
                99k72 Actions for Infringement
                    99k77 k. Persons Liable. Most Cited Cases

Internet search engine operator's archiving of usenet postings, and its provision of them in response to search requests, did not constitute contributory infringement of writer's copyright in posted material, absent claim that operator was on notice of any third party's direct infringement.

**[9] Copyrights and Intellectual Property 99⚷77**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)2 Remedies
                99k72 Actions for Infringement
                    99k77 k. Persons Liable. Most Cited Cases

Defendant is vicariously liable for copyright infringement if he enjoys direct financial benefit from another's infringing activity and has right and ability to supervise infringing activity.

**[10] Copyrights and Intellectual Property 99⚷77**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)2 Remedies
                99k72 Actions for Infringement
                    99k77 k. Persons Liable. Most Cited Cases

Internet search engine operator's archiving of usenet postings, and its provision of them in response to search requests, did not give rise to vicarious liability for infringement of writer's copyright in posted material, absent allegation of any specific conduct by third party which operator may have had right and ability to supervise, or that operator had any obvious and direct financial interest in exploitation of copyrighted materials.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ---- Page 3

--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212
**(Cite as: --- F.Supp.2d ----)**

**[11] Libel and Slander 237 ⇌28**

237 Libel and Slander
    237I Words and Acts Actionable, and Liability Therefor
        237k26 Repetition
            237k28 k. By Others in General. Most Cited Cases

**Telecommunications 372 ⇌1344**

372 Telecommunications
    372VIII Computer Communications
        372k1339 Civil Liabilities; Illegal or Improper Purposes
            372k1344 k. Persons and Entities Liable; Immunity. Most Cited Cases

**Torts 379 ⇌355**

379 Torts
    379IV Privacy and Publicity
        379IV(B) Privacy
            379IV(B)3 Publications or Communications in General
                379k355 k. Defenses in General. Most Cited Cases
Internet search engine operator was immune, under Communications Decency Act, from any defamation, invasion of privacy, or negligence liability arising from its archiving of, caching of, or providing access to allegedly defamatory, unauthorized, or threatening usenet postings; operator could not be held liable as publisher or speaker of third-party content. Communications Act of 1934, § 230(c, e), 47 U.S.C.A. § 230(c, e).

Internet search engine operator was immune, under Communications Decency Act, from any defamation, invasion of privacy, or negligence liability arising from its archiving of, caching of, or providing access to allegedly defamatory, unauthorized, or threatening usenet postings; operator could not be held liable as publisher or speaker of third-party content. Communications Act of 1934, § 230(c, e), 47 U.S.C.A. § 230(c, e).

Internet search engine operator was immune, under Communications Decency Act, from any defamation, invasion of privacy, or negligence liability arising from its archiving of, caching of, or providing access to allegedly defamatory, unauthorized, or threatening usenet postings; operator could not be held liable as publisher or speaker of third-party content. Communications Act of 1934, § 230(c, e), 47 U.S.C.A. § 230(c, e).

**[12] Trademarks 382T ⇌1084**

382T Trademarks
    382TIII Similarity Between Marks; Likelihood of Confusion
        382Tk1083 Nature of Confusion
            382Tk1084 k. In General. Most Cited Cases

**Trademarks 382T ⇌1421**

382T Trademarks
    382TVIII Violations of Rights
        382TVIII(A) In General
            382Tk1418 Practices or Conduct Prohibited in General; Elements
                382Tk1421 k. Infringement. Most Cited Cases
Essential element in trademark infringement claim under Lanham Act is that alleged infringement creates likelihood of confusion on part of consumers as to source of goods. Lanham Trade-mark Act, § 43(a), 15 U.S.C.A. § 1125(a).

**[13] Trademarks 382T ⇌1116**

382T Trademarks
    382TIII Similarity Between Marks; Likelihood of Confusion
        382Tk1116 k. Internet Cases. Most Cited Cases

**Trademarks 382T ⇌1565**

382T Trademarks
    382TIX Actions and Proceedings
        382TIX(A) In General
            382Tk1564 Persons Liable
                382Tk1565 k. In General. Most Cited Cases
Internet search engine operator's listing of website

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                                    Page 4

--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212
**(Cite as: --- F.Supp.2d ----)**

that was critical of plaintiff did not subject operator to liability for false designation of origin; even if website used plaintiff's trademark, there was no likelihood of confusion on issue of whether plaintiff was website's creator and, in any event, operator had no role in creation of website's content.

**[14] Trademarks 382T ☞1565**

382T Trademarks
　　382TIX Actions and Proceedings
　　　　382TIX(A) In General
　　　　　　382Tk1564 Persons Liable
　　　　　　　　382Tk1565 k. In General. Most Cited Cases
With respect to liability for trademark violations, participation in activities merely related to infringing acts is not enough; personal liability extends only to those persons who actively participate as moving force in decision to engage in infringing acts or otherwise cause infringement as a whole to occur.

