FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2006 MAY 11 AM 8: 45

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **GORDON ROY PARKER**, a.k.a. **Ray Gordon**, d/b/a **Snodgrass Publishing Group**, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | **CASE NO.: 06-cv-229** |
| **Learn The Skills Corp.**, et al. | : | |
| | : | **Judge: SLR** |
| Defendants. | : | |
| | : | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO STAY OR DISMISS

Plaintiff submits this opposition brief to the instant motion of Defendants LTSC, Paul

J. Ross, and Straightforward, Inc. to dismiss this action for failure to state a claim, or

alternatively, to stay it pending resolution of related litigation in the Eastern District of

Pennsylvania, and sets forth the following responses to the motion.

### BACKGROUND/NATURE AND STAGE OF PROCEEDINGS

Defendant should first be advised that the Plaintiff in this case is **Gordon ROY**

**Parker,** not "Gordon Ray Parker."[1]

Defendant recites the brief history of this case, including the instant motion, for which

it attempts to secure a stay of this case or for dismissal for lack of personal jurisdiction, or failure

to state a claim.

### PLAINTIFF'S STATEMENT OF FACTS

Defendant, with its Statement of Facts, attempts to prejudice this court by noting a

nonbonding ruling in another district that referred to Plaintiff as a "serial litigant."[2]  To the extent

that the Defendant was acknowledging the volume of Plaintiff's filings in the court system, it is a

matter of record that Plaintiff has filed several lawsuits; however, no negative inferences should

---

[1] Defendants' Brief, p. 1

[2] Id, p.2.

be drawn from this finding, as any findings based solely on the volume of lawsuits filed would encourage multiple violations of an individual's rights, since each subsequent attempt to defend those rights would prejudice the court against the plaintiff. The issue before this court is the instant action, not any other action. Indeed, the only possible use for a mention of other lawsuits in this fashion would be to use them to win a case that would have been lost against a "non-serial litigant," for if they were going to win anyway, they would not have needed the mention, and if they were going to lose, then this case by definition would not be frivolous.

Defendant then tries to claim that "the present litigation began in Pennsylvania on December 30, 2003."[3] He is correct that litigation was initiated against some of these defendants in that case, but incorrect in stating that it is the present litigation, which began in this court on April 7, 2006. Defendant is correct in noting the Rule 8(a)(2) dismissal, but it should also be noted that the trial judge, James McGirr Kelly, dismissed that case mere months before his untimely passing, and as he all but admitted himself and clearly demonstrated in a hearing of February 12, 2003, his knowledge of the internet was severely limited (he had to have internet terminology spelled out for him, and had no working knowledge of things like USENET, although he did find it a bit odd that at that hearing, Defendant University of Pennsylvania had claimed that it could not trace messages from users, "even if they had threatened the President of the United States."). In Parker v. Wintermute, the predecessor to Parker v. LTSC (I) (the case to which Defendant refers), that case was dismissed without prejudice because Plaintiff could not find and serve "Wintermute" due to Penn claiming they could not identify him, something Plaintiff alleged in the PA case was perjury. What was also not known to Plaintiff at the time of Kelly's hostile rulings was that at the time, a dismissed pro se Plaintiff in his court wound up convicted and imprisoned for threatening the judge in a pleading.

_____

[3] Id.

2

The combination of a new, unsettled area of law, Judge Kelly's deteriorating physical condition, and the memory of a violent threat by another pro se litigant in his court, create at the least an unusual set of circumstances. Appeals were also not possible in the cases as they were dismissed without prejudice to the merits for these defendants.

In the University of Pennsylvania case, there was one dismissal with prejudice, yet a motion to dismiss a second lawsuit resulting from statements made in the first lawsuit, and subsequent facts which refute those statements, was denied. Judge Brody cited a "new set of facts" in allowing the case to survive the motion based on *res judicata*. This is also relevant to analyzing Plaintiff's "won/loss record," since the basis for dismissal in the first case has been called into question regarding its accuracy. Specifically, Penn got the first case dismissed because it claimed that it did not take active steps to recruit people who made "general submissions" of their resume to their database, yet it was later shown, through Vignali v. Penn (citation omitted), that a job was created specifically for Ms. Vignali. One can hardly call that litigation resolved, and should Plaintiff prevail in the second lawsuit, it will only be because Defendant lied in order to win the first.

