CASE #06-cv-229, Hon. Sue L. Robinson Presiding

## TABLE OF CONTENTS OF AMENDED COMPLAINT (PARKER V. LTSC)

**TABLE OF CONTENTS** ................................................................................. i

**CAPTION** ............................................................................................................1

**THE PARTIES** ....................................................................................................1

**STATEMENT OF JURISDICTION AND VENUE** .......................................4

**BACKGROUND/COMMON FACTUAL AVERMENTS** ............................5

History of the Seduction Community ..........................................................6
History of the Seduction Mafia .................................................................9
Averments specific to "Editorial Staff" ...................................................14
Threats from James L. King a/k/a "Player88" ........................................16
Threats from Osgaldor Storm   ................................................................17
Harassment from "Aardvark"   ................................................................17
"Thrasher" and "Twisty Creek" Remailers (and Odious and Alex Kaufmann)........19
Averments Specific to Defendant Marcos a/k/a Sliek0722@aol.com ......................23
History of the Seduction Cartel (Directed to Applicable Defendants)......................30
Seduction Lairs and the Seduction Cartel ................................................32
Averments Specific to Defendants Ross and Straightforward .................................34
Averments Specific to Defendant von Markovic ("Mystery") and The "Post-Game"
    Seduction Cartel   ...............................................................................35
Averments Specific to Defendants Valens, LTSC and Levans.................................43
Averments Specific to Defendant Reyes And Other Cartel Members......................49
Summary/Public Interest and Public Damages ........................................52

**CLAIMS FOR RELIEF/MISC    53**

Count I:   Antitrust Violations (Cartel, All Defendants).......................................... 53
Count II:  Antitrust Violations (Blacklist, All Defendants) ......................................57
Count III: Unfair Competition (All Defendants).......................................................53
Count IV: Racketeering (RICO, All Defendants).....................................................61
Count V: Lanham Act Violations/Defamation (LTSC, Valens, and Levans)...........65
Count VI: Lanham Act Violations/Defamation (Ross, Straightforward).................68
Count VII:    Tortious Interference (Ross, Straightforward, Valens, LTSC,
             Levans, Reyes, Von Markovic, And Mystery Method ...................69
Count VIII:   Civil Conspiracy (All Defendants)....................................................70
Prayer For Relief   ...............................................................................................71
Demand For Jury Trial .........................................................................................72
Verification   ...........................................................................next-to-last page
Certificate of Service ..................................................................................... last page

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **GORDON ROY PARKER**, a.k.a. **Ray Gordon**, d/b/a **Snodgrass Publishing Group**, 4247 Locust Street, #806 Philadelphia, PA 19104 | : : : | |
| | : | |
| Plaintiff, | : | |
| v. | : | **CASE NO.:** |
| | : | **06-cv-229** |
| (1) **Learn The Skills Corp.**, c/o Business Filings, Inc., 108 West 13th Street, Wilmington, DE 19801; (2) **Jay Valens, a/k/a** | : | |
| **"Formhandle,"** Learn The Skills Corp., c/o Business Filings, | : | **SJR** |
| Inc., 108 West 13th Street, Wilmington, DE 19801; (3) **Ray** | : | |
| **Devans a/k/a TokyoPUA@ fastseduction.com,** c/o Business | : | |
| Filings, Inc., 108 West 13th Street, Wilmington, DE 19801; (4) | : | |
| **Straightforward, Inc.,** 822 Eagle Point Rd. Van Alstyne, TX | : | |
| 75495; (5) **Paul Ross,** a/k/a "Ross Jeffries," 310 Tahiti Way, | : | |
| Marina Del Ray, CA, 90292-6789; (6) **Mystery Method** | : | |
| **Corporation, d/b/a www.mysterymethod.com,** 1564 Pacific | : | |
| Beach Drive, San Diego, CA 92109; (7) **Erik von Markovic,** | : | |
| President, Mystery Method Corporation, 1564 Pacific Beach | : | |
| Drive, San Diego, CA 92109; (8) **Allen Reyes a/k/a** | : | |
| **"Gunwitch,"** 123 South Laguna Street, Klamath Falls, OR, | : | |
| 97601; and (9) **Miguel Anthony Marcos a/k/a** | : | |
| Sliek0722@aol.com, 14200 Beachmere Drive, Chester, VA | : | |
| 23831, | : | |
| | : | |
| Defendants. | : | |

## AMENDED COMPLAINT FOR UNFAIR COMPETITION, VIOLATIONS OF THE SHERMAN, CLAYTON AND LANHAM ACTS, DEFAMATION, TORTIOUS INTERFERENCE, RACKETEERING, AND CIVIL CONSPIRACY

**Plaintiff** Gordon Roy Parker, in the above-styled action, states his claims and

prayers for relief, and in support thereof, sets forth and avers the following:

## THE PARTIES

1.    Plaintiff **Gordon Roy Parker**, a.k.a. Ray Gordon, is an adult male

resident of the Commonwealth of Pennsylvania, domiciled and residing at 4247 Locust

Street, #806, Philadelphia, PA 19104. Plaintiff is the sole owner of Snodgrass Publishing Group, a Pennsylvania sole proprietorship and internet publisher, whose website is located at www.cybersheet.com, and whose seduction advice websites are located at http://www.cybersheet.com/library.html and http://www.cybersheet.com/easy.html.

2.    Defendant **Learn The Skills Corp.** ("LTSC") is a Delaware corporation who can be served through its registered agent, Business Filings, Inc., at the address listed for it in the caption. Defendant LTSC waived service in this case by filing a responsive pleading.

3.    Defendant **Jay Valens a/k/a "Formhandle@fastseduction.com"** ("Formhandle" or "Valens") is an owner of Defendant LTSC, and can be served through LTSC's registered agent, at the address listed in the caption. Defendant LTSC operates a "seduction portal" website at http://www.fastseduction.com ("the LTSC website")and earns its revenue through affiliate commissions on sales of products which sponsor its site. The LSTC website also contains articles on seduction, a message board system it calls "mASF," or "moderated alt.seduction.fast," and a message board called PAIR, the "Pickup Artists' International Registry."

4.    Defendant **Ray Levans a/k/a Toykopua@fastseduction.com** ("TokyoPUA") is an officer, director, or agent of Defendant LTSC (he claims to be a partner), and can be served through LTSC's registered agent, at the address listed in the caption.

5.    Defendant **Straightforward, Inc.** ("Straightforward") is a corporation located in Texas, who can be served at the address listed for it in the caption.

2

Straightforward is the corporate distributor of the "Speed Seduction" line of products, a series of information products designed to teach men how to seduce women, and can be served at the address listed for it in the caption.

6. Defendant **Paul Ross** is the creator of the "Speed Seduction" line of products, a series of information products designed to teach men how to seduce women, and has waived service by filing a responsive pleading. Defendant Ross exercises "substantive control" over the website that sells Speed Seduction products, http://www.seduction.com. The seduction.com domain is owned by Defendant Straightforward, who has also waived service via responsive pleading.

7. Defendant **Mystery Method Corporation, LLC, d/b/a www.mysterymethod.com,** ("Mystery Method") does business over the internet and is headquartered at 1564 Pacific Beach Drive, San Diego, CA 92109.

8. Defendant **Erik von Markovic** ("Mystery") runs the Mystery Method Corporation, and can be served at 1564 Pacific Beach Drive, San Diego, CA 92109.

9. Defendant **Allen Reyes, a/k/a "Gunwitch,"** does business over the internet through his website located at http://www.dynamicsexlife.com, and is the author of a book entitled *Dynamic Sex Life*. He is also a primary moderator of the Internet Relay Chat (#IRC) channel of #PUA, which is linked to from the LTSC website and referred to on that site as the "FS 101 Chat" or "live chat." Defendant Reyes can be served at 123 South Laguna Street, Klamath Falls, OR, 97601.

10. Defendant **Miguel Anthony Marcos** is an individual who resides in Chester, Virginia. He is a member of the "Washington, D.C. Seduction Lair" (the "DC

3

Lair"), a group of men from the Washington, D.C. area who meet regularly to exchange ideas on how to seduce women, and who go out together in attempts to meet women. He has claimed to be either an employee of or a contracted individual who is associated with Defendants von Markovic and Mystery Method.

## STATEMENT OF JURISDICTION AND VENUE

11. This is primarily an antitrust and RICO action, though in the course of violations of those two areas of the law, numerous other violations, including (but not limited to) defamation, tortious interference, unfair competition, and misleading advertising under the Lanham Act, have also occurred *en masse*.

12. Jurisdiction in Delaware over Defendant LTSC is conferred by §3104(c)(2), §3104(c)(4), and LTSC's motion to stay this case.

13. Jurisdiction in Delaware over Defendant Straightforward is conferred by §3104(c)(2), §3104(c)(4), and by its motion to stay this case.

14. Jurisdiction in Delaware over Defendant Ross is conferred by §3104(c)(2) of the Delaware Code because Defendant Ross personally provides a one-hour telephone consultation to purchasers of the Speed Seduction Advanced Home Study Course, including those in Delaware, and is further conferred by §3104(c)(4) because Defendant Ross derives substantial revenue from products which are sold in Delaware, for use and consumption in the state.

15. Jurisdiction over Defendants Valens and Levans in Delaware is conferred because they are directors or officers of a Delaware corporation, and is further conferred under §3104(c)(4), because each Defendant derives substantial revenue from the use of

4

products and services that are sold to residents of Delaware, for use and consumption in the state.

16. Jurisdiction over Defendants von Markovic, Mystery Method, Pickup 101, and Allen Reyes is conferred under §3104(c)(2) and §3104(c)(4) because each Defendant sells products to residents of Delaware for use and consumption within the state, and/or because they derive revenue from the sale of such products.

17. Jurisdiction over Defendant Marcos is conferred by virtue of his having acted in conspiracy with all Defendants for the Delaware tort of civil conspiracy, and is further conferred by 18 USC §1965(b), which provides for nationwide service of process for RICO defendants.

18. Federal jurisdiction is conferred by 28 USC §1331 and §1338(a) because of the existence of federal questions; the Lanham Act (15 USC §1125 *et seq.*); 15 USC §22, which confers jurisdiction over any district in which a corporation transacts business. Jurisdiction over the defamation/civil conspiracy claims is conferred by virtue of diverse jurisdiction and the amount in controversy being greater than $75,000.00.

## BACKGROUND/COMMON FACTUAL AVERMENTS

19. Plaintiff incorporates by reference, as if fully set forth verbatim herein, the entire contents of paragraphs 1-18 above.

20. Plaintiff's first lawsuit in 2002 (Parker v. Wintermute, E.D.Pa. #02-cv-7215), was filed in the hope of preventing the carnage which has ensued, yet one procedural obstacle after another (including inability to identify and serve John Does, and most recently, lack of jurisdiction) has served only to give the Seduction Mafia and

5

Cartel more of a "head start" on the future, and in some cases the opportunity for members to become millionaires.

## History of The Seduction Community

21. The "Seduction Community" refers to a group of men who, through the internet, teach other men how to improve their results with women, and often profit from this. The term was coined by Neil Strauss in an article he wrote for the *New York Times* in January 2004, and was later reprinted in his book *The Game: Penetrating The Society Of Internet Pickup Artists.*

22. Most of the "seduction gurus" who are associated with this community can trace their origins back to the *alt.seduction.fast* ("ASF") newsgroup on USENET. USENET, short for "user network," is a decentralized electronic message distribution system. Users may "subscribe" to a newsgroup (such as ASF) through their ISP or a website. Participating ISPs and websites exchange all USENET messages posted by their users to all other subscribers of the group to which the message was posted, which results in universal distribution of all messages to all subscribers. A message is not posted singularly on USENET, but individually by each ISP and news server which "propagates" the group. For example, Plaintiff reads USENET through RoadRunner, while another user might read the same groups and messages via another ISP (such as Cox or Earthlink), Google, or elsewhere.

23. USENET's structure makes it unique in that it has no owner and is therefore not the property of any individual ISP or website. This is not the case with any other forum on the internet. It is a truly equal playing field where free speech reigns.

6

The seduction community took off on USENET because individuals were finding that the "male point of view" was being ruthlessly censored by female-friendly ISPs and online services (including AOL), where anything "offensive to women" was deemed to violate their Terms of Service ("TOS") policies.

24.    The ability to speak "the truth" without losing one's internet access for "offending women" caused ASF to flourish, beginning in 1998, when Plaintiff and several other future "gurus," including Defendants Valens, Levans, Ross (who had been posting to the group for years), and von Markovic, among others. Even today, many new gurus have been spawned from website-based message boards and blogs or personal training from gurus who can trace their origins to ASF. Just as the movie *Lords of Dogtown* documented how a group of "extreme" skateboarders changed their culture with a new style, the ASF group changed the love-advice industry forever with new theories on seduction.

25.    As with the "Lords of Dogtown," the impact of the "Gurus of ASF" extends well beyond its origins today, as the dispersal of the original ASF group lead to the proliferation of its ideas, as documented in *The Game.* Today's "seduction community" represents a multimillion-dollar industry, with a never-ending stream of well-off male customers and new gurus to supply them with teaching. Just as the "Z-boys" were correct in their belief that the public wanted their style of skateboarding, the gurus from ASF were correct in their belief that men were ready to hear "the truth" about women, and have been profiting from serving this niche ever since.

7

26.   What attracted these gurus to ASF and USENET – its free speech and decentralization – are eventually what caused these money-minded gurus to eventually vacate it. When ASF was primarily an exchange-of-ideas group, where Defendant Ross was the only one with a commercial interest, and where dissent was rare, this favored Defendant Ross. When the "floodgates" opened in 1998 to a more general internet population, however, the free speech became as much of a problem as it had been an advantage, because now it was impossible to censor critics of commercialism in general or of specific commercial products. There was also the problem that USENET is anti-commercial in nature. Offsetting this was the marketing value of posting to USENET, since new readers of ASF ("newbies") are the ideal customer base: confused about women and ready to buy. These "virgin customers" generally also have not spent their money on other products, and are the most ready and eager to purchase.

