IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **GORDON ROY PARKER**, a.k.a. **Ray Gordon,** d/b/a **Snodgrass Publishing Group**, | : : : | |
| Plaintiff, | : : | |
| v. | : : | **CASE NO.: 06-cv-229** |
| **Learn The Skills Corp.**, et al. | : : | |
| Defendants. | : : : | **Judge: SLR** |

**PLAINTIFF'S BRIEF A) IN OPPOSITION TO DEFENDANTS JAY VALENS, AND RAY DEVANS' MOTION TO 1) STAY THIS ACTION; 2) DISMISS FOR INSUFFICIENCY OF PROCESS, FAILURE TO STATE A CLAIM; 3) FOR SANCTIONS; AND 4) TO DEFER BRIEFING ON THE MOTION TO DISMISS AND FOR SANCTIONS AND B) DEFENDANTS' MOTION TO STRIKE DOCKET #15-16**

**Plaintiff** in the above-styled action files this opposition/reply brief in response to the motion of Defendants Valens and Devans to join in the motion to stay, dismiss for lack of jurisdiction and/or insufficiency of service of process, or for sanctions.

## I.    BACKGROUND

On August 30, 2006, Defendants Valens and Devans filed a motion to stay this action, but also moved the court (without supporting argument) for dismissal for insufficient service of process and failure to state a claim, for sanctions, and to defer briefing. Defendants also "joined in" the earlier brief filed by Defendants Learn The Skills Corp. ("LTSC"), Paul Ross, and Straightforward in support of the earlier motion seeking identical relief for those three defendants, sans the argument for insufficiency of process. Concurrently, a separate memorandum was filed to expand on the earlier motion.

Defendants refer in their memorandum to a "procedural quagmire"[1] being created, but between the arguments and paperwork, the only quagmire which exists here is that Defendants seem to be engaging in "time travel" by using the two new defendants to expand on a long-ago

---
[1] Defendants' Memorandum, p.1, ¶ 1

filed motion by the other three in order to file a brief in support of the earlier motion, which

Plaintiff argues should have been only a motion to stay the proceedings.

## II.  LEGAL STANDARD

**A.    Motion To Stay And Tolling.**  Precedent on this situation is sparse.  Generally,

tolling applies in situations where one motion must first be dealt with.  An analogous situation

occurs when an ***in forma pauperis*** motion is filed with a Complaint, and the 120-day time limit

for service is tolled while the motion is pending.  There is no reason or precedent that Plaintiff

could locate, even with all this alleged time on his hands,[2] that would indicate that Defendants'

motion to stay this action did not toll the time limit for filing a motion to dismiss and/or any

motion for sanctions, which is not subject to time limits to begin with.

**B.    Sanctions.**  Federal Rule 11, in relevant part, states that:

> A motion for sanctions under this rule shall be made separately from other motions or
> requests and shall describe the specific conduct alleged to violate subdivision (b). It shall
> be served as provided in Rule 5, but shall not be filed with or presented to the court
> unless, within 21 days after service of the motion (or such other period as the court may
> prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not
> withdrawn or appropriately corrected.

**C.    Service of Process.**  Federal Rule 4(c)(2) states that "Service may be effected by

any person who is not a party and who is at least 18 years of age."

**D.    Motion To Dismiss.**  A motion to dismiss under Rule 12(b)(6) "is viewed with

disfavor and is rarely granted." (Shipp, 234 F.3d 907, 911 (5th Cir. 2000); *cert. denied* _U.S._,

121 S. Ct. 2193, 149 L.Ed.2d 1024 (2001)(quoting Kaiser Aluminum & Chem. Sales v.

Avondale Shipyards, 677 F.2d 1045, 1050 (5th Cir. 1982)).  This strict standard of review under

Rule 12(b)(6) has been summarized as follows: "The question therefore is whether in the light

most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states

---

[2] Id, p. 3, ¶ 8.

2

any valid claim for relief." (5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, §1357 (2nd ed. 1990)).

      E.   **Without Prejudice.**  The term is self-explanatory and refers to the dismissal of an action or denial of a motion due to something other than the merits, and does not affect (or "prejudice") in any way, the refiling of the same issues or pleadings at a future time.

