

Not Reported in F.Supp.2d                                                                                                            Page 1
Not Reported in F.Supp.2d, 2000 WL 637082 (E.D.Pa.), 2000-1 Trade Cases P 72,917
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
Peerless Heater Co. v. Mestek, Inc.E.D.Pa.,2000.
United States District Court, E.D. Pennsylvania.
PEERLESS HEATER COMPANY, et al.,
v.
MESTEK, INC., et al.
**No. CIV. A. 98-CV-6532.**

May 11, 2000.

*MEMORANDUM*

PADOVA.
**\*1** Plaintiffs filed the instant suit against Mestek, Incorporated, John E. Reed, and R. Bruce Dewey alleging violations of various federal antitrust laws and the Massachusetts Unfair Sales Act, Mass.Gen.Laws.Ann. ch. 93 §§ 14E-14K, for attempting to restrict Plaintiffs' nationwide sales of mid-priced, cast iron residential and commercial boilers. The Complaint further asserts claims under Pennsylvania law for defamation, tortious interference with existing and prospective business advantage, and trade libel.

Before the Court is Defendants' Motion for Summary Judgment, Plaintiffs' Motion Pursuant to Rule 56(f), and Plaintiffs' Motion to Strike the Affidavits of Shea and Schwaber. All of the pending Motions are fully briefed and ripe for decision. The Court held oral argument on April 20, 2000. For the reasons that follow, the Court grants in part and denies in part Defendants' Motion, dismisses Plaintiffs' Motion Pursuant to Rule 56(f) as moot, and grants in part and denies in part Plaintiffs' Motion to Strike.

I. Background

Plaintiffs Peerless Heater Company and Peerless Industries, Inc. (collectively "Peerless"), and Defendant Mestek, Incorporated ("Mestek") manufacture and sell cast-iron residential and commercial boilers. Prior to 1992, Peerless owned over 90% of Eafco, Incorporated ("Eafco"), a corporation that operated a foundry ("Eafco Foundry"). Although Peerless and Mestek are competitors in the nationwide boiler market, in 1992, the two companies entered into an agreement by which Mestek and Peerless would become joint owners of Eafco. Under the agreement, both Peerless and Mestek would then obtain their iron boiler castings from the Eafco Foundry. Over the next several years, however, the relationship between Peerless and Mestek deteriorated.

Peerless claims that during the period between 1994 and 1998, Mestek embarked on a campaign to either drive Peerless from the market or takeover Peerless outright. Peerless alleges that Mestek, through its sales representatives, sought to take business away from Peerless by spreading false rumors about Peerless' precarious financial condition and stability. Mestek's representatives further allegedly told customers that Mestek would likely purchase either Peerless itself or Peerless' interest in the Eafco Foundry. In the case of the latter, Peerless claims that Mestek warned customers that Peerless would have to raise its prices to reflect the true costs of production. According to Plaintiffs, Mestek registered the Internet domain name of "Peerlessco.com" to further enhance confusion over Mestek's affiliation with Peerless.

In addition to creating confusion over the affiliation of the two companies, Mestek also allegedly attempted to increase its sales volume by selling boilers at prices below its cost of production to select distributors in New Jersey and Maine. Peerless claims that despite having knowledge of this allegedly predatory conduct, Mestek management deliberately failed to remedy the situation. As a result, the parties ceased their joint ownership of Eafco in 1998.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                 Page 2

Not Reported in F.Supp.2d, 2000 WL 637082 (E.D.Pa.), 2000-1 Trade Cases P 72,917
**(Cite as: Not Reported in F.Supp.2d)**

***2** Plaintiffs filed the instant suit on December 15, 1998, against Mestek, John Reed ("Reed"), Mestek's Chairman and Chief Executive Officer, and R. Bruce Dewey ("Dewey"), Mestek's Senior Vice President and General Counsel. The Amended Complaint alleges seven causes of action. Count I states a claim pursuant to Section One of the Sherman Antitrust Act, 15 U.S.C. § 1, for Defendants' alleged dissemination of false and misleading information about Peerless' financial status and future, and affiliation with Mestek. Count II alleges that Defendants engaged in illegal price discrimination and predatory pricing in violation of Section 2(a) of the Clayton Act, as amended by the Robinson Patman Act, 15 U.S.C. § 13(a). Count III asserts that Mestek made misrepresentations to Plaintiffs' potential and existing distributors in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1). Counts IV, V, and VI state claims under Pennsylvania state law for defamation, tortious interference with existing and prospective business advantage, and trade libel respectively. Finally, Count VII alleges that Mestek violated the Massachusetts Unfair Sales Act, Mass.Gen.Laws.Ann. ch. 93 §§ 14E-14K, by selling boilers at prices below its cost of production. Counts III and VII are against Mestek only; Counts I, II, IV, V, and VI are against all Defendants.

II. Plaintiffs' Motion to Strike the Affidavits of Stephen Shea and Steven Schwaber Pursuant to Rule 56(e)

Plaintiffs challenge two affidavits submitted by Defendants in support of their Motion for Summary Judgment as improper under Rule 56(e) of the Federal Rules of Civil Procedure: the affidavits of Stephen Schwaber ("Schwaber"), Vice President of Mestek's Boiler Division, and Stephen Shea ("Shea"), Mestek's Chief Financial Officer. *See* Def.Ex. 42; Def.Reply Mem.Ex.A. Both affidavits relate to the issue of whether Mestek sold boilers below cost to certain distributors. For the reasons that follow, the Court grants in part and denies in part Plaintiffs' Motion.

