## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **GORDON ROY PARKER**, a.k.a. **Ray Gordon**, d/b/a **Snodgrass Publishing Group**, 4247 Locust Street, #806 Philadelphia, PA 19104 | : : : : : | **PRO SE PLAINTIFF** |
| Plaintiff, | : : | **CASE NO.: 06-cv-229** |
| v. | : : | **Hon. Sue L. Robinson** |
| **Learn The Skills Corp.**, et al. | : : | |
| Defendants. | : | |

### PLAINTIFF'S BRIEF IN OPPOSITION TO
### DEFENDANT LTSC'S MOTION TO DISMISS

**Plaintiff** Gordon Roy Parker, in the above-styled action, submits this Brief In

Opposition to Defendant LTSC's motion to dismiss this action. To the extent that any

arguments are missing from this pleading, Plaintiff stands on his complaint while

preserving his right to argue against any adverse rulings in reconsideration or a post-

judgment leave to amend.

### I.    BACKGROUND/PROCEDURAL HISTORY

Plaintiff has outlined the history of this case extensively in his Amended

Complaint. Previous related cases were dismissed without prejudice, in this case for lack

of jurisdiction. We are literally starting over under Delaware rules which clearly grant

Plaintiff jurisdiction.

### Previous Litigation

The Third Circuit, which did not rule on the merits of the well-documented previous

litigation, had no difficulty understanding what was pled, and neither should this Court:

> Parker's complaint alleges that defendants belong to a criminal enterprise designed to control the market for online advice about how to seduce women. As described more fully in the District Court's opinion and in painstaking detail in Parker's amended complaint, defendants allegedly diverted traffic from a public online "USENET" group to a private online discussion forum that they controlled, harassed plaintiff and attempted to undermine his reputation, and hindered his attempts to defend himself against these attacks.[1]

## Terroristic Threats From Thom E. Geiger

Immediately after the Third Circuit's ruling, Mr. Geiger (a Defendant in that case), began making a series of threats against Plaintiff, including a frightening one based on a pretext of mistaken identity which he attempted to claim as a foundation for literally *killing* Plaintiff by a) claiming another internet user named "Speeding" was Plaintiff; b) informing "Speeding" (Plaintiff) that he considered "Speeding" to be a threat to his family; and c) stating that he would *kill* anyone he believed to be such a threat. Though not a defendant in this case, Mr. Geiger is now an empowered Seduction Mafia operative.

The very conduct Geiger defends in his pleadings – purchasing a domain for use by an anonymous party he claims not to know how to locate – is now a felony under 47 USC §223(h), which explicitly applies existing anonymous-harassment law to the internet. Some examples:

> 1. *For whatever limited time you have left in this world,* you need to remember, *the first time you convince a person you're a threat to their family,* and they're able to convince 12 people they'd feel the same way, *you could be toast and they could walk.* (Exhibit A, Internal Exhibit A-1).
>
> **Message-ID:** ijobv215r2eeq7h1nb31l5s6cdttluomve@4ax.com)
>
> 2. *I bought a new gun, taught my family how to use it and alerted the local police about Parker's history of threatening children.* Parker, Speeding, Panda Joe, whatever name he's using, I don't like people threatening my family. "If it were legal" bullshit makes no difference to me. Illinois, Oklahoma, Alabama, Pennsylvania, Berlin, Tokyo, wherever, makes no difference. *In SEA, I killed enemy combatants in two countries. I will kill*

---

[1] Order Affirming Dismissal, p.2.

*any asshole stupid enough to threaten my family's safety. That's a promise and a guarantee.*

**Message ID**: kjo9v2hkmkm389gp974m6e0ng9hou8mdir@4ax.com

3.  *If I wanted to impress you, you'd be dead right now.* (Initial comment from Geiger).

    > Ditto for your thinly veiled threats. (quoting "Speeding's" reply to Geiger)

    What's veiled? I say it straight up. Anybody who's a threat to my family's safety will die. Plain and simple. (Geiger's final reply).

    **Message-ID:** afpbv2psvqd2lah4c60mkntf4ur668a1o7@4ax.com

It should be noted that another listed Defendant in the Pennsylvania case mentioned in Defendant's pleadings, Osgaldor Storm, had been alleged to make a series of death threats against Plaintiff on USENET, and ceased only when warned by law enforcement. He later publicly disclaimed the threats while expressing general support for the other defendants and an inexplicable disdain for Plaintiff, given his alleged uninvolvement. The use of "loose cannon" operatives is a Seduction Mafia trademark.

## II.   RESPONSE TO LEGAL STANDARD

Defendants did not address the legal standard for a motion to dismiss.

### Legal Standard For Motion To Dismiss

A motion to dismiss under Rule 12(b)(6) *"is viewed with disfavor and is rarely granted."* (Shipp, 234 F.3d 907, 911 (5th Cir. 2000); *cert. denied* _U.S._, 121 S. Ct. 2193, 149 L.Ed.2d 1024 (2001)(quoting Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, 677 F.2d 1045, 1050 (5th Cir. 1982)). The question therefore is whether, under that standard, the complaint states any valid claim for relief. (5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, §1357 (2nd ed. 1990)).

3

The legal standard for a Motion To Dismiss is also well-established: when considering a motion to dismiss for failure to state a claim for relief under Fed.R.Civ.P. 12(b)(6), the Court will only dismiss a claim if it is clear that the plaintiff could prove no facts which would entitle plaintiff to relief under the law. (Jenkins v. McKeithen, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969)). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. (Shipp v. McMahon, 234 F.3d 907, 911; Campbell v. Wells Fargo Bank, 781 F.2d 440, 442 (5th Cir.), *cert. denied*, 476 U.S. 1159, 106 S. Ct. 2279, 90 L.Ed.2d 721 (1986).)

## III. RESPONSE TO SUMMARY OF ARGUMENT

Following is Plaintiff's response to the Defendants' summary of argument.

**1.   Personal Jurisdiction.** Defendants, in their Brief, argue that "There is no basis for personal jurisdiction over Defendants Valens, Levans, Ross, and Straightforward under Delaware's Long Arm statute." Plaintiff argues that there is, and that he has pled facts sufficient to support jurisdiction over each of these defendants.

**2.   Antitrust Claims.** Defendants alleged that Plaintiff has not pled an antitrust claim, yet the Third Circuit specifically wrote that Plaintiff had pled that Defendants were attempting to "*control the market for online advice about how to seduce women.*"[2] In fact, Plaintiff has alleged many facts that support this actionable conduct, including price fixing, customer allotment, blacklisting, and refusal to deal (all alleged facts). **Plaintiff would like to call this court's attention to the glaring omission of any argument against the price-fixing allegation from paragraph 102 of**

---

[2] Parker v. LTSC et al. (II), Nos. 06-2246 & 06-4166, consolidated.

**the Complaint, in which Defendant LTSC posted to its own board a request for**

**input on "common pricing" in the industry.**

      **3.**    **RICO Claims.** Defendants allege that Plaintiff has not pled a RICO

claim, while again the Third Circuit demonstrated that he had, when it said that:

> As described more fully in the District Court's opinion and in *painstaking detail*
> in Parker's amended complaint, defendants allegedly diverted traffic from a
> public online "USENET" group to a private online discussion forum that they
> controlled, harassed plaintiff and attempted to undermine his reputation, and
> hindered his attempts to defend himself against these attacks. (Emphasis
> Added). (Parker v. LTSC appeal order, p. 2).

Defendants' RICO arguments are highly flawed:

      **a.**    **Hobbs Act.**    Defendants state that "extortion requires compelling

another to part with property." (Brief, p. .24). This is not correct, as it merely requires

the attempt, an attempt which has been made on an ongoing basis now for several years.

      **b.**    **Sarbanes-Oxley.** Defendant demonstrates a clear lack of

understanding of 18 USC §1513(e) by claiming that it "does not criminalize malicious

lies." (Ibid, p. 26). It actually does, for the reasons alleged in the complaint, and

Sarbanes-Oxley violations are predicate RICO acts. 18 USC §1513(e) specifically

proscribes interference with a whistleblower's employment or livelihood in *any* fashion.

      **c.**    **RayFAQ.** Defendants claim that the "RayFAQ" document alleged

no threats, yet the document was highly threatening in that it attempts to "warn" literally

the entire world about Plaintiff, encouraging said world to contact anyone and everyone

who can "do something" to or about him. This includes law enforcement, employers,

medical professionals, and so forth. The RayFAQ itself would clearly be illegal as

anonymous harassment today. While "Thrasher" did not itself threaten Plaintiff, it linked

to the RayFAQ on more than one occasion, simultaneous to LTSC's site. Co-

5

conspirators need not be named in a lawsuit for the named Defendants to be liable for
their conduct under RICO.

