IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GORDON ROY PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-229 SLR |
| | ) | |
| LEARN THE SKILLS CORP., *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY BRIEF OF DEFENDANTS LEARN THE SKILLS CORP.,
JAY VALENS, RAY LEVANS, PAUL J. ROSS AND
STRAIGHTFORWARD, INC. IN SUPPORT OF THEIR
AMENDED MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION AND FAILURE TO STATE A CLAIM**

<div style="margin-left:40%;">

David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155
(302) 884-6766
Attorney for defendants Learn the Skills
Corp., Jay Valens, Ray Levans, Paul J. Ross
and Straightforward, Inc.

</div>

Dated: April 10, 2007

# TABLE OF CONTENTS

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.     THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A
       CLAIM.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

       A.     ANTITRUST CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

              1.     Parker Has Failed to Allege a Combination or Conspiracy. . . . . . . 1

              2.     Parker Has Failed to Allege an Anticompetitive Effect. . . . . . . . . 2

              3.     Parker Has Failed to Allege Market or Monopoly Power. . . . . . . 2

              4.     Parker Has Failed to Plead a Valid Tying Claim. . . . . . . . . . . . . . 3

              5.     Parker Has Failed to Plead a Valid Refusal to Deal Claim. . . . . . 5

              6.     Parker Has Failed to Plead a Valid Claim of Price Fixing.. . . . . . . 6

              7.     Parker Has Failed to Alleged a Valid Claim of Monopolization or
                     Intent to Monopolize. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

              8.     Parkers Specific Issues Are Not Violations of Antitrust Law. . . . . 7

       B.     RICO CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       C.     LANHAM ACT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       D.     STATE LAW CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

II.    THE COURT SHOULD DISMISS DEFENDANTS JAY VALENS, RAY LEVANS,
       PAUL ROSS AND STRAIGHTFORWARD, INC. DUE TO LACK OF PERSONAL
       JURISDICTION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       A.     THERE IS NO BASIS FOR PERSONAL JURISDICTION UNDER
              DELAWARE'S LONG-ARM STATUTE. . . . . . . . . . . . . . . . . . . . . . . . 12

       B.     PARKER HAS FAILED TO ESTABLISH PERSONAL JURISDICTION
              UNDER RICO. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        C.     THE COURT SHOULD NOT PERMIT JURISDICTIONAL DISCOVERY
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

III.    THE COURT SHOULD ENTER AN ORDER PROTECTING THE DEFENDANTS
      FROM PARKER'S CONTINUING VEXATIOUS LITIGATION.. . . . . . . . . . 16

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

## Cases

*Bernstein v. IDT Corp.*, 582 F.Supp. 1079 (D. Del. 1984). . . . . . . . . . . . . . . . . . . . . . . . 14

*Brown Shoe Co. v. U.S.*, 370 U.S.294 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535 (9th Cir. 1986). . . . . . . 14

*Com. of Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173 (3rd Cir. 1988). 4

*Green v. State Bar of Texas*, 27 F.3d 1083 (5th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . 2

*In re Transamerica, Inc.*, C.A. No. 1039-N, 2006 WL 586846, Parsons, V.C. (Del. Ch. Feb. 28, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n,* 107 F.3d 1026 (3d Cir.), *cert. denied*, 522 U.S. 907 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Metropolitan Edison Co. v. Federal Power Comm'n*, 169 F.2d 719 (3rd Cir. 1948). . . . . 1

*Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93 (3rd Cir. 2004). . . . . . . . . . . . . . . . . . . . 12

*Parker v. Learn The Skills Corp.*, C.A. No. 05-2752, 2006 WL 759653, Bartle, J. (E.D. Pa. Mar. 23, 2006), *aff'd*, 2007 WL 2228867 (3rd Cir. Mar. 2, 2007). . . . . . . . . . . . . . . . . 12

*Parker v. University of Pennsylvania*, C.A. No. 02-567, 2003 WL 23757579, Brody, J. (E.D. Pa. Nov. 5, 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Parker v. University of Pennsylvania*, 128 Fed. Appx. 944 (3rd Cir.), *cert. denied*, 126 S.Ct. 755 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Paul E. Volpp Tractor Parts, Inc. v. Caterpillar, Inc.*, 917 F.Supp. 1208 (W.D. Tenn. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*PT Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65 (2nd Cir. 1998). . . . . . . . 14

*Ramunno v. Cawley*, 705 A.2d 1029 (Del. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Sanitec Industries, Inc. v. Sanitec Worldwide, Ltd.*, 376 F.Supp.2d 571 (Del. 2005). . . . 12

