IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GORDON ROY PARKER, a/k/a<br>Ray Gordon, d/b/a Snodgrass<br>Publishing Group,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LEARN THE SKILLS CORP.,<br>JAY VALENS, a/k/a<br>formhandle@fastseduction.com.,<br>STRAIGHTFORWARD, INC.,<br>PAUL ROSS, a/k/a Ross Jeffries,<br>RAY DEVANS, a/k/a<br>tokyoPUA@fastsedution.com,<br>MIGUEL ANTHONY MARCOS, a/k/a<br>Sliek0722@aol.com, MYSTERY<br>METHOD CORPORATION, d/b/a<br>www.mysterymethod.com,<br>ALLEN REYES, a/k/a "Gunwitch", and<br>ERIK VON MARKOVIC, President,<br>Mystery Method Corporation,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 06-229-SLR<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Gordon Roy Parker, Philadelphia, Pennsylvania.  Pro se Plaintiff.

David L. Finger, Esquire, Finger & Slanina, LLC, Wilmington, Delaware.  Counsel for Defendants Lean the Skills Corp., Jay Valens, Straightforward, Inc., Paul Ross, and Ray Devans.

Allen Reyes, Klamath Falls, Oregon.  Pro se Defendant.

Miguel Anthony Marcos, Mystery Method Corporation, and Erik von Markovic. Defendants.

**MEMORANDUM OPINION**

Dated: January *10* , 2008
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

Plaintiff Gordon Roy Parker ("Parker"), a/k/a Ray Gordon, d/b/a Snodgrass

Publishing Group, who proceeds pro se, filed this action against Learn the Skills Corp.

("LTSC"); Jay Valens, a/k/a formhandle@fastseduction.com ("Valens"); Straightforward,

Inc., ("Straightforward"); Paul Ross, a/k/a Ross Jeffries ("Ross"); Ray Devans, a/k/a

tokyopua@fastsedution.com ("Levans")[1]; Miguel Anthony Marcos, a/k/a

sliek0722@aol.com ("Marcos"); Mystery Method Corporation, d/b/a

www.mysterymethod.com ("MMC"); Allen Reyes, a/k/a "Gunwitch" ("Reyes"); and Erik

von Markovic ("Markovic"), president of the MMC.[2]  The complaint was filed on April 7,

2006, and an amended complaint was filed on July 31, 2006. (D.I. 1, 11)  Counts I and

II of the amended complaint allege violations of the Sherman Antitrust Act, 15 U.S.C. §§

1, et seq., and the Clayton Act, 15 U.S.C. § 12; count IV alleges a violation of the

Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961 et

seq.; counts V and VI allege violations of the Lanham Act, 15 U.S.C. § 1125(a); and

counts III, V, VI, VII, and VIII allege claims under Delaware law of unfair competition,

defamation, tortious interference, and civil conspiracy.  Now before the court is an

amended motion to dismiss for lack of personal jurisdiction and failure to state a claim

filed by defendants LTSC, Valens, Levans, Ross, and Straightforward (collectively

---

[1]Defendants indicate that Ray Levans is improperly named as Ray Devans in the caption of the amended complaint and is referred to throughout the amended complaint as "Levans". Defendants also advise that Jay Valens and Ray Levans are pseudonyms. (D.I. 31, n.1)

[2]Reyes has been served and appears pro se; Marcos was served on August 5, 2006, but has not answered or otherwise appeared; MMC and Markovic have not been served. (D.I. 20, 21, 26)

"defendants"), plaintiff's response, and defendants' reply. (D.I. 29, 33, 34) For the reasons set forth below, the court will deny as moot the renewed motion to dismiss on the basis of RICO jurisdiction and grant the renewed motion to dismiss in all other respects.

## II. BACKGROUND

Plaintiff and defendants are competitors in the "seduction business."[3] The business includes a "group of men who, through the internet, teach other men how to improve their results with women, and often profit from this." (D.I. 11, ¶ 21) Apparently this is a lucrative business with competing types of theories of seduction methods posted as self-help advice for sale. Plaintiff began providing advice over the internet in 1998; "the number of seduction gurus" has grown and "is well into the hundreds now, and the customer base is well into the millions . . . ." (Id. at ¶ 27) The parties post messages on USENET, an electronic bulletin board, that distributes messages to subscribers. (Id. at ¶ 22) Gurus also market their products and services through their individual websites and blogs. (Id. at 27)

Plaintiff alleges defendants operate an internet-based RICO enterprise known as the "Seduction Mafia" that is designed to control the flow of revenue from commerce concerning "alt.seduction.fast" ("ASF") USENET group. It is alleged that ASF is a newsgroup on a user network that has authorized the publication of "Frequently Asked Questions on ASF". (D.I. 11, ¶¶ 22, 32) The publication is known as ASF FAQ. Id. at ¶

---

[3]The court's March 30, 2007 order set forth the contentious litigation history, which began in Pennsylvania between plaintiff and defendants. The order also ruled upon a host of motions filed by the parties. (D.I. 32)

32.