**[15] Trade Regulation 382 ☞870(2)**

382 Trade Regulation
　　382II Statutory Unfair Trade Practices
　　　　382II(B) Other Statutes, Liabilities and Remedies Under
　　　　　　382II(B)1 Unfair Trade Practices in General
　　　　　　　　382k870 Unlawful Advertising or Labelling
　　　　　　　　　　382k870(2) k. Misrepresentation of Origin. Most Cited Cases

**Trademarks 382T ☞1520**

382T Trademarks
　　382TVIII Violations of Rights
　　　　382TVIII(D) Defenses, Excuses, and Justifications
　　　　　　382Tk1520 k. In General. Most Cited Cases
Internet search engine operator's immunity, under Communications Decency Act, from any tort liability arising from its archiving of, caching of, or providing access to third-party content did not extend to Lanham Act claims for false designation of origin; Act carved out exception from immunity for intellectual property law claims. Lanham Trade-mark Act, § 43(a), 15 U.S.C.A. § 1125(a); Communications Act of 1934, § 230(c)(2), 47 U.S.C.A. § 230(c)(2).

Internet search engine operator's immunity, under Communications Decency Act, from any tort liability arising from its archiving of, caching of, or providing access to third-party content did not extend to Lanham Act claims for false designation of origin; Act carved out exception from immunity for intellectual property law claims. Lanham Trade-mark Act, § 43(a), 15 U.S.C.A. § 1125(a); Communications Act of 1934, § 230(c)(2), 47 U.S.C.A. § 230(c)(2).

**[16] Process 313 ☞168**

313 Process
　　313IV Abuse of Process
　　　　313k168 k. Nature and Elements of Cause of Action. Most Cited Cases
In Pennsylvania, "abuse of process" involves perversion of legal process to accomplish some unlawful purpose for which it was not designed.

**[17] Process 313 ☞171**

313 Process
　　313IV Abuse of Process
　　　　313k171 k. Actions. Most Cited Cases
Copyright infringement defendant's allegation that plaintiff had "history of vexatious litigation" did not constitute abuse of process, under Pennsylvania law; allegation was not perversion of legal process to accomplish some unlawful purpose.

**Trademarks 382T ☞1800**

382T Trademarks
　　382TXI Trademarks and Trade Names Adjudicated
　　　　382Tk1800 k. Alphabetical Listing. Most Cited Cases
RayFAQ.


Gordon Roy Parker, Philadelphia, PA, Pro se.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                                                Page 5

--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212
**(Cite as: --- F.Supp.2d ----)**

Bart E. Volkmer, David H. Kramer, Leo P. Cunningham, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, John E. Riley, Vaira & Riley PC, Philadelphia, PA, for Google, Inc.

### MEMORANDUM & ORDER
SURRICK, District Judge.

**\*1** Presently before the Court is Defendant, Google, Inc.'s Motion To Dismiss Plaintiff's First Amended Complaint (Doc. No. 13). For the following reasons, Defendant's Motion will be granted.

### I. BACKGROUND

Defendant Google, Inc. ("Google") is a Delaware corporation with its headquarters in California. Google maintains a website that provides search technology, allowing users to search for, among other things, websites, products, and images. Google provides this service by "crawling" the web and then organizing the content in a searchable Web index. When a user types in a query, Google's proprietary technology produces a list of hyperlinks organized by their relevance and reliability. In the course of providing this service, Google makes a copy of each website and stores it in a "cache," a temporary storage tool. When it produces a list of results for a particular query, Google often includes links to these caches, noting that they are archival copies of the original web pages. Google also maintains the USENET, "a global system of online bulletin boards" (Doc. No. 13 at 2) and allows users to post and search archived messages on the system.

Pro se Plaintiff Gordon Roy Parker alleges that he is a writer and that he publishes his works on the internet under the name "Snodgrass Publishing Group." He maintains a website at www.cybersheet.com. Plaintiff further alleges that he has written and owns the registered copyright for, among other works, his e-book, "29 Reasons Not To Be A Nice Guy." Plaintiff is a participant in the USENET and, at one point, posted "Reason # 6" from his "29 Reasons" book to the USENET.

Parker filed his original Complaint on August 18, 2004. (Doc. No. 1.) He subsequently filed an Amended Complaint on October 22, 2004. (Doc. No. 11.) In the Amended Complaint, Parker asserts eleven separate claims against Google and 50,000 " John Doe" Defendants who, he asserts, "represent Google's partners through its 'Adsense' and ' Adwords' programs" (Doc. No. 11 ¶ 3). The eleven claims are: (1) direct copyright infringement, (2) contributory copyright infringement, (3) vicarious copyright infringement, (4) defamation, (5) invasion of privacy, (6) negligence, (7) Lanham Act violations, (8) and (9) racketeering, (10) abuse of process, and (11) civil conspiracy.