If volume of lawsuits indicate a serial litigant, then what is the RIAA for filing over 17,000 infringement lawsuits against individuals? Plaintiffs have no control over how often others choose to violate their rights. Any restrictions on one's ability to defend one's rights would constitute a full denial of due process, as well as being tantamount to a declaration of "open season" on Plaintiff by a federal court of law.

Defendant finally cites Plaintiff's statement that the instant case and the appeal in the Pennsylvania case were filed on April 7, 2006, in order to save money prior to a filing fee increase. Plaintiff freely admits this, as Rule 1 states that reducing costs is a goal of all litigation, and Plaintiff was well within his rights to file when he did. Absent the filing fee increase,

3

however, this case would have been filed no later than April 11, 2006, and would be exactly where it is right now. The appeal also had to be filed shortly after April 7, 2006, and Plaintiff would not have delayed more than a few days in doing so.

## ARGUMENT

### I.  THIS ACTION SHOULD NOT BE STAYED.

Defendants have gotten what they allegedly wanted: this case has been filed where Defendant LTSC is located, where Straightforward sells the Speed Seduction Products created by Defendant Ross, and where Defendant Ross is also subject to jurisdiction under §3104(c)(2) and §3104(c)(4) of the Delaware Code, as set forth in the Complaint.(¶ 10, pp. 3-4).

#### A.  The Pennsylvania Case Has Been Dismissed, Not Transferred.

With regard to the pending litigation in Pennsylvania against *some* of the same defendants in this case, that is a separate case. It was not transferred to this district, but rather a separate litigation was initiated.

#### B.  The Only Remaining Issue In Pennsylvania Regarding The Overlapping Defendants Is Jurisdiction.

Defendant mischaracterizes Plaintiff's general motivation for filing this suit by claiming that it was "based on saving money, not on any time urgency. The Complaint does not seek preliminary injunctive relief or expedition."[4] This is not correct, as Plaintiff has sought expedited discovery concerning the officers of Defendant LTSC, and those officers were not served with the Pennsylvania action.

It is also not correct that Plaintiff filed this case solely to save a filing fee. He would have filed this case expeditiously regardless of any fee increase, except for perhaps waiting a few extra days. The case would still have been filed, specifically because Plaintiff

---

[4] Id, p.5.

4

wants to expedite the case as much as possible. Time is definitely of the essence, as Plaintiff is being harmed on an ongoing basis.

With regards to all defendants in this case, Delaware jurisdiction is even more justified than Pennsylvania jurisdiction, given the rules in this district, and the situation and circumstance of the Defendants. In the event the Pennsylvania case is reinstated, this case would still proceed against at least two of the defendants, and since they all have the same attorney so far, a defense will still have to be mounted by that attorney. No prejudice to defendants will result.

C. **New Facts Exist, And Plaintiff Intends To Amend This Complaint**

Only a shortage of time prevents Plaintiff from filing an Amended Complaint in this action in which he intends to name several new defendants. Unless this court rules otherwise on this motion in the interim, that Complaint should be filed, although it is also possible that further events may delay that process.

The new evidence Plaintiff has uncovered reveals not only an antitrust conspiracy, but also a false-advertising conspiracy among these defendants, and others who will be added as Defendants to an Amended Complaint, which Plaintiff is within his rights under the rules to file without leave of the court at this time. The new evidence reveals a strong shift in the power structure of the "Seduction Mafia" and "Seduction Cartel," and since it has not yet been raised in Pennsylvania, is not duplicitous of that case.

1. **Plaintiff has learned of a false-advertising scam by which a Seduction Guru, who is an affiliate of Defendant LTSC and part of the Seduction Cartel, uses a "spy" to sample and give bad reviews for competitor's products, before giving positive reviews of the affiliate's product.**

The "scam" to which Plaintiff speaks ("the Scam") is being perpetrated by one Erik von Markovic, a/k/a "Mystery," a "seduction guru" who is the creator of the "Mystery Method," a technique he designed for men to use to seduce beautiful women, and which Mystery

teaches at workshops for which he charges up to $2,450 for three days of instruction within a small group of up to a half-dozen or so students.