27.   Once several gurus "left" ASF (even though they continued to post there periodically), they dispersed to their own websites and blogs, and the "community" began proliferating. By the time *The Game* was released, the number of internet-based seduction gurus is well into the hundreds now, and the customer base is well into the millions, with full mainstream acceptance thanks to *The Game.* In addition, all forms of media have begun incorporating ideas from ASF and the community into its work: movies such as *Hitch*, *40 Year-Old Virgin*, *Just Friends, Derailed, Magnolia,* and *Wedding Crashers* have included its material, and a recent episode of *CSI Miami* had a plot where an irate customer kills a guru. Consequently, this is not a small-time internet "flamewar" that does not belong in court, but a "turf war" over a fast-growing industry

8

with high-priced products and services and a highly vulnerable customer base that relies on truth in advertising and fair competition to make its purchasing decisions.

## History of The Seduction Mafia

28. The Seduction Mafia was created by Defendant Ross as an attempt to rid the seduction industry and ASF of Plaintiff and his products, which were siphoning customers from SS, primarily because Plaintiff's book cost $30.00, while Ross's Basic Home Study Course ("BHSC") and the advanced version ("AHSC") cost several hundred dollars. Men who bought Plaintiff's books and found the women they wanted had no need to buy further products, costing Defendant Ross up to thousands of dollars in lost business, but also costing him potential media exposure and lowering his company's buyout value in what was clearly an emerging industry.

29. From 1998-2001, Defendant Ross and his followers engaged in a pattern of racketeering activity based primarily on extortion, or the use of fear and coercion in an attempt to force Plaintiff out of the industry and off of ASF. The responsibilities were divided among Ross and his followers. Defendant Ross would "take the high road" by occasionally disparaging Plaintiff while showing open contempt for him and encouraging his followers to do the same, while two of these "followers" – Derek "Odious" Trunk and Michael Lee "Bishop" Emery – were more aggressive in their behavior.

30. Odious's job was to defame Plaintiff to anyone asking about him or his work, or whenever Plaintiff posted an on-topic message. He would also defame Plaintiff's family by, for example, repeatedly claiming that his mother was a prostitute, and in fact has done so again as recently as **July 30, 2006**. As it relates to Plaintiff,

9

Odious once claimed that a fake picture of Plaintiff (of a stereotypically ugly geek taken off the internet) was taken by a private investigator he had hired, yet three weeks later claimed it had been sent to him by someone else. Odious would also accuse Plaintiff of being a scam artist, a plagiarist, and at one time, was the publisher of a "hate website" concerning Plaintiff (not the same site that is at controversy here).

31.    Bishop was an associate of Defendant Ross's/Straightforward's whose products were sold through the SS website, and who appeared as a guest speaker at least once at an SS seminar. In August 2000, Bishop threatened Plaintiff that if Plaintiff did not vacate ASF and stop publishing about Defendant Ross, that he (Bishop) would use "deep government connections" to harm Plaintiff, echoing threats from Defendant Ross that included a claim that a "Mr. B." from the NSA was a "big fan" of Ross's and had even given Ross access to government files concerning Plaintiff. The threats were made more than once in a manner designed to convey credibility.

32.    By the fall of 2001, other gurus – including Defendants von Markovic, and Mystery Method, as well as unnamed co-conspirators such as Eben Pagan and his *Double Your Dating* products – had entered the seduction industry and began posting to ASF. Defendant Ross no longer had his position within the group, and was unable to control its flow of ideas. Since Plaintiff was not backing down, and since constantly disparaging and attacking him created a backlash, Defendant Ross, in agreement and conspiracy with Defendants Straightforward, von Markovic, Mystery Method, Valens, LTSC, and Levans, authorized the publication of a "Frequently Asked Questions on ASF" document commonly known as the "ASF FAQ."

10

33. The purpose of this "ASF FAQ" document was to a) disparage Plaintiff as a "newsloon" and blame him for "destroying" the ASF group on USENET; b) promote the LTSC and SS websites as "main, group related sites," and c) direct users to visit and post to the LTSC message boards, which unlike USENET, were controlled by Defendant LTSC, and by extension, the Seduction Mafia. Following is the relevant text of the ASF FAQ:

### *** READ THE MATERIALS BEFORE POSTING (SEE BELOW) ***

> Do this group (and yourself) a favor and read the FAQ before asking
> newbie questions. Do the group an even bigger favor and lurk here for at
> least a few days before making your first post. We all know this group is
> the greatest gift to man, but we don't need to hear it 3 times a day and we
> don't want to hear things like "Hey, I want to try this out... what do you
> guys think?" Just go out and DO IT (after reading up on the materials)
> then report back here as to the results. If you want to post a question,
> check the FAQ first to make sure it isn't already answered there. After
> you're done reading the FAQ, here are some other resources:

> **Main group-related sites:**
> http://www.fastseduction.com/ (Formhandle's site)
> http://www.pickupguide.com/ (Maniac's site)[1]
> http://www.speed-seduction.com/ (Ross' site)

> Ross' newsletters: http://www.speed-seduction.com/news.htm

> Most commonly recommended books/movies on ASF:
> http://www.fastseduction.com/books.shtml

> Master kill-filter (aka killfile or kill-file) list for ASF:
> http://www.fastseduction.com/filters.shtml

> Access to moderated ASF groups:
> http://www.fastseduction.com/discussion/

> ***And don't forget: USE THE KILL-FILTER LIST!!!!***

---

[1] http://www.pickupguide.com is part of the LTSC website structure and published by LTSC.

11

34. The "killfilter list" in the "FAQ" document teaches readers how to "killifile" (ignore) Plaintiff's writing and posting names, and offers dozens of ways to tell their newsreaders to filter ("kill") the messages, an explicit instruction to refuse to deal with Plaintiff.

35. On or around October 28, 2001, Defendants LTSC/Valens/Levans began marketing the LTSC message boards to the ASF group, calling it "moderated ASF" ("mASF") and giving it the same "look and feel" as ASF. This was done in conjunction with the new "FAQ" document, which was published shortly thereafter, and which has continued publication to the present.

36. Shortly after creation of the LTSC website, Defendant Ross, on behalf of the entire Seduction Mafia and Cartel (i.e., the members at that time), acted in conspiracy with Thom E. Geiger (a defendant in the Pennsylvania case from Mississippi dismissed for lack of jurisdiction), and potentially other operatives, to publish a "hate website" concerning Plaintiff that is commonly known as the "RayFAQ." The RayFAQ site was initially posted on a "free speech" server hosted by a white supremacist organization, but was moved to the domain www.ray-gordon.com in October 2002 due to negative publicity. It was impossible for the publisher to find any free-hosting services that would accept the site, since those sites rely on sponsors to provide the free space and the content was unacceptable. Because they had to get their own domain, someone had to buy the domain, and that someone was Thom E. Geiger.

37. The RayFAQ site contained numerous malicious lies concerning Plaintiff, including but not limited to claims that a) "law enforcement is well aware of [Plaintiff]

12

and thinks he is mentally unstable," b) that Plaintiff was an imminent danger to himself and others and in need of involuntary commitment, and c) that he has plagiarized the work of others. Additionally, the site encouraged users to contact anyone and everyone in Philadelphia concerning Plaintiff, including all levels of law enforcement, state and local prosecutors, mental health agencies, the University of Pennsylvania (whom Plaintiff sued for employment discrimination), and a dozen or more media outlets, with full contact information listed. The site also encouraged third parties to link to the RayFAQ site, and one third party in particular would link to the RayFAQ while also linking to the "mASF" message boards on LTSC's website. The linking problem is exacerbated, because users can cloak the link with a "tiny URL" from the website of that name which disguises the URL of the link so it does not show up in archives.

38. The RayFAQ was designed to allow an unlimited number of third-party operatives to disparage, defame, harass, and otherwise harm Plaintiff by providing links to its site. This provided several advantages, including immunity from defamation actions under 47 USC §230, because they were spared from having to republish the content themselves. In the Pennsylvania case, Mr. Geiger responded to the lawsuit by claiming that he had merely registered the domain, was not the author of the site, and did not know who was, thus making it literally impossible to determine authorship if what he said were true. Mr. Geiger, however, offered no evidence to support his claims, and Plaintiff avers that either he was the publisher of the site himself, or that he knew who was. Mr. Geiger's refusal to remove the site after becoming aware of its content further evidenced his personal approval of it.

13

## Averments Specific To "Editorial Staff"

39.  An individual who claims to be the author of the RayFAQ site regularly

posts to ASF on USENET as "Editorial Staff." Since December 30, 2001 (when the

RayFAQ was first published on ray-gordon.com), this internet user has posted several

messages, including defamation and threats of violence, against Plaintiff. The "ES" has

also attempted to incite others to harm or threaten Plaintiff by posting a e-mail forgery

where it claims Plaintiff had threatened a nonexistent female named "Jeri Ryan."

Following is a sample of statements posted by this "Editorial Staff" during the time in

controversy:

> a.  If you think you are, open that faggoty little mouth of yours again, trying to threaten us, and we will see who runs and hides. *We'll even call the cops for you, and make sure that the ambulance is there to patch up your injuries."* (08/01/2003).[2] (Emphasis Added).
>
> b.  *if he's stupid enough to ever try to get us into court, we will then move for him to be Baker Acted and committed to a psychiatric institution for his own (and our) protection.* (10/30/03).[3] (Emphasis Added).
>
> c.  Just wait. You're about to find out the cost of fooling with the wrong people. And the sweet part of it is, you won't even be able to see it coming. It will descend on you when you least expect it, from the most unlikely direction...Are you looking over your shoulder yet? Well, it won't do you any good. Hahahahahahahahahahahaha..." (08/11/03).[4]
>
> d.  We received an interesting email a few days ago, from someone who was connected to Dr. Ryan, and with that person's permission, we post it here, so that everyone will know just what Mr. Parker is

---

[2] **Message ID:** <fe06681414ceafad47a9138f2745219e@dizum.com>.

[3] **Message ID:** <ZP008M4A37924.4036226852@anonymous>. The TRO was denied not because of the merits, and not because this court recognized the site's right to exist, but rather because the TRO motion was filed ex-parte, and this court said that injunctive relief could be sought at a later time. Plaintiff later filed a DMCA notice against Geiger and had the site successfully removed. No orders of this court were disobeyed, no laws were broken, and no crimes were committed.

[4] **Message ID:** <c0d998ff062bf5f7b42ba4745c538120@dizum.com>.

14

> attempting to do here....*<snip of forged e-mail that contains forged threat of violence against "Jeri Ryan">* We wonder what could be done about this? We do know that an attorney representing the person in question has contacted law enforcement in Philadelphia, in an attempt to forestall this kind of behavior in the future. We wonder if it won't take more than that. *Perhaps someone actually paying a visit to Philadelphia to explain the consequences for actions like this, in person.* (07/26/2005).[5]

e.  We do not see that "suffering" is an option that Gordon Roy Parker is remotely capable of dealing with. The facts have shown in the past that he NEVER takes responsibility for his own actions, his own words, or anything else that he, himself, is responsible for creating. He will allow this ignominious defeat to fester in his diseased mind, and soon enough, will snap. At that point we will all see on CNN, or AP, or some other news source that there has been a mass killing in Philadelphia, because Gordon Roy Parker will want to take out as many people as is possible, in order to exact revenge. This action will give him a Godlike feeling of power, in that he will finally be able to pick and choose who will suffer at his hands, for all the wrongs HE has had to endure. (03/26/06).[6]

40.    Other operatives made threats against Plaintiff during this time, including

dozens of death threats. In the interest of concision, Plaintiff will defer a full roster of the

threats for the RICO case statement, and include here only a series of threats posted by

three individuals: "Player88" (believed to be James L. King of North Carolina), Osgaldor

Storm, whose identity was verified by Alltel, his ISP, in discovery in a previous case, and

"Aardvark," a student of Defendant Ross's who has repeatedly defamed and harassed

Plaintiff. These individuals are both members of the "NLP" community and were acting

at the direction of and/or in conspiracy with Defendant Ross, and by extension, the entire

Seduction Mafia. This is just the "tip of the iceberg." If Plaintiff were to list every threat

made against him during the time in controversy, this complaint would run hundreds of

---

[5] **Message ID:** <INF1GX5238560.4338078704@reece.net.au>. This message was quoted in its entirety by Defendant Ross, who added that he would have Plaintiff "read the e-mail he sent into the record."
[6] **Message ID:** <EXLRKS2V38803.0499652778@reece.net.au>. This message was also quoted by Defendant Ross in its entirety.

15

pages, and would still run dozens of pages if limited to only these three individuals. The

RICO case statement will cover every last incident; the examples above, however

horrendous, are merely illustrative. Following is a summary of their conduct, with

relevant excerpts and footnoted unique message identifiers:

### Threats From James L. King a/k/a "Player88"

a. Asking (concerning Plaintiff): "I wonder if a person soaked in premium gasoline burns hottaer and longer than a person soaked in regular." (Player88, 10/03/2004).[7]

b. *I know exactly where you live. Knocked on your door tonight, even.* You didn't answer. I was dressed in a Grim Reaper outfit. (Player88, 10/31/2004).[8]

c. *29 days before I become your "neighbor."* And there's not a single solitary thing you can do about it. EXCEPT ... demonstrate convincingly that you renounce your views and beliefs regarding women deserving to be raped, beaten, abused, and murdered. If you choose not to do this, well, then ... as I said, I have rules regarding men who believe that women deserve to be raped and murdered....You've told others to wait until my internet access was yanked ...well, I'm still here. And I will godammed be here until the day I die or until *you* stop posting. (Player88, 11/02/2004).[9]

---

[7] **Message ID:** <1096832391.O8fY1p/j2Mk8IzXpt5upmw@teranews >. The remainder of the message reads as follows: "Probably hotter, but not longer. But first, I'd remove the person's teeth one at a time, but leave the nerve endings intact. Then I'd pour boiling coffee (decaf so the person wouldn't shake) over the gummy nerve endings, then I'd pour ice water over the sensitive nerves, causing intense contrasting pain (with enough relief to make the following pain feel that much worse.) Then I'd pull out the nerve endings one by one using microscopic tweezers. No anesthesia, of course. But I would paralyze the vocal cords so no screaming could take place. Just suffering ...I'd perform liposuction on the overweight person's body and then force them to eat French fries cooked in their own fat. Anything thrown up would be refed until it was digested. Then I'd give the person two paper cuts ... one on each eyeball. I'd administer an overdose of sleeping pills and modafinil so they'd want to fall asleep but couldn't. They'd feel their heartbeat slow down. Then I'd speed it up with Bronkaid (legally available ephedrine). Then I'd use hypnosis to intensify the pain in the same way that Darth Vader would torture Princess Leia in the NPR version of Star Wars. Then I'd soak their bodies in 37% salicylic acid until the skin begins to flake off like a leper. Then I'd read some Vogon poetry and blast them with the Shoe Intensifier Ray. Resistance is useless! Resistance is useless! Then I'd bathe them in 93 octane gasoline and then take a smoke break, but forgeting my lighter, I'd have to use flint and steel to make sparks to create a fire. *poof* The flaked skin will burn faster and hotter than unflaked skin."