      F.   **Local Rule 7.1.2.**  Local Rule 7.1.2 states:

        (a)  **Briefing and Affidavit Schedule.** A party filing a motion shall not file a notice of said motion. Unless otherwise ordered by the Court, the briefing and affidavit schedule for presentation of all motions shall be:

          (1)  the opening brief and accompanying affidavit(s) shall be served and filed on the date of the filing of the motion;

          (2)  the answering brief and accompanying affidavit(s) shall be served and filed no later than 10 days after service and filing of the opening brief;

          (3)  the reply brief and accompanying affidavit(s) shall be served and filed no later than 5 days after service and filing of the answering brief. An appendix may be filed with any brief. The above schedule **may** be set aside if, at the time of the filing of a motion, a party advises the Court that, because of the nature of the motion, all parties believe that no briefing is required. Any party may waive its right to file a brief upon notice to the Court.

## III.  ARGUMENT

### A.  **Defendants Should Only Have Filed A Motion To Stay If They Did Not Want Plaintiff To Argue In Opposition To The Motion To Dismiss And Motion For Sanctions.**

      Defendants claim that Plaintiff's arguments regarding jurisdiction and sanctions, as well as for jurisdictional discovery, to be "procedurally improper."[3] Defendants further characterize Plaintiff repeatedly in a negative light, referring to his "repetitive and improper

---

[3] Id, p. 3, ¶ 7.

filings"[4] and even adding a gratuitous "flame" by stating that "Given a legitimate concern of harassment by Parker, Valens and Devans are proceeding for the time being under those names."

Defendants cite Local Rule 7.1.2 in their argument about motion practice (opening brief/response/reply etc.), yet that same rule states that ***"the opening brief and accompanying affidavits shall be served and filed on the date of the filing of the motion."*** No briefing was given on anything other than the motion to stay. Plaintiff was therefore confronted with a motion that the rules say demands a response, and the very real possibility of having the motion granted as unopposed in the event he did not argue against it. Defendant did not inform the court of, nor did it provide any authority as to why, no briefing on the motions other than the one for the stay was required. It argued that it would be "duplicative," yet did not argue

At worst, the opposition brief was premature. Local Rule 7.1.2 does not say that the briefing schedule ***shall*** be set aside, but rather that it ***may*** be set aside, so even Defendants' arguments do not refute the possibility that this Court would hold that Plaintiff needed to raise arguments in order to preserve them. The motion for sanctions is even more improper, given that Plaintiff was not first served with it twenty-one days prior to its filing, nor was he given any chance to alter it.

Plaintiff's opposition was filed in total good faith, out of the belief that it was (or very likely could have been) necessary, and not for any improper purpose.

### B.   Plaintiff Is The One Harassed, Not Defendants.

Just this past Thursday, September 14, 2006, ***ABC Primetime*** did a special called "Cruel Intentions," which focused on cyberbullying in general, and a cyberbullying incident in 2003 which led to the suicide of Ryan Halligan in 2003.[5] The segment focused on the

---

[4] Id.
[5] An article from the ***Las Vegas Review Journal*** is attached hereto as Exhibit A and incorporated by reference as if fully stated verbatim herein. Source: http://www.reviewjournal.com/lvrj_home/2005/Oct-31-Mon-2005/living/4038822.html

technological ignorance of adults enabling the use of technology to harass, ridicule and ostracize individuals via the internet. Plaintiff has been the target of similar "bullying" by Defendants and their operatives for years, as has been outlined extensively in the Amended Complaint, and which continues to this day, becoming more intense every time a court gives its tacit approval through delay or denial of justice to Plaintiff, who, after several years of attempted litigation, has yet to have one claim addressed on the merits, and who has not been able to conduct one iota of discovery.

Defendants have consistently relied on judicial ignorance of the internet, its trivialization of what is at stake here (millions of dollars in commerce and the right to be free of harassment and defamation), and "water cooler" arguments such as the conclusory and totally unsupported claim that there is any concern of any kind that Plaintiff would harass Defendants Devans and Valens if he knew their real names, to stall, delay, and avoid a true trial on the merits of the issues which have been very clearly set forth by Plaintiff. Years of encouragement to the readership of USENET to act out against Plaintiff have led others to believe that it is "open season" on him, and that the courts will stand down no matter how egregious the conduct, even if it includes death threats against Plaintiff or the harassment of his family. While this is occurring, thousands of men are spending millions of dollars with these very same men and their associates for information on how to treat women in a manner which the typical American would find extremely offensive.