A. *Legal Standard*

Rule 56(e) of the Federal Rules of Civil Procedure states in pertinent part:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

When considering motions for summary judgment, courts interpret Rule 56(e) to preclude consideration of hearsay statements that are not " capable of being admissible at trial." *Philbin v. Trans Union Corp.,* 101 F.3d 957, 961 n. 1 (3d Cir.1996). Furthermore, courts may disregard affidavits submitted in connection to a summary judgment motion when, without a satisfactory explanation, the affidavit contradicts the affiant's earlier deposition testimony. *Hackman v. Valley Fair,* 932 F.2d 239, 241 (3d Cir.1991).

B. *Discussion*

***3** Plaintiffs argue that Schwaber's affidavit should be struck because Defendants failed to attach or serve certified copies of the papers referred to in the affidavit. The Court agrees that Defendants failed to comply with that technical portion of the rule and accordingly strikes Schwaber's affidavit, attached as Exhibit A to Defendants' Reply Memorandum in Support of Motion for Summary Judgment.

Plaintiffs next assert that Shea's affidavit fails to comply with Rule 56(e) because he lacks personal knowledge and is incompetent to testify regarding the subject matter of the affidavit, and because the affidavit presents only conclusions and interpretations of documents that constitute impermissible lay opinion rather than facts. Plaintiffs further argue that Shea's affidavit contradicts his earlier deposition testimony. The Court disagrees with all of Plaintiffs' contentions. As Chief Financial Officer, Shea bears ultimate responsibility for Mestek's financial documents and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 3

Not Reported in F.Supp.2d, 2000 WL 637082 (E.D.Pa.), 2000-1 Trade Cases P 72,917
**(Cite as: Not Reported in F.Supp.2d)**

is therefore competent to explain the contents of those documents. Furthermore, the affidavit affirms his personal knowledge of the matters about which he testifies. Shea's affidavit also contains facts and does not constitute improper lay opinion, nor did Shea contradict his earlier deposition testimony. Accordingly, the Court denies Plaintiffs' Motion with respect to Shea's affidavit.[FN1]

> FN1. The Court notes that Shea's affidavit is not a significant factor in the Court's determination that a genuine issue of material fact exists as to below-cost pricing.

III. Defendants' Motion for Summary Judgment

The Court will address Defendants' summary judgment motion prior to discussing Plaintiffs' Motion Pursuant to Rule 56(f).

A. *Legal Standard*

It is clear that courts apply the same standard on summary judgment used in all other types of actions to antitrust actions. *See Yeager's Fuel, Inc. v. Pennsylvania Power & Light Co.,* 953 F.Supp. 617, 638 (E.D.Pa.1997). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial *Celotex* burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322.

**\*4** Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. *Anderson,* 477 U.S. at 255. "[I]f the opponent [of summary judgment] has exceeded the 'mere scintilla' [of evidence] threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. *Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992).

B. *Discussion*

Defendants request summary judgment on all counts. For the following reasons, the Court grants in part and denies in part Defendants' Motion.

1. *Causation of Injury In Fact*

Defendants first globally argue that Counts I, III, IV, V, and VI fail because Plaintiffs lack evidence demonstrating that Defendants' alleged behavior caused any harm to Peerless. Proof of causation, i.e. that the defendant's conduct caused the injury to the plaintiff, is required in cases arising under Section One of the Sherman Act, the Lanham Act, and Pennsylvania state law claims of tortious interference with business relations, defamation, and trade libel. *See Callahan v. A.E.V., Inc.,* 182 F.3d 237, 250 (3d Cir.1999)(Sherman Act Section

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                               Page 4

Not Reported in F.Supp.2d, 2000 WL 637082 (E.D.Pa.), 2000-1 Trade Cases P 72,917
**(Cite as: Not Reported in F.Supp.2d)**

One); *AT & T Co. v. Winback and Conserve Program, Inc.,* 42 F.3d 1421, 1428 (3d Cir.1994) (Lanham Act); *Guardian Life Ins. Co. of Am. v. Am. Guardian Life Assurance Co.,* 943 F.Supp. 509, 526 (E.D.Pa.1996)(trade libel); *Centennial School District v. Independence Blue Cross,* 885 F.Supp. 683, 686-88 (E.D.Pa.1994)(defamation and interference with current and prospective business relations). To satisfy this causation requirement, the plaintiff must prove that the defendant's activities were a material cause of the injury, but need not eliminate all possible alternative sources of injury as the cause of its injury. *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 114 n. 9. (1969). The plaintiff also need not prove that the defendant's conduct was the sole proximate cause of the injury. *Id.* It is sufficient that the plaintiff "adduce evidence of specific lost transactions showing causation or fact of injury, which is bolstered by an expert damage report that is not overly speculative as a matter of law." *Callahan,* 182 F.3d at 260 (*quoting Rossi v. Standard Roofing, Inc.,* 156 F.3d 452, 487 (3d Cir.1998)).

Upon a review of the parties' submissions, the Court concludes that Plaintiffs have submitted sufficient evidence from which a jury could reasonably infer causation as to these claims. Plaintiffs present testimony regarding the effects such misstatements have on distributors and customers within the specialized context of the boiler industry, and evidence of decreased sales growth rates involving the distributors who were allegedly exposed to the misstatements. *See* Pl.Ex. 8 at 95-122; Pl.Ex. 14 at 17-18. The Court, therefore, denies Defendants' request for summary judgment on this ground.