**4.    False Advertising.**  Defendants are being completely disingenuous with
their statement that "The Amended Complaint fails to state a claim for false advertising."
The Amended Complaint does allege that Defendants conspired to publish the "ASF
FAQ" which informs "newbies" that a public USENET message board has been
"replaced" by Defendants' commercial website. The factual statement is clearly
misleading and has been alleged as such.

**5.    State Law Claims.**  The state law claims should survive the instant
motion for the same reasons as the federal claims.

### III.  RESPONSE TO STATEMENT OF FACTS

#### A.    THE PARTIES

Defendants attempt to "flame" Plaintiff by claiming that he has been referred
to as a "serial litigant."  The statement is an attempt to prejudice this court, as the merits
of this case are a separate issue, and Plaintiff is a litigant in good standing with every
court in the United States.

#### B.    FACTUAL BACKGROUND

Defendants explain the internet seduction-advice industry (id.), and the role
played in its marketing through USENET, commercial websites and message boards, and
blogs. Then, despite claiming that no facts were pled in support of his claims,
Defendants then outline the very factual claims made in support by Plaintiff, with
citations to the Amended Complaint, including 1) "hostile comments on USENET"
(defamation and threats), 2) "instructing readers how to use a software called 'killfile' to

6

ignore Plaintiff, [3]" 3) "the Defendants *invited* USENET readers interested in seduction to visit LTSC's own private message boards" (without mentioning that they did so through what is normally considered an *official* document for a USENET group, or "FAQ"; 4) "Ross, allegedly on behalf of other the defendants, set up a 'hate website' disparaging Plaintiff (in fact, Mr. Geiger published the website, on behalf of Defendants LTSC, Straightforward, Valens and Levans."; 5) "LTSC restricts advertising on its privately-owned website to only those advertisers approved by it and who agree to its terms." and 6) "The defendants created city-based chapters [LAIRs] which market their products, and which agree to refuse to deal with anyone not approved by defendants, specifically Plaintiff." (this is inaccurate, as Plaintiff said only that the LAIRs have "splintered"

## IV. ARGUMENT

### I. JURISDICTION

Let us not forget the "Northern Star" of federal jurisdictional precedent: A court may consider the allegations in the complaint to be true *"unless controverted by the defendant['s] affidavits."* Catalina Mktg. Int'l, Inc. v. Coolsavins.Com Inc., #00-cv-2447, 2003 WL 21542491, at *1 (N.D. Ill. July 3, 2003).

Did Defendants file any *affidavits* to establish in an *evidentiary* way their claims? Why no, they didn't? They did not because had they done so, Defendants would have *perjured* themselves with regard to their well-established affiliate relationship with Defendant LTSC, from products sold *by* a Delaware Corporation in return for a fixed sales commission. In the absence of an affidavit that Defendant Ross did not hesitate to

---

[3] "Killfiling" is not a software per se, but a function within a newsreader software that allows users to ignore a user, text string, or subject type.

7

file in Pennsylvania, yet did not file here, this Court should consider all of Plaintiff's

allegations to be true. The affidavit requirement is there for a reason; this reason. At the

very least, Plaintiff is entitled to jurisdictional discovery.

Defendants claim that Plaintiff "does not allege that Straightforward provides any

services or things to Delaware." This is incorrect and misleading, as Plaintiff has set

forth facts, as has Defendant, sufficient to confer jurisdiction on several grounds.

Specifically, he stated in his Amended Complaint that 1) "Straightforward is a distributor

of Speed Seduction products, created by Defendant Ross" (Am. Compl. ¶ 5), and 2) that

> "Jurisdiction in Delaware over Defendant Ross is conferred by 9310a(c)(2) of
> the Delaware Code because Defendant Ross personally provides a one-hour
> telephone consultation to purchasers of the Speed Seduction Advanced Home
> Study Course, *including those in Delaware,* and is further conferred by
> $310a(c)(4) because *Defendant Ross derives substantial revenue from products
> which are sold in Delaware, for use and consumption in the state."* (Ibid, p.
> 14).

At best, we have a syntax error, since Defendants Ross and Straightforward were

used interchangeably throughout the Amended Complaint. A simple amendment to

paragraph 13 to make it identical to paragraph 14 would correct this, and correctable

deficiencies are not grounds for dismissal. In addition, Defendant Straightforward

contracts with Defendant LTSC, a Delaware corporation, to pay LTSC its sales

commissions as a Speed Seduction "affiliate marketer." Since LTSC is functioning as a

"commissioned salesperson" for Straightforward (and for Ross), that fact alone

establishes jurisdiction, since both Defendants Ross and Straightforward have entered

into an explicit contract in which products and money are exchanged, in addition to

anything else, that they would claim they have no involvement with anyone in Delaware

is a *flat-out lie*.

8

Finally, RICO law provides for nationwide service of process under 18 USC §1965(b), and Plaintiff further alleged the derivation of revenue from products sold in Delaware. Since LTSC effectively acts as a seller of Speed Seduction products, those products are *provided* to LTSC by Ross/Straightforward, both of whom *derive revenue* from their sale. Given this, even whether or not even a single end customer is in Delaware is also not relevant to this action.

## A. DELAWARE'S LONG-ARM STATUTE (3401(c)(2).

1. **Specific Jurisdiction Under §3104(c)(2).** Defendants cite precedent that states that this section requires a Defendant to "contract or supply services or things in this state." (Brief, p. 9, ¶ I(A)(I)). Plaintiff set forth in the introduction to this section how he had alleged facts supporting jurisdiction, including Straight forward's and Ross's direct business relationship with LTSC, its affiliate sales representative Defendant further states that "[Plaintiff's] complaint goes toward the defendants marketing techniques, none of which are alleged to have been created or enacted in or from Delaware." (Id.). Since LTSC co-authored the "ASF FAQ" (a marketing technique), and directly sells Speed Seduction products as its affiliate marketer.

2. **Section 3104(c)(4)**. This is the more liberal part of the statute, and allows for jurisdiction on the basis of marketing, deriving revenue, or even *soliciting business in Delaware*, which both Defendants have done for years. The statement that Plaintiff "does not affirmatively assert any facts which would support his conclusory allegation, and so does not provide a basis for the exercise of personal jurisdiction" (Ibid, p. 10) is also wholly inaccurate, as outlined above. The claim is also disingenuous because only an inspection of Defendants' records could provide specific transactions

9

that would prove his case. This is another reason the courts allow Defendants to submit affidavits, something none of these Defendants has availed themselves of. If they are going to lie to this court, let them do it under oath. No extra harm could possibly come from a true affidavit.

### B. WAIVER BY MOTION TO STAY.

As the case has now been "stayed by omission," this argument is moot.

### C. JURISDICTIONAL DISCOVERY.

Defendants state that "In the Pennsylvania Action, [Plaintiff] requested jurisdictional discovery, and defendants expect hat he will make the same request here." (Ibid, p. 11.). Since Docket #15 is Plaintiff's motion to conduct jurisdictional discovery, Defendants are correct, but a little late in their expectation. As Plaintiff has not been served with any order on the case (his PACER access is currently shut off due to arrears). How ironic that Defendant calls Plaintiff's allegations "conclusory" yet refuses to submit an affidavit refuting them, instead relying on its own conclusory allegations which presume facts not in evidence. Jack Nicholson's Joker once asked "*and WHERE....is the BAT-MAN?*" If he were the Plaintiff in this litigation, he would be asking the same thing about the affidavits, just as this court should. At the very least, let these Defendants disclaim the affiliate sales partnership that includes LTSC, a Delaware Corporation.

## II. RESPONSE TO FAILURE TO STATE A CLAIM ARGUMENT

### A. ANTITRUST CLAIMS

Defendant again characterizes the complaint as containing "conclusory allegations," despite its own citations of factual averments supporting those claims in the

10

Complaint. As previously noted, this court's parent court perfectly summarized the allegations surrounding the Seduction Mafia and Cartel, and referred to the *painstaking detail* (facts are details) which were laid out. It did not dismiss for failure to state a claim, but for lack of jurisdiction, and did not address a single merit of the antitrust pleadings. Again, we have a new ballgame here with a nothing-nothing tie.

**1.    Response to Failure-To-Allege Conspiracy Argument.**  Defendants argue that Plaintiff has not provided factual support for a conspiracy, despite having read the ruling from this court's parent clearly indicating otherwise. Plaintiff has alleged specific facts, including the publication of statements, to support his antitrust claims. He has "painstakingly" outlined the incestuous nature of the "seduction community," and multiple specific acts which were taken in open conspiracy, not the least of which is the "ASF FAQ" document (Am. Compl., ¶¶ 32-33, pp. 10-11). Indeed, paragraph 33 includes the actual wording from the FAQ document which refers to the websites of these defendants as "main, group-related sites" to ASF. That FAQ *could not exist without the mutual approval of all Defendants.*  This is anything but a conclusory allegation.