*Time ShareVacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61 (3rd Cir. 1984). . . . . . . 12

*Yuhasz v. Poritz*, 166 Fed. Appx. 642 (3rd Cir. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**<u>Other authorities</u>**

10 *Del. C.* §3104(c)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

10 *Del. C.* §3104(c)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18 U.S.C. §1965(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## ARGUMENT

**I.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.**

    **A.    ANTITRUST CLAIMS.**

        **1.    Parker Has Failed to Allege a Combination or Conspiracy.**

In their opening brief, the Defendants[1] demonstrated that Parker's antitrust claim fails because he relies only on conclusory assertions of conspiracy, which are insufficient to state an antitrust claim. (DOB 12-14 & n. 6).

Parker responds by clinging to the language of the Third Circuit in the Pennsylvania Action that he set forth his claim in "painstaking detail." (PAB 11). However, the Third Circuit was not addressing the legal sufficiency of Parker's claim against the Defendants.[2] Moreover, the fact that Parker set forth his claim at great length does not mean that the allegations are legally sufficient to state a viable claim. In other words, quantity does not equal quality.

The sole specific citation Parker relies on is paragraph 32 of the Amended Complaint (PAB 11), which merely states that the Defendants agreed and conspired to publish the RAY

---

[1]    Terms defined in the Defendants' opening brief have the same meaning herein. The Defendants' Opening Brief is cited to herein as "DOB ___." Parker's Answering Brief is cited to herein as "PAB ___."

[2]    Parker also notes that the Third Circuit "did not reject the merits, despite knowing of the existence of this case at the time of its ruling." (PAB 16). Of course, the merits of the allegations against the Defendants were not decided in the U.S. District Court for the Eastern District of Pennsylvania, and the issue of merits of those claims were not appealed to the Third Circuit, which may not give advisory opinions on issues not before it. *Metropolitan Edison Co. v. Federal Power Comm'n*, 169 F.2d 719, 724 (3rd Cir. 1948).

FAQ.  Again, this is a conclusory assertion with no supporting facts which permit the Court to reach the conclusion that the parties agreed to act collectively for an illegal purpose.[3]

There are no particularized factual allegations, as required under precedent of this Court and this Circuit, showing when or how the Defendants agreed to act collusively, or the specific role each of the Defendants played in effectuating the alleged conspiracy.  This failure alone justifies dismissal of the antitrust claims.

### 2.      Parker Has Failed to Allege an Anticompetitive Effect.

In their opening brief, the Defendants pointed out that in order to state an antitrust claim, Parker must allege facts showing that the Defendants' conduct harms the competitive process overall, and not just him.  (DAB 20-21).  *See also Green v. State Bar of Texas*, 27 F.3d 1083, 1087 (5th Cir. 1994).

Parker does not respond to this argument, implicitly conceding that he cannot meet it.  This alone also justifies dismissal of his antitrust claims.

### 3.      Parker Has Failed to Allege Market or Monopoly Power.

In their opening brief, the Defendants pointed out that Parker is obligated to plead facts demonstrating that the Defendants have market or monopoly power, and he has not done so. (DAB 16, 17,  20, 21).

Parker first responds that he only needs to demonstrate "attempted monopoly power." (PAB 16).  This is inaccurate. It is true that, in a claim for attempted monopolization, he need

---

[3]      Parker states that the RAY FAQ "could not exist without the mutual approval of all Defendants." (PAB 11).  Parker does not explain in his brief (much less his Amended Complaint) why this is so.  As such, it is inadequate.

not allege pre-existing monopoly power, but monopoly or market power must be alleged for all other antitrust claims. Moreover, for a claim of attempted monopolization, he must plead facts showing that the Defendants' conduct created a dangerous probability that they would achieve monopoly power. Parker has not alleged any such facts.

Parker next offers the conclusory assertion that LTSC has the power to control prices or exclude competition. (PAB 14). But Parker does not explain how, and, more importantly, does not identify any such allegations in his Amended Complaint. Indeed, he undercuts his own argument by adding that "[t]he market is much larger now and there is more pie to split." (PAB 14).

Parker's failure to plead facts establishing market or monopoly power provide a third independent reason for dismissing his antitrust claims.