Plaintiff alleges that defendants posted derogatory and hostile comments about him on USENET; instructed internet users to use software to avoid messages and information generated by plaintiff; invited readers interested in seduction information to visit a private message board hosted by LTSC; set up a "hate website" known as "RayFAQ" that contains malicious and untrue information about plaintiff's mental health and writing abilities; restricted advertising to only those approved by LTSC; and created markets for seduction products and specifically prohibited anyone from dealing with plaintiff.

Defendants move for dismissal on the grounds of lack of personal jurisdiction and failure to state a claim. More specifically, they contend that there is no basis for personal jurisdiction over Valens, Levans, Ross, and Straightforward and that the amended complaint fails to state claims upon which relief may be granted.

## III. STANDARDS OF REVIEW

### A. Rule 12(b)(2)

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the court may dismiss a suit for lack of jurisdiction over the person. Two requirements, one statutory and one constitutional, must be satisfied for personal jurisdiction to exist over a defendant. Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc., 295 F. Supp. 2d 400, 403 (D. Del. 2002). "First, a federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." Id. (citing Fed. R. Civ. P. 4(e)). The court must, therefore, determine whether there is a statutory basis for jurisdiction under the Delaware long-arm statute.

-3-

Id. (citing 10 Del. Code § 3104(c)). "Second, because the exercise of jurisdiction must also comport with the Due Process Clause of the United States Constitution, the court must determine if an exercise of jurisdiction violates [defendants'] constitutional right to due process." Id. (citing International Shoe Co. v. Washington, 326 U.S. 310 (1945)).

"Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum state to support jurisdiction." Id. (citing Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987)). Plaintiff may establish jurisdictional facts through sworn affidavits or other competent evidence. Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984).

"[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." Id. (citation omitted). Plaintiff is required to respond to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction with actual proof, not mere allegations. Id.; see also Hurley v. Cancun Playa Oasis Int'l Hotels, No. 99-574, 1999 WL 718556, at *1 (E.D. Pa. Aug. 31, 1999)(stating that "[g]eneral averments in an unverified complaint or response without the support of sworn affidavits or other competent evidence are insufficient to establish jurisdictional facts").

In this circuit, where a defendant has raised a jurisdictional defense, the plaintiff bears the burden of establishing that either general or specific jurisdiction can be exercised. Mellon Bank East PSFA, N.A. v. DiVeronica Bros. Inc., 983 F.2d 551, 554 (3d Cir. 1993); Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66-67

-4-

n.9 (3d Cir. 1984).[4]  Specific jurisdiction arises when the particular cause of action arose
from a defendant's activities within the forum state.  In contrast, general jurisdiction
does not require a defendant's connections to be related to the particular cause of
action, but that defendant have continuous or systematic contacts with the forum state.
American Bio Medica Corp. v. Peninsula Drug Analysis Co, Inc., Civ. No. 99-218-SLR,
1999 WL 615175 (D. Del. 1999).

Plaintiff filed a verified amended complaint.  The effect of a verification is that the
complaint is accorded the weight of an affidavit.  See Leonard A. Feinberg, Inc. v.
Central Asia Capital Corp., Ltd., 936 F. Supp. 250, 255 n.4 (E.D. Pa. 1996).  However,
statements in affidavits only have value when they are based on the affiant's personal
knowledge or some other admissible ground.  Id.; Davis v. Portline Transportes
Maritime Internacional, 16 F.3d 532, 537 n.6 (3d Cir. 1994).

## B. Rule 12(b)(6)

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a
claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  The court must
accept all factual allegations in a complaint as true and take them in the light most
favorable to plaintiff.  Erickson v. Pardus, –U.S.–, 127 S.Ct. 2197, 2200 (2007);
Christopher v. Harbury, 536 U.S. 403, 406 (2002).  A complaint must contain "'a short
and plain statement of the claim showing that the pleader is entitled to relief,' in order to

---

[4]Rather than looking to Third Circuit  precedent, plaintiff relies upon a district
court case from the Northern District of Illinois for the proposition that a court may
consider the allegations in the complaint to be true "unless controverted by the
defendant['s] affidavits."  Catalana Mktg. Int'l, Inc. v. Coolsavings.Com Inc., No.00 C
2447, 2003 WL 21542491, at *1 (N.D. Ill. July 3, 2003).

'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, –U.S.–, 127 S.Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint does not need detailed factual allegations, although "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965 (citations omitted).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted).  Because plaintiff proceeds pro se, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, –U.S.–, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

## IV.  DISCUSSION

### A.  Personal Jurisdiction

Defendants move for dismissal of Valens, Levans, Ross, and Straightforward due to lack of personal jurisdiction.[5]  Defendants argue that plaintiff has not alleged that any of these defendants is a Delaware citizen or entity.  Defendants further argue that plaintiff has not established jurisdiction under Delaware's long arm statute.