In the instant Motion, Google contends that Parker's Amended Complaint should be dismissed for failure to comply with the "short and plain statement" requirement or, alternatively, for failure to state a claim.

### II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim. The purpose of a Rule 12(b)(6) motion to dismiss is not to resolve disputed facts or decide the merits of the case. *Tracinda Corp. v. DaimlerChrysler AG,* 197 F.Supp.2d 42, 53 (D.Del.2002). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Johnsrud v. Carter,* 620 F.2d 29, 33 (3d Cir.1980) (citing *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Swin Res. Sys., Inc. v. Lycoming County,* 883 F.2d 245, 247 (3d Cir.1989) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

**\*2** In evaluating a motion to dismiss, all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the nonmoving party. *Rocks v. City of Phila.,* 868 F.2d 644, 645 (3d Cir.1989) (citing *Wisniewski v. Johns-Manville Corp.,* 759 F.2d 271, 273 (3d Cir.1985)). The court may dismiss a complaint, " only if it is certain that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swin Res. Sys., Inc.,* 883 F.2d at 247.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                                         Page 6

--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212
**(Cite as: --- F.Supp.2d ----)**

In deciding a motion to dismiss, federal courts are bound by the pleading requirements of Federal Rule of Civil Procedure 8(a). Fed.R.Civ.P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). All that is necessary, therefore, is a succinct summary sufficient to give the defendants fair notice of the nature of the claims asserted against them. *Leatherman v. Tarrant County,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (noting that the Federal Rules of Civil Procedure impose a particularity requirement in only two specific instances, fraud or mistake).

### III. LEGAL ANALYSIS

[1] We note preliminarily that Plaintiff's Complaint is voluminous, consisting of seventy-two pages with 291 separate paragraphs of factual averments and legal allegations. In fact, Plaintiff devotes the first forty-five pages and 129 paragraphs, before any legal claims are stated, to an overview of the alleged wrongful conduct. Plaintiff's inclusion of " 50,000 John Does" as defendants further confuses this already unwieldy Complaint. As a result, this rambling pleading is far from a "short and plain statement" as required by Rule 8(a). However, because we review pro se complaints more leniently than those crafted by lawyers, we will consider each claim separately, reviewing it under the requirements of Rule 8(a) and Rule 12(b)(6) respectively. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

### A. Direct Copyright Infringement (Count I)

Plaintiff claims that Google has committed direct copyright infringement in a number of ways. First, Parker alleges that he has a valid registered copyright for his e-book, "29 Reasons Not To Be A Nice Guy" including "Reason # 6," which he posted on the USENET. While it is not entirely clear, Parker appears to assert that Google's automatic archiving of this USENET posting constituted a direct infringement of his copyright. Parker also claims that when Google produces a list of hyperlinks in response to a user's search query and excerpts his website in that list, Google is again directly infringing his copyrighted work. He alleges that this conduct constitutes a violation of the Copyright Act, 17 U.S.C. § 106 *et seq.,* and the Digital Millennium Copyright Act, 17 U.S.C. § 512.

[2][3][4] To prove copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright and (2) copying of protectable expression by the defendant. Infringement occurs when a defendant violates one of the exclusive rights of the copyright holder." *Netcom,* 907 F.Supp. at 1366-67 (internal citations omitted). In addition, "a plaintiff must also show volitional conduct on the part of the defendant in order to support a finding of direct copyright infringement." *Field v. Google, Inc.,* 412 F.Supp.2d 1106, 1114-15 (D.Nev.2006) (citing *Netcom,* 907 F.Supp. at 1369-70).

**\*3** [5] While Plaintiff has alleged a valid copyright, at least with respect to his "Reason # 6" USENET posting, the case law is clear that the activities of Google do not constitute direct infringement. The United States Court of Appeals for the Fourth Circuit has concluded that while the Copyright Act does not require that the person intentionally infringe a copyright, "it nonetheless requires *conduct* by a person who causes in some meaningful way an infringement." *CoStar Group, Inc. v. LoopNet, Inc.,* 373 F.3d 544, 549 (4th Cir.2004). Courts have drawn an analogy between an internet service provider ("ISP"), which maintains "a system that automatically transmits users' material but is itself indifferent to the material's content," and the owner of a copy machine who makes its use available to the public. *Id.* at 551. The Court in *Netcom* explicitly analogized the actions of an ISP that caches and archives data and the owner of a copy machine:

[T]he mere fact that [the ISP's] system incidentally makes temporary copies of plaintiffs' works does not mean [the ISP] has caused the copying. The court believes that [the ISP's] act of designing or implementing a system that automatically and uniformly creates temporary copies of all data sent through it is not unlike that of the owner of a copying machine who lets the public make copies with it.... Although copyright is a strict liability statute, there should still be some element of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                                    Page 7

--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212
**(Cite as: --- F.Supp.2d ----)**

volition or causation which is lacking where a defendant's system is merely used to create a copy by a third party.