Mystery has received an incredible level of media attention in the past few years, which he has parlayed into a highly successful business which includes workshop instruction, DVD products ($300 or so for a set), an e-book ($58 a copy), and now a book deal with St. Martin's Press for regular bookstore distribution (scheduled for November 2006). Mystery received his "kick start" from his friend and former student, Neil "Style" Strauss, who featured him in the bestselling book *The Game*. It was at Mystery's demand that "Style" deliberately fail to attribute the powerful "pivot" concept to Plaintiff in his glossary of seduction terminology on page 445 of his book.[5] Style's omission, whereby he knew of Plaintiff's authorship of the term "pivot" yet attributed it to "the community," was a form of plagiarism no less blatant than that of the recently publicized case involving *Opal Mehta*. In return for this favor, which has cost Plaintiff untold damages in lost revenue due to lost credit for his idea, Style was given privileged access to Mystery and information about what he calls the "seduction community" and which Plaintiff calls an antitrust violation.

**Principals And Nature Of The Scam**

Over the past few months, under the direction of a new Seduction Mafia/Cartel ringleader, Mystery, several individuals have conspired to secure and/or consolidate his dominant position in the seduction-advice marketplace. These individuals include Mystery, Matthew Kadish (a/k/a "Thundercat"), the publisher of the popular "seduction blog" located at http://www.thundercatseductionlair.com and a business affiliate of Mystery's, Neil Strauss ("Style"), and the other officers of Mystery Method Inc., which sells the Mystery Method

---

[5] A "pivot" is a beautiful woman that a man is "just friends" with and who the man goes out with "as friends" for the sole purpose of building his reputation. Because he does not make moves on the "pivot," she feels safe, and when other women see him with his pivot, they assume she is attracted to him, thus making him more attractive to other women. The concept is so powerful that several websites now exist where men can hire pivots at rates of up to $75.00 per hour.

products, and Mystery Method instructors, including individuals known primarily by nicknames

such as "Sinn," "Savoy," "Lovedrop," and "Craig," as well as an individual who goes by the

name "Michael Sliekman," apparently a pseudonym.

The way the scam works is as follows:

a.    **Mystery** is acting as its ringleader, by directing all aspects of the

Scam, with the ultimate goal of taking over the Seduction Mafia and Seduction Cartel.    In

recent postings to Thundercat's seduction blog, Mystery has made public statements ridiculing

Plaintiff, disparaging his work, calling him an "outcast from the seduction community," and

expressing a strong desire for Plaintiff to terminate his commercial seduction-advice business by

withdrawing his e-books from the market and no longer posting to seduction message boards.

Mystery has also demanded that those who do business with him refuse to do business with

Plaintiff.

b.    **Neil Strauss** gives Mystery preferential media exposure, which

Mystery in turn uses to market his workshops and seminars.  Neil deliberately downplays source

material from the seduction community, attributing it properly only when doing so profits

Mystery and the Cartel in general.  In exchange for this media coverage, Strauss receives free

ongoing instruction from Mystery, as well as exclusive access to the new "celebrity" that he

helped to make famous.  Style's "wagon" as they say is now "Hitched" to Mystery, which

constitutes part, but not all, of his stake in the Scam, which he enables through misattribution,

plagiarism including that of Plaintiff's work, and manipulation of the mainstream media through

misleading exposure.

c.    **The Mystery Method instructors** aid and abet the Scam by

knowingly allowing their company and its products and services to be misrepresented to the

public, for their own financial benefit.

d.    **"Michael Sliekman,"** the internet user of the account

Sliek0722@aol.com, has participated in the Scam so far by, at the direction of Mystery, posing

as a customer for a competing guru business, Real Social Dynamics, Inc. ("RSD"),[6] for the

purpose of legitimizing himself as a disgruntled customer of RSD.  After taking an RSD

workshop in January 2006, Mr. Sliekman immediately began a campaign of negative publicity

against RSD, based on his negative experiences with RSD, and their refusal to refund his

workshop fee, something that Mystery, a former RSD instructor himself, knew would occur.

Recently, Plaintiff had an instant message (IM) exchange with Mr.

Sliekman, in which Mr. Sliekman made several statements which outlined this Scam and his role

in it.  Mr. Sliekman repeatedly threatened Plaintiff, warned him to "get out of the industry" and

referred to Plaintiff as an "ant" that would be "stepped on" if he did not.  He also informed

Plaintiff that he planned to attend a "Mystery Method" bootcamp in Richmond, Virginia on the

19th of this month, that a positive review of that bootcamp was planned, that the review would be

published as an article on Thundercat's blog, and that its purpose was to simultaneously further

"destroy" RSD through negative comparative advertising, as well as to justify an allegedly

planned increase in the price of Mystery Method seminars and workshops to $3,000 per

weekend.  Mr. Sliekman also indicated that he claimed that civil servants within Plaintiff's local

jurisdiction were badmouthing him to the public at large.