[8] **Message ID:** <311020042338329395%name@host.ws>.

[9] **Message ID:** <021120040900101465%name@host.ws>.

d.  *I'll be moving into the Fairfax December 1.* I believe that's 30 days away. That gives you 30 days to demonstrate convincingly that you have disavowed those statements before you have to deal with me personally. (Player88, 11/02/2004).[10]

## Threats From Osgaldor Storm

e.  I think you most certainly shall have been subjected a number of times to counselors and psychiatrists and psychologists, some perhaps even court appointed? But you're too sophisticated for them, aren't you. Have you heard of Hannibal Lecter? Sure you have.....You can't ignore me, I take you too seriously. Do you get disability benefits, Gordon?.....You probably don't remember it, and probably won't figure it out in time, but we have met before. Face to face, in person. I'll give you a hint, but you won't like it. Pepsi Cola and any ice-cream but Vanilla. Getting a whiff? :-) How about Cogentin? I'm sure this will be quite interesting, so *let's start counting down the days. I have an opening bid at 30.* :-) (Osgaldor Storm, 04/08/2003).[11]

f.  And I fight dirty, so you really want to play a game of rummy with me. I cheat maliciously. :-) Someone once planted a car-bomb in the car of someone I know. Then their house burned down. Do you think there is anyone on this list that doesn't *know where you live* Gordon? Of course, I am only writing about general topics here, when my friend's house burned down we all felt horrible. *Would you, Gordon, feel horrible, if the house of someone you know burned down?* (Osgaldor Storm, 04/08/2003).[12]

g.  *If we just killfiled him...or if we just killed him.* People coming to the group might see his posts and take them for *legitimate* guidance. And could any of us sleep at night if we allowed GORDON to be *representative of PUA's around the world?* Isn't it OUR RESPONSIBILITY to weed out this undesirable who gives the rest of us such a bad name and may pose a continuous and ongoing threat to himself and others? So I suppose the question is *"Why aren't we DOING MORE to get rid of this scumbag?"* But what do I know... I'm just some loser who's read a couple a' books.;-D (Osgaldor Storm, 04/17/2003). [13]

## Harassment from "Aardvark"

h.  On July 25, 2004, Aardvark posted to ASF, a message in which he

claimed to have sent the following letter (in response to a request by "Editorial Staff,"

---

[10] **Message ID:** <021120040059145128%name@host.ws>

[11] **Message ID:** <c8uka.7166$Dd4.2118755@news.alltel.net>

[12] **Message ID:** <CsBka.7179$Dd4.2164262@news.alltel.net>

[13] **Message ID:** <g9ona.9257$Dd4.3194457@news.alltel.net>

another operative believed to be Defendant Geiger), to numerous parties in Pennsylvania,

*including this court* in which he stated the following:

> *this was forwarded to all the email addresses provided in the original plea for help.*[14] courts, sheriffs office, dist atty, etc. they all got it. my grandpa always said that if you sling enough shit, some of it's bound to stick somewhere. lets just see where some of this sticks, shall we?

> Gordon Roy Parker/4247 Locust Street, #806/Philadelphia, PA 19104/ (215) 386-7366. *The above individual (AKA Ray Gordon) has publicly admitted to the crimes of "hijacking" a website and replacing the information with false information in an effort to have the site shut down.* He has also been engaging in threatening Internet Service Providers into giving up information on their clients by falsely claiming, over the phone, to be a bar certified lawyer in an attempt to coerce said providers into bowing to his will. Mr. Parker has also been caught reposting information to a usenet newsgroup(s) obtained from a website and message forum that *Parker was forbidden from accessing due to his behavior.* Even after being warned to cease and desist from such behavior, Parker kept "hacking into the site, using alternative aliases to hide his identity.[15]

> He has engaged in outright barratry and threats of lawsuits to silence his critics who only wish for Parker to refrain from illicit or discourteous behavior. He has libeled users of the usenet group with terms such as "hypno-rapist" and "mind rapist". Parker has wished death upon the children of his detractors. This individual is a danger to the public at large and a man admittedly enjoying what he perceives to be an "immunity" from punishment for his acts bragging about being such engaged in criminal activities on a regular basis. *It is my sincere hope that you would be able to assist with the apprehension and seclusion from decent society of Mr. Gordon Roy Parker, be it in a jail or perhaps a mental institution should it be deemed fitting if Parker is declared incompetent.*

> I would be happy to provide my name you you upon request should it be absolutely necessary on the condition that such private information about myself is not made available to Parker for his misuse and further criminal mischief making. I hesitate to give it now as I simply do not wish for Mr. Parker to see it attached to theis message as he is often engaged in the merciless harassment of his perceived "enemies" once he has their personal information in hand.

---

[14] "Aardvark" is referring to a list of "contacts" from the RayFAQ that include media, law enforcement, and potential employers of Plaintiff's (such as UPenn).

[15] A recent federal ruling (citation omitted) held that viewing a publicly available website is not hacking.

18

> ***Parker has been known to also masquerade as a bar certified
> attorney to threaten and harass the families of his said "enemies".***
> Thank you in advance for your attention to this matter.

## "Thrasher" And "Twisty Creek" Remailers (And Odious And Alex Kaufmann)

41.    The other main operative of the Seduction Mafia during this time was an

internet user who posted anonymously, apparently from Australia, known as "Thrasher"

because s/he posted from an anonymous remailer by that name. Following is a sampling

of messages posted by "Thrasher" to ASF during the relevant times in this action:

a. New visitors to alt.seduction.fast are welcomed and directed to the main
website http://www.fastseduction.com Most seduction discussion has been
relocated to the forums on this website, which are also known as mASF.
These forums can be accessed through your news reader just like this
newsgroup, or through a web interface. The forums were created as an
alternative to the large amount of spamming, misinformation, and offensive
behavior by a high-volume poster known to unfotunately suffer disabling
mental illness, in the regular alt.seduction.fast newsgroup. As the forums
require registration (which can be done through an anonymous email
account), disruptive individuals are completely prevented from posting. This
results in a much more useful and productive forum. Drop by and see for
yourself.   For information on a particularly disruptive poster in the
alt.seduction.fast newsgroup and his history of mental illness and harassing
others, visit http://www.ray-gordon.com. (August 11, 2003).

b. Welcome CF! [original poster].  Please be aware that the vast majority of asf
activity has moved to the forums on ***our official website*** at
http://www.fastseduction.com  If you sign up for an anonymous account
then you can access the forums right through your newsreader, just like here.
Otherwise you'll have to use the web interface. You'll find many other
resources on the site also.  (September 22, 2003).

c. New visitors to alt.seduction.fast are welcomed and ***directed to the main
website***
http://www.fastseduction.com. Most seduction discussion has been relocated
to the forums on this website, which can be accessed through your news
reader just like this newsgroup, or through a web interface. The forums were
created as an alternative to the large amount of spamming, misinformation,
and offensive behavior by a high-volume poster known to unfotunately suffer
disabling mental illness, in the regular alt.seduction.fast newsgroup. As the
forums require registration (which can be done through an anonymous email
account), disruptive individuals are prevented from posting. This results in a
much more useful and productive forum. For information on a particularly

19

> disruptive poster in alt.seduction.fast and his history of mental illness, visit http://www.ray-gordon.com. (November 21, 2003).
>
> d. New visitors to alt.seduction.fast are welcomed and *directed to the main website* http://www.fastseduction.com. Most seduction discussion has been relocated to the forums on this website, which can be accessed through your news reader just like this newsgroup, or through a web interface. The forums were created as an alternative to the large amount of spamming, misinformation, and offensive behavior by a high-volume poster known to unfotunately suffer disabling mental illness, in the regular alt.seduction.fast newsgroup. (June 2, 2005).[16]

42.    Because the "Thrasher" postings were anonymous, it was impossible to sue the author for defamation, and because of 47 USC §230 not yet being overturned by the Supreme Court, these posts are routinely quoted, republished, and archived by Google. Many of "Thrasher's" postings reference Plaintiff by his birth name, which was done with the intent of having the postings turn up anytime someone googles Plaintiff, such as an employer.

43.    The postings by all the operatives listed above were made in conspiracy with Defendant Ross and the entire Seduction Mafia and Cartel, with their full knowledge and approval, and were designed to use fear and coercion to intimidate Plaintiff into vacating ASF and the seduction-advice industry, for the purpose of increasing revenue for Defendant LTSC and its associates, partners, and affiliates.

44.    Plaintiff was about to aver that Thrasher had temporarily ceased its conduct, but on Monday, July 24, 2006, it resumed posting to ASF as "Twisty Creek" through the remailer located at http://www.twistycreek.com. On July 26, 2006, Plaintiff complained to Twistycreek's ISP, Comcast, but this only derailed the remailer for two

---

[16] A Google search performed on June 3, 2005 for the term "unfotunately" for the ASF newsgroup returned 562 nearly identical results, with all postings made anonymously.

20

days, as it has now relocated to a server owned by Network Solutions, Inc., its domain registrar. It will relocate perpetually if necessary, so complaining is futile. Following is a summer of the recent messages by "Twisty Creek":

    a.    On July 24, 2006, Twisty posted two messages to ASF, one a republication of the RayFAQ as above, and the other a republication of the messages cited in paragraph 41(a-d), practically verbatim.[17]

    b.    Since July 24, 2006, Twisty Creek has posted dozens of messages to ASF, including one message in response to each message Plaintiff posts to ASF, with the same theme as "Thrasher" of disparaging Plaintiff (with the same wording as outlined above), and promoting the LTSC website to "newbies" by inferring that the LTSC site is somehow affiliated with ASF.

    c.    On **July 30, 2006**, Twisty Creek posted a message to ASF designed to harass and defame Plaintiff and his family. The message included the following statements:

> Subject: Ten-to-one Penny Parker perfers him spewing this crap vs bothering her. She's probably grateful for every additional hour he spends in his room that he's not pestering her, telling her about his latest legal cases and how everyone will be punished beyond their comprehension etc etc etc. Can you just imagine?[18]

    d.    Thanks to 47 USC §230, and until the Supreme Court holds otherwise, the anonymous post sets the table for other operatives to republish the

---

[17] The republication of the "RayFAQ" was message ID P3TCN0AS38922.2967939815@twistycreek.com, while the republication of the message cited in Paragraph 13(a-d) was 4XK0MQUL38922.2891319444@twistycreek.com. The "Twisty Creek" remailer is hosted by Comcast Corporation.

[18] **Message-ID:** <00b4973143c5bca324970c290fa2d302@dizum.com>

21

defamation under the belief that they are immune. Two posters, "Alex Kaufmann" and

Derek Trunk ("Odious"), posted responses to this message as follows:

1.  Re: Ten-to-one Penny Parker perfers him spewing this crap vs
bothering her

From: Alex (akaufmann@nyc.NOSPAM.rr.com)

> She's probably grateful for every additional hour he spends in his
room that
> he's not pestering her, telling her about his latest legal cases and
how
> everyone will be punished beyond their comprehension etc etc etc.
Can you
> just imagine?

*Given that Gordon's illness is genetic and some of the things he's
attributed to her, I wouldn't doubt that she's a few fries short of a
happy meal herself.* (July 30, 2006).[19]

2.  Re: Ten-to-one Penny Parker perfers him spewing this crap vs
bothering her

From: "Odious" <Odious@cox.net.nospam>

>> She's probably grateful for every additional hour he spends in his
room
>> that
>> he's not pestering her, telling her about his latest legal cases and
how
>> everyone will be punished beyond their comprehension etc etc
etc. Can
>> you just imagine?
>
> Given that Gordon's illness is genetic and some of the things he's
> attributed to her, I wouldn't doubt that she's a few fries short of a
> happy
> meal herself.

*I have my doubts that she's even still alive.* Gordo is so like
Norman Bates
in all othe respects... *I wouldn't be surprised if someday they found
out
she's been dead for years and gordo's living off her social security
checks.*

---

[19] **Message ID:** <C0F19B56.BC0AE%akaufmann@nyc.NOSPAM.rr.com>

22

45. Both Trunk ("Odious") and Alex Kaufmann ("Alex") are long-term Seduction Mafia operatives, and both are suspected of being Thrasher/Twisty, or knowing who is. Their messages were posted to lend credibility to the anonymous posting (quite possibly made by one of them), and to harass Plaintiff's family by casting a false light upon them for anyone who might "google" them, and done so only after an "anonymous" source posted the original (§230).

### Averments Specific To Defendant Marcos a/k/a Sliek0722@aol.com

46. Defendant Marcos became known to the "community" when he posted, to "Thundercat's Seduction Lair" (a blog), a negative review of the "Real Social Dynamics" corporation ("RSD"), a company based in West Hollywood, California that offers workshops and multimedia products similar to those of the other Defendants. The review was scathing, and was reposted as a featured article by Thundercat.

47. Defendant von Markovic used to work for RSD prior to starting Defendant Mystery Method, and lived in the "Project Hollywood Mansion" at 8317 Londonderry Terrace, West Hollywood, California, its base of operations during the times in controversy.

48. In his review, Defendant Marcos provided the alias e-mail address (Sliek0722@aol.com) as contact information for anyone who wanted "more information" on his experience, and to verify that he was "real" and not some "Mystery Method shill."

49. In February 2003, Plaintiff briefly contacted Mr. Marcos to inquire further about his experience. RSD was an advertiser on the LTSC website, and Plaintiff set out to explain to Mr. Marcos that he was not allowed to advertise there. He also

23

advised Mr. Marcos that if LTSC did not publish his negative review of RSD, that he could post it to ASF on USENET without fear of censorship. Plaintiff assumed that if the review were defamatory that RSD would take action, and did not take sides in the dispute. He even defended RSD to Defendant Marcos.