While this delay occurs, bestselling books are being written and published, with one – *The Game*, by Neil Strauss – having been optioned into a movie by Columbia Pictures. Using the theory that the best defense is a good offense, Defendants attempt to portray Plaintiff negatively, rather than simply attempting to gain a true dismissal of this case, i.e., on its merits. Defendant speaks of the burden Plaintiff is allegedly causing with his conduct, yet it is

defendants' conduct which is resulting in the delay and expense, and **it is Defendants' conduct which would be sending Plaintiff's legal bills through the roof if he were not representing himself.** The strength of Defendants' resource-draining tactics used here, against a represented party, would have that party paying small fortunes to attorneys simply to refile a case dismissed without prejudice, and to defend against procedural motions which are generally disfavored except in cases where there is no clear legal argument. While defense counsel may employ this tactic against represented parties to boost its own profits and billing, or to bankrupt an adversary, it is not Plaintiff's fault that he is capable of representing himself and therefore immune to being "blitzed" in this fashion. These stalling tactics serve the purpose of preserving the illegal status quo on the internet, which allows Defendants to accumulate further illgotten gains, at Plaintiff's expense, making it even more difficult for him to defend his rights, and attempts to avoid having to actually answer the allegations in the Amended Complaint, after which point Defendants will no longer be able to change their story.

Defendants' statements imputing a harassing motive upon Plaintiff in or out of court lacks foundation, is malicious, and should be stricken from the record.

C. **The Motion To Dismiss The Amended Complaint Required A New Response.**

Defendants' motion to dismiss the Amended complaint was a **new** motion requiring a new responsive pleading from Plaintiff. Defendants claim that "they did not file a new opening brief, but simply incorporated the previously-filed brief by reference in their motion." Plaintiff has already noted the lack of briefing on everything but the motion to stay, and further notes that despite the incorporation, had Plaintiff not filed an opposition brief, he risked losing the motion as unopposed.

The earlier motion to dismiss was rendered moot by the Amended Complaint. The filing of a response to the new motion was proper. Alternatively, if Defendant claims the motion was merely amended, then it should be dismissed as moot as well.

**D.   Plaintiff's Jurisdictional Discovery Motion Was Proper.**

Defendant argues that "this Court should not consider whether jurisdictional discovery is appropriate until there is briefing on the issue of subject matter jurisdiction." This is also incorrect, as the issue had been raised by both Defendants Ross and Reyes in their motions, and were thus legitimate areas of exploration for Plaintiff. Defendants are engaging in yet another stalling tactic by attempting to deny Plaintiff any discovery which would help him establish jurisdiction or prove his case.

**E.   Service Of Process Was Properly Effected.**

Defendants Valens and Devans offer sparing arguments in support of their motion to dismiss for insufficiency of service, stating only that it had been "recently attempted."[6] Regardless, service was effected by an individual not a party to the action and over the age of 18 years, on LTSC's registered agent, who initially attempted to refuse service. Given that Defendants Valens and Devans are represented by LTSC's counsel, who was served with the Complaint months ago, given the lack of movement in the case to date, and given the ease with which Plaintiff could effect service yet again with an extension of time to serve (likely within days), there is no prejudice to either of these Defendants, both of whom have been well aware of this lawsuit since its filing, and it is therefore within this Court's discretion to allow for re-service in the event it finds any fault with the original service, which was effected August 1, 2006, less than 120 days after the filing of the original Complaint.

---

[6] Defendants' Memorandum., p. 2, ¶ 6.