2. *Count I: Sherman Antitrust Act Section 1*

**\*5** Count I asserts that Defendants disseminated false or misleading information about Peerless' financial condition and stability, the fairness of Peerless' pricing, and the relationship between Mestek and Peerless in violation of Section One of the Sherman Antitrust Act, 15 U.S.C. § 1 (1994). Plaintiffs allege that Defendants conspired with Mestek's sales representatives to spread these false statements about Peerless among boiler distributors and other customers. Defendants argue that Count I fails because Mestek's sales representatives are not third parties with whom Defendants are capable of conspiring as a matter of law, and nor can Plaintiffs prove that a conspiracy actually existed. Defendants further claim that Plaintiffs have no evidence showing any injury to competition, or to Peerless itself, as a result of the alleged conspiracy.

Section 1 of the Sherman Act provides:
Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.

15 U.S.C. § 1 (1994). Courts construe Section One to proscribe only those combinations or conspiracy that "unduly" restrain trade. *Cernuto, Inc. v. United Cabinet Corp.,* 595 F.2d 164, 166 (3d Cir.1979). In cases such as this where the particular restraint alleged does not fall within a category that has been judicially determined to be illegal per se,[FN2] the court must apply the "rule of reason" test to determine whether the restraint imposed "merely regulates competition or whether it ... may suppress or even destroy competition." *Yeager's Fuel,* 953 F.Supp. at 656 & n. 9 (quoting *Board of Trade v. United States,* 246 U.S. 231, 238 (1918) and citing *National Society of Professional Engineers v. United States,* 435 U.S. 679, 691 (1978)). To present a valid claim under the rule of reason test, a plaintiff must prove that: (1) the defendants contracted, combined, or conspired among each other; (2) the combination or conspiracy produced anticompetitive effects within the relevant product and geographic markets; (3) the objects of and the conduct pursuant to that conspiracy were illegal; and (4) the plaintiff was injured as a result of that conspiracy. *Angelico v. Lehigh Valley Hosp., Inc.,* 184 F.3d 268, 275 (3d Cir.1999).

> FN2. Courts have held that group boycotts, price fixing, resale price maintenance, tying arrangements and reciprocal dealing constitute per se violations of the Sherman Act. *MHB Distrib. Inc. v. Parker Hannifin Corp.,* 800 F.Supp. 1265, 1268 (E.D.Pa.1992) (citing *Malley-Duff &*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                     Page 5

Not Reported in F.Supp.2d, 2000 WL 637082 (E.D.Pa.), 2000-1 Trade Cases P 72,917
**(Cite as: Not Reported in F.Supp.2d)**

*Assoc. v. Crown Life Ins. Co.,* 734 F.2d 133, 140 (3d Cir.), *cert. denied,* 469 U.S. 1072 (1984)). This case does not involve those types of conduct.

To establish the first element, the plaintiff must prove that two or more distinct entities agreed to take action against the plaintiff. *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 768 (1984)(holding that Section One does not reach conduct that is wholly unilateral); *Siegel Transfer Inc. v. Carrier Express, Inc.,* 54 F.3d 1125, 1131 (3d Cir.1995). Although the express language of the Sherman Act's concerted action requirement could include coordinated conduct among officers or employees of the same company, courts do not interpret the statute in that manner. *See Siegel Transfer,* 54 F.3d at 1132-34. Rather, courts routinely hold that internal agreements or coordinated conduct among employees, officers, corporate divisions, or subsidiaries to implement the policies of the corporation do not violate the Sherman Act. *See Copperweld,* 467 U.S. at 769 (holding that a parent corporation and its wholly-owned subsidiary are incapable of conspiring as a matter of law for the purposes of Section One of the Sherman Act); *Siegel Transfer,* 54 F.3d at 1134 ("A corporation can act only through its agents, thus the acts of corporate directors, officers, and employees on behalf of the corporation are the acts of the corporation and a corporation cannot conspire with itself.")(quoting *Tunis Bros. Co. v. Ford Motor Co.,* 763 F.2d 1482, 1496 n. 21 (3d Cir.), *vacated and remanded,* 475 U.S. 1105, *reinstated,* 823 F.2d 49 (3d Cir.), *cert. denied,* 484 U.S. 1060 (1988)). Under this principle, corporate agents are incapable of engaging in an antitrust conspiracy when they demonstrate a unity of economic interest and purpose with the corporate principal. *Siegel Transfer,* 54 F.3d at 1134-35. For this reason, courts have held that sales representatives for corporate entities are not third parties with whom the corporation is capable of conspiring where the representatives receive commissions based on the amount of sales they achieve. *Id.* at 1135 (concluding that the receipt of commissions aligns the economic interests of the corporation and its representatives such that the parties constitute a single economic unit); *see also Pink Supply Corp. v. Hiebert,* 788 F.2d 1313, 1316-7 (8th Cir.1986).