**2.    Response to Restraint of Trade Argument.**

**a.    Response to the Tying Agreement Argument.**  Defendants are arguing that Plaintiff has not pled a "tying" antitrust violation because he has not met the five-pronged test it had outlined (Brief, p. 15). Defendants also refer to the tied product as "whatever it may be." And make further claims that Plaintiff stated no facts relating to LTSC's market share or dominance (Id.). All of these statements are false or incorrect. The supporting facts are set forth throughout the Amended Complaint. Plaintiff outlined

11

the impact of ASF and LTSC's usurping of its power in paragraphs 23-28 of the

Amended Complaint, among others.

In addition to the above, Defendant LTSC has *trademarked* the phrase

"center of the seduction universe," as the following screenshot clearly indicates. Indeed,

it even turns up in the top position on Google when that phrase is typed in:



The tying arrangement was clearly supported by factual averment in

paragraph 120 of the Amended Complaint, and it "ties" in with the personalized nature of

this industry in that most of the money is made through long-term cultivation of a

customer base and its repeated exploitation through new products. Domination of a

popular internet message board is a literal goldmine, as discovery will conclusively

prove. Defendants do not want this discovery and are doing everything they can to avoid

it. They already know what they are hiding, and Plaintiff has clearly alleged that it is

being hidden. The message boards are crucial to this market dominance because it

12

garners repeated visits and *controls the flow of information which leads to expensive purchasing decisions.* Our courts give antitrust protections to all products and services, even ones far more banal than products with four-figure price tags which will influence everything about a man, from his lifestyle to the "hot babes" he ultimately "lays."

Especially since the release of *The Game,* most "newbies" who look for the real-life characters from the book wind up at Seduction Cartel websites. These men are highly vulnerable, and the "whales" among them are willing to spend thousands of dollars to "fix this area of their life." They are presented with a cross-promoting, mutual admiration society designed to feed their need for acceptance in order to gain commercial acceptance. Simultaneously, they exclude outsiders altogether, like a *cult* which ensures that its members never come into contact with its critics. LTSC, the "center of the seduction universe," and self-proclaimed arbiter of a public newsgroup, is the point of entry into the "community," and its commercial birthplace. By *tying* message-board participation (a "product" one must agree to terms to receive) to advertising on the site, LTSC is creating a "posting tax" on its boards similar to what would occur if railway companies had exclusive control over use of the railroad tracks. The information superhighway is not a private road. This conflict is easily avoided with a neutral policy on posting and accepting sponsors as most publications do with a rate card.

The five tying prongs are met as follows: 1) message board participation by commercial entities is tied to site sponsorship; 2) the denial of certain posting privileges to nonadvertisers is coercive; 3) "center of the universe" as a trademark indicates market power; 4) the anticompetitive effect is to reduce competition through censorship and participation; and 5) the nature of the commerce and its volume is

substantial (*The Game* was a bestseller, and most top gurus earn six figures). Plaintiff has also set forth ample factual basis for these causes of action, such as in paragraphs 99-102 of the Amended Complaint. For a court to allow this tying to continue would be tantamount to giving a green light to "web portals" to become little more than propaganda vehicles.

**b.    Response to "Refusal To Deal" (Group Boycott) Argument.[4]**

Defendants' state that "*In the absence of any purpose to create or maintain a monopoly*, the Sherman Act does not restrict the right of the owner of a business to exercise freely his or her own independent discretion as to the parties with whom he or she will deal." (Brief, p. 16). Defendant then explains that to be liable, LTSC must have the power to control prices or exclude competition," (Ibid, p. 17). It most certain has that power and was built exclusively for that purpose. Defendant claims that "there is no assertion of fact justifying the conclusion that the refusal to deal with [Plaintiff] will result in any anticompetitive effect in the market." (Id.) Plaintiff has shown facts that all but eliminate his own ability to compete, and which artificially reduce competition while inflating market prices into the stratosphere for Cartel-approved "gurus." The market is much, much larger now, and there is more pie to split, but during the incubation phase of this industry, LTSC was the incubator and played God.

LTSC did not merely refuse to deal with Plaintiff, but, as alleged throughout the complaint, refused to do so (and required its customers to refuse to do so), by telling the entire world, repeatedly. It is one thing to refuse to deal with someone, and

---

[4] Courts have held that group boycotts, price fixing, resale price maintenance, tying arrangements and reciprocal dealing constitute per se violations of the Sherman Act. MHB Distrib. Inc. v. Parker Hannifin Corp., 800 F.Supp. 1265, '1268 (E.D.Pa.1992)

14

quite another to attempt to blacklist them. LTSC has clearly done the latter. Does this Court believe for one moment that LTSC would downplay its market influence to its advertisers the way it has tried to with this court? Discovery would reveal a far different tone, especially in its nonpublic communications. The most succinct explanation of why the concerted refusal to deal violates antitrust laws as a *group boycott* can be found in *Practical Lawyer 25* (2000), which states: "Some businessmen seem to believe that they can band together with their competitors and essentially go on strike *as if they were members of a labor union.*" They cannot.

          **c.    Response to "Parker's Specific Issues."**    In short, Defendant argues here that because there are "hundreds" of other gurus on the internet, that Defendant does not affect them (Ibid, p. 17). Defendant affects the entire industry, as a simple reading of *The Game* will attest. Readers of *The Game* are led to believe that mostly Cartel gurus are the "top" gurus, and they were the only ones named in the most influential book ever written about this industry. Part and parcel with exclusion from the Cartel was exclusion from *The Game* and any other media referrals or source citations.

          Defendants claim that there is no essential-facility allegation. (Ibid, p. 18), yet paragraphs 114-116 of the Amended Complaint show otherwise, as Plaintiff "painstakingly" outlined. Paragraph 114 begins with the statement: "the Seduction Cartel has capitalized on public ignorance of the internet and of the nature of the massive interconnection of the Cartel's members, by achieving a collective dominance over the internet seduction-advice industry." This also applies to the claims regarding the advice to "killfile" Plaintiff, as that further evidences the group boycott, yet Defendant attempts to equate that with Plaintiff attempting to "force someone to read his postings." (Ibid, p.

15

19). Defendants are being disingenuous, as they were instructing people how to participate in a group boycott by showing them how to use a killfile. Plaintiff was singled out in a manner consistent with a group boycott.

Finally, it is inaccurate for Defendant to claim that Plaintiff stated that the LAIRs no longer exist. (Id.). He said that they had splintered, but they definitely still exist and still receive kickbacks from the Cartel.

**2.2  Response to Failure to Allege Monopolization Argument** . This is the second paragraph 2 from Defendant. A company need not be a monopoly to run afoul of antitrust law, but merely anticompetitive. Nevertheless, as the Third Circuit had no difficulty noting, Plaintiff alleged just that and "painstakingly" outlined the illegal conduct.

**a-b.  Monopolization/Attempted Monopolization.** Defendants have stated that Plaintiff did not allege that LTSC had monopoly power. (Ibid, p. 20). Plaintiff need only allege, however, *attempted* monopoly power, and the purpose of this lawsuit is to seek damages over the "painstakingly outlined" attempted monopolization that the Third Circuit noted, while it also did not reject the merits, despite knowing of the existence of this case at the time of its ruling. For attempted monopolization, Defendant cites "strength of the competition, probable development of the industry, barriers to entry, nature of the conduct, and the elasticity of consumer demand." These issues are best resolved at trial, but have been sufficiently alleged to get there as well. Defendants have acted like a mafia and a cartel, because they are each one. Regarding the three-pronged test for attempted monopolization (Ibid, p.21), we have the "center of the seduction universe" developing an multimillion-dollar industry by commandeering a public

16

message board, using it to launch a privately owned copy of that board, and by using

mafia and cartel-style enforcement tactics to further its agenda.

### 4. Price-Fixing.

Not surprisingly, Defendants did not address Paragraph 102 of the

Amended Complaint, in which Defendant committed a *per se* antitrust violation of price

fixing. Defendant Valens's own posting was quoted; these are his words:

> I will gladly accept definitions of validating what is to be expected & "industry
> standards" and host such on FS. This would include **common pricing for any
> product or service** based on not just perceived value but actual value, and
> numerous posts to define that value. This would allow ANYONE with an
> interest in ANY PU-related products to have a reference point for relating value
> in offerings in this industry.

Defendants, who all market high-priced seduction products, are clearly

attempting to fix prices in this industry by excluding cheaper competition and attempting

to set the bar high for their own benefit.

### B. RICO CLAIMS

Plaintiff temporarily stands on his Amended Complaint, while arguing that to

dismiss for failure to state a RICO claim without first requiring a RICO case statement

would constitute a denial of his due process. To the extent he needs to, he will argue

against adverse rulings through reconsideration or motions for leave to amend.