### 4.    Parker Has Failed to Plead a Valid Tying Claim.

In their opening brief, the Defendants demonstrated that Parker failed to satisfy the pleading requirements for a tying claim because, in addition to the elements set forth above, (a) he failed to allege that any of the defendants have conditioned the sale of one product or service upon the sale of another product or service, (b) he did not allege any coercive conduct that forced any consumer to purchase any "tied" product, and (c) he did not allege any facts demonstrating a more than insubstantial effect on interstate commerce. (DOB 15-16).

Parker's rambling response relies mostly on matters outside the Amended Complaint. Such arguments do not make up for his pleading defects, and cannot be used on a motion to dismiss to supplement the Amended Complaint. *Com. of Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3rd Cir. 1988).

First, Parker states that LTSC "trademarked" the phrase "center of the seduction universe" (a point not alleged in the Amended Complaint).[4] (PAB 12). However, Parker has not provided any reasoned argument why the use of a qualitative, self-promotional phrase such as "center of the seduction universe" establishes actual market or monopoly power.

Second, in an implied concession that there is no sale of a product or service conditioned upon the purchase of another product or service, Parker argues that "domination" of an Internet site that is free to access "ties in" to the "cultivation of a customer base...." (PAB 12). Whether or not this is true, it is not a recognized ground for a tying claim, and Parker has not cited any authority whatsoever to support his novel theory, or provided any reasoned explanation how this type of situation was intended by Congress to be protected under the antitrust laws.

Parker next suggests that participation in LTSC's privately-owned message board is "tied" to abiding by the rules set forth by LTSC. (PAB 13-14). As noted above, this does not involve the sale of products or services, and so is outside the realm of a tying claim. Moreover, as noted in the Defendants' opening brief, LTSC is not required to open its privately-owned website to whoever wants to advertise on it, in the absence of any indication that this website is an essential facility, without access to which Parker and others cannot effectively compete. (DOB 17-18).[5]

---

[4]

Defendants presume that Parker is using the term "trademark" colloquially, as there is no suggestion that LTSC has filed any state or federal application for trademark protection.

[5]

Parker's argument merely highlights that his real beef is that LTSC's website is a popular (albeit not controlling) site in the "seduction" market, and he is not welcome there.
(continued...)

Parker has failed to satisfy the elements of a tying claim, and so this claim should be dismissed.

**5.    Parker Has Failed to Plead a Valid Refusal to Deal Claim.**

In their opening brief, the Defendants demonstrated that Parker failed to satisfy the pleading requirements for a refusal to deal claim because Parker did not allege any facts indicating monopoly power or anticompetitive effect.  (DOB 16-17).

As noted above, although Parker claims in his brief (but not in his Amended Complaint) that LTSC has monopoly power, he offers no support for that conclusion.

As for anticompetitive effect, although Parker claims that his own ability to compete has been "all but eliminate[d]" (PAB 14), he fails to explain why his own website and ability to post messages on USENET boards do not constitute viable means of competition, or how, in light of these marketing alternatives, LTSC's website is an "essential facility."  Nor does he explain how these alleged illegal acts are the cause of his claimed inability to compete, as opposed to simple public rejection of his products or services on their merits.

─────────────────

[5](...continued)
However, in the absence of market or monopoly power, and the exercise thereof in a way that creates barriers to competition, LTSC is free to exclude whoever it wants from its website.

Indeed, this case is a paradigm of how unlikely it is that an antitrust claim can have any merit in the area of Internet commerce.  The Internet is not a closed market.  Anyone who wants to advertise there can do so cheaply, including setting up their own website, and marketing their products on bulletin boards and in chat rooms. All entrants have an equal opportunity to develop their own audience.

Mr. Parker's issue is not that he is being denied an opportunity to develop his own audience.  Instead, he is upset because he is not allowed to "free ride" on the audience developed by the Defendants.  The antitrust laws are not designed to protect against that.

Finally, as noted above, mere (imagined) injury to Parker's ability to compete is not a valid anticompetitive injury. Parker must show injury to competition generally, and not just to him specifically. He has not, and this claim fails.

**6.    Parker Has Failed to Plead a Valid Claim of Price Fixing.**

Parker suggests a *per se* violation of price fixing because Mr. Valens posted message which reads, in pertinent part, "I will gladly accept definitions of validating what is to be expected & 'industry standards" and host such on FS. This would include common pricing for any product or service...." (PAB 17).

The arguments previously set forth are equally applicable to this claim. First, even assuming that this is an offer to fix prices in an industry, there is no allegation that any other competitor actually combined with Valens to fix prices. Nor is there any allegation that prices were actually fixed. Nor is there any allegation that any parties who might have combined to fix prices actually had the market power to fix those prices. Nor is there any allegation that Parker's prices, or the prices of any other competitor, were in any way affected by this alleged price fixing. Parker does not even allege the competing prices.