Plaintiff contends that he has pled sufficient facts to support jurisdiction over each of the foregoing defendants.  He argues that defendants did not file any documents "to establish in an evidentiary way their claims". (D.I. 33, at 7)  He contends

---

[5]Defendants concede that LTSC is a Delaware corporation.

that, in the absence of an affidavit by defendants, the court should consider all the allegations to be true. In the alternative, plaintiff contends that he is entitled to jurisdictional discovery. Defendants responds that, under the law of this circuit, they have no obligation to submit affidavits. Rather, the burden is on plaintiff to affirmatively establish a basis for personal jurisdiction. (D.I. 34)

### 1. Delaware Long Arm Statute

The Delaware long-arm statute provides that personal jurisdiction is proper over any nonresident who, in person or through an agent: (1) transacts any business or performs any character of work or service in the State; (2) contracts to supply services or things in the State; (3) causes tortious injury in the State by an act or omission in the State; (4) causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State; (5) has an interest in, uses or possesses real property in the State; or (6) contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing. 10 Del. C. § 3104(c). The foregoing provisions are construed "liberally so as to provide jurisdiction to the maximum extent possible" in order "to provide residents a means of redress against those not subject to personal service within the State." Boone v. Oy Partek AB, 724 A.2d 1150, 1156-57 (Del. Super. 1997).

### a. Section 3104(c)(2)

The amended complaint alleges personal jurisdiction pursuant to § 3104(c)(2)

-7-

over defendants Straightforward and Ross.  (D.I. 11, ¶¶ 13, 14)  Subsection (c)(2)

allows this court to exercise specific jurisdiction over defendants if they contracted to

provide services or things in Delaware.  As a specific jurisdictional provision, the

subsection requires a nexus between the cause of action and the conduct used as the

basis for jurisdiction.  See Siemens Aktiengesellschaft v. LG Semicon Co., 69 F. Supp.

2d 622, 625 (D. Del.1999).  Specific jurisdiction arises when a defendant has both

purposefully directed its activities at residents of the forum state and the action arises

from, or is directly related to, the defendant's actions within the forum state.  See Burger

King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

    Defendants argue that plaintiff's reliance upon 10 Del. C. § 3104(c)(2) is

misplaced.  They argue that the amended complaint does not allege that

Straightforward provides any services or things in Delaware.  Similarly, they argue that,

although the amended complaint alleges Ross "provides a one-hour telephone

consultation to purchasers of the Speed Seduction Advanced Home Study Course,

including those in Delaware," the amended complaint does not affirmatively allege that

Ross ever actually provided a telephone consultation to anyone in Delaware.  (D.I. 11, ¶

14)  Defendants argue that, even if Straightforward contracted to supply services or

things in Delaware, there is no nexus between the conduct and the causes of action as

alleged by plaintiff as the amended complaint speaks to defendants' marketing

techniques, none of which are alleged to have been created, or enacted, in or from

Delaware.  Finally, defendants argue that there are no allegations suggesting any

wrongdoing in connection with the purported supplying of services or things in

Delaware.

Plaintiff contends that he adequately alleges Straightforward provides services or things to Delaware because Straightforward is a distributor of products created by Ross. Plaintiff alleges that Ross provides telephone consultations to purchasers. He argues that Straightforward contracts with LTSC, which is a Delaware corporation, and this establishes Straightforward's personal jurisdiction. Plaintiff contends that LTSC is a seller of products provided to it by Ross/Straightforward, both of whom derive revenue from their sale. Plaintiff argues that there is specific jurisdiction under Delaware's long arm statute, § 3104(c)(2), because LTSC co-authored the marketing technique, ASF FAQ, and it directly sells products as its affiliate marketer. Plaintiff contends that if there a jurisdictional defect, it could be corrected through amendment.

Any contractual obligations to which the amended complaint might refer are a result of alleged contracts between or among the various defendants. The amended complaint does not allege plaintiff had a contract with any of the defendant to supply services or things in Delaware. Notably, it alleges that Ross provides a home study course to purchasers, including those in Delaware, but does not allege that any purchasers were actually in Delaware. Regardless, the claims asserted by plaintiff do not arise from a contract between plaintiff or any of the defendants to provide services in Delaware. Moreover, the allegations that LTSC, a Delaware corporation, co-authored a marketing technique or sells products provided by Ross and/or Straightforward, do not satisfy the required nexus for specific jurisdiction under § 3104(c)(2). Therefore, the court will grant the motion to dismiss as the amended complaint fails to alleges personal jurisdiction under § 3104(c)(2).

### b. Section 3104(c)(4)

The amended complaint alleges personal jurisdiction pursuant to § 3104(c)(4)

over defendants Straightforward, Ross, Valens, and Levans.  (D.I. 11, ¶¶ 13, 14, 15)

The amended complaint does not allege that any of these defendants are residents of

Delaware.  It refers to Straightforward as a corporation located in Texas, provides an

address for Ross in California, and provides no addresses for Valens or Levans.  The

amended complaint alleges that Valens and Levans are directors or officers of LTSC, a

Delaware corporation, and that all the foregoing defendants derive substantial revenue

from the use of products and services that are sold to residents of Delaware, for use

and consumption in Delaware.

Defendants seek dismissal under § 3104(c)(4) and argue that plaintiff merely lifts

the appropriate language from the Delaware long arm statute, but fails to assert any

facts to support the conclusory allegations that personal jurisdiction vests under §

3104(c)(4).  Plaintiff contends he sufficiently alleges personal jurisdiction over Ross

because "Ross derives substantial revenue from products which are sold in Delaware,

for use and consumption in the state."  (D.I. 33, at 4)  Plaintiff argues jurisdiction lies

under § 3104(c)(4) because Straightforward and Ross have solicited business in

Delaware for years.  Finally, in a push for jurisdictional discovery, plaintiff alleges that

only an inspection of defendants' records could provide specific transactions to prove

his case.[6]

Delaware courts have interpreted § 3104(c)(4) as a general jurisdiction provision.