*Netcom,* 907 F.Supp. at 1368-70. When an ISP automatically and temporarily stores data without human intervention so that the system can operate and transmit data to its users, the necessary element of volition is missing. The automatic activity of Google's search engine is analogous. It is clear that Google's automatic archiving of USENET postings and excerpting of websites in its results to users' search queries do not include the necessary volitional element to constitute direct copyright infringement.

[6] In addition, while it is not entirely clear from Plaintiff's rambling Complaint, should Parker be claiming direct copyright infringement based on Google's automatic caching of web pages as a means of indexing websites and producing results to search queries, this activity does not constitute direct infringement either. Based upon Title II of the Digital Millennium Copyright Act, the Online Copyright Infringement Liability Limitation Act, 17 U.S.C. § 512(b), the District Court for the District of Nevada recently held that Google is entitled to the Act's safe harbor provisions for its system caching activities. *Field,* at 1122-25 (granting Google's motion for summary judgment that it qualifies for § 512(b) safe harbor for system caching). We conclude that Plaintiff has not stated a claim upon which relief can be granted based solely on Google's automatic system caching. We are satisfied that neither the automatic archiving of USENET messages and automatic caching of websites, nor the excerpting of passages from Plaintiff's website, constitutes direct infringement. Accordingly, we will dismiss this claim.

**B. Contributory Copyright Infringement (Count II)**

**\*4** Parker next claims that Google is liable under a theory of contributory copyright infringement because it allows users to "view[ ] infringed content, constituting an unauthorized distribution and resulting in an unauthorized copy" (Doc No. 11 ¶ 146) and because it publishes "compilations of Plaintiff's USENET postings through its 'author search' feature of its USENET archive." (*Id.* ¶ 148.) Plaintiff again makes conclusory legal statements without sufficiently explaining the factual basis for his claims. Plaintiff's initial allegation is wholly unclear. It simply states that "a tremendous amount of copyright infringement takes place on and by virtue of Google's website everyday " and that "each and every one of those infringements is facilitated, encouraged, and made possible by Google." (*Id.* ¶ 146.) This broad statement is not very helpful. Next, Parker seems to claim that by archiving USENET postings-including those with copyrighted work-and providing a feature that allows users to search for all postings by a specific author, Google contributes to copyright infringement when the search returns postings containing copyrighted material.

[7] " 'One who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another may be liable as a contributory [copyright] infringer.' " *Ellison v. Robertson,* 357 F.3d at 1076 (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,* 443 F.2d 1159, 1162 (2d Cir.1971)). The Court of Appeals for the Ninth Circuit has interpreted the knowledge requirement to include "both those with actual knowledge and those who have reason to know of direct infringement." *Id.* In essence, in order to claim that Google is a contributory infringer, Plaintiff must allege first, that he had registered copyrights that were infringed by a third party and second, that Google authorized or assisted that third party. That "authorization or assistance must bear some direct relationship to the infringing acts, and the person rendering such assistance or giving such authorization must be acting in concert with the infringer." 3-12 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.04[A][2][a] (2005).

[8] The paragraphs in Plaintiff's Complaint that address contributory copyright infringement do not clearly allege third party infringement and contribution by Google. However, based on the lengthy factual averments that precede Plaintiff's legal claims, we understand Parker's Complaint to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                                        Page 8

--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212
**(Cite as: --- F.Supp.2d ----)**

allege the following: Parker makes a post to the USENET which is then copied by a third party in its own post. Google archives these postings and provides them in search results when other USENET users search under "author search" for Plaintiff's name. However, this allegation fails to sufficiently allege contributory infringement for two reasons. First, Parker fails to allege infringement of a specific copyrighted work. In fact, in this section, Parker makes no mention of any specific work and refers only to "infringed content" and "USENET postings," neither of which is a registered work as required by the Copyright Act. *See* 17 U.S.C. § 411 ("no action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title"). Second, Parker fails to allege that Google had requisite knowledge of a third party's infringing activity, a failure that is fatal to this claim. *Cf. Ellison,* 357 F.3d at 1077 (finding that plaintiff emailed AOL about his copyright infringement claim and that AOL, despite its changed e-mail address, should have been on notice of the infringing activity). Thus, we conclude that Plaintiff fails to state a claim for contributory copyright infringement.

### C. Vicarious Copyright Infringement (Count III)

**\*5** Plaintiff next claims that Google is liable for vicarious copyright infringement, alleging that Google has "the right and ability to supervise and/or control the infringing conduct of itself and its users" and that Google "derived substantial financial benefit ... in the form of advertising revenue and goodwill." (Doc. No. 11 ¶¶ 156-157.) Parker makes no specific allegations regarding what the infringing conduct is, nor does he refer to any specific registered works.