Even the existing Seduction Mafia and Cartel are being targeted by

Mystery, according to Mr. Sliekman, who claimed to Plaintiff that Mystery is seeking to

eliminate Defendant Ross and other LTSC affiliates such as David DeAngelo of *Double Your*

*Dating*, and Defendant Formhandle, by growing the Mystery Method Forum so that he no longer

---

[6] http://www.realsocialdynamics.com

8

needs LTSC to deliver customers to him, thus saving him an affiliate fee believed to be $275.00

per referral for workshops and bootcamps.

Following are excerpted relevant statements by Mr. Sliekman relating

to the above averments that were made in an IM conversation with Plaintiff over AOL on May 9,

2006 at the times noted in the transcript:

| | |
|---|---|
| **Sliek0722 [3:26 PM]:** | You should know that Mystery is laughing hysterically right now. That is all. |
| **Sliek0722 [3:28 PM]:** | Nobody will listen to you. Mystery has influence over the media, the press, AND the community. |
| **Sliek0722 [3:39 PM]:** | With RSD out of the picture, and you out of the picture. All that remains is Ross Jeffries and David Deangelo. |
| **LeModernCaveman [3:40 PM]:** | Wow, does Ross know he's being targeted? |
| **LeModernCaveman [3:40 PM]:** | LOL |
| **LeModernCaveman [3:40 PM]:** | Take "The Skulls" out of the VCR! |
| **Sliek0722 [3:41 PM]:** | RSD may have had their time three years ago, but what comes around, goes around, or should I say "already went around." |
| **LeModernCaveman [3:41 PM]:** | And they are still around |
| **LeModernCaveman [3:41 PM]:** | As am I |
| **LeModernCaveman [3:41 PM]:** | As is Ross! |
| **Sliek0722 [3:41 PM]:** | They are practically nonexistant, as are you. |
| **Sliek0722 [3:41 PM]:** | Ross' time is coming. |
| **LeModernCaveman [3:41 PM]:** | So nonexistent you folks obsess |
| **LeModernCaveman [3:41 PM]:** | LOL |
| **LeModernCaveman [3:41 PM]:** | Ross is like Johnny Carson |
| **LeModernCaveman [3:42 PM]:** | Everyone is going to topple him but never does |
| **Sliek0722 [3:42 PM]:** | Mystery is planning to take a course in speed seduction this summer. That's all I'll say.... |

9

**LeModernCaveman [3:42 PM]:**   The domain Ross owns is worth $10 million on its own.

**LeModernCaveman [3:42 PM]:**   Oooh he's taking a course!

**LeModernCaveman [3:42 PM]:**   I'm sure Ross is trembling.

**Sliek0722 [3:42 PM]:**   He said it himself on the blog, so I haven't disclosed anything new.

**LeModernCaveman [3:43 PM]:**   So odd that Ross managed to make it into the game too

**Sliek0722 [3:43 PM]:**   Ross is in the dark. He sees Mystery as an ally now.

**LeModernCaveman [3:43 PM]:**   Since they praise each other, that might have something to do with it.

**LeModernCaveman [3:43 PM]:**   I dunno

**Sliek0722 [3:44 PM]:**   You won't figure this one out Ray. You are so clueless as to what's actually going on it isn't even funny.

**LeModernCaveman [3:45 PM]:**   Well that's how Mystery gets women: money

**LeModernCaveman [3:45 PM]:**   Whoopie, what game!

**Sliek0722 [3:46 PM]:**   **How ironic that people give thousands to Mystery to learn that game too. hahahaha.**

**LeModernCaveman [3:46 PM]:**   Well that can create long-term resentment after a while

**LeModernCaveman [3:46 PM]:**   I find it to be an incredible commentary on the stupidity of people worthy of its own writing.

**Sliek0722 [3:46 PM]:**   **I am taking my workshop with LBD in two weeks. Once my review hits the stands, the price of the workshops is planned to increase to $3000.**

**Sliek0722 [3:59 PM]:**   You really are an ant Ray

**LeModernCaveman [3:59 PM]:**   You're awfully obsessed with an ant

**Sliek0722 [3:59 PM]:**   You know what we do to ants Ray? We step on them.

**Sliek0722 [4:04 PM]:**   You also forget that we know Thundercat and have a well preserved relationship with him. You can be silenced off the blog as well.