50.    Defendant Marcos's identity was verified by Plaintiff through an e-mail from RSD to him that was forwarded to Plaintiff, which had been addressed to "Michael Marcos" at the Sliek0722@aol.com address. His identity was further verified through a public-records search which yielded his address, and by entering the name "Michael Marcos" into the MySpace search engine, which yielded his MySpace profile.

51.    Shortly after talking with Defendant Marcos, it was apparent to Plaintiff that this was not the typically disgruntled customer. As noted by RSD in its rebuttal to Defendant Marcos's internal complaint, he was rigid and inflexible regarding his expectations from RSD and from seduction gurus in general. He was short on specifics regarding the problems with women he was allegedly experiencing, and spent the majority of his time bashing RSD rather than trying to solve any alleged problems he was having. Plaintiff stopped communicating with Defendant Marcos shortly after his initial contact, and referred him to Plaintiff's four free books on his website.

52.    In May, Plaintiff again spoke with Defendant Marcos, in a series of instant messages on May 9, 2006 which were detailed in his Response to Defendants' Motion To Stay Or Dismiss in this case (Statement of Facts, ¶C(1)(d), p. 10). To summarize that interaction, Defendant Marcos related to Plaintiff that Defendant von Markovic was the new leader of the Seduction Cartel (and, by extension, the Seduction

Mafia) as a result of the media exposure he engineered in exchange for teaching his method to Christopher Powles a/k/a Neil Strauss a/k/a "Style."

53. In those instant messages of May 9, 2006, Defendant Marcos threatened Plaintiff by stating "you know what we do to ants Ray? We step on them." He also stated to Plaintiff that "[he] happen[s] to know that everyone in the Philadelphia [sic] court system knows of you, and thinks you are a big fat LUNATIC....I believe the court clerks described you as disgusting." Regarding Defendant von Markovic ("Mystery"), he said: "Do you find it ironic that in an mASF post a few months ago, one of the only posts Mystery has made in a year, he brought attention to my review, while slamming RSD? Gee you would think a man so busy wouldn't have time to read such reviews.

54. After this exchange, Plaintiff stopped interacting with Defendant Marcos, and had no intention of reinitiating contact. Defendant Marcos had posted a message to Thundercat's blog (Thundercat is sponsored in part by Defendant Mystery Method) where he disparaged Plaintiff and denied making the statements, and Plaintiff chose instead to speak through his pleadings. Defendant Marcos's allegations, if true, all but proved the existence of the Seduction Cartel, and demonstrated that Neil Strauss's *The Game* was little more than propaganda for the Mystery Method, with whom Mr. Strauss/Powles/Style has an ongoing and mutually profitable business affiliation. Their collective goal, according to Defendant Marcos, was to manipulate media coverage of the "community" for the full and exclusive financial benefit of the Seduction Cartel. Statements by Defendant von Markovic have evidenced anticompetitive behavior rather

25

than RICO predicate acts, and will be detailed in the section covering the Seduction

Cartel rather than the Seduction Mafia.

55.    On June 16, 2006, Defendant Marcos contacted Plaintiff by e-mail.

Following are the full contents of the communication, as taken in a screenshot by

Plaintiff on his PC:



56.    Plaintiff contacted Defendant Marcos by instant message, and was told

that Defendant von Markovic (Mystery) was referring to Plaintiff as the "village idiot" to

his students (and prospective students), and advising them not to deal with Plaintiff.

Defendant Marcos then outlined, in even greater detail, the inner workings of the

Seduction Cartel.

57.    According to Defendant Marcos, Mystery developed a plan in 2000,

when he was in dire straits financially, to "conquer" the seduction industry by restricting

26

his teaching to wealthy and powerful men, whom he would then use to build a business network that would allow him to grow his empire. From twenty-seven applicants for his first workshop, Mystery deliberately selected three or four wealthy or powerful men, including Neil Strauss, a "millionaire from Australia," and other unnamed individuals. While these men paid Mystery, the demand for his teaching was such that he could still be selective and demand more than just tuition from these individuals.

58.    Also according to Defendant Marcos, it is standard operating procedure for Defendant Mystery to exchange his knowledge and access to "Mystery's Lounge" (a secret message board) to other students who make themselves useful to the Seduction Cartel. This is the category into which Defendant Marcos apparently falls, that of an eager young student lacking the ability to pay for a workshop or a bootcamp and instead exchanging illegal assistance, in this case Defendant Marcos's fraudulent review of RSD, and his dealings with Plaintiff.

59.    In a series of instant messages immediately after the e-mail of June 16, 2006, Defendant Marcos alternated between threatening and taunting Plaintiff, informing him that there was a campaign orchestrated by Defendant von Markovic to "run" Plaintiff out of the seduction-advice industry, and that the main tactic was the use of "shills" to defame Plaintiff whenever he would post a message to Thundercat's blog or to ASF, and to pose as satisfied customers of the Mystery Method. The purpose of this conduct, according to Mr. Marcos, was to gain market share and to ensure that Plaintiff never gains mainstream media exposure for his method. Defendant Marcos further stated that this was the reason that Neil Strauss omitted any mention in *The Game* of Plaintiff as the

27

creator of the "pivot" technique for seducing women, and why Mr. Strauss did not mention Plaintiff at all in his book.[20] Indeed, most every guru mentioned in *The Game* is now, or was in the past, associated with the Seduction Cartel.

60.    Defendant Marcos further revealed in these conversations that he was promised a share of the proceeds from the Seduction Cartel's operations, in the form of becoming a "Certified Mystery Method Instructor." He had planned to post a positive review of a Mystery Method "bootcamp" in May 2006, but was unable to do so after Plaintiff filed his most recent pleading. The original plan was to have him appear "converted" to the Mystery Method, and to have such success with it (where RSD had failed him) that he then became an instructor. He has since been reassigned to other work, including his threats against Plaintiff.

61.    Several times during these conversations, Defendant Marcos made direct or indirect threats of violence against Plaintiff, in which he would remind Plaintiff of von Markovic's wealth, power, and connections, refer to competitors by saying "I hope something bad doesn't happen to them," reminding Plaintiff that von Markovic "knows where he lives" and could easily "take him out." He further "warned" Plaintiff to "leave" the "seduction community." This was a clear attempt to use fear and coercion to obtain market share from Plaintiff for the Seduction Cartel and Mafia.

62.    Defendant Marcos further explained to Plaintiff that Defendant von Markovic is attempting to control the entire seduction industry by promoting (and not

---

[20] A "pivot" is a woman that a man goes out with "as friends" for the purpose of building his reputation. It is one of if not the most effective techniques ever developed in the "community." Recently, websites such as http://www.pivotsandwings.com have begun offering "pivots for hire" to men.

having his operatives defame and disparage) only those businesses, including that run by

Neil Strauss and any former students, who kick back a percentage of their earnings to

Defendants von Markovic and Mystery Method, or who are of use to them and generate

revenue for them.

    63.    After hearing Defendant Marcos's entire story, and after tiring of his

threats, Plaintiff again ceased contact with him. However, on July 10, 2006, Defendant

Marcos contacted Plaintiff again by e-mail on AOL, and accused Plaintiff of something

he did not do:

> Subj:  **If you are exaggerating the truth, cease at once.**
> Date:   7/10/2006 4:27:00 PM Eastern Standard Time
> From:   Sliek0722
> To:      LeModernCaveman
>
> There was a mistake in editing in one of Style's video clips on the Style life
> challenge today in which Mystery is picking up a super model and she remarks
> at the end "Well I'm only talking to you because you're tall."
>
> A meaningless remark but apparently some asshole has took it upon themself to
> tarnish Mystery's game claiming that it's his looks (height) money, and fame that
> is allowing him to pull with such success. All this off of one line that was meant
> to be edited out. Now AFCs are increasingly starting to become skeptical of the
> Mystery Method because of this idiot and if this idiot is you, you need to cease
> at once - you are creating lies and exaggerations to suit your own personal
> means. That's not fair business.

    64.    In this e-mail, Defendant Marcos was accusing Plaintiff of disparaging

the Mystery Method because a video that was released by Mystery of him "picking up" a

"supermodel." Apparently, the video demonstrated Mystery's ability "in the field," but at

the end of the video, the "target" female (the model) states that she is only talking to

Mystery because he is tall. Defendant Marcos jumped to the conclusion that Plaintiff was

29

the one who was "spreading the news" and advised him, while instructing Plaintiff to cease and desist.

65.    Plaintiff had not even known of this video at the time of the e-mail, but did some investigating and learned that the criticisms of Mystery relating to his use of student money to get women more likely originated as a result of an "online apprenticeship" newsletter where he advised his students to pay for dates with women and even to buy drinks for them in bars, something that directly contradicted Mystery's previous advice to men. In the past, Mystery stated that women viewed men who pay their way as "chumps" and advised against paying, but now he was calling it "social convention," apparently an attempt to make his writing more palatable to the mainstream for his book release of a paperback version of his method scheduled for November 2006 from St. Martin's Press.

**History of The Seduction Cartel (Directed To Applicable Defendants)**

66.    The Seduction Cartel has a much more well-defined history, primarily because its operations have been conducted in full view of the public, with much of it archived by Google and other sources.

67.    The Seduction Cartel began its operations on or around October 28, 2001, when Defendants LTSC/Valens/Levans, in conspiracy and agreement with Defendant Ross (and by extension, Defendant Straightforward), began marketing the "moderated ASF" ("mASF") message boards to the ASF group on USENET through regular postings and the "ASF FAQ" message which has been posted, on average, once a week ever since.

68.   Defendant Valens was well aware of the conduct targeted at Plaintiff through 2001, and decided to take the more profitable path, capitalizing by conspiring with the other named Defendants to "hijack" ASF traffic through deceptive marketing (the FAQ). Defendant Valens made no secret that he created his group to, in his words, "solve the Ray problem." Defendant Valens made numerous postings to ASF in late 2001 where he referred to Plaintiff as a "newsloon," repeatedly disparaged his work, and made no secret of his refusal-to-deal condition with anyone posting to the mASF message boards, that neither Plaintiff nor any of his products were to be mentioned in any way, or the user would be banned by LTSC. Defendant Valens made this decision for a pure profit motive that would be made easier to realize through this anticompetitive conduct.

69.   Throughout its existence, and during all relevant times in this controversy, Defendant LTSC's advertising policy has been only to accept sponsors who agree to the terms set by the Seduction Cartel, including the horizontal blacklisting of and refusal to deal with Plaintiff, as well as the approval of the Mafia conduct. Other terms include not disparaging any other member of the Cartel, actively promoting every member of the Cartel under the guise of saying good things about one's competitors, and agreeing to do whatever else is necessary or requested to restrict competition and keep prices inflated, including but not limited to actively disparaging those who are not in the Cartel or who are critical of it, such as Plaintiff.

70.   This refusal-to-deal by the Defendants and their sponsors, associates, and affiliates has cost Plaintiff tremendously, not only in lost revenue from students and readers, but also in lost media exposure. Defendant von Markovic has consistently

refused to deal with anyone, who dealt with Plaintiff or Plaintiff's work. In the case of Neil Strauss, Defendant von Markovic ensured that no attribution to Plaintiff for the "pivot" concept would appear in the glossary for *The Game*, even though other terms had been attributed, and even though Mr. Strauss was well aware of both ASF on USENET and Plaintiff's work. Instead, the only reference to the pivot term said that the word "had been floating around the community."

## Seduction Lairs And The Seduction Cartel

71.    In addition to exercising control over the internet seduction portals, the Seduction Cartel, primarily through the efforts of Defendants von Markovic, when he was working for unnamed co-conspirator *Real Social Dynamics* ("RSD"), and Defendants Valens, Levans, and LTSC. Defendants Ross and Straightforward profited from and approved of this approach by the Seduction Cartel to profit from the phenomenon called the "seduction lair," a city-based organization with chapters in each major city or area, where men communicate regularly over the internet, meet in person once or more a week to go out "into the field" and pick up women, and to. Lairs are generally referred to by their names, i.e., the "New York Lair" or the "D.C. Lair."

72.    Defendant Marcos has claimed to be a member of the D.C. Lair, and has further claimed that Defendant von Markovic has referred to Plaintiff as the "village idiot" to at least one other member of the D.C. Lair, and has also claimed that another D.C. Lair user has posted notes from a Mystery Method Bootcamp that quote defendant von Markovic further disparaging Plaintiff and not properly attributing the pivot concept to him.

32

73.    Defendant von Markovic, with his RSD partners, claimed the lairs as personal marketing turf for his products and method by establishing relationships with the leader of each city's lair. In return for affiliate commissions, free product, access to desirable women and "Mystery's Lounge," (a private message board for "elite" PUAs), lair leaders promoted the RSD product line and further agreed to refuse to deal with anyone not approved by Defendant von Markovic, RSD, and Defendants Ross, Straightforward, Valens, Levans, and LTSC, who markets the Lairs through the LTSC website.

74.    Through the anticompetitive efforts of Defendants von Markovic, the Lairs became a "whale factory" of expensive customers who, as if joining a cult, were enticed by free information and the ability to associate with like-minded individuals, but who slowly find themselves isolated to any extent they have independent beliefs from that of the Lair, and they are "stealth marketed" with "word of mouth" that carries the weight of authority of the Lair's leader. The Cartel thrived off of the Lairs especially prior to the breakup of Mystery Method and RSD, because each city's Lair made it possible for RSD (including von Markovic at this time) to schedule their workshops only *after* a Lair had produced the half-dozen or dozen "whales" needed to make doing so profitable.

75.    The same anticompetitive behavior which occurs on the internet and which is alleged in this complaint extends into the "real" world, with all the added social pressure of face-to-face contact. Especially insidious about the Lairs is that many of their members are socially inept men who have never belonged with women or with men who

33

get women, and who therefore prize their association with their Lair. Consequently,

threats of refusal to deal within the Lair are a compelling way to steer its consumers to

"approved" Cartel products. After Defendant von Markovic and RSD split up, the Lairs

have splintered, and their commercial interests have become more obvious, but the Cartel

still maintains a strong level of influence and control over them to this day.