**F.    This Action Is Not Identical To The Pennsylvania Action And Should Not Be Stayed.**

Defendants' basic premise – that this action should be stayed pending the

Pennsylvania appeal – is flawed.   This is not an identical lawsuit, and the only issue raised in the

Pennsylvania case was jurisdiction.   That issue was resolved by this case with regard to

Defendants LTSC, Devans, and Valens.   The proper way to deal with this case is to consider the

Pennsylvania case to be closed, and in the event of a reversal and remanding, Defendants can

move to consolidate the two cases.   The appeal deals primarily with jurisdiction, secondarily

with Rule 8(a), and neither issue in the appeal relates to this case.   Given this, no arguments in

Pennsylvania have been made on anything relevant to this case, and any motion to stay that case

or consolidate the two cases should be made through the Pennsylvania court, given that

Delaware is a more proper jurisdiction for several of the Defendants.

This is yet another example of Defendants' strategy to avoid trial on the merits or

filing an answer at all costs.   No judicial resources would be wasted by briefing; a stay should

therefore not be granted.

**G.    References To Previous Cases Dismissed Without Prejudice Is Prejudicial.**

When a lawsuit is dismissed without prejudice, it should not be used to prejudice a court against

a Defendant in the refiling.   It is the equivalent of a rainout in baseball; the case literally starts

over with the new filing.   To attempt to lay a foundation with these dismissals as if they were on

the merits is improper and prejudicial.   Plaintiff should be given every consideration extended to

one who files an original, unrestricted action.   Cases dismissed on technicalities – those raised by

Defendants – and without prejudice have not been tried on the merits, and "without prejudice"

means just that: ***without prejudice.***   To punish Plaintiff in any way over a dismissal without

prejudice would be prejudicial and defeat the purpose of the characterization.

**H.    The Motion For Sanctions Was Inappropriate And Filed For An Improper Purpose.**

Defendants did not comply with Rule 11 because they did not first serve their motion for sanctions upon Plaintiff, nor was Plaintiff afforded twenty-one days to correct the alleged infraction.  There is no argument or evidence offered in support of its motion, and there was no requirement that sanctions be sought in the responsive pleading.  In any event, sanctions prior to adjudication would not be proper, as Defendants seem to be "working the ref" by constantly attempting to raise the specter of sanctions without foundation.  It should be noted that a cross-motion for sanctions in the Pennsylvania court was recently denied.

The motion for sanctions is not legitimate and is a form of grandstanding which is being used by the Seduction Mafia principals (with five alleged members of a conspiracy *sharing a lawyer while disclaiming acting in concert*) to "rally the troops" on the internet. Repeated messages to USENET referencing the motion for sanctions have been posted, and several operatives, as well as Defendant Valens, have posted messages about how they were "imminent" (in Pennsylvania).  Since that motion was denied, the harassment of Plaintiff has intensified.  It would be toxic to the Seduction Mafia and Seduction Cartel if it became apparently that this case might go to trial, since many operatives would be disempowered by the potential liability they currently believe they are immune from due to the repeated assurances from Defendants that the courts will not side with Plaintiff regardless of circumstance or pleading.

## **CONCLUSION**

For the reasons set forth herein, the instant motion should be **denied.**  An appropriate form of order is attached.

This the 15th day of September, 2006.

Gordon Roy Parker
Plaintiff, Pro Se
4247 Locust Street, #806
Philadelphia, PA  19104
(215) 386-7366
GordonRoyParker@aol.com

10

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| **GORDON ROY PARKER**, a.k.a. **Ray Gordon**, d/b/a **Snodgrass Publishing Group**, <br><br> Plaintiff, <br><br> v. <br><br> **Learn The Skills Corp.**, et al. <br><br> Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : **CASE NO.: 06-cv-229** <br> : <br> : **Judge: SLR** <br> : <br> : |

## CERTIFICATE OF SERVICE

I, **Gordon Roy Parker,** Plaintiff in the above styled action, hereby certify that I have

served a true and correct copy of the foregoing **Plaintiff's Opposition to Defendants' Motion**