**\*6** Conversely, intra-corporate persons or entities are legally capable of conspiring with the corporation for the purposes of Section One when they act for their own separate and personal interests outside the interests of the corporation. *Siegel Transfer,* 54 F.3d at 1134-35; *Weiss v. York Hosp.,* 745 F.2d 786, 813 n. 43, 817 (3d Cir.), *cert. denied,* 470 U.S. 1060 (1985). To determine when agents act for personal interests, courts should examine the substance, and not just the form, of the economic relations between the alleged conspirators. *Copperweld,* 467 U.S. at 772-73; *Siegel Transfer,* 54 F.3d at 1132-33. The substance of the arrangements at issue depends on the economic incentives of the parties involved. *Siegel Transfer,* 54 F.3d at 1135. In cases in which the plaintiff alleges that a defendant corporation conspired with its sales agents or representatives in restraint of trade, courts require that the agent "act to further his own economic interest in a marketplace actor which benefits from the alleged restraint [of trade], and causes his principal to take the anticompetitive actions about which the plaintiff complains." *Id* . at 1136-37. The alleged conspiracy must have brought together the economic power of the corporation and its agents so as to merge their previously divergent interests and goals. *Id.* at 1137.

The Court has examined the parties' submissions and found no evidence that Mestek's sales representatives had personal or economic interests and goals divergent from Mestek.[FN3] Rather, the evidence only confirms that the economic interests of the sales representatives were completely aligned with that of Mestek. Accordingly, the Court concludes that, as a matter of law, Mestek was incapable of engaging in an antitrust conspiracy with its sales representatives and grants summary judgment in favor of Defendants on Count I. [FN4], [FN5]

FN3. It is undisputed that Mestek's sales representatives receive commissions in exchange for their sales of Mestek's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 6

Not Reported in F.Supp.2d, 2000 WL 637082 (E.D.Pa.), 2000-1 Trade Cases P 72,917
**(Cite as: Not Reported in F.Supp.2d)**

products. *See* Pl.Br. at 113-114; Pl.Ex. 57 at 3.

FN4. Plaintiffs neither argue nor present evidence that Defendants Reed and Dewey, both officers of Mestek, acted for their own personal interests in this case. There is no genuine issue of material fact, therefore, that Reed and Dewey are not third parties with whom Mestek is capable of conspiring for the purposes of Section One.

FN5. Having disposed of Count I on this ground, the Court declines to address Defendants' other arguments.

### 3. *Counts II and VII: Robinson Patman Act and Massachusetts Unfair Sales Act*

Counts II and VII of the Amended Complaint allege that Defendants violated Section 2(a) of the Clayton Act as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a) ("Clayton Act"), and the Massachusetts Unfair Sales Act ("Sales Act"), Mass.Gen.Laws Ann.ch. 93 § 14E-14K (West 2000), by selling commercial and residential boilers in various states at prices below the cost of production and only to certain select distributors. Defendants argue that both Counts fail because Plaintiffs lack evidence of below-cost pricing, and are unable to prove Mestek's ability to recoup its investment in below-cost prices.

The Massachusetts Unfair Sales Act is a penal statute applicable to:
[a]ny retailer who, with intent to injure competitors or destroy competition, advertises, offers to sell or sells at retail any item of merchandise at less than cost to the retailer ... or any wholesaler who, with intent as aforesaid, advertises, offers to sell or sells at wholesale any item of merchandise at less than cost to the wholesaler ...

*7 Mass.Gen.Laws.Ann. ch. 93 § 14F (West 2000). Section14G lists exceptions under which retailers and wholesalers may legally sell items below cost. Mass.Gen.Laws.Ann. ch. 93 § 14G (West 2000). Section 14H provides a private right of action under the Sales Act for injunctive relief, but not for damages. *Massachusetts Candy & Tobacco Distrib., Inc. v. Golden Distrib., Ltd.,* 852 F.Supp. 63, 67-70 (D.Mass.1994); *see* Mass.Gen.Laws.Ann. ch. 93 § 14H (West 2000).

Section 2(a) of the Clayton Act prohibits price discrimination "where the effect of such discrimination may be to substantially lessen competition or tend to create a monopoly.[FN6]" 15 U.S.C. § 13(a) (1994); *Crossroads Cogeneration Corp. v. Orange & Rockland Utilities, Inc.,* 159 F.3d 129, 141 (3d Cir.1998). The essence of a claim under the Clayton Act is that "[a] business rival has priced its products in an unfair manner with an object to eliminate or retard competition and thereby gain and exercise control over prices in the relevant market." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 222 (1993).

FN6. The statute provides:
It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption or resale within the United States ... and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.
15 U.S.C. § 13(a) (1994).

To state a claim under Section 2(a) of the Clayton Act for price discrimination, a plaintiff must prove that the defendant made at least two contemporary sales of the same commodity at different prices to different purchasers, and the effect of such discrimination was to injure competition.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 7

Not Reported in F.Supp.2d, 2000 WL 637082 (E.D.Pa.), 2000-1 Trade Cases P 72,917
**(Cite as: Not Reported in F.Supp.2d)**

*Crossroads Cogeneration,* 159 F.3d at 141. Because the Clayton Act is only a prophylactic statute, it does not require proof that the alleged price discrimination in fact harmed competition. *Stelwagon Manu. Co. v. Tarmac Roofing Sys., Inc.,* 63 F.3d 1267, 1721 (3d Cir.1995). Rather, the Clayton Act requires only a "reasonable possibility" of substantial injury to competition to trigger its protections. *Brooke Group,* 509 U.S. at 222.