### C. LANHAM ACT

Defendant cites the five-pronged test from Ditri v. Coldwell Banker

Residential Affiliates, Inc., 954 F.2d, 869, 872 (3rd Cir. 1992). (Brief, p. 28) Plaintiff has

met this test: 1) the "ASF FAQ" is the false and misleading statement that the Third

Circuit recognized as an allegation to "divert traffic" to LTSC by deceiving the public; 2)

the "ASF FAQ" is inherently deceptive because it is designed to confuse the "newbie"

17

into thinking a public message board has been relocated to a commercial website or even belongs to that site (ASF and mASF are both NNTP-based groups and have near-identical names). Further, the confusion is intensified because USENET contains many "moderated" versions of popular groups. Such a group for ASF would be alt.seduction.fast.moderated; 3) as a "portal," both ASF and LTSC's website get "virgin" traffic that is most confused, most desperate, and most likely to purchase; 4) interstate commerce is inherent in internet commerce, and the internet is run over federal wires; and 5) the likelihood of injury is massive, self-evident, and was "painstakingly" alleged.

Defendant claims that "Unfortunately, Plaintiff does not provide the ASF FAQ and the excerpt he provides fails to explain the claim. *In any event, the language is irrelevant as it does not refer to a commercial product or service*. Moreover, there is no explanation of how this language deceives consumers in making their purchasing decisions" (Ibid, p. 30, Am. Compl., ¶ 33). The FAQ does explicitly refer to Defendants' commercial websites, as shown in the Amended Complaint. A USENET FAQ is considered binding on the group and is enforced by ISPs; a user can lose his access for violating. Defendant LTSC instructs new visitors to ASF, many of whom are also new to USENET, to visit his site before posting there. Meanwhile, those with a financial interest in LTSC use that FAQ to funnel a fresh revenue stream to its site. USENET groups are not designed to be monopolized, and they play a special role in free speech because it is the one place that no one can be completely censored.

*"Returning Fox."* Defendant said it all: "this refers to a posting by Parker that LTSC reproduced on its website. (Ibid, p. 30). Reproduced without permission, and improperly attributed. Defendant then attempts to claim that the misattribution is not

18

misleading, because it does not refer to Plaintiff's goods, services or commercial activities. (Id.) Resemblance to Plaintiff's birth name is irrelevant, as he is clearly known as an author under the name Ray Gordon. The misattribution was also not from the posting, but from LTSC itself in its commentary on the post. The true irony is that LTSC would spend so much time insulting Plaintiff and his work while *stealing* it.

Regarding the "Hateful e-mail" Defendant Ross accused Plaintiff of sending, his claim that it is opinion ignores paragraphs 39(d) and 178 of the Amended Complaint, in which Plaintiff specifically alleged that Defendant Ross was referring to the publication of a fabricated e-mail from Plaintiff to a "Jeri Ryan" in which he threatened her. The entire posting in controversy (which referenced the "hateful e-mail") was included as Exhibit A to the original Complaint. It is Exhibit B here. Defendant LTSC's posting history indicates that the statement was meant as anything but a joke, and many actions support the statement. The "electronic trespass" remarks cited by Defendants (Id), clearly referred to Plaintiff. They constituted a threat of prosecution based on refuted law and further indicate the exclusionary and anticompetitive intent.

## D. UNFAIR COMPETITION

Defendants outline a four-prong test for unfair competition which appears to apply to tortuous interference as well. (Ibid, p. 32). This argument falls flat in light of the high commercial stakes, the nature of Defendants' conduct as outlined throughout the Amended Complaint. Plaintiff has defined the industry, the participation of the parties, the interference, and the harm caused, including the life-changing omission of attribution for the "pivot" concept in *The Game*, at the Cartel's direction, for the benefit of Defendant von Markovic/Mystery Method.

19

## E.    DEFAMATION

Plaintiff stands on his complaint while reserving all rights to raise these issues post ruling on this motion, should the need arise.

## F.    TORTIOUS INTERFERENCE

Defendant claims that Plaintiff has not alleged any underlying acts which give rise to this cause of action. Since the entire purpose of LTSC's creation was to interfere with Plaintiff's business and to exclude him from a self-professed "seduction community," the allegation is sufficiently pled. The harassment, defamation, extortion, and other conduct which was "painstakingly" outlined, as well as the refusal-to-deal allegations, are more than sufficient conduct.

## G.    CIVIL CONSPIRACY

Defendant alleges that there is no cause of action for civil conspiracy in Delaware. (Ibid, p. 34). Oddly, in Akande v. TransAmerica Airlines, Inc. (Del. Chancery #1039-N), that court spelled out the elements of the claim and did not dismiss it as a nonexistent tort.

## CONCLUSION

For the reasons set forth herein, The instant motion should be **denied.**

This the 2nd day of April, 2007.

Gordon Roy Parker, Pro Se
4247 Locust Street, #806
Philadelphia, PA 19104
(215) 386-7366
GordonRoyParker@aol.com

## IN THE U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT
## FROM THE U. S. COURT FOR THE EASTERN DIST. OF PA

### CASE NO.: 06-2246/06-4166

| | | |
|---|---|---|
| **GORDON ROY PARKER**, a.k.a. **Ray Gordon**, d/b/a Snodgrass **Publishing Group**, | : : : : | **PRO SE APPELLANT IN FORMA PAUPERIS FILED UNDER PROTEST** |
| Plaintiff/Appellant, v. | : : : : | **CONSOLIDATED APPEALS:** **#06-2246 and 06-4166** |
| **Learn The Skills Corp.**, et al. Appellees | : : : : | **District Court: #05-cv-2752** **Hon. Harvey Bartle (E.D.Pa.)** |

## PETITION FOR PANEL AND EN BANC REHEARING

Gordon Roy Parker, **Appellant** in the above-styled civil action (Title

VII/ADA), submits this Petition For Panel and En Banc Rehearing.

Appellant:                              Appellees (see cert of service for contact info):

Gordon Roy Parker                  Learn The Skills Corp.
4247 Locust Street, #806           Formhandle@Fastseduction.com
Philadelphia, PA 19104             Thom E. Geiger, Pro Se
(215) 386-7366                     Paul Ross
**Appellant, Pro Se**                  Trustees of the University of Pennsylvania
                                   Matthew S. Wolf, Esquire, Pro Se

FILED: Friday, March 16, 2007

CONCLUSION ........................................................................................................ 8

CERTIFICATE OF SERVICE .................................................................Attachment

PANEL DECISION/JUDGMENT ...........................................................Attachment

EXHIBITS A-1 through A-3 (Death threats from Geiger).................................... End

## TABLE OF AUTHORITIES/CITATIONS

FRAP 35.1(b) ......................................................................................................... 1

FRCP 8(a)........................................................................................................... 1, 6

Toys "R" US, Inc., v. Step Two, S.A., 318 F.3d 446 (3d Cir. 2003)........................ 1

42 PA CSA §5322 et seq........................................................................................ 1

## STATEMENT OF APPELLANT/GROUNDS FOR PETITION

A. **Questions of Exceptional Importance.** Appellant expresses a

reasonable belief that grounds exist under FRAP 35.1(b) for panel rehearing and/or

rehearing en banc because the panel decision involves the following questions of

exceptional importance:

1.   Is Federal Rule 8(a)'s "short and plain" requirement

unconstitutionally vague and overbroad, because it does not specify a page limit?

2.   Do recent **public death threats** made against Plaintiff by

Appellee/Defendant Thom E. Geiger constitute new evidence of fraud upon this

court (related to his involvement, motive, and contacts with Pennsylvania) which

was not previously available?

B. **Conflicts With Precedent.** Appellant further expresses the belief that the

panel decision conflicts with the following binding precedent:

1.   Toys "R" US, Inc., v. Step Two, S.A., 318 F.3d 446 (3d Cir. 2003).

This decision grants liberal jurisdictional discovery once disputed by a Defendant.

Plaintiff had outlined several grounds which either established jurisdiction outright

or which merited discovery.

2.   Pennsylvania's "Long Arm" Statute (42 PA CSA §5322 *et seq*).

Plaintiff had alleged facts which clearly supported invocation of the long-arm

statute, specifically the targeting of individuals in Pennsylvania with the intention

1

of interfering with Plaintiff's offline as well as online activities. The trial court abused its discretion.

C. **Misappropriation Of Law/Overlooked Facts.** Appellant further expresses a reasonable belief that the panel decision overlooked and/or misappropriated the following points of fact and law:

1.    The court ignored Defendant Ross's offering one-hour telephone consultations to residents of Pennsylvania who purchase his "Advanced Home Study Course." (JApp @ A-3).