As such, Parker's claim is woefully deficient and should be dismissed.

**7.    Parker Has Failed to Alleged a Valid Claim of Monopolization or Intent to Monopolize.**

In their opening brief, the Defendants demonstrated that Parker's monopolization claims fail because there are no allegations of fact establishing monopoly power or a genuine risk of obtaining monopoly power, or of impermissible exclusionary practices, or of harm

to competition generally (as opposed to Parker specifically, although there is no legitimate injury to Parker as he remains as free to market his products as anyone else). (DOB 20-21).

Parker's response is that the Defendants "commandeered a public message board, using it to launch a privately owned copy of that board, and by using mafia and cartel-style enforcement tactics to further its agenda." (PAB 16-17).

First, there is no allegation that anything any of the Defendants are alleged to have done prevented anyone against their own will from either posting to USENET boards or reading USENET postings. Thus, Parker's conclusory allegation of "commandeering" lacks any meaning. Moreover, there is no basis to conclude that using a public messaging site to develop an audience and then inviting that audience to voluntarily visit a privately-owned site is monopolization, as other competitors can still market their products and services.

Similarly conclusory are Parker's claims of "mafia and cartel-style enforcement tactics." There is no allegation that any such "tactics" have prevented anyone from entering the market or competing (indeed, Parker has alleged that the number of service providers for the market has grown).

### 8.     Parkers Specific Issues Are Not Violations of Antitrust Law.

As indicated in the Defendants' opening brief, the specific conduct of which Parker complains does not violate antitrust law. (DOB 17-19).

First, LTSC's privately-owned site does not preclude anyone from marketing competing goods and services on the Internet. All it does is preclude unwanted competitors from free-riding on the audience and good will that LTSC has built. *See Paul E. Volpp*

*Tractor Parts, Inc. v. Caterpillar, Inc.*, 917 F.Supp. 1208, 1230 (W.D. Tenn. 1995) ("there is no free-rider guarantee in the antitrust laws").

Parker's response is that the Defendants have built that audience and good will by "capitaliz[ing] on public ignorance of the internet and of the nature of the massive interconnection of the Cartel's members...." (PAB 15). Even if this were true (which it is not), capitalizing on alleged public ignorance is not an anticompetitive act, as all competitors are equally free to capitalize on this alleged ignorance to build a market.

Second, as noted by the cases cited by the Defendants, disparagement of Parker and his products is not an antitrust violation. Parker does not respond to this argument, thereby implicitly conceding its correctness.

Third, encouraging USENET readers to use "killfile" to avoid reading Parker's posts does not implicate antitrust laws, as it is purely voluntary on the part of readers. Again, Parker merely complains that the Defendants are taking advantage of the ignorance of the audience. Whether or not that is so, it is not a violation of the antitrust laws.

Finally, Parker complains of the creation of marketing chapters in various cities, which Parker alleges have since "splintered." But Parker has not alleged any facts demonstrating that these marketing units created any barriers to entry or marketing of competing products. As such, antitrust laws are not implicated.

Parker may be upset that he is not welcome to work with those he seeks to emulate. But the antitrust laws are designed to protect competition, not competitors. *Brown Shoe Co. v. U.S.*, 370 U.S. 294, 320 (1962). Parker's Amended Complaint fails to allege any acts

which injure or interfere with competition in the "seduction" market, generally.  As such, the antitrust claims should be dismissed.

### B.    RICO CLAIMS.

Parker elected not to respond to the Defendants' arguments why the allegations fail to state a claim under RICO.  Instead, he argues that dismissing the claim without first requiring a "RICO case statement" would constitute a denial of due process. (PAB 17).

A "RICO case statement" is a document required under the local rules of certain District Courts.  However, it is not required under the Local Rules of this Court, and there is no right to file one before dismissal.  *See Yuhasz v. Poritz*, 166 Fed. Appx. 642, 646 (3rd Cir. 2006).

Plaintiff filed several complaints asserting RICO claims in Pennsylvania, and has already amended his Complaint once in this action (going from 48 to 72 pages).  As demonstrated in the Defendants' opening brief, the facts, even if proven, do not support a RICO claim. No further pleading should be permitted.