---

[6]At this juncture, given that plaintiff has failed to even allege sufficient
jurisdictional facts, the court declines to order jurisdictional discovery.

-10-

See Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc., 295 F. Supp. 2d 400, 405 (D. Del. 2002); Boone v. Oy Partek AB, 724 A.2d 1150, 1155 (Del. Super. 1997) (citing Outokumpu Eng'g Enterprises, 685 A.2d 724, 727-28 (Del. Super. 1996)). General jurisdiction may be exercised over a defendant whose contacts with the forum state are "continuous and substantial." Kloth v. Southern Christian Univ., 494 F. Supp. 2d 273, 280 (D. Del. 2007) (citations omitted).

Plaintiff's amended complaint is verified. Nonetheless, the allegations asserting personal jurisdiction merely recite the Delaware long arm statute, and provide no basis for personal jurisdiction. Plaintiff has an obligation to provide more than labels and conclusions. Indeed, the amended complaint does not contain any allegations that Valens or Levans performed acts in Delaware sufficient to invoke personal jurisdiction. While the amended complaint alleges that Valens and Levans are directors or officers of LTSC, this is an insufficient allegation to vest personal jurisdiction. The fiduciary shield doctrine immunizes acts performed by an individual in the individual's capacity as a corporate employee from serving as the foundation for the exercise of personal jurisdiction over that individual. Mobil Oil Corp. v. Advanced Env't Recycling Technologies, 833 F. Supp. 437, 440 (D. Del. 1993).

The amended complaint alleges, in a conclusory manner, that defendants derive substantial revenue from products sold in Delaware. Delaware courts have broadly construed the term "substantial revenue" to mean that two to three percent of total revenue is sufficient to confer jurisdiction.[7] See United States v. Consolidated Rail

---

[7] When a defendant's sales to customers in Delaware constitute less than one percent of total revenue, it is not substantial enough to warrant an exercise of

Corp., 674 F. Supp. 138, 144 (D. Del. 1987). The only mention of revenue in the amended complaint occurs at paragraph 98, and it is in reference to LTSC's revenue and no other defendant. Finally, the amended complaint does not allege that defendants committed a tortious act in Delaware as is necessary under § 3104(c)(4). Therefore, the court will grant the motion to dismiss as the amended complaint fails to allege personal jurisdiction under § 3104(c)(4).

## 2. RICO Jurisdiction

The RICO statute provides for nationwide service of process. 18 U.S.C. § 1965(d); Kondrath v. Arum, 881 F. Supp. 925, 929 (D. Del. 1995). Thus, defendants need only have minimum contacts with the United States to satisfy the due process requirements of personal jurisdiction. Daggers v. Thaens, No. C.A. 98-256-SLR, 1999 WL 223504 (D. Del. Mar. 31, 1999) (citing American Trade Partners, L.P. v. International Importing Enters., Ltd., 757 F. Supp. 545, 556 (E.D. Pa. 1991).

The appellate courts to address the issue have disagreed over which provision of 18 U.S.C. § 1965 authorizes nationwide service of process. The United States Courts of Appeals for the Second, Seventh, Ninth and Tenth Circuits have determined it is authorized by § 1965(b), which authorizes nationwide service when "the ends of justice require that other parties residing in any other district be brought before the court." Cory v. Aztec Steel Bldg., Inc., 468 F.3d 1226, 1229 (10th Cir. 2006); PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 71-72 (2d Cir. 1998); Lisak v. Mercantile Bancorp., Inc., 834 F.2d 668, 671 (7th Cir. 1987); Butcher's Union Local No. 498 v. SDC

---

jurisdiction. Bell Helicopter, 295 F. Supp. 2d at 405.

-12-

Inv., Inc., 788 F.2d 535, 538 (9th Cir. 1986). The Fourth and Eleventh Circuits have held it is authorized by § 1965(d) which allows "[a]ll other process" in a RICO action to be served in "any judicial district in which such person resides, is found, has an agent or transacts his affairs." Republic of Panama v. BCCI Holdings (Lux.) S.A., 119 F.3d 935, 942 (11th Cir. 1997); ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 627 (4th Cir. 1997). The question is whether nationwide service of process is authorized in all instances or only when "the ends of justice require." The United States Court of Appeals for the Third Circuit has not addressed the issue.

As will be discussed below, plaintiff has not adequately alleged a RICO cause of action. Accordingly, the court will deny as moot this portion of defendants' motion to dismiss.

## B. Failure to State a Claim

### 1. Antitrust Claims, Counts I and II; Sherman Act 15 U.S.C. §§ 1, 2; Clayton Act, 15 U.S.C. § 4

Defendants move for dismissal of counts I and II on the basis that plaintiff has failed to state a claim. More particularly, they argue that the amended complaint: (1) fails to allege a combination or conspiracy as is required to state a valid antitrust claim; (2) fails to allege restraint of trade under § 1 of the Sherman Act; and (3) fails to allege monopolization and attempted monopolization under § 2 of the Sherman Act.[8]

_____

[8]Plaintiff seeks relief under § 4 of the Clayton Act for the alleged violations of the Sherman Act. Section 4 of the Clayton Act provides that "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws" may bring suit under the antitrust laws in the district courts for treble damages. 15 U.S.C. § 15.