[9] "A defendant is vicariously liable for copyright infringement if he enjoys a direct financial benefit from another's infringing activity and 'has the right and ability to supervise' the infringing activity." *Ellison,* 357 F.3d at 1076 (quoting *A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1022 (9th Cir.2001)). There are two elements to a successful claim of vicarious copyright infringement: (1) "the right and ability to supervise the infringing conduct" and (2) " 'an obvious and direct financial interest in the exploitation of copyrighted materials.' " Nimmer, *supra,* § 12.04[A][1] (quoting *Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 307 (2d Cir.1963)). Obviously, without a specific allegation of infringing conduct, these two elements cannot be demonstrated.

[10] Here, Plaintiff's claim of vicarious copyright infringement must fail. Plaintiff has again failed to allege any infringing conduct. He points to no specific registered works that were infringed nor does he allege specific conduct by a third party which Google may have had the right and ability to supervise. Next, Plaintiff fails to allege an "obvious and direct financial interest in the exploitation of copyrighted materials." Parker alleges merely that Google's advertising revenue is directly related to the number of Google users and that the number of users "is dependent directly on Google's facilitation of and participation in the alleged infringement." (Doc. No. 11 ¶ 157.) This vague and conclusory statement does not allege any actual relationship between infringing activity and the number of users and thus does not allege obvious and direct financial interest sufficient to maintain this claim of vicarious infringement. *See Ellison,* 357 F.3d at 1079 (vicarious copyright infringement claim fails where "record lacks evidence that AOL attracted or retained subscriptions because of the infringement or lost subscriptions because of AOL's eventual obstruction of the infringement"); *see also* Nimmer, *supra,* § 12B.01[A][1] ("[L]arge, commercial ISPs derive insufficient revenue from isolated infringing bits, in the context of the billions of bits that cross their servers to characterize them as financially benefiting from the conduct of which complaint is made."). Accordingly, we will dismiss Plaintiff's claim for vicarious copyright infringement.

### D. Torts of Defamation (Count IV), Invasion of Privacy (Count V), and Negligence (Count VI)

**\*6** [11] In Counts IV, V, and VI, Plaintiff alleges that Google is liable for the torts of defamation, invasion of privacy, and negligence. Each of these

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                                                Page 9

--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212
**(Cite as: --- F.Supp.2d ----)**

claims is based on separate conduct. However, because we conclude that Google cannot be liable for any of these torts under the Communications Decency Act ("CDA"), 47 U.S.C. § 230 *et seq.*, we will deal with them together. Parker alleges that Google is liable for defamation because it archived defamatory messages posted by USENET users and because of defamatory statements located on a website Parker calls the "RayFAQ website," which was in Google's cache. Parker alleges that Google is liable for invasion of privacy because the act of Google users putting in a search query of his name leads Google to produce a list of websites in which his name appears, thus creating what he calls "an unauthorized biography of Plaintiff that is an invasion of his right to privacy." (Doc. No. 11 ¶ 178.) Finally, Parker alleges that Google is liable for negligence for continuing to archive the "RayFAQ website" after being put on notice that it contained defamatory and threatening messages.

Without examining the specific elements of each of these claims, we note that each claim revolves around the tortious acts of a third party for which Parker holds Google accountable by virtue of its archived USENET system, its website search tool, and its caching system. We agree with Defendant that Google is immune from such state tort claims under § 230 of the CDA. Section 230 provides that: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). In addition, the statute provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id.* § 230(e)(3). The intent of this provision is to " 'preclude [ ] courts from entertaining claims that would place a computer service provider in a publisher's role.' " *Green v. Am. Online (AOL),* 318 F.3d 465, 471 (3d Cir.2003) (quoting *Zeran v. Am. Online, Inc.,* 129 F.3d 327, 330 (4th Cir.1997)). Through § 230, "Congress granted most Internet services immunity from liability for publishing false or defamatory material so long as the information was provided by another party. As a result, Internet publishers are treated differently from corresponding publishers in print, television and radio." *Carafano v. Metrosplash.com, Inc.,* 339 F.3d 1119, 1122 (9th Cir.2003).