10

| | |
|---|---|
| **Sliek0722 [4:11 PM]:** | I happen to know that everyone in the Philadelpha [sic] court system knows of you, and thinks you are a big fat LUNATIC. |
| **Sliek0722 [4:15 PM]:** | Do you find it ironic that in an mASF post a few months ago, one of the only posts Mystery has made in a year, he brought attention to my review, while slamming RSD? Gee you would think a man so busy wouldn't have time to read such reviews. |
| **Sliek0722 [4:21 PM]:** | I believe the court clerks described you as disgusting. |

While Plaintiff sympathizes with the new plight of Defendants Ross and LTSC, given their targeting by Mystery through the use of his media connections and fame to exclude them from the market and effectively take over the Seduction Cartel, the fact remains that it is Ross and LTSC, and specifically Formhandle, who helped to "build" Mystery in the first place by restricting competition on USENET and on the LTSC website and message boards. That Mystery has now apparently turned into a "Frankenstein" about to backstab those who are largely responsible for his fame is not Plaintiff's concern, for his merely concerned here with his own targeting, and must still be concerned with the conduct of the already-named Defendants in this case that harmed him as it was helping Mystery to eventually harm themselves. Any doctrine relating to laying down with dogs and what one should reasonably expect to wake up with most certainly applies here.

Obviously, now that Mr. Sliekman has "let the cat out of the bag" to Plaintiff regarding the planned rigged review, the plans will have to change (regarding the bootcamp on the 19th). However, there is already compelling public evidence such a scheme, which is still the product of the existing defendants in this action, and in the case of Mystery, Plaintiff already has standing to sue him as part of the Seduction Cartel, as he has been an integral part of its operations for several years now, and continues to benefit from LTSC's advertiser exclusion. To the extent that Mr. Sliekman was a "loose cannon" acting without any

approval and totally on his own, his statements concerning Mystery and others in the "seduction community" would be actionable all their own, and still in the public interest to unearth, given the impact on commerce. However, Mr. Sliekman's claims are consistent with other events, such as RSD being targeted through Thundercat, who is affiliated with Mystery.[7]

        e.    **Thundercat** assists the Scam by alternatively promoting Mystery and Style in a positive light, while orchestrating the disparagement of RSD and other competitors, including allowing others to defame and disparage Plaintiff on his blog.

## D.   It Is In The Public Interest To Expedite This Action.

The public interest regarding the issues raised in this case are clear: as a nation, we do what we can to prevent false and misleading advertising, anticompetitive behavior, and using same to unjustly enrich oneself with large amounts of money from the targets of any scam. In this case, the victims of the scam are highly vulnerable men who are being conned out of large amounts of money through the application of the same seduction techniques to selling the products, or what is called "commercial pickup." The targets of commercial pickup are the "whales," or men who earn good amounts of money, do very poorly with women, are not generally popular with men or women, and who are preyed upon by gurus who play on their need to belong to a "brotherhood" and to "figure out women."

In addition to criminal prosecution of antitrust and other commerce-related laws, business competitors are given standing to sue as "private attorneys general," in acknowledgement that their self-interest in fair competition is merged with the public interest, and that they are often the first to learn of problems, especially in new areas of commerce that are often literally unregulated jungles with no controlling precedent. Internet scams are a new

---

[7] Recently, Thundercat has been publishing a series of highly negative and disparaging articles concerning RSD, and also posted what were purported to be private internal RSD communications on its website, prompting legal threats from RSD, and ongoing attempts by RSD's lawyers to have Thundercat's blog shut down.

breed of cancer on our society, and finding, prosecuting, and terminating them with "the swiftness" is a compelling government and public interest.

The targets of the Scam are peppered with positive testimonials, and message boards which appear to be objective, as well as shill testimony by individuals such as Mr. Sliekman, enabled by hidden affiliates such as Thundercat, whose business relationship with Mystery is not apparent to inexperienced users of his website. Style (Neil Strauss) helped lay the framework for the new scam by giving this "internet community" a voice in the mainstream media, and used that voice in collusion with Mystery to help consolidate Mystery's position in the mainstream media and Style's position among the internet community, both of which are vital to the existence of the Seduction Cartel and the Scam.