## Averments Specific To Defendants Ross and Straightforward

76.    Defendant Ross has made a number of threatening or defamatory postings

concerning Plaintiff, in addition to delegating this "work" to his many operatives.

Relevant statements by Defendant Ross (and, by extension, Defendant Straightforward),

include:

> a.    I received notice from AOL that Mr. Parker is seeking my information from
> them(I received a copy of a very sloppy subpoena duces tecum).....Should I indeed be named and served in a suit I will immediately cross-claim against Mr. Parker-although he likely has few monetary assets, *we will seek as compensation all of his copyrights, computer equipment, etc.* As well, since I have seen some of the alleged "offending posts" contain my allegations that Mr. Parker is .....mentally imbalanced, we will seek a court-ordered psychiatric examination of Mr. Parker, to prove the truth of these assertions.....I would strongly suggest that Mr. Parker pick a less resourceful and powerful target. (December 12, 2002 to ASF).

> Get Laid NOW!
> Ask me how!
> Free Get Laid/Persuasion Newsletter
> www.seduction.com

> b.    "*If you are sued by Ray,* IMMEDIATELY after filing your answer, begin propounding discovery, first and foremost requesting any and all documents supporting his assertions that his business has been damaged. Enjoy the show as he squirms and avoids and gets hit with sanctions and fines by the court. Move for a psychiatric examination IMMEDIATELY. Watch him squirm." (03/24/2004).[21] (Emphasis Added).

---

[21] **Message ID:** <20040324102448.07304.00000017@mb-m18.aol.com>. This message was posted to ASF, from Defendant Ross's "ErosLA77@aol.com" account. This account was revealed by AOL to

34

c.  "Ray...where do you get the time during the day to make these zillions of posts? TAKE YOUR MEDS!...*Sue RAY NOW! Ask me how!* PUT AN END TO HARASSMENT AND ABUSE OF PROCESS!" (03/25/2004).[22]

d.  I swear to Jeri; if Mr. Parker DOES sue me, he will be reading this piece of sick, twisted, hateful *email that he sent*, into the record when I take his deposition. *Ray, you are sick, twisted, evil bastard* and I am going to clean your clock in court." (07/27/2005).[23]  (emphasis added).

e.  I would think that *knowingly refiling a case [in Delaware, this one] that is time-barred would certainly subject the moving party to serious sanctions,* perhaps even deliberate attempt to defraud the court could result in criminal investigation and penalties as well. (March 28, 2006).[24] (emphasis added)

## Averments Specific To Defendant von Markovic ("Mystery") And The "Post-Game" Seduction Cartel

77. Defendant von Markovic ("Mystery") is now the most powerful member

of the Seduction Cartel. At first, however, he stood in the background, choosing instead

to merely "keep the peace" with the other defendants until he had enough resources in

place to become the Cartel's dominant member. He did this by using the Cartel's own

structure to his advantage, building a sub-Cartel that would eventually dominant the

original Cartel.

78. Defendant von Markovic's initial participation in the Cartel occurred in

August 2001 and again in October 2001, when, in conspiracy with Defendants Valens,

---

belong to Defendant Ross in discovery in Parker v. Wintermute. The title of the message, which was not posted in response to anything, was "Defeating Ray's Lawsuit."

[22] **Message ID:** < 0040325111427.03590.00000079@mb-m01.aol.com>  The "sue ray now" signature was used in many posts by Defendant Ross and is a play on his marketing for Speed Seduction: "get laid now; ask me how."

[23] **Message ID:** <BF0C7208.15265%notmyemail@address.com>.  This message was a response to the anonymous posting by "Editorial Staff," the alleged publisher of the RayFAQ. The "Staff" had published a forged e-mail which alleged that Plaintiff had harassed a nonexistent woman named "Jeri Ryan," and threatened Plaintiff with "paying him a visit."  Defendant Ross quoted that posting in its entirety.

[24] **Message ID:** <C04ED255.1F14C%notmyemail@address.com>

LTSC, Levans, Ross, and Straightforward, he agreed to stop posting to ASF, to encourage others to post to the LTSC message boards, and to post there himself (prior to this, he was 'permitted" to advertise on ASF without running afoul of the Cartel as long as he refused to deal with Plaintiff). In exchange for this, Defendant von Markovic was granted membership in the Cartel inasmuch as he would be allowed to promote his workshops through LTSC's message boards, and that LTSC would censor any genuine or costly criticism of defendant von Markovic or the Mystery Method.

79.    According to PDF archives maintained by Defendant LTSC, Defendant Mystery originally appeared on ASF on USENET on September 4, 1998. His original purpose for posting there was to promote his career as an illusionist by providing free seduction information, and to sell magic tricks over the internet. When this failed, Mystery turned his eye towards the rapidly growing market for seduction advice and began developing what would become his commercial enterprise, Defendant Mystery Method Corporation.

80.    During all relevant times, Defendant Mystery has built alliances with some entities in the seduction industry and "community," while attempting to exclude or outright blacklist others, including Plaintiff. Defendant Mystery also has a long history of public contempt for Plaintiff, as demonstrated by his conduct over the years, including:

a.    Defendant von Markovic directed Thundercat, in 2002 or 2003 to provide a link to the RayFAQ website in 2003 under the threat of refusal to deal. The link was removed only after Plaintiff notified Thundercat that he intended to take legal action.

36

b.    On August 27, 2001, defendant von Markovic began marketing the

"Mystery Method Seminars" to ASF by posting advertisements for the seminar, along

with an e-mail contact. Additionally, he posted a message (falsely) accusing Plaintiff of

being "several people" on ASF, including a user who called SS (Defendant Ross's

product) a "fraud." Following are relevant excerpts from the messages:

1.    Message #1: Subject: The Mystery Method: MM Basic Training

FAQ

> Master Pick-up Artist "Mystery" is now offering an IN-FIELD MM
> BASIC
> TRAINING Workshop in selected cities (Canada and USA).
>
> Q: How do I know Mystery is an authority on the PUA?
> *Checkout www.fastseduction.com* and do a search for posts by
> Mystery.[25]

2.    Message #2: Subject: Re: The SS Fraud is Coming Apart

> I get back to asf and ray is once again SEVERAL people! how many
> times
> must I filter the fucker.
>
> BTW, hi Ross.
>
> >>>Poor Ray..let another anonymous account...[26]

c.    On rare occasions, such as this one, Defendant von Markovic has

credited Plaintiff with the "pivot" concept. The following "pre-Cartel" statement was

posted by Defendant von Markovic to ASF on September 26, 2001: "*Pivot is a Ray term*

*OUCH*"[27]

---

[25] **Message ID:** <3b89e4bf.218046055@news1.on.sympatico.ca>

[26] **Message ID:** <3b8a0ac9.227786099@news1.on.sympatico.ca>

[27] Source:

http://groups.google.com/group/alt.seduction.fast/msg/f9006f935e846a47?dmode=source&hl=en (Google);
**Message ID:** <XTms7.17753$Df4.1775771@news20.bellglobal.com>.

37

d. On October 30, 2001 (the same time as LTSC created its message

board, Defendant von Markovic posted to ASF, a series of messages in which he stated:

"RAY sent a damaging email to Mystery's email provider and got his email closed, which

damaged many relationships. Mystery is suing for [$300,000] damages."[28]

e. On February 11, 2002, Defendant von Markovic again mistook a

third party for Plaintiff, this time where the third party gave out the number of Cartel

operative Derek Trunk (Odious), a resident of San Diego. It is worth noting that in this

posting Defendant von Markovic gave praise to Speed Seduction, another Cartel product,

made two references to physical violence, and made yet another exclusionary reference to

Plaintiff:

> Lame OUTING jack. I met ODIOUS and he doesn't hide from the
> world like you do. *If he met you in person, he'd kick your ass, or
> have one of his friends do it (hell, Id kick you ass for him)*
> because he's too busy with the women. He's one of the REAL
> PUAs ... *uses SS* and is FIELD-EXPERIENCED. That's just MY
> endorsement. Does anyone want MY #? Want MY real name?
>
> >derek trunk phone - 619-XXX-3434 tell him we dont want him
> here....
>
> *I WANT him here. RAY, go away.* [29] (emphasis added).

f. On April 23, 2006, someone claiming to be "Savoy" (the business

manager of Defendant Mystery Method) posted a message to Thundercat's blog in which

he stated

> *"There is no official or unofficial MM marketing on Thundercat's blog.*
> We do not even include this blog on our list of places where students are
> encouraged to post reviews, though maybe we should. And we certainly

[28] **Message ID:** <%2cD7.6116$Fy2.619090@news20.bellglobal.com>
[29] **Message ID:** < aLX98.8158$NP4.1054623@news20.bellglobal.com>

38

> have enough respect for Thundercat that, if we wanted to advertise here,
> we would tell him about it and pay for it."[30]

g.    At the time of publication, "Savoy" either knew or should have

known that Defendant Mystery Method had an ongoing business and marketing

relationship with Thundercat's blog, as it is an "affiliate" who markets Mystery Method

products and receives a commission, through the blog site and its related site,

www.seductionlair.com.

h.    On June 7, 2006 Defendant von Markovic posted a message to

Thundercat's blog in which he expressed a desire to see Plaintiff and his products vacate

the industry, and his refusal to post because Plaintiff was posting there, while taking

credit for having Thundercat require users to register (whereas previously anyone could

post), and encouraging others (his customers and potential customers) to refuse to deal

with Plaintiff:

> Hey Ray, *I for one do not appreciate your participation here and request*
> *Thundercat ban you from further participation.* Your posts are disruptive
> and derail us from otherwise meaningful exchange. *The main reason I do*
> *not post here is because of you...*Anyone reading the accumulating posts
> by Ray, not only in this thread but in all the others, will know why the
> added login requirement was implemented. *Thundercat, please do what*
> *you need to in order to allow others to communicate without disruption*
> *from Ray.[31]*

81.    *The Game* documented the "cooperative" nature of the seduction-advice

industry. For several years now, competing businesses have acted in concert and

lockstep, in some cases have even shared living quarters and office space, routinely

exchange customer information with each other, and act in concert to reduce competition

---

[30] Source: http://www.thundercatseductionlair.com/2006/04/rsd_is_afraid_o.html.
[31] Source: http://www.thundercatseductionlair.com/2006/06/pick_up_101_all.html

and raise prices through the exclusion of nonmembers of the Cartel, or those the Cartel does not give "permission" to exist, and therefore works to extinguish from the industry.

82.    When Plaintiff asked Defendant Marcos why he repeatedly was threatening Plaintiff and invoking the name of Defendant Mystery. In response, Defendant Marcos outlined his work for the Cartel and for Mystery's plan to use it to take over the industry through networking among his wealthy and powerful clients, recruiting "interns" and other shills to attack the competition and "stealth market" the Mystery Method, by and by using other Seduction Mafia and Cartel operatives to target Plaintiff and others deemed to pose a threat to Mystery's position in the "seduction community," as well as to create a "mutual admiration society" of cross-marketing and anticompetitive behavior designed to fix prices and reduce outside competition.

83.    Prior to the January 25, 2004 article in the *New York Times* by Neil Strauss, Defendant Mystery did not stand out among his Cartel peers. Like most of the Cartel, he had a sizeable audience, a direct result of Defendant LTSC's restrictive advertising policies which greatly reduced his competition, and his market share was roughly equal to that of most of the other cartel members.

84.    After the *Times* article, Mystery became a mainstream public figure along with Neil Strauss. Together they would "seduce" or "game" the public the same way they and the men they teach would "game" women. Strauss used Mystery to gain credibility on his chosen topic (by covering the "world's best pickup artist," and in return, Mystery used Strauss to validate his seduction prowess as the "world's best." Overnight, the Mystery Method became a brand name to the public, and Mystery became legendary

40

to the industry's target market of men with lots of money to spend on advice, men very eager to purchase and solve their problems with women.

85.    In addition to working together, Mystery and Strauss set up business relationships with "Thundercat's Seduction Blog," whereby Thundercat would promote them through his posted blog articles, in return for a cut of their proceeds. One such article which has been quoted extensively by the mainstream media was his "Top Ten PUAs in the World" list, where Strauss was ranked #1. This was a year before "Thundercat" became the primary marketing person for Strauss's "Annihilation Method," sold for a price of *$3,995.00 per copy*, supposedly restricted to 375 customers.[32] Mystery and Strauss also gained the power to control Thundercat's blog, and during the times in controversy, Mystery has alternated between using the threat of refusal-to-deal with Thundercat to have him delete Plaintiff's messages or ban him from posting, or to allow Plaintiff to post so that Mystery's operatives could continue to defame him. Unlike *Consumer Reports,* what passes for news in the seduction industry is usually of the sponsored, "advertorial" variety.

86.    Although this need not be averred to be obvious, the Seduction Cartel (including defendants) conspired among all of its members and outsiders such as Thundercat to censor anyone who would point out the obvious (and not so obvious) conflicts of interest between those who evaluate and review the products and gurus and the gurus themselves. This was done with the foreknowledge and consent of all named

---

[32] Some individuals have posted messages to the internet claiming to have inside information that Far fewer copies than the 375 were sold. One claimed only 12 sales. Plaintiff does not know the exact number of sales, but based on his decade on the internet, he can say that if in fact 375 copies were sold in the one day they claim it was sold in, then every existing theory of internet commerce and marketing was refuted in a single day with a $1.4 million stroke.

41

Defendants, and for the purpose of reducing competition and inflating prices in the industry.

87. According to Defendant Marcos, Defendant Mystery's ultimate goal is to completely dominate the seduction-advice industry, become a billionaire, and expand his empire into mainstream corporate America. He claims that, according to Mystery, his net worth is now over $10 million, although all that is known to the public is that the Mystery Method seminars are held on a weekly basis, attracting up to a dozen or so students who pay up to $5,000.00 per person to attend. According to Defendant Marcos, Mystery pays his "certified instructors" approximately 20 percent of the revenue they generate. Mystery also pays a generous referral fee. The publicity from Neil Strauss has resulted in a strong market for Mystery's other products, including an e-book, a print book, a DVD set, and a "monthly interview series." Defendant Marcos also stated that Defendant Mystery requires a "tribute" or kicked back percentage of other enterprises for "protection." Whatever his precise net worth, it appears to be well into the seven figures or well on the way.