**To Stay Or Dismiss** on all defendants' counsel by **regular mail**, as follows:

| | | |
|---|---|---|
| **David L. Finger** <br> Finger & Slanina, LLC <br> One Commerce Center <br> 1201 Orange Street, Suite 725 <br> Wilmington, DE 19801-1155 <br> Attorney For Defendants LTSC, <br> Ross, And Straightforward | **Ray Devans** (one copy) <br> **Jay Valens** (one copy) <br> Learn The Skills Corp. <br> 955 Massachusetts Avenue, #350 <br> Cambridge, MA 02189 <br> Additional Defendants | **Allen "Gunwitch" Reyes** <br> 123 South Laguna Street <br> Klamath Falls, OR 97601 <br> Pro Se Defendant |
| **Michael "Miguel" Marcos** <br> 14200 Beachmere Drive <br> Chester, VA 23831 <br> Pro Se Defendant | **Mystery Method Corp.** (one copy) <br> **Erik von Markovic** (one copy) <br> 1564 Pacific Beach Drive <br> San Diego, CA 92109 <br> Additional Defendants | |

This the 15th day of August, 2006.

Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA 19104
(215) 386-7366
GordonRoyParker@aol.com
Plaintiff, Pro Se

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **GORDON ROY PARKER**, a.k.a. **Ray Gordon**, d/b/a **Snodgrass Publishing Group**, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | **CASE NO.: 06-cv-229** |
| **Learn The Skills Corp.**, et al. | : | |
| Defendants. | : | **Judge: SLR** |
| | : | |

### ORDER

AND NOW, this _____ day of _____, 2006, in consideration of

**Defendants' Motion To Stay Or Dismiss,** and all responses thereto, the motion is **denied.**

A scheduling order will follow this ruling.

SO ORDERED.

_____
J.

*Exhibit A*

# reviewjournal.com
### LAS VEGAS
### REVIEW-JOURNAL
Member Center

Subscribe to the R-J
See the Internet Special

NEVADA
REVIEW-JOURNAL

Find a Job
Find a Car
Find a Home

Nevada News | Sports | Business | Living | Opinion | Neon | Image | Classifieds

SAVE THIS      EMAIL THIS      PRINT THIS      MOST POPULAR      RSS FEEDS

**Recent Editions**

| S | Su | M | T | W | Th | F |

>> Search the site

**LIVING**
Today's Headlines

• Best of Las Vegas
• Dining
• Health & Fitness
• Home & Garden
• Kids Area
• Neon
• Religion Notes
• R-Jeneration
• CasinoGaming.com
• A View from the Top


Come to Expedia".

**CHANNEL DIRECTORY**

▸ Arts & Entertainment
▸ Auto Guide
▸ Books
▸ Casinos & Hotels
▸ Celebrations
▸ Community
▸ Coupons
▸ E-forums
▸ Employment
▸ Food & Dining
▸ Fun & Games
▸ Health & Fitness
▸ Home & Garden
▸ Legal Center
▸ Money
▸ Multimedia
▸ Obituaries
▸ Photo & Page Store

Oct. 31, 2005
Copyright © Las Vegas Review-Journal

# WHEN TEASING ISN'T FUNNY: The Cost of Bullyir

## Some kids are choosing suicide over constant bullying from their peers

By JOAN WHITELY
REVIEW-JOURNAL



Click image for enlargement.
Illustration by David Stroud.

Ryan Halligan killed himself at age 13. He couldn't stop the kids at school from harsassing him.

One popular girl pretended she liked him, then passed around all the sincere private e-mails Ryan sent her. The girl's circle of friends at school mocke him.

A group of boys constantly heckled Ryan, who was slow learner and physically uncoordinated. After he fended the bullies off in a fight, one pretended ove period of time to befriend Ryan, then used persona information Ryan eventually divulged -- that he ha once undergone a rectal medical exam -- to spread rumors Ryan was gay.

Ryan's parents were aware their son had some difficult relationships at school, but trusted Ryan when he said taking the problem to school administrators would only make it worse. His father, John Hallligan, told t Review-Journal Ryan's story by telephone, though it is also available on a Web site in Ryan's memory (www.RyanPatrickHalligan.com) and was documented in Vermont newspapers.

The problems began in seventh grade and continued online over the summer. Ryan killed himself in fall 2003, not long after he had started eighth grade.

Only after Ryan's death did his parents, John and Kelly, learn these detail of Ryan's bullying. They interviewed his friends, teachers, principal. One teacher admitted Ryan's classmates repeatedly gave him a hard time, bu she never did anything about it because the behavior never got violent.