To prove a reasonable possibility of injury to competition in the absence of direct evidence, the plaintiff must prove both that "the prices complained of are below an appropriate measure of [the defendant's] costs," and that the defendant had a reasonable prospect of recouping its investment in below-cost prices. *Id.* at 222-24; *Advo, Inc. v. Philadelphia Newspapers, Inc.,* 51 F.3d 1191, 1195 n. 3 (3d Cir.1995). While a necessary element under Section 2(a), evidence of below-cost pricing alone is nonetheless insufficient to allow an inference of recoupment and injury to competition. *Brooke Group,* 509 U.S. at 226.

The United States Supreme Court has outlined two prerequisites for recoupment. *Id.* at 225-26; *see also Stearns Airport Equip. Co., Inc. v. FMC Corp.,* 170 F.3d 518, 528 (5th Cir.1999). First, the defendant's alleged below-cost pricing must have been capable of producing the intended effects on the plaintiff. *Brooke Group,* 509 U.S. at 225; *Stearns,* 170 F.3d at 528. The threshold inquiry of recoupment, therefore, is whether "given the aggregate losses caused by the below-cost pricing, the intended target would likely succumb." *Brooke Group,* 509 U.S. at 225. "This [analysis] requires an understanding of the extent and duration of the alleged predation, the relative financial strength of the predator and its intended victim, and their respective incentives and will." *Id.; see also Stearns,* 170 F.3d at 529-30 (requiring plaintiffs to show that the defendants' below-cost pricing is "of a sufficient duration and extent to independently force [the plaintiff] out of the market.")

**\*8** If the record indicates that the defendant's below-cost pricing could likely produce the intended effect on the target, the second prerequisite is proof that the pricing would likely injure competition in the relevant market. *Brooke Group,* 509 U.S. at 225. To establish this second element of recoupment, the plaintiff must show that "there is a likelihood that the predatory scheme alleged would cause a rise in prices above a competitive level that would be sufficient to compensate for the amounts expended on the predation, including the time value of the money invested in it." *Id.* Determining whether recoupment is likely to injure competition requires an estimate of the cost of the alleged predation, and a close analysis of both the scheme alleged by the plaintiff and the structure and conditions of the relevant market. *Id.* at 226. The plaintiff's case may be terminated on summary judgment in circumstances where market circumstances or deficiencies in proof would preclude a reasonable jury from finding that the alleged scheme would likely result in sustained supracompetitive pricing. *Id.; see also Stearns,* 170 F.3d at 529.

Defendants challenge Counts II and VII on several grounds. Defendants first assert that Plaintiffs lack any significant evidence of below-cost pricing. [FN7] The Court determines that Plaintiffs' expert reports, submitted by Dr. Richard Gering, contain sufficient data to raise a genuine issue of material fact regarding the occurrence of below-cost sales.[FN8, FN9] *See* Pl.Ex. 14 at 14-15; Pl.Ex. 62 at Ex. A, Ex. B.

> FN7. Defendants do not challenge Plaintiffs' ability to produce evidence regarding price discrimination.
>
> FN8. Even had Schwaber's affidavit been considered, the Court would nonetheless conclude that a genuine issue of material fact exists as to the existence of below-cost pricing.
>
> FN9. Courts have not articulated a clear standard that the jury or the district court should properly apply to determine the measure of the defendant's cost. *See Brooke Group,* 509 U.S. at 223 n. 1 (accepting parties' agreement to use average variable cost); *Advo,* 51 F.3d at

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 8

Not Reported in F.Supp.2d, 2000 WL 637082 (E.D.Pa.), 2000-1 Trade Cases P 72,917
**(Cite as: Not Reported in F.Supp.2d)**

1198 (identifying marginal cost as the proper measure under standard microeconomic theory and average variable cost as a potentially viable proxy for marginal cost). The Court's determination, however, stands under either standard.

Defendants next argue that Plaintiffs lack evidence demonstrating that Mestek had a reasonable prospect of recouping its investment in below-cost prices. Given the *Brooke Group* standard, the Court agrees. Plaintiffs submit no evidence from which a jury could reasonably conclude that Mestek's below-cost pricing could have achieved its intended effect, namely to drive Peerless from the market or eliminate Peerless as a viable competitor.[FN10] To the contrary, the parties' submissions indicate that Peerless' market share, sales, and profits have steadily increased during the relevant period. *See* Def.Ex. 10 at 225; Def.Ex. 13 at 63-64; Def .Ex. 1 at 158-64, 186-190; Pl.Ex. 54. By all accounts, Peerless has become a stronger competitor showing no signs of succumbing to Mestek's allegedly predatory behavior. *Id.* Furthermore, Plaintiffs' expert identifies only approximately $150,000.00 in damages attributable to Mestek's below-cost pricing. Pl.Ex. 14 at 17. Outside of several conclusory statements in their legal briefs and expert report, Plaintiffs present no contrary evidence showing a reasonable possibility that Peerless could have been driven from the market by Mestek's conduct.[FN11] *See* Pl.Br. at 141; Pl.Ex. 14 at 12, 16. Such unsupported statements alone are insufficient to create a genuine issue of material fact. *See Siegel Transfer,* 54 F.3d at 1138; *Advo,* 51 F.3d at 1198-99.

> FN10. Plaintiffs' position is that Mestek engaged in the below-cost sales scheme and spread malicious rumors about Peerless "to take over or destroy Peerless as a competitor." Pl.Br. at 5; *see also* Pl.Br. at 141.
>
> FN11. The Court further notes that Plaintiffs' evidence of below-cost pricing involves transactions totaling less than

$100,000 .00, and with an aggregate negative margin of only $15,000.00 over a three year period between 1995 and 1998. *See* Pl.Ex. 62 at Exs. A, B. In comparison, Peerless' gross sales in 1999 reached approximately $36 million. Def.Ex. 1 at 159.