2.    The court ignored Defendant LTSC's soliciting and receiving contributions from residents of Pennsylvania (JApp @ A-4), and further ignored later pleadings in which Plaintiff explained that Defendant Formhandle is an affiliate of several other seduction gurus, and gets paid sales commissions on products which are also sold to Pennsylvania residents (Japp@A11). Finally, Plaintiff discovered upon denial of his motion for reconsideration, evidence that Defendant LTSC was concealing its attempts to market its own product to residents of Pennsylvania by advising them to have third parties purchase it for them.

3.    The court ignored Defendant Geiger's literal cyberstalking of Plaintiff, and publication of a website on the ray-gordon.com domain designed to harm Plaintiff not only online, but offline as well, and which encouraged its readers to contact everyone from law enforcement to mental health agencies, to

2

news media and Plaintiff's employers or potential employers to "warn" them about him. As will be shown here, Defendant Geiger has felt so empowered by his victory in this court that he has felt empowered to go so far as to <u>publicly threaten</u> <u>to kill</u> Plaintiff on the very newsgroup he claimed he was not a part of until sued. His postings, and the premise he uses for them, show a clear intent to manipulate others and the system similar to the way he has manipulated this one.

    4.    The Panel stated that the claim against Defendant Penn lacked "justifiable reliance." Appellant is arguing that since the statements were made under oath during a hearing in federal court, that not only did Plaintiff <u>rely</u> on those statements, he was bound to by the court. Otherwise, the Panel has effectively stated that its lower courts' own proceedings and evidence are not reliable, something that is obviously not the case since then the system would be unable to function as nothing would carry any legal weight.

    5.    The court ignored the <u>crime-fraud exception</u> that should have applied to Defendant Wolf's conduct in aiding and abetting a criminal enterprise, as well as the fact that he moved the court for "clients" he did not only not represent, but who are alleged co-conspirators of those he did represent.

## HISTORY OF THE CASE

The history of this case was outlined in the Brief For Appellant. The only "new history" of this case deals with recent internet postings from Defendant

3

Geiger (attached hereto as Exhibits A1-A3). Following are excerpts from the

three postings which included the following statements directed at Plaintiff:

> 1. *For whatever limited time you have left in this world, you need to remember, the first time you convince a person you're a threat to their family, and they're able to convince 12 people they'd feel the same way, you could be toast and they could walk.* (see Exhibit A-1)
>
> 2. *I bought a new gun, taught my family how to use it and alerted the local police about Parker's history of threatening children.* Parker, Speeding, Panda Joe, whatever name he's using, I don't like people threatening my family. "If it were legal" bullshit makes no difference to me. Illinois, Oklahoma, Alabama, Pennsylvania, Berlin, Tokyo, wherever, makes no difference. *In SEA, I killed enemy combatants in two countries. I will kill any asshole stupid enough to threaten my family's safety. That's a promise and a guarantee.*
>
> 3. *If I wanted to impress you, you'd be dead right now.*
>
>    > Ditto for your thinly veiled threats. (quoting "Speeding")
>
>    *What's veiled? I say it straight up. Anybody who's a threat to my family's safety will die. Plain and simple.*

As alleged, "painstakingly" as this court said, throughout the Brief for

Appellant, Defendant Geiger is the "enforcement arm" of the Seduction Mafia, in

addition to his function as "loose cannon" and "legal shield." Believing himself to

be "in the clear" now, he has "let loose" on Plaintiff on USENET and the ASF

newsgroup, repeatedly accusing him of lying under oath, threatening him and his

family with legal action based on this false premise, and making multiple false

4

statements concerning Plaintiff. This behavior, while highly questionable, was nothing compared to the three posts of March 12, 2007 which are quoted above.

In the above postings, Defendant Geiger had become increasingly frustrated with a poster to ASF known as "Speeding." "Speeding" is a leader of the "Oklahoma Seduction Lair," a group of men part of the larger "seduction community" which has been the center of this turf war. Speeding began questioning several of the claims which were also questioned in this lawsuit, including why Defendant LTSC promoted its commercial website as if it were a newsgroup, and why other commercial alternatives were not given equal time. This caused great frustration among the Seduction Mafia and Cartel, and the usual suspects chimed in to accuse "Speeding" of either being Plaintiff in disguise, or of simply being "as stupid as" Plaintiff.

Defendant Geiger, sensing his masters' displeasure with "Speeding," began responding to his postings in an increasingly hostile fashion, until eventually he threatened Speeding and offered to meet him face-to-face. Speeding called Geiger's bluff, and Geiger never followed through. What Geiger did do, however, in the past week or two, was to 1) accuse Speeding of being Plaintiff; 2) accuse Speeding of releasing "private information" about Mr. Geiger; 3) claim that he fears for his family's safety due to Plaintiff's conduct (which was Speeding's conduct); 4) mention that he recently purchased a gun; and 5) inform Plaintiff that he will kill anyone who he believes is a threat to his family's safety. He then 6)

5

stated that Plaintiff had "limited time...left in this world" and 7) claimed that by saying he felt a threat to his family, that the jury would somehow acquit him.

Appellant is now seeking relief from a court which has ignored death threats and defamation against Plaintiff, while in a previous case that it did not see its way clear to make precedential, despite it going against precedent, it decided that the mere presence of bipolar disorder brings one's employability into question (as it said Plaintiff's did), while also refusing to consider actual employment as an absolute defense against any charge of potential unemployability. This brief and all other briefs until further notice are being filed under protest against a judicial bias that is having increasingly disturbing, unjust, and dangerous consequences.

## ARGUMENT

A. Federal Rule 8(a) is unconstitutionally vague and overbroad.

Appellant argued that the "short and plain" requirement for federal pleadings is unconstitutionally vague and overbroad (BFA, p. 19). The Panel completely ignored this constitutional question, despite the fact that if Appellant's argument holds sway, that would mandate leave to amend the complaint with a page-limit guideline.

B. Jurisdictional Discovery Was Proper. Appellant restates his arguments from his BFA as if fully set forth verbatim herein.

C. Detective Blackmore Could Conspire With Penn And Wintermute. See BFA, p. 15. While he may have been receiving his paychecks from Penn,

6

Detective Blackmore was still a public servant and therefore capable of conspiracy with Penn.

D. Judicial Immunity Should Not Apply To Defendant Wolf. As argued (BFA, p. 14), Defendant Wolf was acting as a Seduction Mafia operative, using money generated by the other defendants' activities that was funneled through LTSC to pay for his representation. His motion to dismiss for all defendants was intentional and designed to empower the operatives to act out against Plaintiff, while providing the pecuniary benefit of free legal services in return for their work. The "crime-fraud" exception should unquestionably apply here.

E. The Fraud Claim Was Not Time-Barred. See BFA, p. 15. The court ignored the facts, specifically the restated fraud within the statute of limitations.

F. The RICO And Civil Conspiracy Claims Were Properly Pled. See BFA, p. 16. For further insight into Defendant Geiger's motivations, see Exhibits A1-A3.

G. The Court Abused Its Discretion In Denying Leave To Amend. See BFA, p. 18. The jurisdictional facts as outlined in the Complaint and subsequent pleadings were more than sufficient to plead for jurisdiction, and to justify jurisdictional discovery. This was not the "fishing expedition" that the lower court characterized it as, especially since internet companies with global audiences and consumer bases are involved.

7

H.   Defendant Geiger committed fraud upon the court.   Appellant had

"painstakingly" noted that Defendant Geiger has been stalking and threatening

Plaintiff online as far back as 1998 (JApp @. A-28, A-32, A-36), and his recent

conduct demonstrates he is not the disinterested domain name owner he has

portrayed himself as.  His conduct is consistent with that of the RayFAQ

publication, and in both cases, target Plaintiff in his home jurisdiction.

## CONCLUSION

For the reasons set forth herein, the instant petition should be granted.

Filed under protest this 16th day of March, 2007.

Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA 19104
(215) 386-7366
GordonRoyParker@aol.com
Appellant, Pro Se

8

Path:
border1.nntp.dca.giganews.com!nntp.giganews.com!newshub.sdsu.edu!news.astraweb.com!router1.astra
web.com!sn-xt-sjc-05!sn-xt-sjc-07!sn-post-sjc-01!supernews.com!corp.supernews.com!not-for-mail
From: Thom E. Geiger <ThomEGeiger@Gmail.com>
Newsgroups: alt.seduction.fast
Subject: Re: Not worth the trouble.....
Date: Mon, 12 Mar 2007 17:41:58 -0600
Organization: Posted via Supernews, http://www.supernews.com
Message-ID: <ijobv215r2eeq7h1nb3115s6cdttluomve@4ax.com>
Reply-To: ThomEGeiger@Gmail.com
References: <an.old-F8F760.10450910032007@news.isp.giganews.com>
<MsHIh.17558$S%2.12459@newsfe06.phx> <an.old-
8A7AB5.20151010032007@news.isp.giganews.com>
<ven8v2plkggc45632o6bncr234s7n6ihcc@4ax.com> <an.old-
19D3A2.22113411032007@news.isp.giganews.com>
<d2e9v21is9moaplbejcgs1vh0e3kppi3ek@4ax.com> <45f4c4ae$0$17002$4c368faf@roadrunner.com>
<kjo9v2hkmkm389gp974m6e0ng9hou8mdir@4ax.com> <1173712379_20495@sp6iad.superfeed.net>
<JujJh.42675$115.32915@newsfe10.phx>
X-Newsreader: Forte Agent 3.1/32.783
MIME-Versiou: 1.0
Content-Type: text/plain; charset=us-ascii
Content-Transfer-Encoding: 7bit
X-Complaints-To: abuse@supernews.com
Lines: 37
Xref: number1.nntp.dca.giganews.com alt.seduction.fast:318430

On Mon, 12 Mar 2007 21:20:41 GMT, Speeding <nonya@biz.org> wrote:

>Thom seems to have a
>much greater interest in taking things offline than I do. Maybe even more
>than Ray does.