### C.    LANHAM ACT.

In their opening brief, the Defendants demonstrated that Parker's Lanham Act claim fails because (1) the alleged statements refer to Parker personally, and not to his goods or services, (2) any statements relating to products or services are non-actionable opinion or name-calling, (3) there are no allegations about how the alleged statements actually or potentially deceive the audience, and (4) there are no allegations that the challenged statements are likely to influence consumer purchasing decisions.  (DOB 28-31).

Parker first states that the ASF FAQ is the relevant false and misleading statement that is designed to confuse new readers "into thinking that a public message board has been relocated to a commercial website or even belongs to that website...." (PAB 17-18). Parker, however, never identifies exactly what the false statements are (*see* Am. Compl. ¶33), or how they are likely to deceive a reasonable reader. Apparently, Parker assumes that simply by identifying private commercial sites, the reader will be confused as to "sponsorship" of the free USENET site. That, however, is a tremendous leap.

Parker next argues that interstate commerce is implicated because "interstate commerce is inherent in internet commerce, and the internet is run over federal wires." (PAB 18). Even assuming "federal wires" are involved (whatever that means), the flaw in Parker's argument is that message boards such as USENET are free to read. There is no commerce involved.[6] In the absence of any allegation of any commercial transactions tied to reading or posting to the electronic bulletin boards in question, interstate commerce (or indeed commerce of any kind) is not implicated, and so the Lanham Act is not applicable.

As for the specific statements, Parker addresses only two of them. Parker first complains that a reproduction of a public posting of his was done without permission or proper attribution. (PAB 18-19). First, Parker has no proprietary rights in a public posting he places on USENET for the world to see. In any event, that is not covered by the Lanham

---

[6]

To the extent that Parker protests the some of the Defendants advertise their own websites on the ASF FAQ, they are clearly identified as such. There is no prohibition on such advertising. Indeed, Parker himself opposes any censorship on USENET. (PAB 18).

Act (particularly since it does not relate to goods or services), and Parker has not offered precedent or reasoned argument to the contrary.

The second statement was that Ross sent an e-mail to a person identified as "Jeri Ryan," pretending to be Parker, in which Ross (as Parker) threatened Ryan. (PAB 19). However, the alleged falsity, being a misrepresentation of the identity of the author, does not misrepresent any products or services, and so is not protected by the Lanham Act.

### D.    STATE LAW CLAIMS.

As noted in the Defendants' opening brief, if the federal claims are dismissed, this Court should dismiss the state-law claims as well. (DOB 32). Parker does not take issue with this point.

Parker offers no reasoned response to the arguments the Defendants made in support of dismissal of the state law claims, but only broad-brush pronouncements unsupported by authority.[7]    The state law claims should be dismissed for the reasons stated by the Defendants in their opening brief.

---

[7]

In their opening brief, the Defendants cited *Ramunno v. Cawley*, 705 A.2d 1029 (Del. 1998), in which the Delaware Supreme Court held that there is no independent cause of action under Delaware law for conspiracy. *Id.* at 1039. (DOB 34). Parker responds by citing *In re Transamerica, Inc.*, C.A. No. 1039-N, 2006 WL 586846, Parsons, V.C. (Del. Ch. Feb. 28, 2006), wherein the Court of Chancery addressed a claim of conspiracy to commit a fraudulent transfer. (PAB 20). The distinction is that in the latter case, it was not an independent claim of conspiracy, but rather conspiracy to defraud. Parker's conspiracy claim, as alleged, does not tie the conspiracy to any specific wrong. As such, it fails under Delaware law.

11

## II. THE COURT SHOULD DISMISS DEFENDANTS JAY VALENS, RAY LEVANS, PAUL ROSS AND STRAIGHTFORWARD, INC. DUE TO LACK OF PERSONAL JURISDICTION.

Parker makes much of the fact that the Defendants did not submit affidavits in support of their motion to dismiss for lack of personal jurisdiction. (PAB 7). However, there is no obligation that the Defendants do so. Rather, the burden is on Parker to affirmatively establish a basis for personal jurisdiction. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3rd Cir. 2004).

In this circuit, it is the *plaintiff* that must support his assertion of personal jurisdiction through affidavits or other competent evidence. *Time ShareVacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3rd Cir. 1984); *Sanitec Industries, Inc. v. Sanitec Worldwide, Ltd.*, 376 F.Supp.2d 571, 573 (Del. 2005). Indeed, Parker's failure to do so in the Pennsylvania Action contributed to the dismissal of that suit. *Parker v. Learn The Skills Corp.*, C.A. No. 05-2752, 2006 WL 759653, WL Op. at *3, Bartle, J. (E.D. Pa. Mar. 23, 2006), *aff'd*, 2007 WL 2228867 (3rd Cir. Mar. 2, 2007). The same failure justifies dismissal here.