-13-

## a. The Sherman Act, § 1

Section 1 of the Sherman Act, 15 U.S.C. § 1, provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states . . . is declared to be illegal." 15 U.S.C. § 1. In order to state a claim under § 1, plaintiff must allege: (1) concerted action by the defendants; (2) that produced anticompetitive effects within the relevant product and geographic markets; (3) that the concerted action was illegal; and (4) that plaintiff was injured as a proximate result of the concerted action. Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 442 (3d Cir. 1997).

Defendants argue that plaintiff does not allege a combination or a conspiracy, but makes conclusory assertions of conspiracy in an attempt to manufacture a combination or conspiracy amongst and between defendants and with others. (D.I. 31 at 20-21) Plaintiff contends that he has "alleged specific facts, and has 'painstakingly'[9] outlined the incestuousness nature of the 'seduction community,' and multiple specific acts which were taken in open conspiracy" including the "ASF FAQ" document. (D.I. 33 at 11) To support his position, plaintiff refers to paragraph 32 and 33 of the amended complaint. Paragraph 32 alleges that Ross, in agreement and in conspiracy with defendants, authorized the publication of ASF FAQ. (D.I. 11, ¶ 32) Paragraph 33 contains wording from an ASF FAQ which allegedly refers to defendants' websites as

---

[9]Plaintiff uses this language from Third Circuit decisions to buttress his position that the amended complaint is adequately pled. In affirming the dismissal of a similar case filed by plaintiff in the Eastern District of Pennsylvania, the Third Circuit stated that plaintiff's amended complaint was "described . . . in painstaking detail." Parker v. Learn The Skills Corp., 219 Fed. Appx. 187 (3d Cir. 2007). Nonetheless, it affirmed dismissal of the case.

-14-

"main, group-related sites."  (D.I. 11, ¶ 11)

To prove the existence of a conspiracy, there must be a "'unity of purpose or a common design and understanding or a meeting of minds'" or "'a conscious commitment to a common scheme.'"  Monsanto Co. v. Spray-Rite Service Corp., 465 U.S. 752, 764 (1984) (quoting Edward J. Sweeney & Sons, Inc. v. Texaco, Inc., 637 F.2d 105, 111 (3d Cir. 1980)).  In a § 1 claim, the complaint must have "enough factual matter (taken as true) to suggest that an agreement was made."  Twombly, 127 S.Ct. at 1965.  Moreover, there must be enough facts "to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."  Id.  An allegation of parallel conduct and a bare assertion of conspiracy will not suffice.  Id. at 1966.  Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.  Id.

Additionally, the mere pleading  of "statutory words" does not satisfy Rule 8(a)(2) pleading requirements.  Klebanow v. New York Produce Exch.  344 F.2d 294, 299 (2d. Cir. 1965).  The Third Circuit Court of Appeals has held that simply pleading a "general allegation of conspiracy" or that the defendants engaged in concerted action to achieve anticompetitive effects are insufficient allegations to survive a motion to dismiss.  Garshman v. Universal Res. Holding, Inc., 824 F.2d 223 (3d Cir. 1987); Black & Yates v. Mahogany Ass'n, 129 F.2d 227, 231-32 (3d Cir. 1941).

The amended complaint fails to adequately plead a conspiracy under the Sherman Act.  The paragraphs upon which plaintiff relies contain rote language that defendants "in agreement and conspiracy" authorized the publication of ASF FAQ.  (D.I. 11, ¶ 32)  Nothing in the paragraph suggests there was an illegal purpose behind the

-15-

alleged act. Moreover, the allegations that the purpose of ASK FAQ is to promote

group related sites, while at the same time disparage and blame plaintiff, do not suggest

illegal purpose. Based upon the foregoing, the court will grant the motion to dismiss on

the basis that plaintiff failed to allege a conspiracy as is required under the Sherman

Act.

Inasmuch as the court will grant the motion to dismiss for failure to allege a

conspiracy, the court will not address the other grounds raised for dismissal under § 1

of the Sherman Act.[10]

### b. Sherman Act, § 2

Section 2 of the Sherman Act makes it unlawful to monopolize, attempt to

monopolize, or conspire to monopolize, interstate or international commerce. It is "the

provision of the antitrust laws designed to curb the excesses of monopolists and near-

monopolists." LePage's Inc. v. 3M, 324 F.3d 141, 169 (3d Cir. 2003) (en banc). Liability

under § 2 requires "(1) the possession of monopoly power in the relevant market and (2)

the willful acquisition or maintenance of that power as distinguished from growth or

development as a consequence of a superior product, business acumen, or historic

accident." United States v. Grinnell Corp., 384 U.S. 563, 570-71 (1966); Schuylkill

---

[10]A review of the amended complaint, however, further reveals that it does not
adequately allege a tying agreement claim as it fails to allege a sale of a product or
service conditioned upon the purchase of another produce or service. Eastman Kodak
Co. v. Image Tech. Services, Inc., 504 U.S. 451, 461 (1992). Also, the refusal to
deal/blacklist claim appears deficient since, at least, some of the allegations concern
unilateral actions which cannot give rise to a violation of § 1 of the Sherman Act.
Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 769 (1984) (Section 1 of
the Sherman Act does not "exclude coordinated conduct among officers or employees
of the same company[ ]" nor does "an internal 'agreement' to implement a single, unitary
firm's policies . . . raise the antitrust dangers that § 1 was designed to police.").