In this case, there is no doubt that Google qualifies as an "interactive computer service" and not an "information content provider." Thus, it is eligible for immunity under § 230. In each instance raised by Plaintiff's tort claims, Google either archived, cached, or simply provided access to content that was created by a third party. The defamatory statements in USENET postings and on the "RayFAQ website" were created by users of USENET and other internet users, as was the information on websites that appears as a result of a search query of Plaintiff's name. It is clear that § 230 was intended to provide immunity for service providers like Google on exactly the claims Plaintiff raises here. *See Green,* 318 F.3d at 471 (finding § 230 immunity proscribes liability on claims of defamation and general negligence); *Carafano,* 339 F.3d at 1125 (§ 230 affords immunity from suit on claims of invasion of privacy, misappropriation of the right of publicity, defamation, and negligence); *Ben Ezra, Weinstein, & Co. v. Am. Online, Inc.,* 206 F.3d 980, 986 (10th Cir.2000) (§ 230 immunity bars claims for defamation and negligence); *Zeran v. America Online, Inc.,* 129 F.3d 327 (4th Cir.1997) ( § 230 bars claim for negligence alleging that service provider unreasonably delayed in removing defamatory messages posted by third parties). Accordingly, we conclude that under § 230 of the CDA, Google cannot be held liable for the claims of defamation, invasion of privacy, and negligence alleged here.

### E. Lanham Act Violations (Count VII)

**\*7** Plaintiff alleges violations of the Lanham Act by virtue of "Google's republication of the RayFAQ (i.e., "OFFICIAL Ray Gordon FAQ"), claiming that this constitutes false designation of origin and unfair competition." (Doc. No. 11 ¶ 199.) Parker seems to allege that the RayFAQ website, which contained defamatory comments about him constituted a Lanham Act violation in that consumers looking for Parker's website and products would find the RayFAQ website in their search results and think it was a website produced

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                                          Page 10

--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212
**(Cite as: --- F.Supp.2d ----)**

by Parker. Google contends that Parker does not have standing to bring a Lanham Act claim.

[12] The Lanham Act creates a cause of action for trademark infringement. Plaintiff raises a claim of false designation of origin. We assume that he is raising this claim pursuant to 15 U.S.C. § 1125(a)(1)(A) of the Lanham Act which provides in relevant part:
(1) Any person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A). "The essential element in sustaining a claim under the Lanham Act is that the alleged infringement creates a likelihood of confusion on the part of consumers as to the source of the goods." *Whitney Info. Network, Inc. v. Xcentric Ventures, LLC,* No. 2:04-CV-47FTM33, 2005 WL 1677256, at *4 (M.D.Fla. July 14, 2005) (quoting *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 684 F.2d 821, 831 (11th Cir.1982)); *see also Fisons Horticulture, Inc. v. Vigoro Indus., Inc.,* 30 F.3d 466, 473 (3d Cir.1994) ("likelihood of confusion is also the test for actions brought under ... § 1125(a)(1)(A) for unfair competition to prevent false representations as to source or origin of goods or services"). In this case, Plaintiff alleges that by calling itself the "Official Ray Gordon FAQ," the website's creators cause confusion on the part of consumers who are actually looking for Parker's website on seduction advice. Plaintiff further asserts that Google, by "republication" of this site, also violates the Act.

[13] Plaintiff cannot sustain a claim against Google under the Lanham Act for at least two reasons. First, while the creator of the RayFAQ website may indeed be using Plaintiff's trademark by commenting on Parker's writing, there is no likelihood of confusion regarding whether Parker is the creator of that website. Although Plaintiff sells access to his e-books and other seduction products on his website, he does not allege that the RayFAQ website sells any products or services. Plaintiff describes the wesbsite as merely containing negative comments about him and his writing. It does not purport to sell anything and is not in competition with Plaintiff's website for customers. A consumer looking for Parker's website on seduction and who is interested in purchasing seduction materials would not be confused by the RayFAQ website, which does not sell anything and instead focuses only on negative descriptions of Plaintiff. Moreover, it is difficult to accept the possibility that someone would believe that Parker himself created a website that refers to him so negatively. We see no likelihood of confusion. *See Whitney Info. Network,* 2005 WL 1677256, at *4 (finding no likelihood of confusion where defendant's "ripoffreport.com" website was a consumer watchdog site and used plaintiff's marks by posting consumer responses about plaintiff on the website).

*8 [14][15] In addition, Parker only alleges that Google republished the RayFAQ website. He does not contend that Google in any way participated in the creation of the website's content or use of his mark. This too is an insufficient basis upon which to maintain a claim for trademark infringement. In *Omega, S.A. v. Giftland, Co.,* No. 03-CIV-5808, 2005 WL 1925791 (D.N.J. Aug. 11, 2005), the court emphasized that, with respect to trademark violations, "participation in activities merely related to the infringing acts is not enough.... [P]ersonal liability extends only to those persons who actively participate as a moving force in the decision to engage in the infringing acts or otherwise cause the infringement as a whole to occur." *Omega,* 2005 WL 1925791, at *3 (citing *Chanel, Inc. v. Italian Activewear of Fl., Inc.,* 931 F.2d 1472, 1478 n. 8 (11th Cir.1991)). The *Omega* court also observed that the Third Circuit has stated that although "a person who knowingly and significantly participates in another's act of trademark infringement is himself guilty of infringement," there does not appear to be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ---- Page 11

--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212
**(Cite as: --- F.Supp.2d ----)**

any aider and abetter liability under the Lanham Act. *Id.* (quoting *Elec. Lab. Supply Co., Inc. v. Cullen,* 977 F.2d 798, 806-07 (3d Cir.1992)). It is clear that Google's "republication of the RayFAQ" cannot possibly make it a "moving force" in the infringement. Plaintiff provides no additional detail about the meaning of "republication" in this context and has certainly not alleged active participation on the part of Google. For these reasons, Plaintiff's claims under the Lanham Act will be dismissed.