If these men buy products, or assist the sale of products to other "whales," they are welcomed into the "secret society" and expected to abide by its rules. If they break ranks, the gurus have loads of personal information about each client (in order to help him improve his life) that they can use for blackmail, including the fact that the client bought the products at all (something usually hidden from the women seduced). The best students often are groomed to become instructors themselves and further the enterprise, while lower-level students are assigned tasks such as posting public messages praising the "community" and Mystery, while simultaneously attacking his competition, such as Plaintiff.

Plaintiff is considered a special threat to Mystery because a lot of Mystery's teachings, especially his recent ones, are very similar in nature to Plaintiff's writings dating back to 1998. Unlike Mystery's writing, however, Plaintiff's work is priced very low ($19.95 including lifetime updates), compared with thousands of dollars for a workshop or a bootcamp, and does not require the "hard sell" or other machinations engaged in by Mystery and the Cartel in order to maintain a customer base. A man who finds the answers he needs from Plaintiff will be far

less likely to shell out a hundred times as much money to learn the Mystery Method. It should also be noted that much of Mystery's success with women is actually caused by the high prices he is able to charge, the status he gets from doing so, and the money itself, which he spends on women to further his image and the Scam, all at the expense of an honest, competitive marketplace.

## II. THIS ACTION SHOULD NOT BE DISMISSED FOR FAILURE TO STATE A CLAIM OR FOR LACK OF JURISDICTION,

Defendants have not briefed this Court on either the issue of jurisdiction or failure to state a claim, but instead has moved to defer briefing on the merits, apparently to preserve the right to raise them later on in this litigation.

Plaintiff objects to any delay in this case, as it is based on new evidence, contains new defendants, and as already set forth, a stay would fatally prejudice him while allowing the massive harms inflicted upon him to continue unnecessarily, and would also allow harm to continue to come to a highly misled public who sees only an honest internet which in fact is anything but.

## CONCLUSION

For the reasons set forth herein, the instant motion should be **denied.** An appropriate form of order is attached. Plaintiff also intends to file an Amended Complaint incorporating his new evidence and defendants absent any order staying this case in the interim.

This the 11th day of May, 2006.

Gordon Roy Parker
Plaintiff, Pro Se
4247 Locust Street, #806
Philadelphia, PA 19104
(215) 386-7366
GordonRoyParker@aol.com

14

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **GORDON ROY PARKER**, a.k.a. **Ray Gordon**, d/b/a **Snodgrass Publishing Group**, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | **CASE NO.: 06-cv-229** |
| **Learn The Skills Corp.**, et al. | : | |
| | : | **Judge: SLR** |
| Defendants. | : | |
| | : | |

## ORDER

AND NOW, this _____ day of _____, 2006, in consideration of

**Defendants' Motion To Stay Or Dismiss,** and all responses thereto, the motion is **denied.**

SO ORDERED.


                                                          _____
                                                          J.

*Original-Clerk*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| **GORDON ROY PARKER**, a.k.a. **Ray Gordon,** d/b/a **Snodgrass Publishing Group,** <br><br> Plaintiff, <br><br> v. <br><br> **Learn The Skills Corp.**, et al. <br><br> Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> **CASE NO.: 06-cv-229** <br> : <br> **Judge: SLR** <br> : <br> : |

## CERTIFICATE OF SERVICE

I, **Gordon Roy Parker,** Plaintiff in the above styled action, hereby certify that I have

served a true and correct copy of the foregoing **Plaintiff's Opposition to Defendants' Motion**

**To Stay Or Dismiss** on all defendants' counsel by **regular mail**, as follows:

> **David L. Finger (three copies)**
> Finger & Slanina, LLC
> One Commerce Center
> 1201 Orange Street, Suite 725
> Wilmington, DE 19801-1155
> Attorney For Defendants LTSC, Ross, And Straightforward
>
> **Formhandle@fastseduction.com (one copy)**
> **and TokyoPUA@fastseduction.com (one copy)**
> c/o Learn The Skills Corp.
> 955 Massachusetts Avenue, Suite 350
> Cambridge, MA 02139

This the 11th day of May, 2006.

*Gordon Roy Parker*
Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA 19104
(215) 386-7366
GordonRoyParker@aol.com
Plaintiff, Pro Se