88. According to Defendant Marcos, and based on other information and belief, Plaintiff avers that Defendant Mystery specifically instructed Neil Strauss to omit from *The Game,* any attribution to Plaintiff as a "seduction guru" or as the individual who first wrote about the "pivot" concept of going out with a woman "as friends" to appear attractive to other women.[33] This was not a minor omission, as the pivot is one of the strongest theories ever to cross the electronic pages of ASF, and in fact there are

---

[33] The "pivot" is so successful that men hire "pivots" through a website such as http://www.pivotsandwings.com.

42

companies which now allow men to hire pivots, and women who earn their living executing Plaintiff's concept with the men who pay to exploit it. Had Plaintiff been properly attributed (on page 445, in the "glossary of seduction terms" section of ***The Game***), it would have resulted in proper recognition, exposure and revenue, but at the expense of the Cartel. Mr. Strauss accommodated the Cartel to further his own interests as a writer and later the producer of his ***Annihilation Method*** of seduction.

## Averments Specific To Defendants Valens, LTSC and Levans

89. Once the LTSC message board were running, Defendant Valens repeatedly referred to Plaintiff in derogatory terms while using his site's exclusion of Plaintiff as its primary marketing tool. He referred to Plaintiff as "his bitch"[34] and as a "newsloon" or "problem child" that was disrupting the USENET group, this despite most of the "off topic noise" in the group being created by Defendant Ross and his followers, or others with an axe to grind against Plaintiff.

90. On April 23, 2002, someone posted a message to the LTSC message boards asking about Plaintiff's ***Outfoxing The Foxes*** book. Defendant Valens responded with the following:

> "***The guy that wrote that shit was and remains an endless troll to the public ASF newsgroup. His demented bipolar disorder garbage posts, threats of lawsuits, misogyny, and general degenerative psychotic paranoia stank up the newsgroup so badly for so long that it lead to the formation of the mASF forum on this server.*** He's still posting his shit to public ASF because, well, he is completely banned from posting on this forum. Which is one of the primarily reasons the discussions are flourishing here while the original public ASF turns into a cesspool of off-topic useless feces. Oh, and his books are shit.[35]

---

[34] **Message ID:** <3BF268E9.2A8C3A3C@aol.com>.  November 24, 2001.

[35] **Message ID:** <17765.2657@discussion.fastseduction.com>.

43

91. On April 27, 2004, Defendant Valens enlisted the aid of the ASF

readership, including various Seduction Mafia operatives, to "dig up dirt" on Plaintiff.

> "I'm a bit swamped right now but would appreciate someone or a few people
> to take the time to dig up specific pasts posts of Gordon Roy Parker (aka Ray
> Gordon) where he publicly admits to having bipolar/bi-polar disorder (suffers
> from manic depression). Yes, it's related to the case."[36]

92. On April 30, 2004, Defendant Valens posted to ASF, a comparison of

Defendant Ross's products, and Plaintiff's products, while neglecting to mention his

business affiliation with Defendant Ross:

> "Ray, Ross' products rival yours the way chocolate mousse in a crystal serving
> bowl rivals a shit stain on the heel of a shoe. And THAT is my OPINION."
> (04/30/2004)

93. On May 27, 2004, Defendant Valens threatened Plaintiff with bogus

criminal prosecution even for quoting messages from the LTSC message boards, despite

courts already having ruled that accessing a publicly available board is not trespass, and

despite having an attorney at the time who could have advised him of this:

> "If he does quote or provide some sort of reference, and it's a forum for which
> he's been told he's been told he's not allowed any form of access, and confirmed
> receipt of such a statement, *he will be admitting to electronic trespass over state
> lines.*" (05/27/2004).[37]

94. June 2, 2004, Defendant Valens encouraged readers of ASF to interfere

with Plaintiff's affiliate advertising agreements, by posting the following statements:

> "[Plaintiff's] affiliates probably have some form of affiliate agreement. Or, at
> the very least, they would probably be interested to know the type of
> person/business promoting their products...*if any of them were to get numerous
> e-mails from people in regards to an affiliate, they may decide having that
> person as an affiliate might not be such a good idea.*"[38]

---

[36] **Message ID:** <408F00B9.7A65F012@fastseduction.com>.

[37] **Message ID:** <XbOdnSqsFKVHySvdRVn-hg@giganews.com>.

[38] **Message ID:** <3eidne54aesxQyDdRVn-uA@giganews.com>.

95. On August 25, 2004, Defendant Valens made the following statements to

ASF after Plaintiff questioned the "altruistic" nature of LTSC and the other seduction

"gurus," inquiring about their income, since income is relevant to how easily a man can

attract women:

> "LTSC's income is disclosed regularly -- to its accountant and to the
> IRS. *Would you like the contact info of the IRS?..I can also inform them of*
> *your WTC comments, as well as the time you quoted a story here about a*
> *gun/violence-related incident in a PA court.* I'm not sure how they will connect
> all that information but I'm certain they will find it interesting."[39] (Emphasis
> Added).

96. On November 19, 2004, Defendant Valens posted to ASF, the statement

concerning Plaintiff, "You are not a [business] competitor. You are, however, an

annoying fuckwit and a poo-poo head."[40]

97. On July 28, 2006, Defendant Valens posted to ASF, the following

statements concerning his website and its exclusionary policies, neglecting to mention the

commercial influences on his website or that he only considers it "SPAM" when the one

doing it isn't paying him:

> > And yet most (like myself) aren't very likely to, since joining a forum
> > for a newsgroup is
> >
> > #1: Incredibly stupid, since the whole point of a newsgroup is that it is
> > NOT moderated and more importantly, is an actual newsgroup reachable
> > without getting onto the WWW.
>
> It's moderated, yes, but to:
>
> - ban hugely disruptive and annoying trolls
> - keep it free from spam
> - keep it relatively free from flames

---

[39] **Message ID:** <XZOdneXiBOoqkLDcRVn-qQ@giganews.com>.

[40] **Message ID:** <0p-dnSXlPlgR0gPcRVn-iw@giganews.com>.

98. The affiliate revenue LTSC derives is substantial: Mystery pays his affiliates $275.00 for each workshop/bootcamp referral, while e-books such as *Dynamic Sex Life* net LTSC approximately 50 percent of that book's purchase price.($50.00). The typical affiliate revenue for e-books is 50 percent, and for seminars and workshops, 10-20 percent, while DVD products are variable but pay at least as much as the workshops. Its large audience, rare among similar internet sites of this time period, enabled LTSC to become a virtual cash machine.

99. Defendant LTSC admits on its own site that "advertisements are accepted/rejected at our discretion."[41]  Regarding its affiliate programs, it states: "Fast Seduction 101 engages in affiliate programs with vendors of qualified products." [42]

100. As even rudimentary discovery would confirm, Defendants LTSC/Valens/Levans have leveraged LTSC's message-board "portal" audience with exclusionary and anticompetitive advertising policies.  Sponsors of LTSC, and anyone who posts to the LTSC message boards, were not and are not permitted to speak highly of Plaintiff, and are routinely encouraged not to mention him at all, on LTSC's message boards, *or anywhere else on the internet*.  Anyone who breaks rank on this policy would risk being blackballed and cut off from communication with LTSC's purported membership of 20,000 users, several other blogs with large readerships, and advertising or affiliate partnerships with members of the Seduction Cartel.

.    101. Defendant LTSC, as the "center of the seduction universe," is abusing its market position in order to artificially inflate the prices of its sponsors' products and to

---

[41] Source: http://www.fastseduction.com/advertise.shtml
[42] Source: http://www.fastseduction.com/adproducts.shtml#ad2

46

restrain the trade of advertisers who have "qualified products" but who are banned from advertising on the site, even if they paid the normal rates. This is done for the benefit of LTSC and all of its sponsors, including Defendants Ross and Straightforward. Plaintiff is one such advertiser whose trade has been restrained, but he is by no means the only one. Absent discovery, the full breadth of this abuse of power cannot be known.

102. On February 20, 2006, Defendant Valens posted, to the LTSC message boards, a message in which he stated a desire to implement "common pricing" in the seduction industry:

> I will gladly accept definitions of validating what is to be expected & "industry standard" and host such on FS. This would include *common pricing for any product or service,* based on not just perceived value but actual value, and numerous points to define that value. This would allow ANYONE with an interest in ANY PU-related product to have a reference point for relating value in offerings in this industry.[43]

103. Plaintiff avers, based on the strong preponderance of existing evidence, that Defendant Valens (and vicariously, Defendants LTSC and Levans), has attempted to anoint himself, and has acted as if he were, a "kingmaker" in the "seduction community," and 'has willingly assumed the vanguard of the Seduction Cartel (Defendant Ross was primarily responsible for the Seduction Mafia's operations). Through exclusionary advertising policies, a public and unapologetic *blacklisting* of Plaintiff, the refusal to deal with anyone who does business with him, and a general conspiracy with the other named Defendants and all sponsors of the LTSC website, to do everything within their power to further anticompetitive goals which include eliminating Plaintiff and his work from the seduction-advice industry, dominating the flow of information and ideas on "community"

---

[43] **Source:** http://fastseduction.com/masf/114/297531/

47

message boards and blogs, price fixing in a manner designed to raise prices, controlling

access to a highly desirable advertising demographic through a selective and

anticompetitive advertising policy, and providing said access to this market solely to

other members of the Seduction Cartel, for the mutual benefit of all of its members.

104. While Defendants LTSC/Valens/Levans were excluding, disparaging, and

encouraging others to act out against Plaintiff, on their very own website, they saw fit to

include, without authorization, at http://www.pickupguide.com/layguide/fox.htm), they

saw fit to include, a USENET posting from Plaintiff on the "returning fox" technique.

The relevant text from that page as it existed on April 25, 2005 is as follows (emphasis

added):

> *Update*. The Returning Fox theory explained by the originator himself.
> **Ray Parker**, ASF: "A Returning Fox is one who has shown no previous
> interest in you or rejected you, but who has "returned" and approached you
> after you have forgotten her. This puts you in a temporary position of
> power. With a Returning Fox, you should ask for whatever it is you want
> from her at the [point] of return. If she does not come across, she likely
> never will, and you can send her packing once again, repeating the process
> as many times as you have to each time she returns. For example, if she
> turned you down for a date, you stopped talking to her, and she now
> contacts you "just to say hi" just ask her out on the spot. Optionally, you
> can add a reference to how puzzled you are she'd contact you and how you
> don't really need to talk. If she doesn't bail out there, just ask for what you
> want. An aggressive version of this strategy has the man asking for sex or
> requiring it for her to get back into his life. The theory is she must want
> something out of you to seek you out after rejecting you, and unless she
> agrees to your terms, she can just go packing again. The method works
> very well in many situations. It also has short-term applications for Foxes
> who ignore you at clubs or parties and then "return" later."

105. Aside from using Plaintiff's USENET writing without authorization,

Defendants LTSC/Valens/Levans attributed *Ray Parker* rather than *Ray Gordon*, in a

manner designed to knowingly mislead anyone seeking the source of the infringed

48

material. Plaintiff had this page removed from the LTSC website via a DMCA notice when he learned of its existence.

### Averments Specific To Defendant Reyes And Other Cartel Members

106. Other Seduction Cartel members, defined here as those who were permitted to advertise through Defendant LTSC's website during the times in controversy, have also experienced great success in selling their wares, as can be expected when one is playing with a rigged deck: Defendant Reyes ("Gunwitch") was permitted to conduct business through and with LTSC because he contributed content to the LTSC site and moderates an IRC chat channel related to the site called #PUA; in 2004, he released *Dynamic Sex Life,* which `has sold consistently and steadily ever since.

107. Allen "Gunwitch" Reyes, renowned seduction guru, propped up entirely by the Seduction Mafia and Cartel, barely suffered the exposure of what most would call his *rape* of an ex-girlfriend. The reason for this is that his posting was archived on the mASF rather than Google and other USENET servers, and because of their ties through the Seduction Cartel, mASF was able to intervene in a manner that made it far more difficult to publicize this posting.

108. In August 2005, Plaintiff uncovered a posting from 2002 from Defendant Reyes that was posted to the LTSC message boards ("mASF"). The message, called a *lay report*, detailed an encounter Mr. Reyes had with an ex-girlfriend. The posting speaks for itself:

49



109. If mASF were a truly neutral portal, it would never have done what it did in December 2005, when Plaintiff began posting links to the URL at which he took the preceding screenshot. What defendant Valens did in response to this was to replace the archived "rape" post in the LTSC archives with a link to a *USENET* posting that portrays *Plaintiff* in an unfavorable light. LTSC's purpose in doing so was to protect its advertiser's (and its own) reputation, and to harm Plaintiff's, and to further the interests of the Seduction Mafia and Cartel.

110. Shortly after, in or around late December 2005, and in full conspiracy with the Seduction Mafia and Cartel, Defendant Reyes notified Clickbank (a payment/affiliate processor) that it did not want royalties paid to Plaintiff for referral

sales of his book because Plaintiff was "spamming" when Defendant Reyes knew that he wasn't, but rather wanted to punish Plaintiff for linking to the rape confession. Defendant Reyes was not in direct partnership with Plaintiff, as Clickbank is a reseller of his products, and Plaintiff is an affiliate of Clickbank's who lists all seduction-related Clickbank products on his website (without bias), offering his own work free to anyone who purchases an affiliated product (in which case Plaintiff makes his money on the affiliated product).

111. In return for his membership in the Seduction Cartel, Defendant Reyes uses his influence as moderator of the #PUA chat channel on IRC to steer discussions and customers to the Seduction Cartel, while censoring discussions of nonmember products and services by banning any "dissidents" outright from the channel if necessary.

112. For a brief time, Plaintiff was an affiliate of unnamed co-conspirator David DeAngelo Services, and sold the *Double Your Dating* e-book through his website. During that time, Plaintiff is informed that he sold one referral copy of the e-book, despite prominent banner displays on his website, and during the same time, sold several copies each of other sponsored products, including *The Elite Players' Guide To Getting Laid* (who has also been horizontally blacklisted by the Cartel), and *Seduction Science* (a Cartel Product who Plaintiff had first become an affiliate of, but with whom Plaintiff stopped doing business due to the unfair competition). This is further evidence that most of the products in this industry are similar.