The parents also researched Ryan's home computer, to find scores of negative e-mails and instant messages he had received from peers in the last three months of his life. Only then did they discover their son had bee visiting Web sites that promoted suicide and compared ways to do it. "It's

▸ **Personals**

▸ **Real Estate**

▸ **Recreation**

▸ **Relocation**

▸ **Shopping**

▸ **Technology**

▸ **Traffic & Transportation**

▸ **Travel**

▸ **Weather**

▸ **Weddings**

▸ **Yellow Pages**

▸ **About the site**

Contact the R-J

• Subscribe
• Report a delivery problem
• Put the paper on hold
• Advertise with us
• Report a news tip/press release
• Send a letter to the editor
• Print the announcement forms
• Jobs at the R-J

about time," one unidentified sender e-mailed, after Ryan disclosed his suicide plan online, his dad reports.

The couple also learned, too late, one of Ryan's friends knew he was thinking of suicide, but felt bound by friendship not to reveal it. In the las few weeks of Ryan's life, that friend called him nightly to check on his mental health.

Ryan is proof that the old saying about "sticks and stones can break my bones" contains a fallacy.

Words will never hurt me? Words can, in fact, break a heart.

"We want to be very clear," John Halligan writes on the Ryan Halligan We site. "We do not blame Ryan's suicide on one single person or one single event. In the end, Ryan was suffering from depression. This is a form of mental illness brought on by biological and environmental factors." The Halligans hold themselves primarily responsible for his death because the did not realize the depths of his despair nor did they "hold the school accountable to maintain an emotionally safe environment" for Ryan.

Halligan and his wife, who have two other children, say they erred in minimizing Ryan's social problems at school. "My daughter dealt with som mean stuff, too, but she came through the tunnel of middle school fine," recalls. "So we said, 'Oh, we'll just apply the same strategy with Ryan.' It was just a tragic miscalculation. He was just wired differently."

To stop damage to other children from bullying, John Halligan went on to lobby his state, Vermont, to pass an anti-bullying law, which it did in 200 He got involved in suicide prevention and speaks regularly to student and parent groups about bullying. He defines bullying as "actions directed against a student by another student which are intended to ridicule, humiliate or intimidate."

Nationwide, other parents of youngsters who were bullied and then committed suicide have also become activists. Brenda High of Washington founded a nonprofit child advocacy group, Bully Police USA , after her son Jared, then 13, killed himself in 1998 after persistent bullying. The organization also has volunteers in some states who lobby for anti-bullyin laws.

Nevada passed such a law this year, without involvement by Bully Police. The law requires Nevada school districts by July 2006 to have policies on how they will handle bullying incidents and track the volume.

A good law, according to High, clearly defines bullying. Good policies requ school districts to have: a procedure for investigating violations; clear and mandatory steps for handling bullies and their targets; mandatory reporti of incidents.

Bully Police's Web site (www.bullypolice.org) rates anti-bullying laws. Hig says Nevada scored a B+ because its law doesn't use the actual word "bullying," which is a term youngsters can relate to. "A lot of administrato are now sitting down with kids and explaining they're not obeying the law

the state," she explains.

Educating potential bullies is vital, according to Halligan. He retold what a
Vermont school principal recently told him. A gangly geeky teen boy was
being tormented by an attractive female student, who would pretend he v
her boyfriend, and then -- with her friends watching -- hug him and force
him to carry her books.

When the principal called the girl into his office and explained she needed
stop her behavior because it was bullying and against state law. "The girl
flipped, and said, 'You've got to be kidding me. I was just kidding around
He said it made it very easy to have a clear discussion with her," Halligan
recounted.

Later, the girl's mother went to complain to the principal, Halligan
concluded. "He pulled out the law again. It was a very short conversation

ⓒ ⬦ SAVE THIS     ⓒ ✉ EMAIL THIS     ⓒ 🖶 PRINT THIS     ⓒ ☆ MOST POPULAR     ⓒ 🔲 RSS FEEDS



virtual tours      photos      floorplans

Start your search now!     Select a state ▾   Go   apartments.com™

Copyright © Las Vegas Review-Journal, 1997 - 2006
Stephens Media Group Privacy Statement