**\*9** In conclusion, the Court determines that the proffered evidence is insufficient to establish a reasonable possibility of success in driving Peerless from the market. *See Stearns,* 170 F.3d at 529-530 (affirming grant of summary judgment in favor of defendant where plaintiff demonstrated underpricing in only five bids out of 240-400 available over a four year period and plaintiff presented no evidence that "its survival was threatened by the sales lost to the rare, sporadic predation that it alleges, and does not claim that the continuation of below-cost bids at [that] level will drive it out of business"); *Taylor Publ'g Co. v. Jostens, Inc.,* 36 F.Supp.2d 360, 369 (E.D.Tex.1999)(finding no reasonable possibility of success where below-cost pricing caused the loss of less than 1% of the plaintiff's sales). Since Plaintiffs are unable to establish an essential prerequisite of recoupment, the Court grants summary judgment in favor of Defendants on Counts II and VII.[FN12]

> FN12. Having resolved Counts II and VII on this ground, the Court declines to consider Defendants' other arguments.

### 4. *Count III: Lanham Act*

Count III states a claim against Mestek under the Lanham Act, 15 U.S.C. § 1125(a)(1), for Mestek's alleged oral statements to distributors and dealers that it would imminently own or currently owns Peerless; that Plaintiffs were financially unstable; and that Peerless price-gouged their customers. Mestek argues that Count III fails as a matter of law because any false statements that were made were not disseminated so as to constitute advertising or promotion within the boiler industry, and were only general comments about Plaintiffs' business and not designed to capitalize on the goodwill associated with Plaintiffs' products.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 9

Not Reported in F.Supp.2d, 2000 WL 637082 (E.D.Pa.), 2000-1 Trade Cases P 72,917
**(Cite as: Not Reported in F.Supp.2d)**

Section 43(a) of the Lanham Act both proscribes trademark infringement, and generally creates a federal cause of action for unfair competition. *AT & T v. Winback and Conserve Prog., Inc.,* 42 F.3d 1421, 1428 (3d Cir.1994). The statute provides:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1) (1994). Plaintiffs proceed under both sections 1125(a)(1)(A) and (B). Pl.Br. at 155.

Under section 1125(a)(1)(A), the plaintiffs must prove that (1) the defendant made misrepresentations relating to a false designation of affiliation in interstate commerce in connection with goods and services; (2) the misrepresentations are likely to cause confusion, mistake, or deception as to the affiliation of the parties; and (3) the plaintiffs have been or are likely to be damaged. *Winback,* 42 F.3d at 1428. To state a claim under section 1125(a)(1)(B) for false advertising, the plaintiff must prove that (1) the defendant has made false or misleading statements as to his or another's product; (2) there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to the plaintiff in terms of declining sales and loss of good will.

*U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.,* 898 F.2d 914, 922-23 (3d Cir.1990); *Synygy, Inc. v. Scott-Levin, Inc.,* 51 F.Supp.2d 570, 575 (E.D.Pa.1999).

**\*10** Section 1125(a)(1)(B)'s language regarding "commercial advertising or promotion" describes (1) commercial speech; (2) by a defendant in commercial competition with the plaintiff; (3) designed to influence customers to buy the defendant's products; and (4) that is sufficiently disseminated to the relevant purchasing public to constitute advertising or promotion within the industry. *Synygy,* 51 F.Supp.2d at 576. Some courts have held that section 1125(a)(1)(B) is not designed to apply to oral statements by salespeople to individual customers "concerning matters which an ordinary listener would recognize as personal opinion as opposed to representations of hard definable facts, such as product descriptions." *Licata & Co., Inc. v. Goldberg,* 812 F.Supp. 403, 408 (S.D.N.Y.1993); *see also Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,* 173 F.3d 725, 731 (9th Cir.1999)('puffery' is not actionable under Lanham Act). Under this principle, only statements of fact capable of being proven false are actionable under the Lanham Act because when personal opinions on nonverifiable matters are given, the recipient is likely to assume only that the communicator believes the statement, not that the statement is true. *Coastal Abstract Serv.,* 173 F.3d at 731; *Licata,* 812 F.Supp. at 408.

Mestek argues that Plaintiffs' claim under section 1125(a)(1)(A) fails because any misrepresentations that Mestek's sales representatives made were not "in connection with any goods or services or any container for goods." Similarly, Defendant asserts that the section 1125(a)(1)(B) claim fails because the alleged misrepresentations do not constitute "commercial advertising or promotion," but rather are mere puffery and sales talk. *See* 15 U.S.C. §§ 1125(a)(1) (1994). Based upon the parties' submissions, the Court determines that Plaintiffs have presented sufficient evidence from which a jury could reasonably conclude that the alleged misstatements made by Mestek's sales representatives were connected with goods or services, and constituted commercial advertising or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 10

Not Reported in F.Supp.2d, 2000 WL 637082 (E.D.Pa.), 2000-1 Trade Cases P 72,917
**(Cite as: Not Reported in F.Supp.2d)**

promotion. *See e.g.* Pl.Ex. 16 at 96; Pl.Ex. 20 at 128-29; Pl.Ex. 18; Pl.Ex. 23 at 73-77; Pl.Ex. 24 at 23-26; Pl.Ex. 25 at 23-29; Pl.Ex. 43; Pl.Ex. 30 at 17-19; Pl.Ex. 34 at 79-80. The Court, therefore, denies Mestek's request for summary judgment on Count III.