Bullshit. Parker, [you, under your Raygun Gordon nym], went after my family, my friends, my employer-
not just me. I don't give a rat's ass about your family [other than gettting anybody supporting your legal
shit into a courtroom], your friends or your employer, Parker, where you live, work, smoke dope or eat
lunch, but you [under this Speeding nym] have gone far out of your way to drops hints, more than a few
times, you know things about my personal private life that makes me think my family is not safe. I know
you want me to think this and that's what you've been hinting at.

Big mistake. Don't even consider it. Remember, it's not what a person is charged with, it's what 12 people
think they would have done in that person's situation. *For whatever limited time you have left in this
world, you need to remember, the first time you convince a person you're a threat to their famly, and
they're able to convince 12 people they'd feel the same way, you could be toast and they could walk.*

Thom E. Geiger, Domain Name Owner
ChewOnThis.Org
(the Official GRP NewsLoon tracking website)

Ray-Gordon.com
Ray-Gordon.net
Newsloon.com

Don't buy anything from any business trying to use SLAPP lawsuits to
stop criticism of the company, owners, officers or products.

Guido Gump Parker blames a baseball bat death threat on his own mother, Penny "Skull Crusher" Parker:
>The "baseball bat" remark was made by my mom in response to a gymnastics
>groupie who harassed half of the national team, with help from several chat
>hosts and gymnastics coaches and hackers.

**Exhibit A-2**

Path:

border1.nntp.dca.giganews.com!nntp.giganews.com!aotearoa.belnet.be!news.belnet.be!newsgate.cistron.n
l!xs4all!news2.euro.net!138.199.65.86.MISMATCH!sn-xt-ams-06!sn-xt-ams-05!sn-ams!sn-feed-ams-
01!sn-ams!sn-feed-ams-03!su-post-ams-02!sn-post-sjc-01!supernews.com!corp.supernews.com!not-for-
mail

From: Thom E. Geiger <ThomEGeiger@Gmail.com>

Newsgroups: alt.seduction.fast

Subject: Re: 3/2/07 JUDGMENT affirmed.  Costs taxed against Gordon Roy Parker,  (clc) [06-2246 06-
4166]

Date: Mon, 12 Mar 2007 00:00:16 -0600

Organization: Posted via Supernews, http://www.supernews.com

Message-ID: <kjo9v2hkmkm389gp974m6e0ng9hou8mdir@4ax.com>

Reply-To: ThomEGeiger@Gmail.com

References: <135Ih.16751$Xk.13363@newsfe17.phx> <an.old-
EB2D24.02501809032007@news.isp.giganews.com> <N2mIh.34785$7g3.1275@newsfe14.phx>

<an.old-F8F760.10450910032007@news.isp.giganews.com>

<MsHIh.17558$S%2.12459@newsfe06.phx> <an.old-
8A7AB5.20151010032007@news.isp.giganews.com>

<ven8v2plkggc45632o6bncr234s7n6ihcc@4ax.com> <an.old-
19D3A2.22113411032007@news.isp.giganews.com>

<d2e9v21is9moaplbejegs1vh0e3kppi3ek@4ax.com> <45f4c4ae$0$17002$4c368faf@roadrunner.com>

X-Newsreader: Forte Agent 3.1/32.783

MIME-Version: 1.0

Content-Type: text/plain; charset=us-ascii

Content-Transfer-Encoding: 7bit

X-Complaints-To: abuse@supernews.com

Lines: 38

Xref: number1.nntp.dca.giganews.com alt.seduction.fast:318365

On Sun, 11 Mar 2007 23:10:59 -0400, "HeeroYuy" <h@h.h> wrote:

>I don't know how patient I'd be if that happened to me. I probably wouldn't
>be. Anyway, as to Speeding; I'd like to state, for the record, that I doubt
>Gordon is knowledgeable enough or clever enough to spoof headers.

I don't know if anybody else has picked up on it, but in his messages to the NG, the "Speeding" nym has
been steadily dropping hints that he knows things about me and my personal life that regular people on
usenet wouldn't know. Now I know he's been checking up on me. That causes me concerns about my
family's safety. I had the same concerns when Parker started threatening my family when the lawsuits first
started. *I bought a new gun, taught my family how to use it and alerted the local police about Parker's
history of threatening children.*

Parker, Speeding, Panda Joe, whatever name he's using, I don't like people threatening my family. "If it
were legal" bullshit makes no difference to me. Illinois, Oklahoma, Alabama, Pennsylvania, Berlin,
Tokyo, wherever, makes no difference. *In SEA, I killed enemy combatants in two countries. I will kill
any asshole stupid enough to threaten my family's safety. That's a promise and a guarantee.*

Thom E. Geiger, Domain Name Owner
ChewOnThis.Org

3

(the Official GRP NewsLoon tracking website)

Ray-Gordon.com
Ray-Gordon.net
Newsloon.com

Don't buy anything from any business trying to use SLAPP lawsuits to
stop criticism of the company, owners, officers or products.

Guido Gump Parker blames a baseball bat death threat on his own mother, Penny "Skull Crusher" Parker:
>The "baseball bat" remark was made by my mom in response to a gymnastics
>groupie who harassed half of the national team, with help from several chat
>hosts and gymnastics coaches and hackers.

Path:
border1.nntp.dca.giganews.com!border2.nntp.dca.giganews.com!nntp.giganews.com!news.maxwell.syr.e
du!sn-xt-sjc-05!sn-xt-sjc-01!sn-post-sjc-02!sn-post-sjc-01!supernews.com!corp.supernews.com!not-for-
mail
From: Thom E. Geiger <ThomEGeiger@Gmail.com>
Newsgroups: alt.seduction.fast
Subject: Re: 3/2/07 JUDGMENT affirmed. Costs taxed against Gordon Roy Parker,  (clc) [06-2246 06-
4166]
Date: Mon, 12 Mar 2007 17:56:49 -0600
Organization: Posted via Supernews, http://www.supernews.com
Message-ID: <afpbv2psvqd2lah4c60mkntf4ur668a1o7@4ax.com>
Reply-To: ThomEGeiger@Gmail.com
References: <N2mIh.34785$7g3.1275@newsfe14.phx> <an.old-
F8F760.10450910032007@news.isp.giganews.com> <MsHIh.17558$S%2.12459@newsfe06.phx>
<an.old-8A7AB5.20151010032007@news.isp.giganews.com>
<ven8v2plkggc45632o6bncr234s7n6ihcc@4ax.com> <an.old-
19D3A2.22113411032007@news.isp.giganews.com>
<d2e9v21is9moaplbejegs1vh0e3kppi3ek@4ax.com> <45f4c4ae$0$17002$4c368faf@roadrunner.com>
<kjo9v2hkmkm389gp974m6e0ng9hou8mdir@4ax.com> <a%fJh.26272$907.9829@newsfe13.phx>
X-Newsreader: Forte Agent 3.1/32.783
MIME-Version: 1.0
Content-Type: text/plain; charset=us-ascii
Content-Transfer-Encoding: 7bit
X-Complaints-To: abuse@supernews.com
Lines: 64
Xref: number1.nntp.dca.giganews.com alt.seduction.fast:318431


On Mon, 12 Mar 2007 17:22:14 GMT, Speeding <nonya@biz.org> wrote:

The sites mentioned have no information you've hinted at. Try again.

>I couldn't give two shakes of shit less about your family. Jesus, man...
>take a pill. Leave your macho bullshit at the door, because it doesn't
>impress me.

*If I wanted to impress you, you'd be dead right now.*

> Ditto for your thinly veiled threats.

*What's veiled? I say it straight up. Anybody who's a threat to my
family's safety will die. Plain and simple.*

If you're not a threat to my family, then why should you think it
applies to you? Is that a Freudian slip, Parker?

>You're not man enough to
>file a lawsuit against Parker.