### A. THERE IS NO BASIS FOR PERSONAL JURISDICTION UNDER DELAWARE'S LONG-ARM STATUTE.

Turning to the individual defendants, there is no allegation or evidence that Valens or Levans performed any jurisdictional act in Delaware. Even accepting (solely for the purpose of the jurisdictional motion) that they are owners, officers, directors or agents of LTSC (Am. Compl. ¶¶3-4), that fact alone does not subject them to the jurisdiction of this Court pursuant to Delaware's Long Arm Statute. *See Sanitec Industries, Inc.,* 376 F.Supp.2d

12

at 573-74 (individual acts of corporate directors analyzed for purpose of personal jurisdiction under the Long Arm statute).

Parker refers to the alleged business relationship between the parties (PAB 9), but that is not sufficient.  To obtain jurisdiction over any of the defendants, they must have committed an act which falls under one of the provisions of Delaware's Long Arm statute. There are no facts alleged indicating that any of the defendants committed a tortious act in Delaware, either directly or through an agent, so as to implicate 10 *Del. C.* §3104(c)(2). Parker does not appear to dispute this.

Parker instead points to an allegation that Ross "derives substantial revenue from products which are sold in Delaware, for use and consumption in the state." (Am. Compl. ¶14).  Parker also claims that this allegation was intended to cover Straightforward as well, and suggests that Valens and Levans are also implicated by virtue of an undefined business relationship with Ross and/or Straightforward. (PAB 8).  This allegation, however,  merely parrots the language of 10 *Del. C.* §3104(c)(4), which, as noted in the Defendants' opening brief, is merely conclusory and not entitled to credit on a motion to dismiss. (DOB 10).[8]

---

[8]

This exemplifies the importance of the requirement that a plaintiff provide an affidavit in support of the assertion of personal jurisdiction.  Parker has no idea how many, if any, sales either Ross or Straightforward have made into Delaware.  Moreover, it is highly questionable whether Parker is aware what degree of activity is required under the case law to constitute "substantial revenue."  Parker, perhaps believing his *pro se* status helps immunize him from Rule 11 sanctions, feels free to make this conclusory assertion without regard to his lack of actual knowledge of the facts, hoping that the Court will allow him to subject the defendants to a costly fishing expedition.

An affidavit, when proven false, would provide the Defendants with the ammunition necessary to take stronger steps to prevent further harassing and vexatious litigation.

13

Parker's unsworn generalized allegations of jurisdiction are inadequate.

**B.    PARKER HAS FAILED TO ESTABLISH PERSONAL JURISDICTION UNDER RICO.**

Parker also claims that jurisdiction is appropriate under the federal RICO statute.

(PAB 9).  18 U.S.C. §1965(b) states that:

> In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

This provision is deemed to refer to both personal jurisdiction and venue. *Bernstein v. IDT Corp.*, 582 F.Supp. 1079, 1087 & n.9 (D. Del. 1984).

In order to satisfy the "ends of justice" test, Parker must first demonstrate that there exists no other district in which a court would have personal jurisdiction over all the alleged co-defendants.  *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 538-39 (9th Cir. 1986); *PT Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 71-72 & n.5 (2nd Cir. 1998).   He has not made any effort to do so, and so he is not entitled to compel jurisdiction over the non-resident defendants in this Court.  In any event, as the RICO count should be dismissed for the reasons stated herein (none of which were refuted by Parker), the issue of RICO jurisdiction is moot.

**C.    THE COURT SHOULD NOT PERMIT JURISDICTIONAL DISCOVERY.**

As noted in Defendants' opening brief, the Court may deny a request for jurisdictional discovery where, as here,  the plaintiff offers nothing more than conclusory and

14

speculative jurisdictional assertions. (POB 11, citing *Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n,* 107 F.3d 1026, 1042 (3d Cir.), *cert. denied*, 522 U.S. 907 (1997)).

Parker has not supported his claims with an affidavit or other competent evidence (as is his obligation under the law of this circuit).   He relies merely on conclusory and speculative assertions.   His claims are convoluted and without support in law or logic, and have, at best, a tenuous connection with Delaware.   As such, discovery is unwarranted.

III.    **THE COURT SHOULD ENTER AN ORDER PROTECTING THE DEFENDANTS FROM PARKER'S CONTINUING VEXATIOUS LITIGATION.**

Parker is a troubled and angry man.  He has claimed to suffer from bipolar disorder (although he refused to submit to a court-ordered psychiatric evaluation).[9]  He appears not to be faring well financially.[10]  And he is taking his frustration out on the Defendants, with whom the dispute has become personal.