Energy Resources v. Pennsylvania Power & Light Co., 113 F.3d 405, 412-13 (3d Cir. 1997). Monopoly power is the ability to control prices and exclude competition in a given market. Id. at 571. If a firm can profitably raise prices without causing competing firms to expand output and drive down prices, that firm has monopoly power. Harrison Aire, Inc. v. Aerostar Int'l. Inc., 423 F.3d 374, 380 (3d Cir. 2005).

To support an inference of monopoly power, a plaintiff typically must plead and prove that a firm has a dominant share in a relevant market, and that significant "entry barriers" protect that market. Harrison Aire, 423 F.3d at 381; United States v. Microsoft, 253 F.3d 34, 51 (D.C. Cir. 2001). Barriers to entry are factors, such as regulatory requirements, high capital costs, or technological obstacles, that prevent new competition from entering a market in response to a monopolist's supracompetitive prices. Microsoft, 253 F.3d at 51; Rebel Oil Co. v. Atlantic Richfield Co., 51 F.3d 1421, 1439 (9th Cir. 1995); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 591 n.15 (1986) ("[W]ithout barriers to entry it would presumably be impossible to maintain supracompetitive prices for an extended time.").

Anticompetitive conduct may take a variety of forms, but it is generally defined as conduct to obtain or maintain monopoly power as a result of competition on some basis other than the merits. LePage's, 324 F.3d at 147. Conduct that impairs the opportunities of rivals and either does not further competition on the merits or does so in an unnecessarily restrictive way may be deemed anticompetitive. Aspen Skiing Co. v. Aspen Highlands Skiing Corp., 472 U.S. 585, 604-05 & n.32 (1985). Conduct that merely harms competitors, however, while not harming the competitive process itself, is not anticompetitive. See Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509

-17-

U.S. 209, 224 (1993) ("It is axiomatic that the antitrust laws were passed for 'the protection of competition, not competitors.' " (quoting Brown Shoe Co. v. United States, 370 U.S. 294, 320 (1962)); Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 458 (1993) ("The law directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition itself.").

The amended complaint, as it now stands, fails to allege monopolization.  In reading the complaint as a whole, the allegations are that defendants' conduct may have harmed plaintiff, but not the competitive process as a whole.  Quite telling is the allegation that the "'seduction community' represents a multimillion dollar industry, with a never-ending stream of well-off male customers and new gurus to supply them with teaching."  (D.I. 11, ¶ 25)  Plaintiff alleges that the industry proliferated when several gurus left the ASF site, while posting there periodically, and began their own websites and blogs.  Id. at ¶ 27.  Plaintiff alleges that the number of gurus is well into the hundreds, and the customer base is well into the millions, with full mainstream acceptance.  Id.  These allegations do not support a theory of monopolization under § 2.  To the contrary, they indicate that the seduction education business is open and available to enterprising individuals.[11]

---

[11]Neither has plaintiff adequately alleged an attempted monopolization claim under § 2 of the Sherman Act, which requires allegations that (1) the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.  Schuylkill, 113 F.3d at 413.

## 2. RICO, Count IV

Count IV alleges violations of RICO, 18 U.S.C. §§ 1962(a), (b), (c), and (d).[12]
Defendants move for dismissal of the RICO claims arguing that plaintiff lacks standing
to assert a RICO claim, the amended complaint does not adequately allege two
predicate acts, and the amended complaint does not allege a RICO conspiracy. Plaintiff
responds that he "temporarily" stands on his amended complaint and argues that his
right to due process will be violated if the RICO claims are dismissed without first
requiring that he file a RICO case statement. The local rules for the District of
Delaware, however, do not require the filing of a RICO case statement and plaintiff has
no inherent right to file one. Indeed, it is within the court's discretion whether to allow
the filing of a RICO statement. Yuhasz v. Portiz, 166 Fed. Appx. 642, 646 (3d Cir.
2006).

Section 1962(a) of the RICO statute makes it unlawful to invest income derived
from a pattern of racketeering activities. 18 U.S.C. § 1962(a). Section 1962(b) makes
it unlawful "for any person through a pattern of racketeering activity . . . to acquire or
maintain, directly or indirectly, any interest in or control of any enterprise which is
engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C.
§ 1962(b). Under § 1962(c), it is unlawful to conduct an enterprise through a pattern of
racketeering activities. Id. § 1962(c). Section 1962(d) prohibits any person from
"conspir[ing] to violate any of the provisions of subsections (a), (b), or (c). To

---

[12]RICO provides that a private civil litigant may recover damages for injuries
resulting from a defendant's "racketeering activities" in violation of RICO's substantive
provisions. 18 U.S.C. § 1964. Civil RICO actions are subject to a four year statute of
limitations. Cetel v. Kirwan Financial Group, Inc., 460 F.3d 494, 506 (3d Cir. 2006).