### F. Racketeering (Counts VIII, IX) and Civil Conspiracy (XI)

While we have endeavored to make sense of Plaintiff's racketeering and civil conspiracy claims, these sections of the Complaint are completely incomprehensible. Parker spends eleven pages and sixty-six paragraphs discussing the "RICO enterprise " but fails to, in any way, make clear his allegations. He then adds an additional five paragraphs for civil conspiracy in which he simply refers back to his unintelligible RICO claims. In these passages, Parker refers to pleadings that he filed in *Parker v. Learn the Skills Corp.* The Complaint in that case was itself dismissed for failure to comply with Fed.R.Civ.P. 8(a)(2)'s "short and plain statement" requirement. (Doc. No. 53, E.D.Pa., 03-CV-6936.) Parker references his Complaint in that case and the allegations stated therein but makes no attempt to clarify its relationship to the instant litigation.

In addressing Plaintiff's prior lawsuit against Learn the Skills Corp., Judge Kelly noted that Fed.R.Civ.P. 8(a)

calls for a "short and plain statement" of both the jurisdictional grounds and the claims supporting the plaintiff's request for relief. The purpose of the " short and plain statement" requirement is "to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Violations of the short and plain statement rule have included complaints that were too long, repetitious, or confused.

**\*9** *Parker v. Learn the Skills Corp.,* No. 03-6936, 2004 WL 2384993, at \*1 (E.D.Pa. Oct. 25, 2004) (citing *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *In re Westinghouse Secs. Litig.,* 90 F.3d 696, 703 (3d Cir.1996)). In the instant Complaint, we are unable to decipher how Plaintiff contends Google has violated the racketeering and civil conspiracy laws. Plaintiff fails in Counts VIII, IX, and XI to present any cogent or plain statement and thus fails to meet Rule 8(a)'s requirement in this Complaint as well. As a result, we will dismiss these claims without prejudice.

### G. Abuse of Process

[16][17] Finally, Plaintiff alleges abuse of process based on Google's statement in a prior pleading that Plaintiff has "a history of vexatious litigation." In Pennsylvania, abuse of process involves a perversion of the legal process to accomplish some unlawful purpose for which it was not designed. *Al Hamilton Contracting Co. v. Cowder,* 434 Pa.Super. 491, 644 A.2d 188, 191 (1994). "The classic example" of abuse of process "is the initiation of a civil proceeding to coerce the payment of a claim completely unrelated to the cause of action sued upon." *Triester v. 191 Tenants Ass'n,* 272 Pa.Super. 271, 415 A.2d 698, 702 (1979) . Google's statement regarding Plaintiff's litigation history in no way constitutes a perversion of the legal process to accomplish some unlawful purpose. We will therefore dismiss this claim as well.

### IV. CONCLUSION

Despite our lenient review of Plaintiff's Complaint, it is clear that with regard to his claims of copyright infringement, contributory copyright infringement, vicarious copyright infringement, defamation, invasion of privacy, negligence, Lanham Act violations, and abuse of process, Plaintiff has failed to state a claim on which relief can be granted. With regard to Plaintiff's racketeering and civil conspiracy claims, the Complaint fails to meet Rule 8(a)'s short and plain statement requirement and will be dismissed.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                                                              Page 12

--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212
**(Cite as: --- F.Supp.2d ----)**

An appropriate Order follows.

### ORDER

AND NOW, this 10th day of March, 2006, upon consideration of Defendant Google, Inc.'s Motion To Dismiss Plaintiff's First Amended Complaint (Doc. No. 13), it is ORDERED that Defendant's Motion is GRANTED:
1. Plaintiff's Claims in Counts I, II, III, IV, V, VI, VII, and X are DISMISSED with prejudice.
2. Plaintiff's Claims in Counts VIII, IX, and XI are DISMISSED without prejudice.

IT IS SO ORDERED.

> FN1. The United States District Court for the Northern District of California has described the USENET as follows:
> a worldwide community of electronic [bulletin boards] that is closely associated with the Internet and with the Internet community. The messages in Usenet are organized into thousands of topical groups, or "Newsgroups".... As a Usenet user, you read and contribute ("post") to your local Usenet site. Each Usenet site distributes its users' postings to other Usenet sites based on various implicit and explicit configuration settings, and in turn receives postings from other sites. Usenet traffic typically consists of as much as 30 to 50 Mbytes of messages per day. Usenet is read and contributed to on a daily basis by a total population of millions of people....
> *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.* 907 F.Supp. 1361, 1366 n. 4 (N.D.Cal.1995).