113. Defendant LTSC's own website states, in its "advertise with us" section, that its free content is designed to "maximize" sales of its sponsors' products and

51

["

work, where and with whom to socialize, effectively reshaping their lives every bit as much as a cult would, all in the name of "helping them to get laid." Men who believe any promise of sex with beautiful women will break laws and/or spend almost any amount of money to reach their promised land, and the Seduction Cartel has elevated the exploitation of this desperation, and the general public's ignorance of same, to an art form.

116. Many of the tactics used by the Cartel to monopolize the industry are similar to the seduction tactics used to monopolize beautiful women: find the right "targets" (rich and powerful men to fund everything, and loud, young men who use word-of-mouth to create a "buzz"), and use "social proof" (in this case mutual admiration) to cross-promote other Cartel businesses and the industry in general, while secretly controlling the industry and blacklisting anyone who refuses to play along or who speaks out against it. The result is an artificially low supply of overpriced, redundant material that would not survive in a fair or even marketplace. When one charges hundreds and thousands of dollars for multimedia products and personal instruction, it only takes a few "whales" each month to generate a six-figure income.

## COUNT I: ANTITRUST VIOLATIONS (CARTEL) AGAINST ALL DEFENDANTS

117. Plaintiff incorporates by reference, as if fully set forth verbatim herein, the entire contents of paragraphs 1-116.

118. The Seduction Cartel is just that: a *cartel*. The dictionary definition describes the Seduction Cartel perfectly: "a combination of independent commercial or industrial enterprises designed to limit competition or fix prices." Indeed, Defendant

53

Valens's post cited in Paragraph 102 above is an attempt to set "common pricing" for the industry based on a list he proposed publishing on the LTSC website, and constitutes attempted price-fixing..

119. Through a series of anticompetitive acts as set forth herein, which include the use of coercion and financial incentives designed to restrain the emergence of new competition in the seduction-advice industry, and to artificially inflate the price of the industry's products by restricting competition, all Defendants have assisted the Cartel in maintaining its monopolistic influence over the internet seduction-advice industry.

120. LTSC's "spam" policies on its message board, which give preference to its advertisers (i.e., Cartel members), further constitute an illegal "tying" arrangement designed to reduce competition and artificially inflate prices.

121. The purpose and effect of the agreement among Defendants Valens, LTSC, Levans, Ross, Straightforward, von Markovic, Mystery Method, and Reyes to exclude Cartel "outsiders" from competition through what is presented to the public as a "seduction portal" on the LTSC website has been, and continues to be, to restrain trade and competition in the internet seduction-advice industry. Each Defendant was well aware of the Cartel's existence, purpose, and rules upon joining, and did so in order to illegally profit from its anticompetitive conduct.

122. Defendant LTSC's discriminatory advertising policy is to refuse to accept advertising from Cartel nonmembers, and to restrict the ability to advertise on the LTSC seduction portal only to Cartel members. This is done to reduce competition and inflate prices, for the benefit of all Defendants and the entire Seduction Cartel, and creates a

significant barrier to entry in the internet seduction-advice industry, especially since this is done in concert with the remainder of the Cartel.

123. The Cartel members have also agreed among themselves not to compete directly against each other without permission, and in the event there is competition, to cross-promote other Cartel products and services, to refuse to disparage or speak poorly of other Cartel members (or to limit such disparagement in intensity or location if the Cartel allows the dispute to go public), and to refuse to speak highly of, or speak at all of, outside products and services by Cartel nonmembers, including Plaintiff.

124. The conduct as set forth in this count violates §1 of the Sherman Act (15 USC §1), as it constitutes an illegal attempt to restrain trade and commerce in an industry, specifically the multimillion-dollar internet seduction-advice industry.

125. The conduct as set forth in this count violates §2 of the Sherman Act (15 USC §2), as it constitutes an attempt to monopolize the internet seduction-advice industry through its anticompetitive conduct, and through attempts to actively destroy competitors through the illegal acts (defamation, harassment, threats) set forth herein, while protecting its own through actions such as redirecting a link to a "rape confession" by Defendant Reyes so that it shows instead a post which is unflattering to Plaintiff.

126. All acts set forth in this count were taken in the course of and affect interstate commerce.

127. The conduct of all named Defendants (the Cartel) has severely harmed consumers and competition, by taking advantage of the design of the internet and the premium it places on word-of-mouth, especially by those who appear to lack commercial

55

or employment motivation to promote products. The Cartel routinely presents its enterprise as competing on a level playing field, when in fact it has total control of said field, and is thus able to rig the outcome of *the game.*

128. As Plaintiff competes in the internet seduction-advice industry, the conduct set forth in this count has injured his business and his property by illegally restraining him, and others similarly situated, from fair competition and has resulted in a substantial loss of revenue for Plaintiff directly attributable to the illegal conduct set forth in this Count. Plaintiff has additionally suffered a loss of goodwill, loss of investment value, and loss of media exposure and resulting revenue.

129. Unless enjoined by this Court, the Seduction Cartel will continue to accumulate resources and influence, which it will continue to apply to further anticompetitive conduct and its attempt to monopolize the internet seduction-advice industry by controlling all major message boards, blogs, review websites and portals. The damage of this unchecked behavior on Plaintiff, this market, and on consumers will be substantial, amounting to up to several hundred or thousands of dollars per misled consumer of the more expensive products and services.

130. All named Defendants have knowingly profited from and given their prior approval to at least one act which comprises the anticompetitive conduct.

131. For the violations of 15 USC §1 and 15 USC §2 as set forth in this Count, Plaintiff is entitled to relief under §4 of the Clayton Act (15 USC §15(a)).

132. Plaintiff is entitled to a trebling of all damages, and is further entitled to costs of suit, including any reasonable attorney fees incurred, injunctive relief sufficient

to terminate the illegal conduct, and such other relief as this Court may deem just and proper.

## COUNT II: ANTITRUST VIOLATIONS AGAINST ALL DEFENDANTS (BLACKLIST)

133. Plaintiff incorporates by reference, as if fully set forth verbatim herein, the entire contents of paragraphs 1-132.

134. When Defendants Ross, Straightforward, LTSC, Valens, and Levans created the Seduction Cartel, it was predicated almost entirely on a refusal to deal with Plaintiff. These Defendants made access to their products and services conditional upon their customers and audiences refusal to deal with Plaintiff, and constitutes a horizontal blacklist of Plaintiff and his products. Subsequent members of the Cartel, including defendants Reyes, von Markovic, and Mystery Method, as well as many other unnamed co-conspirators, had to agree to adopt a similar policy to gain admission.

135. The named Defendants, acting on behalf of the Cartel, also enlisted the support of several operatives, including Mr. King, Dr. Storm, Odious, and several other individuals who post regularly to ASF for the sole purpose of attempting to enforce the blacklist and to encourage others not to deal with Plaintiff, through the use of fear and coercion, and at times free or discounted products and services if not outright payments. A full list of these operatives and their conduct will be included in the RICO Case Statement.

136. The "ASF FAQ" document promotes the LTSC website to ASF based almost entirely on its exclusion of Plaintiff, and references a "killfilter list" which, under the guise of "FAQ authority," instructs new readers of ASF ("newbies") to exclude and

otherwise refuse to deal with Plaintiff, in furtherance of the blacklist. This document was created in full conspiracy by Defendants Ross, Straightforward, LTSC, Valens, von Markovic, Mystery Method, and Levans.

137. Defendant Ross has repeatedly encouraged ASF users to blacklist Plaintiff, and has used the threat of refusal to deal (i.e., not get SS products) to coerce his students into not dealing with Plaintiff.

138. Defendant LTSC will terminate the posting account of any of its message board users who mention Plaintiff and/or his products, and does not allow reviews of Plaintiff's products on its reviews board (alt.seduction.fast.reviews). Additionally, it tells ASF users on USENET, which is not owned by LTSC, that refusing to deal with Plaintiff is part of the group's *official policy.* LTSC therefore requires the refusal to deal with Plaintiff as a condition of membership on its message board. This is evidenced by several postings to ASF and to the LTSC message boards by defendant Valens, including his post of April 23, 2002 to the LTSC boards cited in paragraph 90 of this Complaint, where he alternatively disparaged Plaintiff and "proudly" admitted his exclusion and blacklisting of him.

139. Defendants LTSC, Valens and Levans further require LTSC advertisers to refuse to deal directly with anyone on the Cartel's blacklist, including Plaintiff.

140. Defendants von Markovic and Mystery Method, as repeatedly evidenced by their statements set forth herein, use the threat of refusal to deal with anyone not approved by them (who now consider themselves to be running the Cartel), and to single out Plaintiff as an example of his blacklist. This is further evidenced by Defendant von

58

Markovic's acknowledgement of Plaintiff's creation of the term "pivot" in a "pre-Cartel" posting, and his use of the threat of refusal to deal to ensure that Neil Strauss would not properly credit Plaintiff for his revolutionary concept in *The Game.* Strauss, an unnamed co-conspirator and full-fledged Cartel member, complied with this request.

141. Defendant Reyes was induced, at the behest of the Cartel, to terminate Plaintiff's affiliate relationship with Clickbank by making a false statement to Clickbank that Plaintiff was "spamming," for the purpose of punishing Plaintiff for exposing his "rape confession." Defendant Reyes also ensures that Plaintiff is banned from the #PUA chat channel on IRC, and will ban anyone who mentions Plaintiff or his products favorably, thus creating another significant barrier to entry for Plaintiff and others similarly situated.

142. The thousands of postings by "Thrasher," many of which were cited in paragraphs 41(a-d) of this Complaint, were made by or at the direction of and in conspiracy with Seduction Cartel and Mafia principals, for the purpose of enforcing the Cartel's horizontal blacklist against Plaintiff.

143. Defendants' conduct, as set forth herein, constitutes a horizontal blacklisting of Plaintiff and his business. The blacklist is comprised of the anticompetitive and coercive acts set forth herein, and constitutes a violation of §3 of the Clayton Act (15 USC §14), for conditioning the sale or use of a product on an agreement not to do business with a competitor, as well as §1 of the Sherman Act (15 USC §1), for entering into an agreement among competitors designed to reduce competition and inflate market prices.

144. The purpose of the horizontal blacklist by the Seduction Cartel, of Plaintiff and others similarly situated is to reduce competition in the internet seduction-advice industry, and to artificially inflate prices.

145. All acts set forth in this count were affect interstate commerce.

146. All named Defendants have knowingly profited from and given their prior approval to at least one act which comprises the blacklist.

147. The conduct of all named Defendants (the Cartel) has severely harmed consumers and competition, to the tune of *up to thousands of dollars per customer* among a highly vulnerable target market (men desperate for success with women), and unless enjoined by this Court, will continue to inflict even more harm, as the harm is fueled by rigged, Cartel-driven mass-media exposure such as *The Game,* which has turned several gurus into celebrities.

148. Were this blacklist not in place, sales of Plaintiff's books would likely approximate those of Defendant Reyes' *Dynamic Sex Life*, as these products are the two most similar among those in controversy, and both have authors who merely publish e-books rather than conducting workshops or seminars, or releasing multimedia products. According to a statement from Defendant Reyes in 2004, he was averaging approximately 10-20 copies per week in sales, while Plaintiff's sales and advertising revenue generally equate to one or two per week. In the "pre-Cartel" era, Plaintiff would sell between 5-10 copies of his book each week. Since the release of *The Game*, Defendant Reyes's sales have likely increased substantially.

## COUNT III: UNFAIR COMPETITION AGAINST ALL DEFENDANTS

149. Plaintiff incorporates by reference, as if fully set forth verbatim herein, the entire contents of paragraphs 1-148.

150. For the conduct set forth herein, to which Counts I and II are not applicable, Plaintiff is entitled to relief under the Delaware tort of unfair competition.

151. Plaintiff is entitled to compensatory damages for lost revenue, lost goodwill, lost media exposure, lost investment value, and loss of future customers, in an amount to be determined at trial.

152. Plaintiff is further entitled to costs of suit, injunctive relief sufficient to terminate the illegal conduct, and such other and further relief as this Court deems just and proper.

## COUNT IV: RACKETEERING (RICO) AGAINST ALL DEFENDANTS

153. Plaintiff incorporates by reference, as if fully set forth verbatim herein, the entire contents of paragraphs 1-152.

154. All Seduction Cartel members named in this count are either principals or operatives of the Seduction Mafia, or have acted in conspiracy with same.

155. The Seduction Mafia principals are named Defendants Ross, Straightforward, Levans, LTSC, Valens, von Markovic, and Mystery Method. Thom E. Geiger was an additional principal, although he functioned primarily as an operative working under Defendant Ross.

156. The Seduction Mafia operatives are numerous, exist all over the globe, and are generally individual internet users who cannot be directly tied to the principals,

but who carry out their online instructions to disparage Plaintiff. A defining characteristic of an operative was repeated linking to the RayFAQ document, something done by literally dozens of different operatives, such as Alex Kaufmann, Osgaldor Storm, "Thrasher" (remailer), and "Editorial Staff." Defendants Reyes and Marcos are also operatives who have either committed predicate acts or otherwise aided and abetted the Seduction Mafia's illegal acts, as set forth herein.    157. The Seduction Mafia is an association-in-fact enterprise whose purpose is to use fear, coercion, and illegal threats, even violent ones, in order to further the interests of the Seduction Cartel.