5. *Counts IV-VI: Pennsylvania State Law Claims*

As noted above, Counts IV through VI are for defamation, interference with current and prospective business relations, and trade libel under Pennsylvania law.[FN13] Defendants first request that the Court grant summary judgment in their favor because Plaintiffs cannot adduce evidence of causation. The Court has already rejected this argument. *See supra* at 7-8. Since one federal claim remains in this case, the Court also will not decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

> FN13. Despite hinting that Pennsylvania law may not apply to this action, Defendants offer no alternative choice of law analysis and cite only Pennsylvania law in support of their Motion with respect to Counts IV through VI. *See* Def.Br. at 48-50. Plaintiffs also cite only Pennsylvania law. The Court, therefore, will apply Pennsylvania law to Counts IV through VI.

Defendants Reed and Dewey next argue that Plaintiffs lack a legal basis for imposing individual and personal liability on them for any misrepresentations that were made by Mestek's sales representatives. Reed and Dewey point out that Plaintiffs lack evidence that either personally made any misrepresentations. Reed and Dewey further argue that they had no legal duty to stop anyone else from making any misstatements.

**\*11** Under Pennsylvania law, corporate officers are only individually liable for tortious activities in which they personally participate. *Wicks v. Milzoco Builders, Inc.,* 470 A.2d 86, 90 (Pa.1983).
The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the corporation in committing it, unless he specifically directed the particular act to be done or participated, or cooperated therein.

*Id.* The touchstone for personal liability under Pennsylvania caselaw, therefore, is knowing participation in the tortious conduct. *Chester-Cambridge Bank & Trust Co. v. Rhodes,* 31 A.2d 128, 131 (Pa.1943).

The *Wicks* court interpreted this rule to allow personal liability only for misfeasance, but not for nonfeasance. *Id.; Chester-Cambridge Bank,* 31 A.2d at 131; *Brindley v. Woodland Village Restaurant, Inc.,* 652 A.2d 865, 868 (Pa.Super.Ct.1995). Nonfeasance is "omitting to do, or not doing, something which ought to be done, which a reasonable and prudent man would do." *Brindley,* 652 A.2d at 868 (*quoting Nelson v. Duquesne Light Co.,* 12 A.2d 299, 303 (Pa.1940)). Misfeasance "is the doing of something which ought not be done, something which a reasonable man would not do, or doing it in such a manner as a man of reasonable and ordinary prudence would not do it, in either case leading to mischief and injury." *Id.* Misfeasance requires that the defendant officer have actively or knowingly engaged in, or directed overt acts during commission of the tort. *Brindley,* 652 A.2d at 869-70. Courts will not premise liability on allegations or argument that the corporate officer merely "should have known the consequences of the liability-creating corporate act," *Wicks,* 470 A.2d at 90, or upon proof of the defendant officer's general supervisory responsibility. *Rhodes,* 31 A.2d at 131. *Kaites v. Commonwealth of Pennsylvania, Dep't of Environmental Resources,* 529 A.2d 1148, 1151 (Pa.Commw.Ct.1987). A defendant, however, may be personally liable for intentional neglect, or failure to act when subject to a duty requiring action. *Bernhardt v. Needleman,* 705 A.2d 875, 878 (Pa.Super.Ct.1998); *Kaites,* 529 A.2d at 1151.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 11

Not Reported in F.Supp.2d, 2000 WL 637082 (E.D.Pa.), 2000-1 Trade Cases P 72,917
**(Cite as: Not Reported in F.Supp.2d)**

The Court determines that Plaintiffs have submitted sufficient evidence raising a genuine issue of material fact as to whether Defendants Reed and Dewey personally participated in the alleged tortious conduct in that they knew about the allegedly defamatory statements being made by Mestek representatives about Peerless, and deliberately failed to take effective remedial steps. *See e.g.* Pl.Ex. 3 at 20-24; Pl.Ex. 6 at 79-80; Pl.Ex. 7 at 27-29; Pl.Ex. 8 at 18; Pl.Ex. 9 at 14-18. Summary judgment, therefore, is inappropriate with respect to Counts IV through VI.

### IV. Plaintiffs' Rule 56(f) Motion for Additional Discovery

**\*12** Plaintiffs move for additional discovery pursuant to Rule 56(f). For the following reasons, the Court dismisses Plaintiffs' Motion as moot.

#### A. *Legal Standard*

Federal Rule of Civil Procedure 56(f) provides:
Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f). In considering motions under Rule 56(f), the court should consider "what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not been previously obtained." *Contractors Assoc. v. City of Philadelphia,* 945 F.2d 1260, 1266 (3d Cir.1991) (citation omitted). Rule 56(f) motions must be properly supported by affidavits that specifically identify the sought information and how such information would preclude summary judgment. *Gambrell v. Hess,* 777 F.Supp. 375, 378 (D.N.J.), *aff'd,* 970 F.2d 898 (3d Cir.1992).