So you're publicly saying anybody in this newsgroup, or anywhere,

1

who's been sued by the pedo and hasn't sued him in return, is "not man enough". Good way to make friends and influence people, einstein.

>You're not man enough to even pick up beer
>cans.

What the hell does that mean? Stop babbling.

>So, I don't think you're man enough to make a decent threat against
>me, either.

Again, you're taking my statement, that I will kill anybody who threatens my family, as a threat against you. That looks and sounds like an admission to me.

>And I don't bother with making threats. That's juvenile.

I never said it was a threat, I said it was a guarantee. Manufacturers don't make threats, they give guarantees. I gave a guarantee.

> Though
>perhaps I shouldn't say that, given your predilection to topics of
>pedophilia.

You have me confused with that reflection in your mirror, Parker. Do you need the five hundred or so messages you posted about nubile preteen gymnasts quoted here to remind you?

Thom E. Geiger, Domain Name Owner
ChewOnThis.Org
(the Official GRP NewsLoon tracking website)
Ray-Gordon.com
Ray-Gordon.net
Newsloon.com

Don't buy anything from any business trying to use SLAPP lawsuits to stop criticism of the company, owners, officers or products.

Guido Gump Parker blames a baseball bat death threat on his own mother, Penny "Skull Crusher" Parker:
>The "baseball bat" remark was made by my mom in response to a gymnastics
>groupie who harassed half of the national team, with help from several chat
>hosts and gymnastics coaches and hackers.

2

**IN THE U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT
FROM THE U. S. COURT FOR THE EASTERN DIST. OF PA**

| | | |
|---|---|---|
| **GORDON ROY PARKER, a.k.a. Ray Gordon, d/b/a Snodgrass Publishing Group,** | : : : | **PRO SE APPELLANT IN FORMA PAUPERIS FILED UNDER PROTEST** |
| Plaintiff/Appellant, v. | : : : : | **CONSOLIDATED APPEALS:** **#06-2246 and 06-4166** |
| **Learn The Skills Corp.**, et al. Appellees | : : : : | **District Court: #05-cv-2752** **Hon. Harvey Bartle (E.D.Pa.)** |

## CERTIFICATE OF SERVICE

I, Gordon Roy Parker, Appellant in the above-styled action, hereby certified that I

have served **two** true and correct copies of the foregoing **Petition For Rehearing** (and one Joint

Appendix) on each Appellees/Defendant, by **regular mail,** as follows:

Trustees of the Univ. of PA
Dennis G. Young (Counsel)
Montgomery, McCracken,
Walker & Rhoads
123 South Broad St., 28th Fl.
Philadelphia PA 19109

Mary Kay Brown
Buchanan Ingersoll, PC
1835 Market Street, 14th Floor
Philadelphia, PA 19103
Attorney For Paul Ross

Matthew S. Wolf, Esq.
241 Kings Highway East
Haddonfield, NJ 08033
Attorney For LTSC &
Defendant

Formhandle@fastseduction.com
Learn The Skills Corp.
955 Massachusetts Ave, #350
Cambridge, MA 02139

David L. Finger
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, #725
Wilmington, DE 19801-1155
Attorney For LTSC and Ross

Thom E. Geiger (Pro Se)
817 North McCrary Road
Columbus, MS 39702-4320

This the 16th day of March, 2007.

Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA 19104
(215) 386-7366
GordonRoyParker@aol.com
Appellant, Pro Se

**NOT PRECEDENTIAL**

## UNITED STATES COURT OF APPEALS
### FOR THE THIRD CIRCUIT

NOS. 06-2246 & 06-4166 (Consolidated)

GORDON ROY PARKER, doing business as SNODGRASS
PUBLISHING GROUP also known as RAY GORDON

v.

LEARN THE SKILLS CORP.; FORMHANDLE@FASTSEDUCTION.COM;
THOM E. GEIGER; PAUL ROSS also known as ROSS JEFFRIES
also known as EROSLA77@AOL.COM; TRUSTEES OF
UNIVERSITY OF PENNSYLVANIA; MATTHEW S. WOLF, ESQ.

Gordon Roy Parker,
Appellant

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civ. No. 05-cv-02752)
Chief District Judge: Honorable Harvey Bartle III

Submitted Under Third Circuit LAR 34.1(a)
February 26, 2007

BEFORE: McKEE, AMBRO and STAPLETON, CIRCUIT JUDGES

(Filed March 2, 2007)

OPINION

## PER CURIAM

Gordon Roy Parker, acting pro se, appeals an order of the United States District Court for the Eastern District of Pennsylvania dismissing his complaint for failing to state a claim upon which relief can be granted against two defendants and for lack of personal jurisdiction over the remaining defendants. In a separately filed appeal, he seeks review of the District Court's denial of his motion for reconsideration and motion to vacate judgment. These appeals have been consolidated for all purposes.

Parker's complaint alleges that defendants belong to a criminal enterprise designed to control the market for online advice about how to seduce women. As described more fully in the District Court's opinion and in painstaking detail in Parker's amended complaint, defendants allegedly diverted traffic from a public online "USENET" group to a private online discussion forum that they controlled, harassed plaintiff and attempted to undermine his reputation, and hindered his attempts to defend himself against these attacks. Parker alleges that these actions violated, inter alia, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), federal antitrust statutes, and state common law prohibitions on civil conspiracy, abuse of process, and fraudulent misrepresentation.

We exercise jurisdiction pursuant to 28 U.S.C. § 1291. We undertake plenary review of the District Court's dismissal under Rule 12(b)(6), accepting as true all factual allegations in the complaint and viewing them in the light most favorable to the non-moving party. See AT&T Corp. v. JMC Telecom, LLC, 470 F.3d 525, 529 (3d Cir.

2

2006). Our review of the District Court's rulings on personal jurisdiction is likewise plenary, except to the extent that they involved factual findings, which are reviewed for clear error. See Pennzoil Prods. Co. v. Colelli & Assocs., Inc. 149 F.3d 197, 200 (3d Cir. 1998). We review the District Court's denial of reconsideration for abuse of discretion. See Alston v. Parker, 363 F.3d 229, 233 (3d Cir. 2004).

The amended complaint fails to state a claim upon which relief may be granted against defendant Matthew Wolf. The RICO, civil conspiracy, and abuse of process claims against him all rely on allegations that Wolf improperly moved to dismiss an earlier complaint filed in the Eastern District of Pennsylvania against many of the defendants involved in this case. Civ. No. 03-cv-06936. We agree with the District Court's conclusion that the challenged behavior was properly within the scope of Wolf's representation of his clients, and that it fails to support either the federal statutory or state law tort claims against him. See Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297 (3d Cir. 2003).

The District Court also properly dismissed the claims that the Trustees of the University of Pennsylvania violated RICO and engaged in a civil conspiracy and fraudulent misrepresentation. These claims arise from the University's alleged refusal to disclose the identity of a student who Parker claims was involved in the plots against plaintiff. We essentially agree with the reasoning of the District Court. The conspiracy claim fails because the only alleged participants are the University and one of its employees, and absent narrow exceptions not present here, agents of an entity cannot

3

conspire with their employer. See Gen. Refractories Co., 337 F.3d at 313-14. Even if the fraudulent misrepresentation claim survived scrutiny under Fed. R. Civ. P. 9(b), the complaint fails to allege all the elements of the claim, notably justifiable reliance. See, Porreco v. Porreco, 811 A.2d 566, 570-71 (Pa. 2002). As the District Court described, Parker's RICO claim against the University is also fatally flawed.

The District Court lacked personal jurisdiction over the remaining defendants. None of these defendants resides in Pennsylvania or has a "continuous and substantial" connection to the state, and none has sufficient minimum contacts with Pennsylvania to "reasonably anticipate[] being haled into court there." Pennzoil, 149 F.3d at 200-201 (citations omitted). As explained by the District Court, the generalized allegations of defendants' contact with Pennsylvania contained in Parker's amended complaint and pleadings are insufficient to meet his burden of proof on the jurisdictional issue. See Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66-67 (3d Cir. 1984). Nor are they sufficient to make out a prima facie case that could justify jurisdictional discovery. See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997).

Finally, we find no abuse of discretion in the District Court's denial of Parker's motions for reconsideration and to vacate, which identified neither errors in the District Court's order nor any other basis to justify revisiting that order.

Accordingly, we will affirm the order of the District Court.

4



Exhibit A
Abuse Report of July 27, 2005

Subj: USENET Abuse: Demand for Preservation of Evidence
Date: 7/27/2005 1:32:02 AM Eastern Standard Time
From: LeModernCaveman
To: abuse@comcast.net
CC: ray@cybersheet.com

Dear Comcast Abuse:

Please retain all evidence relating to this internet posting and its author indefinitely, pursuant to Federal Rule 37. I currently have a lawsuit pending against the author of the message (Parker v. LTSC, E.D.Pa. #05-cv-2752). I may also be filing a private criminal complaint regarding this post.