Parker has filed several lawsuits against several of the Defendants (among others) in Pennsylvania (earning him the deserved sobriquet "serial litigant"), all of which were unsuccessful.  He has filed amended complaint after amended complaint and motion after motion, in Pennsylvania and here, at a cost of time, energy and money to his victims.  As demonstrated in the Defendants' briefs, Parker's claims lack any valid foundation.

A dismissal of this action, though clearly justified, will surely result in an appeal – that is to be expected.  But in his answering brief, Parker has also signaled his intention to continue with motion practice, including motions for reconsideration and to amend (yet again) his Complaint. (PAB 17).  Parker has also indicated on USENET his intention to make further filings. (Ex. A hereto).  Given this threat of continued harassment by litigation, the Defendants find it necessary to seek protection from the Court.

---

[9]

*Parker v. University of Pennsylvania*, 128 Fed. Appx. 944 (3rd Cir.), *cert. denied*, 126 S.Ct. 755 (2005).

[10]

The Defendants derive such assumption from Parker's statement that "his PACER access us currently shut off due to arrears." (PAB 10).

16

Unfortunately, Rule 11 sanctions would likely be of little deterrent effect. Given Mr. Parker's apparent modest economic situation, it is unlikely that he would be able to satisfy and monetary sanction.

As such, the Defendants request that the Court enter an Order barring Parker from ny further filings unless they have either been signed by a Delaware attorney or are accompanied by a certificate from a Delaware attorney stating that he or she has reviewed the proposed filing, that the factual statements have evidentiary support, and that the legal positions contained therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

This will ensure that someone with legal training reviews the allegations and arguments for both procedural and substantive content (including the relevant statute of limitations), thereby (hopefully) minimizing the risk that the Defendants will have to continue exerting effort and incurring expense in an endless cycle of filings, briefings, dismissals and new filings, dealing with clearly unmeritorious claims.

17

## <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, as well as the reasons stated in their opening brief, the Defendants respectfully request that this Court dismiss this action for lack of personal jurisdiction and failure to state a claim, and enter an Order protecting the Defendants from further harassing and vexatious litigation by Parker.

Respectfully submitted,

/s/ David L. Finger
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155
(302) 884-6766
Attorney for defendants Learn the Skills Corp., Jay Valens, Ray Levans, Paul J. Ross and Straightforward, Inc.

Dated: April 10, 2007

18

## <u>CERTIFICATE OF SERVICE</u>

I, David L. Finger, hereby certify that on this 10th day of April, 2007, I caused two copies of the foregoing document to be served via first class mail, postage prepaid, on the below-listed parties:

Gordon Roy Parker, *pro se*
4247 Locust Street, #806
Philadelphia, PA 19104

Allen Reyes, *pro se*
123 S. Laguna St.
Klamath Falls, OR 97601

 /s/ David L. Finger
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155
(302) 884-6766

**Google** Groups                                                                 Help | Sign in

# alt.seduction.fast            "Gordon Roy Parker"      [ Search this group ]  [ Search Groups ]

LEGAL: Delaware Judge Sends Mixed Signals          More options

☆ Messages **1 - 25** of **26** - Expand all                                  Newer >

**Ray Gordon, creator of the pivot**  View profile    More options   Apr 5, 1:05 am

The judge in the Delaware case has issued a ruling and a new briefing
schedule.  Unfortunately, she issued the ruling March 30, 2007, and I filed
my reply brief on April 2, 2007 before I had received it.

In the uling, she denied the motion to stay as moot, denied my early
motion
for jurisdictional discovery as premature, denied the earlier motions to
dismiss as moot.

She did say that "it appears from the Pennsylvania case that Plaintiff's
claims are deficient in many ways."  That doesn't mean the case will be
dismissed, since she could have merely pointed out the deficiencies and
done
that in this ruling.  The extended time period for briefing would indicate
she expects me to file for leave to file an Amended Complaint, but there
are
also claims which were not addressed by the Pennsylvania court.
Generally,
"curable" deficiency does not warrant dismissal, but leave to amend
instead
(otherwise it's dismissal without prejudice and "serial" refiling).

On the other hand, if she wants to use 12(b)(6) to dismiss without
prejudice, then a refiling would occur, just as it has three times already.
Whatever she rules, I'm prepared.