successfully allege a violation under these subsections, plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity" as well as an injury resulting from the conduct constituting a violation. Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). To state a claim under § 1962(b), a plaintiff must show "a specific nexus between control of a named enterprise and the alleged racketeering activity." Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1411 (3d Cir. 1991). Plaintiff must show that he has been injured by the control of the RICO enterprise in addition to showing injury from the predicate acts themselves. See Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1191 (3d Cir. 1993). A "pattern of racketeering activity means" at least two predicate acts that "are related and that amount to or pose a threat of continued criminal activity." H.J., Inc. v. Northwestern Bell Tele. Co., 492 U.S. 229, 239 (1989).

Defendants argue that plaintiff has not alleged a valid injury sufficient to invoke RICO standing. For standing under a RICO claim, a plaintiff must make a threshold showing that (1) he suffered an injury to his business or property and (2) the injury was proximately caused by defendants' racketeering activities. See Maio v. Aetna, 221 F.3d 472, 483 (3d Cir. 2000). Plaintiff alleges severe damage to his business and property, including, but not limited to, lost revenue, lost goodwill, lost investment value, and lost media exposure.

Plaintiff may satisfy the cognizable injury component under § 1964(c) of RICO only by allegations and proof of actual monetary loss, i.e., an out-of-pocket loss. Maio v. Aetna, Inc., 221 F.3d 472, 483-84 (3d Cir. 2000). Claimed losses to "goodwill" and "business reputation," in addition to being highly speculative, are not the type of injuries

-20-

compensable under RICO. John Paul Mitchell Systems v. Eslami, Nos. 95-55820, 95-55856, 110 F.3d 68 (9th Cir. 1997) (unpublished). While plaintiff makes general allegations of lost sales, he provides no specifics. For example, he alleges defendants used fear and coercion in an attempt to obtain property in the form of revenue and market share, without identifying the lost revenue or the market share percentage. The amended complaint does not allege "proof of concrete financial loss" and does not allege that orders for goods or services plaintiff provided were actually cancelled as a result of alleged RICO conduct. See Imagineering, Inc. V. Kiewit Pacific Co., 975 F.2d 1303, 1310 (9th Cir. 1992). A thorough review of the amended complaint reveals that plaintiff has not alleged he has suffered an injury to his business or property sufficient to confer RICO standing. Indeed, plaintiff merely parrots the RICO statute in an effort to state a claim. Inasmuch as the court will grant the motion to dismiss the RICO claim for lack of standing, the court will not address the other grounds raised for dismissal.[13]

## 3. Lanham Act, Counts V, VI

Defendants move for dismissal of the Lanham Act claims on the bases that the amended complaint does not involve comments about plaintiff's goods and/or services,

---

[13]The amended complaint inadequately pleads predicate acts. It does not allege that plaintiff willfully vacated the seduction-advice industry or that he did so upon the payment of money or property as is required under the Hobbs Act. See 18 U.S.C. § 1951(a). Also, the allegations that defendants had non-defendants make statements to unspecified third-parties regarding plaintiff fall far short of a Hobbs Act violation. See generally Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 522-27 (3d Cir.1998) (discussing the Hobbs Act in the context of civil RICO); Chovanes v. Thoroughbred Racing Ass'n, No. CIV. A. 99-185, 2001 WL 43780, at * 5 (E.D. Pa. 2001). Further, the Sarbanes Oxley Acts allegations do not allege threats of bodily harm or harm to tangible property, but speak to "malicious lies" found in the RayFAQ publications. See 18 U.S.C. § 1513. Finally, the RICO conspiracy claims are conclusory.

-21-

there are no allegations of actual or potential deception or that any deception is likely to influence purchasing decisions, or that there is a likelihood of injury to plaintiff resulting from any alleged misrepresentation. Plaintiff responds that the ASF FAQ is the relevant false and misleading statement designed to confuse new readers into thinking a public message board has been relocated to a commercial website.

To state a claim pursuant to 15 U.S.C. § 1125(a) of the Lanham Act, a plaintiff must allege that: (1) the defendant has made false or misleading statements as to his own or another's product; (2) there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc. Warner-Lambert v. Breathasure, Inc., 204 F.3d 87, 91-92 (3d Cir. 2000); Synygy, Inc. v. Scott-Levin, Inc., 51 F. Supp. 2d 570, 576 (E.D. Pa. 1999).

Only statements of fact capable of being proven false are actionable under the Lanham Act because, when personal opinions on nonverifiable matters are given, the recipient is likely to assume only that the communicator believes the statement, not that the statement is true. Schmidt, Long & Assoc., Inc. v. Aetna U.S. Healthcare, Inc., No. CIV.A.00-CV-3683, 2001 WL 856946, at *11 (E.D. Pa. July 26, 2001) (citing Licata & Co., Inc. v. Goldberg, 812 F. Supp. 403, 408 (S.D.N.Y. 1993); see also Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 731 (9th Cir. 1999)). The allegations under which plaintiff seeks relief under the Lanham Act speak more to name calling and personal opinions regarding plaintiff, rather than false and misleading

-22-

statement regarding defendants' products or plaintiff's products.  Indeed, many of the statements are juvenile in nature.  Accordingly, as pled, the amended complaint fails to state a claim under the Lanham Act.