FN2. Plaintiff filed a related lawsuit in the Eastern District of Pennsylvania against the Learn the Skills Corporation, *Parker v. Learn the Skills, Corp.,* No. 03-CV-6936, which was dismissed by the Honorable James McGirr Kelly for failure to comply with Fed.R.Civ.P. 8(a)(2)'s "short and plain statement" requirement. (Doc. No. 53, E.D.Pa., 03-CV-6936.)

FN3. While neither Parker nor Google rely on specific provisions of the Digital Millennium Copyright Act ("DMCA") in arguing this point, we note that Congress did, in 1998, create specific safe harbor provisions for internet service providers in Title II of the DMCA, known as the Online Copyright Infringement Liability Limitation Act ("OCILLA"). However,
[r]ather than embarking on a wholesale clarification of the various doctrines of copyright liability, Congress opted to leave current law in its evolving state and, instead, to create a series of safe harbors, for certain common activities of service providers. Under OCILLA's four safe harbors, service providers may limit their liability for claims of copyright infringement. These safe harbors provide protection from liability for: (1) transitory digital network communications; (2) system caching; (3) information residing on systems or networks at the direction of users; and (4) information location tools. Far short of adopting enhanced or wholly new standards to evaluate claims of copyright infringement against online service providers, Congress provided that OCILLA's limitations of liability apply if the provider is found to be liable under existing principles of law.
*Ellison v. Robertson,* 357 F.3d 1072, 1076-77 (9th Cir.2004) (internal citations omitted). Because we find that Google is not liable for direct infringement based on existing principles of law, and because neither party has relied upon it, we will not examine Google's liability for archiving USENET postings and excerpting web sites under the safe harbor provisions of the DMCA.

FN4. Section 512(b) provides in part:
(b) System caching.-
(1) Limitation on liability.-A service provider shall not be liable for monetary

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                                              Page 13
--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212
**(Cite as: --- F.Supp.2d ----)**

relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the intermediate and temporary storage of material on a system or network controlled or operated by or for the service provider in a case in which-
(A) the material is made available online by a person other than the service provider;
(B) the material is transmitted from the person described in subparagraph (A) through the system or network to a person other than the person described in subparagraph (A) at the direction of that other person; and
(C) the storage is carried out through an automatic technical process for the purpose of making the material available to users of the system or network who, after the material is transmitted as described in subparagraph (B), request access to the material from the person described in subparagraph (A), if the conditions set forth in paragraph (2) are met.

FN5. While Plaintiff attaches to his Complaint, as Exhibit C-1, a letter from February 27, 2004, in which he purports to notify Google of DMCA violations, the letter merely states that the USENET archives contain links to a website that " contains several postings of mine for which I have not authorized reproduction" and does not make any mention of specific registered works.

FN6. We note that "Courts have treated § 230 immunity as 'quite robust, adopting a relatively expansive definition of ' interactive computer service' and a relatively restrictive definition of information content provider.' " *Associated Bank-Corp. v. Earthlink, Inc.,* No. 05-C-0233-S, 2005 WL 2240952, at *3 (W.D.Wis. Sept. 13, 2005) (quoting *Carafano,* 339 F.3d at 1123).

FN7. Plaintiff includes with his Complaint,
as Exhibit E-1, a copy of part of the website, which describes Parker as "a dangerous harasser who abuses usenet newsgroups." (Doc. No. 11 at Ex. E-1, p. 1.)

FN8. Google argues that it is immune from Lanham Act claims because of its § 230 immunity under the CDA. We agree with those courts that have rejected this argument based on § 230(c)(2)'s exception for intellectual property laws. *See Gucci Am., Inc. v. Hall & Assoc.,* 135 F.Supp.2d 409, 413-15 (S.D.N.Y.2001) (Section 230 does not immunize ISPs from trademark infringement claims as they fall into § 230(c)(2)'s exception for laws pertaining to intellectual property); *see also Perfect 10, Inc. v. CCBill, LLC,* 340 F.Supp.2d 1077, 1108 (C.D.Cal.2004) (same); *Ford Motor Co. v. GreatDomains.com, Inc.,* No. 00-CV-71544, 2001 WL 1176319, at *1 (E.D. Mich. Sept. 25, 2001) (same).

E.D.Pa.,2006.
Parker v. Google, Inc.
--- F.Supp.2d ----, 2006 WL 680916 (E.D.Pa.), 78 U.S.P.Q.2d 1212

Briefs and Other Related Documents (Back to top)

• 2:04cv03918 (Docket) (Aug. 18, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.