158. The conduct set forth herein outlines several predicate RICO acts, as follows:

a.    The statements in paragraphs 39(a-e) by "Editorial Staff" constitute five separate violations of the Hobbs Act, with each act taken at the direction of and in conspiracy with the Seduction Mafia and Cartel, for the five threats of physical harm, including the "ambulance" threat (39(a)), "Baker Acting" Plaintiff (39(b)), claiming he "won't see it coming" (39(c)), advising others to harm Plaintiff over a forged e-mail falsely claiming he threatened "Jeri Ryan" (39(d)), and the imputation that Plaintiff is a danger to others (39(e)). These statements violate the Hobbs Act because they use fear and coercion in an attempt to obtain property in the form of revenue and market share, from Plaintiff.

b.    Each publication of the RayFAQ, and linking to the RayFAQ from operatives, constitutes a separate violation of both the Hobbs Act, for the same reasons as in subparagraph (a) above, and the Sarbanes-Oxley Act (18 USC §1513), because it was

62

done in retaliation for Plaintiff reporting federal crimes by the Seduction Mafia and Cartel to law enforcement, and for the purpose of interfering with Plaintiff's employment and livelihood.

    c.    The threats and harassment against Plaintiff from James L. King, as outlined in Paragraphs 40(a-h) above constitute twelve separate violations of the Hobbs Act, for the same reasons as in subparagraph (a) above, with each act taken at the direction of and in conspiracy with the Seduction Mafia and Cartel.

    d.    The hundreds of posts from "Thrasher" which were summarized in paragraphs 41(a-d), including its references to Plaintiff's "chronic mental illness," its misrepresentation of the LTSC website as the "official ASF website," and by marketing the LTSC website on the basis of its blacklisting of Plaintiff, constitute separate violations of the Hobbs and Sarbanes Oxley Acts, for the reasons set forth in subparagraphs (a-c) above.

    e.    The repeated threats from Defendant Marcos cited in paragraphs 46-65 to Plaintiff to vacate the seduction-advice industry under threat of humiliation, defamation, and even physical harm by Defendant von Markovic or his underlings each constitute a separate violation of the Hobbs Act, for the reasons cited in subparagraph (a) above.

    f.    The threats from Defendants Valens, LTSC, and Levans (acting in concert) to have Plaintiff prosecuted for electronic trespass if he even mentions the LTSC message boards or links to their content (despite precedent to the contrary) (paragraph 93, the threat to send Plaintiff's political USENET postings to the IRS (paragraph 95), and

other threatening behavior, including references to Plaintiff as his "bitch," each constitute separate violations of the Hobbs Act, for the reasons set forth in subparagraph (a) above.

     g.    The statements from Defendant Ross cited in paragraphs 76(a-e), including the incitement to violence over the fake "Jeri Ryan" threat, and the threat to "seize Plaintiff's computer equipment," or the unqualified legal advice to other Defendants to "move for a psych evaluation" constitute five separate violations of the Hobbs Act, for the reasons set forth in subparagraph (a) above, and five separate violations of the Sarbanes-Oxley Act, because the posts were made in retaliation for Plaintiff having reported the threats by "Bishop" (made under Defendant Ross's direction) to law enforcement in August 2000.

159. The current pattern of racketeering began on or about October 28, 2001, with the creation of the LTSC message-boards and their marketing to ASF.

160. The Seduction Mafia is an ongoing concern that has been in operation for several years now, and whose operations will continue unless enjoined by this Court. These operations will continue to harm the public and commerce.

161. Each defendant named in this Count has committed, or conspired to commit, at least two of the RICO predicate acts set forth above, in violation of 18 USC §1962(c).

162. Defendants LTSC, Valens, Levans, von Markovic, Mystery Method, Ross, and Straightforward have shared in the direction and control of the Seduction Mafia RICO enterprise, in violation of 18 USC §1962(b).

163. All named Defendants have received financial consideration in return for aiding and abetting the RICO enterprise, and have invested those proceeds in commerce, and in further and similar racketeering activity, in violation of 18 USC §1962(a).

164. Each violation of 18 USC §1962(a), §1962(b), and §1962(b), and §1962(c) as set forth in this count constitutes a violation of 18 USC §1962(d). For any Defendant not found to have committed two predicate acts, those Defendants have also aided and abetted the commission of two predicate acts in violation of 18 USC §1962(d).

165. For the severe damages to his business and property as set forth herein, including but not limited to lost revenue, lost goodwill, lost investment value an lost media exposure, Plaintiff is entitled to relief under 18 USC §1964(c).

166. Plaintiff is entitled to compensatory and punitive damages, trebled, in an amount to be determined at trial, and is further entitled to costs of suit, injunctive relief sufficient to terminate the enterprise, an accounting of all profits attributable to the enterprise, and such other and further relief as this Court deems just and proper.

## COUNT V: LANHAM ACT VIOLATIONS AND/OR DEFAMATION AGAINST DEFENDANTS LTSC, VALENS, AND LEVANS

167. Plaintiff incorporates by reference, as if fully set forth verbatim herein, the entire contents of paragraphs 1-166.

168. During the times in controversy in this action, Defendant Valens made a number of false and misleading statements in the promotion of their work, for which Defendants LTSC and Levans are vicariously liable. They include:

a.    The statement by Defendant Valens cited in paragraph 92 disparaging Plaintiff's work and favoring that of Defendant Ross was false and misleading and did not contain any disclosure of these Defendants' financial ties.

b.    The statement by Defendant Valens (paragraph 96) that Plaintiff is "not a business competitor."

c.    The statement by Defendant Valens (paragraph 93) imputing criminal conduct upon Plaintiff for electronic trespass.

d.    Each separate publication of the "ASF FAQ" document that claims that the LTSC website is somehow "associated with ASF" in a formal capacity, or that the LTSC message board is a "replacement for ASF."

e.    The republication of Plaintiff's "returning fox" posting to ASF, and its intentionally false and misleading designation of the author as "Ray Parker" rather than "Ray Gordon."

f.    The repeated references to Plaintiff as a "newsloon" posted in Defendant Valens's "posting signature" to ASF, for each of hundreds or thousands of postings and in the "ASF FAQ."

169.  At the time of publication, Defendant Valens either knew or should have known that each statement was false, and intentionally deceived the public regarding the origin (and author's name) of the "returning fox" posting to ASF cited in paragraph 53. Defendant also mischaracterized Plaintiff as a "newsloon" in an intentionally false and misleading manner, and also either knew or should have known that he is a business competitor.

66

170. Each statement was made in the promotion of a corporation (LTSC), and regularly affects commerce across our state lines.

171. As a direct and proximate result of these statements, Plaintiff has suffered competitive harm to his business, including but not limited to lost revenue and market share, loss of business and product reputation, lost media exposure, lost goodwill, and lost investment value.

172. Plaintiff is entitled to relief under §43(a) of the Lanham Act, for false and misleading advertising (relating to the ASF FAQ), trade disparagement (relating to the post disparaging Plaintiff's work and favoring Defendant Ross's), and false and misleading designation of origin (relating to the "returning fox" posting and its illegal republication on the LTSC website, a violation of Plaintiff's intellectual property rights under this law).

173. Alternative to paragraph 69 above, Plaintiff is entitled to relief under the Delaware tort of Defamation.

174. Each statement was made wantonly, willfully, and intentionally for the purpose of harming Plaintiff in his business.

175. Plaintiff is entitled to compensatory and punitive damages, in an amount to be determined at trial.

176. Plaintiff is further entitled to costs of suit, attorney fees, injunctive relief sufficient to terminate the actionable conduct, and such other and further relief as this Court may deem just and proper.

67

## COUNT VI: LANHAM ACT VIOLATIONS AND/OR DEFAMATION AGAINST DEFENDANTS ROSS AND STRAIGHTFORWARD

177. Plaintiff incorporates by reference, as if fully set forth verbatim herein, the entire contents of paragraphs 1-176.

178. Defendant Ross's claim that Plaintiff sent a "hateful e-mail" to "Jeri Ryan" and threatened her (paragraph 43(e)) was an intentionally false and misleading attempt to disparage Plaintiff for the purpose of gaining a competitive business advantage.

179. As a direct and proximate result of these statements, Plaintiff has suffered competitive harm to his business, including but not limited to lost revenue and market share, loss of business and product reputation, lost media exposure, lost goodwill, and lost investment value.

180. Plaintiff is entitled to relief under §43(a) of the Lanham Act, for false and misleading advertising and trade disparagement.

181. Each statement was made wantonly, willfully, and intentionally for the purpose of harming Plaintiff in his business.

182. Plaintiff is entitled to compensatory and punitive damages, in an amount to be determined at trial.

183. Plaintiff is further entitled to costs of suit, attorney fees, injunctive relief sufficient to terminate the actionable conduct, and such other and further relief as this Court may deem just and proper.

## COUNT VII: TORTIOUS INTERFERENCE AGAINST DEFENDANTS ROSS, STRAIGHTFORWARD, VALENS, LTSC, LEVANS, REYES, VON MARKOVIC, AND MYSTERY METHOD

184. Plaintiff incorporates by reference, as if fully set forth verbatim herein, the entire contents of paragraphs 1-183.

185. Defendant Valens, acting willfully, wantonly, and intentionally, in conspiracy with the Seduction Cartel, and on behalf of Defendants LTSC/Levans, encouraged readers of ASF to contact Plaintiff's sponsors (paragraph 44) in an attempt to induce them into terminating their association with Plaintiff, and in an attempt to cost Plaintiff advertising revenue.

186. Defendant Ross (and vicariously, Defendant Straightforward), through his conduct set forth herein, including but not limited to the fake e-mail from "Jeri Ryan" and his use of Odious, Aardvark, and other third-party operatives to harass Plaintiff, and through any defamation of Plaintiff cited here, acted with an intention to interfere with Plaintiff's business, and as a direct result of doing so, has caused economic harm to Plaintiff's business.

187. Defendant von Markovic, acting willfully, wantonly, and intentionally on behalf of Defendant Mystery Method and in conspiracy with the Seduction Cartel, enlisted defendant Marcos to interfere with Plaintiff's business by threatening him to "leave the industry or else" as set forth in paragraphs 46-65.

188. Defendant Reyes's willful, wanton, and intentionally false statements to Clickbank that Plaintiff was spamming caused Plaintiff's affiliate relationship based on sales of *Dynamic Sex Life* (a resale of Clickbank's product, not Reyes's identical

69

product) to be terminated, and Plaintiff's reputation with Clickbank was irreparably damaged because now he has a bogus spam complaint in his history. Plaintiff also lost the time he spent including the link to DSL on many pages of his website. The purpose of Defendant Reyes's conduct in contacting Clickbank was to inflict just this damage.

189. As a direct and proximate result of Defendants conduct, Plaintiff has lost sponsors for his website, including but not limited to *Dynamic Sex Life*, *Double Your Dating,* and *Seduction Science*, and has additionally suffered the loss of potential sponsors, advertisers and affiliates.

190. For the conduct set forth in this count, Plaintiff is entitled to relief under the Delaware tort of tortious interference.

191. Plaintiff is entitled to compensatory and punitive damages, costs of suit, injunctive relief sufficient to terminate the actionable conduct, and such other and further relief as this Court deems just and proper.

## COUNT VIII: CIVIL CONSPIRACY AGAINST ALL DEFENDANTS

192. Plaintiff incorporates by reference, as if fully set forth verbatim herein, the entire contents of paragraphs 1-191.

193. Because the actions set forth herein were taken in conspiracy among all Defendants, for all conduct set forth in this Complaint in all counts, including the defamation and tortious interference counts, and for each applicable conspiracy allegation not covered by RICO, Plaintiff is entitled to relief from all Defendants for the Delaware tort of civil conspiracy.

194. Plaintiff is entitled to compensatory and punitive damages, costs of suit, injunctive relief sufficient to terminate the actionable conduct, and such other and further relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREAS, Plaintiff seeks the following relief:

1. For each count, and from each Defendant, unspecified compensatory and punitive damages (where applicable) in an amount to be proven at trial, but which is no less than ONE MILLION DOLLARS ($1,000.000.00 US).

2. A finding from this court that Defendants have:

a) Violated the Sherman and Clayton Antitrust Acts by virtue of the conduct set forth herein, both by operating as a "cartel" and by horizontally blacklisting Plaintiff;

b) Violated the RICO act, in conspiracy;

c) Defamed Plaintiff;

d) Violated the Lanham Act for false and misleading advertising, and that Defendants Valens, Devans, and LTSC engaged in a false designation of origin of Plaintiff's "returning fox" work.

e) Tortiously interfered with Plaintiff's business in violation of Delaware law;

f) Have conspired to fix prices and artificially reduce the supply of seduction-advice products sold over the internet and distributed through websites, newsgroups, newsletters, "blogs" and "lairs."

71

3.   Costs of suit, including reasonable attorney fees for the applicable counts.

4.   A full accounting of all profits attributable to the actionable conduct.

5.   Injunctive relief sufficient to terminate the actionable conduct; and

6.   Such other and further relief as this court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by

jury.

This the 31st day of July, 2006.

07/31/2006
Date

Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA 19104
(215) 386-7366

GordonRoyParker@aol.com

Plaintiff, Pro Se

72

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **GORDON ROY PARKER**, d/b/a **SNODGRASS PUBLISHING GROUP,** | : : : | |
| Plaintiff, | : | **CASE NO.: 06-cv-229** |
| v. | : : | **SJR** |
| **Learn The Skills Corp.** et al. | : : | |
| Defendants. | : | |

**VERIFICATION**

I, Gordon Roy Parker, **Plaintiff** in the above-styled action, hereby attest and swear,

under penalty of perjury, and 28 USC §1746, and any other federal, state or local laws relating to

false swearing or perjury, that the factual averments contained in the foregoing **Amended**

**Complaint** are true and correct to the best of my knowledge.

This the 31st day of July, 2006.

Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA  19104
(215) 386-7366
GordonRoyParker@aol.com
Plaintiff, Pro Se

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **GORDON ROY PARKER**, d/b/a **SNODGRASS PUBLISHING GROUP**, | : : : | |
| Plaintiff, | : : | **CASE NO.: 06-cv-229** |
| v. | : : | **SJR** |
| **Learn The Skills Corp.** et al. | : : | |
| Defendants. | : | |

### CERTIFICATE OF SERVICE

I, Gordon Roy Parker, **Plaintiff** in the above-styled action, hereby certify that I have

served the foregoing **Amended Complaint** on certain Defendants, as follows:

> **David L. Finger (three copies)**
> Finger & Slanina, LLC
> One Commerce Center
> 1201 Orange Street, Suite 725
> Wilmington, DE 19801-1155
> Attorney For Defendants LTSC, Ross, And Straightforward

Executed summonses will be filed upon execution for Defendants Valens, Levans, von

Markovic, Mystery Method, Marcos, and Reyes, and Levins.

This the 31st day of July, 2006.

Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA 19104
(215) 386-7366
GordonRoyParker@aol.com
Plaintiff, Pro Se