Where the relevant information sought is in the hands of the moving party, the court should grant a Rule 56(f) motion "almost as a matter of course unless the information is otherwise available to the non-movant." *Contractors Assoc.,* 945 F.2d at 1267. Where, however, the motion is based on speculation or raises merely colorable claims, when the party has already had an adequate opportunity to discover the information, or when the discovery request is irrelevant, the court may deny a Rule 56(f) motion. *City of Rome v. Glanton,* 958 F.Supp. 1026, 1039 (E.D.Pa.), *aff'd without op.,* 133 F.3d 909 (3d Cir.1997).

#### B. *Discussion*

Plaintiffs request several items of additional discovery. The Court will deal with each in turn.[FN14] First, Plaintiffs ask to re-depose Defendants Reed and Dewey on the contents of two memoranda that discuss alternative scenarios for Mestek's ownership of the Eafco Foundry. Pl.Ex. I. The issues raised in the memoranda are allegedly relevant to Reed and Dewey's knowledge and dissemination of false and misleading statements about the affiliation between Peerless and Mestek on which their liability under Counts IV through VI rests. Since the Court has denied Defendants' Motion as to those Counts, Plaintiffs' request is moot.

> FN14. The Court will evaluate Plaintiffs' requests only within the context of the Rule 56 issues presented in Defendants' Motion, and not as general requests for discovery. Since discovery is closed, Plaintiffs are entitled to additional documents or depositions only to the extent they are necessary to oppose Defendants' arguments on summary judgment.

Second, Plaintiffs seek to re-depose Shea about his affidavit submitted in support of Defendants' Motion. The affidavit asserts that Mestek did not sell boilers at below-cost prices to a select distributor in 1998. Plaintiffs also seek production of documents showing the account detail for several categories of expenses referenced in Shea's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 12

Not Reported in F.Supp.2d, 2000 WL 637082 (E.D.Pa.), 2000-1 Trade Cases P 72,917
**(Cite as: Not Reported in F.Supp.2d)**

affidavit. Plaintiffs claim that the documents are necessary to determine whether the enumerated costs are fixed or variable and are relevant to the below cost pricing issue. Peerless further seeks production of bills of materials and cost summary sheets for the months in which Mestek sold boilers to Nutley Heating and Cooling Supply ("Nutley") and Sondik Supply Company ("Sondik") to establish below-cost sales. These requests are moot since the Court has determined that Plaintiffs succeeded in establishing a genuine issue of material fact as to the existence of below-cost sales.

**\*13** Third, Plaintiffs request the monthly reports of two of Mestek's sales representatives. These reports reveal to whom the representatives spoke and may indicate what, if any, misstatements about Peerless the representatives made. This issue is relevant primarily to Counts I, and III through VI. The Court did not grant summary judgment in favor of Defendants on Counts III through VI. Although the Court granted summary judgment in favor of Defendants on Count I, it did so without considering whether Plaintiffs presented sufficient evidence that misstatements were actually made. Rather the Court's decision rests on the principle that Mestek's sales representatives, under the circumstances presented in this case, could not as a matter of law conspire with Mestek. The reports are irrelevant to that determination. For these reasons, Plaintiffs' request is moot.

Fourth, Plaintiffs seek production of documents related to a meeting held among Mestek executives in which Peerless and the relevant market for boilers were discussed. The documents are not relevant to the Court's resolution of Defendants' Motion. Plaintiffs' request is, therefore, moot.

Lastly, Plaintiffs seek production of missing invoices for three customers on the ground that they relate to the issue of discriminatory pricing. Defendants' Motion does not challenge Plaintiffs' ability to demonstrate discriminatory pricing and the Court assumed for the purpose of resolving the Motion that such pricing took place. Therefore, Plaintiffs' request is moot.

V. Conclusion

In summary, the Court grants summary judgment in favor of Defendants on Counts I, II, and VII. Counts III, IV, V, and VI shall proceed to trial. Plaintiffs' Motion to Strike Affidavits is granted with respect to Schwaber's affidavit and denied with respect to Shea's affidavit. Plaintiffs' Motion Pursuant to Rule 56(f) is dismissed as moot. An appropriate Order follows.

*ORDER*

AND NOW, this __ day of May, 2000, upon consideration of Defendants' Motion for Summary Judgment (Doc. No. 51), Plaintiffs' Motion to Strike Affidavits of Stephen Shea and Steven Schwaber (Doc. No. 64), and Plaintiffs' Alternative Motion for Order Pursuant to FRCP 56(f) (Doc. No. 54), and all the briefing submitted thereon, IT IS HEREBY ORDERED that:

VI. Defendant's Motion for Summary Judgment (Doc. No. 51) is GRANTED in part and DENIED in part;

I. Judgment in favor of Defendant is ENTERED on Counts I, II, and VII;

II. Counts III, IV, V, and VI will proceed to trial;

VII. Plaintiffs' Motion to Strike Affidavits of Stephen Shea and Steven Schwaber (Doc. No. 64) is GRANTED in part and DENIED in part;

A. The affidavit of Steven Schwaber (Ex. A Doc. No. 63) is STRIKEN;

3. Plaintiffs' Alternative Motion for Order Pursuant to FRCP 56(f) (Doc. No. 54) is DISMISSED as moot.

E.D.Pa.,2000.
Peerless Heater Co. v. Mestek, Inc.
Not Reported in F.Supp.2d, 2000 WL 637082 (E.D.Pa.), 2000-1 Trade Cases P 72,917

Briefs and Other Related Documents (Back to top)

• 2:98cv06532 (Docket) (Dec. 15, 1998)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.