The alleged e-mail from me is fraudulent and was never sent by me. It is an attempt to defame me and incite others to harass me. Please be advised that I fear for my safety as a direct consequence of this lie.

Your assistance is appreciated.

Sincerely

Gordon Roy Parker
a/k/a "Ray Gordon"

Path: twister.nyc.rr.com!cyclone.rdc-
nyc.rr.com!news.maxwell.syr.edu!newscon02.news.prodigy.com!newscon06.news.prodigy.com!prodigy.net!border
1.nntp.dca.giganews.com!nntp.giganews.com!local01.nntp.dca.giganews.com!nntp.comcast.com!news.comcast.com
.POSTED!not-for-mail
NNTP-Posting-Date: Wed, 27 Jul 2005 01:04:43 -0500
User-Agent: Microsoft-Entourage/10.1.6.040913.0
Date: Tue, 26 Jul 2005 23:04:40 -0700
Subject: Re: "Jack Ryan" never existed
From: Ross <notmyemail@address.com>
Newsgroups: alt.seduction.fast
Message-ID: <BF0C7208.15265%notmyemail@address.com>
References: <osyFe.3500$Ow4.1455136@twister.nyc.rr.com> <INF1GX5238560.4338078704@reece.net.au>
Mime-version: 1.0
Content-type: text/plain; charset="US-ASCII"
Content-transfer-encoding: 7bit
Lines: 102
NNTP-Posting-Host: 24.126.247.39
X-Trace: sv3-
QqWENF9YIJpIFLcSp+5+b6maQm6rEiPuZxHEDPL63t8SnGy+Zxzx0YCiXcQ6sV8+LHFL6pyXmyhn9N0!1c00
u515yyp2uGexleBROdhxcvXSM9WKYNcV5rXQtZcTNlK78k!C4svJ/ADKIaiygI4GPwqzL6Rs!m4k11hE=
X-Complaints-To: abuse@comcast.net
X-DMCA-Complaints-To: dmca@comcast.net
X-Abuse-and-DMCA-Info: Please be sure to forward a copy of ALL headers
X-Abuse-and-DMCA-Info: Otherwise we will be unable to process your complaint properly
X-Postfilter: 1.3.31
Xref: cyclone.rdc-nyc.rr.com alt.seduction.fast:206072

in article INF1GX5238560.4338078704@reece.net.au, EditorialStaff at
Use-Author-Address-Header@[127.1] wrote on 7/26/05 7:24 PM:

I swear to Jeri; if Mr. Parker DOES sue me, he will be reading this piece of sick, twisted, hateful email that he sent, into the record when I take his deposition.

Ray, you are sick, twisted, evil bastard and I am going to clean your clock in court.

RJ

> Gordon Roy Parker wrote:
>>
>> He was just a convenient diversion created by someone
>> who didn't want to take credits for the threats that
>> were made under that name.
>
> We received an interesting email a few days ago, from someone
> who was connected to Dr. Ryan, and with that person's permission,
> we post it here, so that everyone will know just what Mr. Parker
> is attempting to do here.
>
> --------------------------------------------------------------------
> X-Apparently-To:   jerisnow@****.com
> X-Date:    Tue, 21 Jume 2005 01:32:39 -0500
> X-Originating-IP:   [24.193.236.213]
> Return-Path:   <ray@cybersheet.com>
> Authentication-Results:   mta221.mail.dcn****.com
>   from=twister.nyc.rr.com 1119348282 24.193.236.213
>   (Tue, 21 Jun 2005 06:04:42 EDT)
> Received:   from 24.193.236.213 by mta221.mail.dcn.****.com with
>   SMTP; Tue, 26 Jul 2005 18:32:39 -0700
> Received:   from ([24.193.236.213]) by
>   omta03sl.mx.bigpond.com with SMTP id
>   <20050727013237.WFYU21373.omta03sl.mx.bigpond.com@workshop>;
>   Wed, 27 Jul 2005 01:32:37 +0000
> To:   jerisnow@****.com
> From:   "Ray Gordon" <ray@cybersheet.com>
> Date:   21 Jun 2005 01:33:10 -0000
> Message-ID:   <DGOJ7MAE38560.3980324074@twister.nyc.rr.com>
> Subject: You had better watch out BITCH.....
> --
>
> I'm tired of all the men who are attacking me in your name
> and with your approval, and I am going to fix your CUNT ass soon.
> You had better watch out, because I am going to come and find you,
> and show you what I think of you and your dead husband.
>
> Georgia is only a plane ride away.......
>
> You think you can get away with harassing me, threatening me and
> hiding behind that dead asshole husband of yours, but you
> can't. Your husband was a rapist, and you are nothing but a SLUT for
> having married a player like him. Your actions show your poor
> judgment picking men, and they reveal you to be a PATHETIC little
> SLUT the world would definitely be better off without.
>
> If I ever hear another word about "Jack Ryan" ever again, I am

> going to shut up that mouth of yours, and the pussy mouth of everyone
> who you have gotten to attack me. He's DEAD, rotting in a grave,
> and the worms are eating up all you love. That make you feel good
> CUNT? I hope so.
>
> Women like you NEVER find good men. All SLUTS like you can get are
> players and rapists. There's a reason for that.
>
> I am hereby officially warning you that any more attacks on me will
> cause great harm to come down on you. You have been warned. Cease and
> Desist IMMEDIATELY....
>
> Ray Gordon
>
> --------------------------------------------------------------------------
>
> We wonder what could be done about this? We do know that an attorney
> representing the person in question has contacted law enforcement in
> Philadelphia, in an attempt to forestall this kind of behavior in the
> future. We wonder if it won't take more than that. Perhaps someone
> actually paying a visit to Philadelphia to explain the consequences
> for actions like this, in person...
>
> We are watching this situation, very carefully.
>
> --
> The Editorial Staff
> -----
> A quote from Gordon Roy Parker, AKA "Ray Gordon":
> "(For a dissenting opinion on my character, please visit
> the following website: http://members.tripod.com/~rayfaq.html)*
> This site contains many lies about me, but as a defender of
> free speech I fully support its right to exist."
> -Message-ID: <6ertau$76b$1@nnrp1.dejanews.com>
>
> *The original RayFAQ was removed from the internet as a
> result of dozens of complaints from Gordon Roy Parker.
>
> Freedom of Speech is WORTHLESS without Social Responsibility.
>
>
>

**IN THE UNITED STATES DISTRICT COURT**
~~EASTERN~~ DISTRICT OF ~~PENNSYLVANIA~~ *DELAWARE*

| | | |
|---|---|---|
| **GORDON ROY PARKER**, a.k.a. **Ray Gordon,** d/b/a **Snodgrass Publishing Group,** 4247 Locust Street, #806 Philadelphia, PA 19104 Plaintiff, v. **Learn The Skills Corp.**, et al. Defendants. | : : : : : : : : : : : : : | *06-cv-229* **CASE NO.: ~~05-cv-2752~~** **Hon. ~~Harvey Bartle, III~~** *SLR* |

## ORDER

AND NOW, this ___ day of _____, 2007, in consideration of **Defendants'**

**LTSC, Ross et al.'s Motion To Dismiss**, and all responses thereto, the motion is **denied.** A

memorandum opinion is attached.

SO ORDERED.

_____
J.

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **GORDON ROY PARKER**, a.k.a. **Ray Gordon**, d/b/a **Snodgrass Publishing Group,** | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | **CASE NO.: 06-cv-229** |
| **Learn The Skills Corp.**, et al. | : | |
| | : | **Judge: SLR** |
| Defendants. | : | |
| | : | |

## CERTIFICATE OF SERVICE

I, **Gordon Roy Parker,** Plaintiff in the above styled action, hereby certify that I have

served a true and correct copy of the foregoing **Plaintiff's Opposition to Defendants' Motion**

**To Dismiss** on all defendants' counsel by **regular mail**, as follows:

**David L. Finger**
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155
Attorney For Defendants LTSC,
 Ross, And Straightforward

**Ray Devans** (one copy)
**Jay Valens** (one copy)
Learn The Skills Corp.
955 Massachusetts Avenue, #350
Cambridge, MA 02189
Additional Defendants

Allen "Gunwitch" Reyes
123 South Laguna Street
Klamath Falls, OR 97601
Pro Se Defendant

**Michael "Miguel" Marcos**
14200 Beachmere Drive
Chester, VA 23831
Pro Se Defendant

**Mystery Method Corp.** (one copy)
**Erik von Markovic** (one copy)
1564 Pacific Beach Drive
San Diego, CA 92109
Additional Defendants

This the 2nd day of April, 2007.

Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA 19104
(215) 386-7366
GordonRoyParker@aol.com
Plaintiff, Pro Se