--
Ray Gordon, Author
Price And Probability (The Value Handicapper's Bible)
http://www.cybersheet.com/horsepix.html

Would someone PLEASE become Ashlee Schull's new #1 fan?  She
deserves
better.

**Reply**   Reply to author   Forward

| | | |
|---|---|---|
| **Odious** | "Ray Gordon, creator of the "pivot"" <r...@cyber... | Apr 5, 4:22 am |
| **Ray Gordon, creator of the pivot** | >>That doesn't mean... | Apr 5, 4:29 am |
| **Bornnatural** | "Ray Gordon, creator of the "pivot"" <r...@c... | Apr 5, 7:39 am |
| **Bornnatural** | "Ray Gordon, creator of the "pivot"" <r...@c... | Apr 5, 8:02 am |
| **Odious** | "Ray Gordon, creator of the "pivot"" <r...@cybe... | Apr 5, 11:50 am |
| **Ray Gordon, creator of the pivot** | >> On the other hand... | Apr 5, 1:24 pm |
| **Ray Gordon, creator of the pivot** | >>> But <Ray>, you ... | Apr 5, 1:32 pm |
| **Bornnatural** | "Ray Gordon, creator of the "pivot"" <r...@c... | Apr 5, 1:59 pm |
| **Ray Gordon, creator of the pivot** | >> If the case had "fa... | Apr 5, 2:06 pm |
| **Krus T. Olfard** | gordon roy parker, creator of nearly a wo... | Apr 5, 6:11 pm |

### Discussions
+ new post

About this group

Subscribe to this group

This is a Usenet group - learn more

Sponsored Links

When you must fight, Win.
36 Yr. Credentials, Straight talk.
Free consultation for Peace of Mind
www.FederalCrimesLawyers.com

Small Claims Online
All Ready 2 File Forms Now for $15
Do Not Waste $100s on blank forms.
www.TurboCourt.com

Court filing
Legal Issue? Find Free Answers
to Your Legal Questions at FindLaw
www.FindLaw.com

See your message here...

Related Pages

PFR - Press Release - Maine Assists
in Case Against NJ Debt ...
www.state.me.us

The Florida Law Weekly
Immediate reports of cases from:
Florida appellate courts: District ...
www.floridalawweekly.com

Marion County Small Claims Court
(Lawrence Division) Judge Terry ...
www.small-claims-court.com

**Odious**   "Ray Gordon, creator of the "pivot"" <r...@cyber...     Apr 5, 7:45 pm
**Odious**   "Ray Gordon, creator of the "pivot"" <r...@cyber...     Apr 5, 7:50 pm
**HeeroYuy**   "Odious" <Odi...@cox.net.nospam> wrote in ...     Apr 5, 8:42 pm
**John Michaels**   If you paid your PACER bill, you might h...     Apr 5, 9:00 pm
**Ray Gordon, creator of the pivot**   >> Nope. > If she w...     Apr 6, 12:38 am
**Ray Gordon, creator of the pivot**   View profile   More options   Apr 6, 12:39 am

> You can keep filing but unless you change the fundamental approach,
> results will continue to be the same.

There's a reason the courts have allowed me to keep filing without so much
as a single sanction.

--
Ray Gordon, Author
Price And Probability (The Value Handicapper's Bible)
http://www.cybersheet.com/horsepix.html

Would someone PLEASE become Ashlee Schull's new #1 fan?  She deserves
better.

**Reply**     Reply to author     Forward

**Ray Gordon, creator of the pivot**   >>> In other words y...     Apr 6, 1:12 am
**Krus T. Olfard**   gordon roy parker, creator of nothing of a...     Apr 6, 1:35 am
**Krus T. Olfard**   gordon roy parker, creator of lies and bull...     Apr 6, 1:36 am
**Ray Gordon, creator of the pivot**   >> Which would be fi...     Apr 6, 1:42 am
**Odious**   "Ray Gordon, creator of the "pivot"" <r...@cyber...     Apr 6, 3:16 am
**Odious**   "Ray Gordon, creator of the "pivot"" <r...@cyber...     Apr 6, 3:18 am
**Krus T. Olfard**   gordon roy parker, creator of nothing imp...     Apr 6, 3:48 am
**Ray Gordon, creator of the pivot**   >> There's a reason t...     Apr 6, 3:51 am

Messages **1** - **25** of **26**                                          Newer >

**« Back to Discussions**                          « Newer topic   Older topic »

**Create a group** - Google Groups - Google Home - Terms of Service - Privacy Policy
©2007 Google