### 4. State Claims

Plaintiff raises several claims and specifically alleges they are violations under Delaware law, as follows:  unfair competition, defamation, tortious interference, and civil conspiracy.[14]  (D.I. 11, ¶¶ 150, 173, 177, 190, 193)  Defendants move to dismiss all such state claims.

### a. Unfair Competition, Count III

"The elements of the tort of unfair competition are that the plaintiff has a reasonable expectancy of entering a valid business relationship, with which the defendant wrongfully interferes, and thereby defeats the plaintiff's legitimate expectancy and causes him harm."  Total Care Physicians, P.A. v. O'Hara, 798 A.2d 1043, 1057 Del. Super. 2001).  As alleged in the amended complaint, the seduction industry enjoys robust competition (e.g., "today's 'seduction community' represents a multimillion-dollar industry, with a never-ending stream of well-off male customers and new gurus to supply them with teaching").  (D.I. 11, ¶ 25)  Hence, an expectation of business relationships is unreasonable given the fact that the industry continues to grow, and ignores the possibility of increased competition, given that growth.  Accordingly, the amended complaint fails to state a claim for unfair competition.

---

[14]Plaintiff seeks recovery under Delaware law, but there are no allegations that any of the alleged tortious acts took place in Delaware.

### b. Defamation, Counts V, VI

A claim of defamation requires the following elements to be established: "(1) a false and defamatory communication concerning the plaintiff, (2) publication of the communication to third parties, (3) understanding of the defamatory nature of the communication by the third party, (4) fault on the part of the publisher, and (5) injury to the plaintiff." Wharton v. Worldwide Dedicated Services, No. CIV. A. 04C-02-035WCC, 2007 WL 404770, (Del. Super. Feb. 2, 2007) (quoting Bickling v. Kent Gen. Hosp., 872 F. Supp. 1299, 1307 (D. Del. 1994)). Both the defamatory character of the communication and the third party's understanding of the communication must be pled to establish a claim for defamation. Harrison v. Hodgson Vocational Technical High School, No. CIV. A. 07C-06-301MMJ, 2007 WL 3112479, at * 2 (Del. Super. Ct. Oct. 3, 2007).

The amended complaint does not allege the required elements for defamation. Particularly, it fails to allege the understanding of the defamatory nature of the communication by a third party.

### c. Tortious Interference, Count VII

The basic elements that establish a prima facie case of tortious interference with a business relationship in Delaware are the existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy; knowledge of the relationship or expectancy on the part of the interferer; an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted. Bove v. Goldenberg, No. Civ.A. 05C-10-134CHT, 2007 WL 446014, at *4 (Del. Super.

Ct. Feb. 2, 2007) (citing Bowl-Mor Co. v. Brunswick Corp., 297 A.2d 61, 65 (Del. Ch. 1972)). One is liable for commission of this tort if one interferes with the business relations of another, both existing and prospective, by inducing a third person not to enter into or continue a business relation with another or by preventing a third person from continuing a business relation with another. Id.

As discussed above, expectation of business relationships is unreasonable given the fact that, according to plaintiff, the industry continues to grow, and ignores the possibility of increased competition given that growth. Additionally, as to Valens, Levans and LTSC, the amended complaint does not allege that actions taken by them were successful but, instead, alleges that the actions were taken "in an attempt to" cost plaintiff advertising revenue and to induce others to terminate their association with plaintiff. (D.I. 11, ¶ 185) The allegations against Ross and Straightforward allege in a conclusory manner that their alleged defamation[15] caused plaintiff economic harm. Id. Therefore, the court finds that the tortious interference claim is inadequately pled.

### d. Civil Conspiracy, Count VIII

A civil conspiracy is defined in Delaware as the combination of two or more persons or entities either for an unlawful purpose, or for the accomplishment of a lawful purpose by unlawful means, resulting in damage. Anderson v. Airco, Inc., No. CIV. A. 02C-12-091HDR, 2004 WL 2827887, at *2-3 (Del. Super. Nov. 30, 2004); Connolly v. Labowitz, 519 A.2d 138, 143 (Del. Super. 1986); Nutt v. A.C. & S. Co., Inc., 517 A.2d 690, 694 (Del. Super. 1986); see Empire Financial Services, Inc. v. Bank of New York,

_____

[15]As alleged, the defamation claim fails to state a claim upon which relief may be granted.

-25-

900 A.2d 92, 97 (Del. 2006). Civil conspiracy, standing alone, is not an independent cause of action. Id. There must be some underlying actionable tort by each individual defendant in order to obtain recovery on a civil conspiracy theory. Id. It is not the conspiracy itself, but rather the underlying wrong that must be actionable, even without the alleged conspiracy. Id.

The civil conspiracy count fails to allege a specific wrong or underlying actionable tort by each individual defendant as is required for recovery on a civil conspiracy.

## V. CONCLUSION

Based upon the foregoing analysis, the court will deny as moot the renewed motion to dismiss on the basis of RICO jurisdiction and grant the renewed motion to dismiss in all other respects.